Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cosgravelaw.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail: pberg@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
500 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Telephone:   (503) 323-9000
Facsimile:    (503) 323-9019
Of Attorneys for Defendants Matt Arbaugh
        and Craig Russillo

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>LAUREN PAULSON,<br><br>_____Debtor._____<br>_____<br><br>LAUREN PAULSON,<br><br>_____Plaintiff,<br><br>v.<br><br>MATT ARBAUGH, AMY MITCHELL,<br>CRAIG RUSSILLO,<br><br>_____Defendants._____ | Case No. 09-32439-rld7<br><br>Adv. Proc. No. 11-03309-rld<br><br>**DEFENDANT RUSSILLO'S MOTION<br>FOR SUMMARY JUDGMENT**<br><br>Hearing Date: March 12, 2012<br>Time:              1:30 p.m.<br>Courtroom:    3 |

### LBR 7007-1(a) CERTIFICATION

Counsel for defendant Craig G. Russillo ("Russillo") certifies that the parties

made a good faith effort through a telephone conference to resolve the disputes at issue

in this motion but were unable to do so, and further certifies that counsel for Russillo

made reasonable efforts to engage in additional conferral by calling and emailing

plaintiff but was unable to reach him.

Page 1 - DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

## MOTION

Pursuant to Fed. R. Bankr. P. 7056, Fed. R. Civ. P. 56, and LBR 7056-1(a) defendant Russillo moves for summary judgment in his favor. This motion is supported by the accompanying concise statement of undisputed material facts, memorandum, declarations, and exhibits to the declarations.

DATED: January 9, 2012.

COSGRAVE VERGEER KESTER LLP


/s/ **Paul A. C. Berg**
Paul A. C. Berg, OSB No. 062738
Susan K. Eggum, OSB No. 824576
Telephone: (503) 323-9000
Fax: (503) 323-9019
E-mail: pberg@cosgravelaw.com
          eggum@cosgravelaw.com
Of Attorneys for Defendants Matt Arbaugh and
          Craig Russillo

Page 2 - DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

1373995

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing

**DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT** on the date

indicated below by:

⊠    mail with postage prepaid, deposited in the US mail at Portland, Oregon;

⊠    email

⊠    electronic filing notification.

If served by facsimile transmission, attached to this certificate is the printed

confirmation of receipt of the document(s) generated by the transmitting machine.  I

further certify that said copy was placed in a sealed envelope delivered as indicated

above and addressed to said attorney(s) at the address(es) listed below:

Lauren Paulson          ***(VIA EMAIL AND US MAIL)***
PO Box 19303
Portland, OR 97280
Plaintiff Pro Se

Justin D. Leonard          ***(VIA ELECTRONIC FILING NOTIFICATION)***
Ball Janik LLP
101 SW Main St, Ste 1100
Portland, OR  97204
Of Attorneys for Defendant Amy Mitchell

DATED:  January 9, 2012.

***/s/ Paul A. C. Berg***
Paul A. C. Berg

Page 1 - **CERTIFICATE OF SERVICE**

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

1373995

Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cosgravelaw.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail: pberg@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
500 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Telephone:   (503) 323-9000
Facsimile:    (503) 323-9019
Of Attorneys for Defendants Matt Arbaugh
        and Craig Russillo

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>LAUREN PAULSON,<br><br>               Debtor.<br>_____<br><br>LAUREN PAULSON,<br><br>             Plaintiff,<br><br>        v.<br><br>MATT ARBAUGH, AMY MITCHELL,<br>CRAIG RUSSILLO,<br><br>             Defendants. | Case No. 09-32439-rld7<br><br>Adv. Proc. No. 11-03309-rld<br><br>**DECLARATION OF CRAIG G. RUSSILLO IN SUPPORT OF DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: March 12, 2012<br>Time:              1:30 p.m.<br>Courtroom:    3 |

I, Craig G. Russillo, under penalty of perjury, declare pursuant to 28 U.S.C. § 1746, as follows:

1.    I am an attorney who served as legal counsel for Fairway America Corporation (Fairway), FHLF, LLC (FHLF), and Matt Burk with respect to:

a.   A $400,000 loan made by Fairway America Corporation (Fairway) to plaintiff Lauren Paulson (Paulson) secured by a note and trust deeds

Page 1 –  DECLARATION OF CRAIG G. RUSSILLO IN SUPPORT OF
            DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

1374130

relating to four separate tax lots (the Properties) Paulson previously occupied (the Loan);

    b.   United States District Court for the District of Oregon Case No. 3:08-CV-00982-ST (the 2008 Lawsuit);

    c.   United States District Court for the District of Oregon Case No. 3:10-CV-00048-MO (the 2009 Lawsuit); and

    d.   Three Washington County Circuit Court FED actions (the FED Cases) which were filed after the Loan was foreclosed upon and FHLF purchased the Properties.

2.     Attached hereto as Exhibit 1 are true and correct copies of the relevant Loan documents including the Loan Agreement, Secured Promissory Note, Trust Deeds.

3.     Attached hereto as Exhibit 2 is the document through which FHLF acquired all of Fairway's rights in the trust deeds and underlying notes.

4.     On January 12, 2010, FHLF filed the FED Cases in Washington County Circuit Court to evict Paulson from the Properties after FHLF purchased the Properties at a September 25, 2009 foreclosure sale via a credit bid.

5.     Attached hereto as Exhibit 3 is a true and correct copy of a letter I sent on behalf of FHLF to Amy Mitchell, the trustee of Paulson's Chapter 7 Bankruptcy Estate offering $5,000.00 in exchange for various conditions, including a settlement of all claims in the 2008 Lawsuit and the 2009 Lawsuit and a release of any and all claims Paulson had or may have had against any defendant named in the 2008 Lawsuit or the 2009 Lawsuit and their attorneys.

*// // //*

Page 2 –  DECLARATION OF CRAIG G. RUSSILLO IN SUPPORT OF DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

1374130

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

6.      Beginning on April 20, 2010, the FED Cases were tried in Washington County Circuit Court.  On April 22, 2010, Andrew R. Erwin, the judge presiding over the FED Cases, granted a directed verdict in favor of FHLF and against Paulson on all claims.

7.      Attached hereto as Exhibit 4 is a true and correct copy of the settlement agreement and release memorializing the settlement first proposed by FHLF on March 4, 2010.

8.      Attached hereto as Exhibit 5 is the memorandum in which the United States Bankruptcy Appellate Panel of the Ninth Circuit (BAP) affirmed the United States Bankruptcy Court for the District of Oregon's decision approving the settlement of the 2008 Lawsuit and 2009 Lawsuit.

9.      Attached hereto as Exhibit 6 is the Order of the United States Court of Appeals for the Ninth Circuit dismissing Paulson's appeal of the BAP decision.

10.      All of my conduct relating in any way to Paulson was related to the Loan, the 2008 Lawsuit, or the 2009 Lawsuit.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

EXECUTED this 6th day of January, 2012, at Portland, Oregon.

*/s/ Craig G. Russillo*
_____
Craig G. Russillo

Page 3 –   DECLARATION OF CRAIG G. RUSSILLO IN SUPPORT OF DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing

**DECLARATION OF CRAIG G. RUSSILLO IN SUPPORT OF DEFENDANT**

**RUSSILLO'S MOTION FOR SUMMARY JUDGMENT** on the date indicated below by:

⊠   mail with postage prepaid, deposited in the US mail at Portland, Oregon;

⊠   email

⊠   electronic filing notification.

If served by facsimile transmission, attached to this certificate is the printed confirmation of receipt of the document(s) generated by the transmitting machine.  I further certify that said copy was placed in a sealed envelope delivered as indicated above and addressed to said attorney(s) at the address(es) listed below:

Lauren Paulson          *(VIA EMAIL AND US MAIL)*
PO Box 19303
Portland, OR 97280
Plaintiff Pro Se

Justin D. Leonard          *(VIA ELECTRONIC FILING NOTIFICATION)*
Ball Janik LLP
101 SW Main St, Ste 1100
Portland, OR  97204
Of Attorneys for Defendant Amy Mitchell

DATED:  January 9, 2012.


/s/ *Paul A. C. Berg*
Paul A. C. Berg


Page 1 - **CERTIFICATE OF SERVICE**

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

## LOAN AGREEMENT

THIS LOAN AGREEMENT is made and entered into this 2? day of November, 2005, by and between Fairway Commercial Mortgage Corporation, an Oregon corporation (the "Lender") and Huber-Wheeler Crossing, LLC, an Oregon limited liability company (the "Borrower").

### RECITALS

A.    Borrower is (or will be on the Closing Date) the sole owner of the Real Property (as defined below).

B.    Borrower desires to borrow Four Hundred Thousand and 00/100ths Dollars ($400,000.00), Lender is willing to loan Borrower said sum on the terms and conditions set forth in this Agreement, and not otherwise.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the Lender and Borrower agree as follows:

### AGREEMENT

### SECTION 1. DEFINITIONS

1.1    **Definitions.**  For the purposes of this Agreement each of the following terms shall have the meaning specified with respect thereto unless a different meaning clearly appears from the context:

1.1.1    "Agreement" shall mean this Loan Agreement.

1.1.2    "Lender" shall mean Fairway Commercial Mortgage Corporation, an Oregon corporation.

1.1.3    "Bankruptcy Code" shall mean the United States Bankruptcy Code, as amended. 11 U.S.C. 101, et seq.

1.1.4    "Borrower" shall mean Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

1.1.5    "Closing Date" shall mean the date of the Note, or, in the event this transaction is subject to the Federal Truth in Lending Act, the date of expiration of the three day rescission period.

1.1.6    "Collateral" shall mean all of the Real Property, Personal Property, the vehicle described in Subsection 4.1.7 below, and other interests of Borrower which are subject to the lien of the Trust Deed.

1.1.7    "Environmental Laws" shall mean any present or future local, municipal, state or federal law, rule, order, regulation or restriction relating to environmental protection and pollution control (including but not limited to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 as amended by the Superfund Amendment and Reauthorization Act of 1986, the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, the Toxic Substances Control Act, and the Federal Insecticide, Fungicide and Rodenticide Act and any similar federal or state statutes and regulations), land use and zoning, energy and industrial facilities siting, or occupational health and safety.

1.1.8    "Event of Default" shall mean any Event of Default as provided in Subsection 6.1 hereof.

1.1.9    "Hazardous Substances" shall mean and include all hazardous and toxic substances, wastes or materials, any pollutants or contaminates (including, without limitation, petroleum products or crude oil or any fraction thereof, asbestos and raw materials which include hazardous constituents), or other similar substances, or materials which are included now or in the future under or regulated by any Environmental Law.

1.1.10    "Lease(s)" shall mean any present or future lease of all or any portion of the Premises, together with all monies due and to become due under any such Leases.

1.1.11    "Loan" shall mean the Lender's loan of funds to Borrower in an amount and on the terms and conditions set forth in this Agreement and other Loan Documents, in the terms of repayment of which are more particularly described in the Note and any extensions, renewals or modifications of the Loan.  The term "Loan" also includes but is not limited to any amounts required to be paid to Lender by Borrower under the Agreement or other Loan Documents.

1.1.12    "Loan Documents" shall mean this Agreement, the Note, the Trust Deed, and all other instruments and agreements required to be executed in connection with the Loan, and any amendments or supplements to any such documents.

1.1.13    "Loan Origination Fee" shall mean a nonrefundable Loan Fee in the amount of Fourteen Thousand and 00/100ths Dollars ($14,000.00).

1.1.14    "Note" shall mean the Secured Promissory Note executed by Borrower, dated of even date herewith, in the original principal amount of Four Hundred Thousand and 00/100ths Dollars ($400,000.00) payable to the order of Lender, together with any renewals or extensions of it and together with any amendments or supplements to it.

PAGE 1 - LOAN AGREEMENT

WDC-PLTAPP25\P44\C22C\C22\C00200\00002\BLA-PLEDLEE  LOAN  DOCUMENTS\PLCLAN  AGREEMENT.DOC
November 10, 2005  4:51 PM

EXHIBIT ___1___
PAGE ___1___ OF ___8___

1.1.15 "Permitted Encumbrances" shall mean, at any particular time, (i) liens created or contemplated by the Loan Documents, (ii) the liens, encumbrances and restrictions on the Real Property which are otherwise approved in writing by Lender.

1.1.16 "Person" means any individual, firm, corporation, trust, association, partnership, joint venture, tribunal or other entity.

1.1.17 "Policies of Insurance" shall mean the insurance to be obtained and maintained by Borrower as provided by the following Section 5.1 of this Agreement.

1.1.18 "Premises" shall mean the Real Property and all improvements and fixtures which now are or in the future are situated upon the Real Property.

1.1.19 "Real Property" shall mean the property described as:

See Exhibit "A"

together with all buildings, structures and other improvements situate or to be situated thereon, together with all easements appurtenant thereto associated with the above legal description. For the purposes of this document, Parcels I, II and IV shall be known as the "LLC Property" and Parcel III shall be known as the "Paulson Trust Property."

1.1.20 "Title Insurance Company" shall mean Transnation Title Agency of Oregon, together with such reinsurers with direct access as are requested by Lender or other title insurance company or companies as may be acceptable to Lender.

1.1.21 "Title Insurance Policy" shall mean the ALTA extended coverage lender's policy of title insurance to be issued on the Closing Date by Title Insurance Company in the amount of Four Hundred Thousand and 00/100ths Dollars ($400,000.00) insuring Lender that the LLC Trust Deed is a first lien on the LLC Property and the Paulson Trust Deed is a first lien on the Paulson Trust Property, without exception as to the condition of the title or priority, other than Permitted Encumbrances, together with such endorsements as Lender, in its sole discretion, may require and subject only to such exceptions as are acceptable to Lender.

1.1.22 The "LLC Trust Deed" shall mean the Commercial Deed of Trust and Assignment of Rents executed by the Borrower, as Grantor, naming Title Insurance Company as Trustee, and Lender as Beneficiary, encumbering the LLC Property portion of the Real Property, and given for the purpose of securing payment of the Loan and compliance with the terms of the Note, this Agreement, and other Loan Documents, together with any amendments or supplements to it.

1.1.23 The "Paulson Trust Trust Deed" shall mean the Commercial Deed of Trust and Assignment of Rents executed by Lauren Paulson, as Successor Trustee of The Lauren Paulson Trust Agreement, dated October 18, 2004, as Grantor, naming Title Insurance Company as Trustee, and Lender as Beneficiary, encumbering the Paulson Trust Property portion of the Real Property, and given for the purpose of securing payment of the Loan and compliance with the terms of the Note, this Agreement, and other Loan Documents, together with any amendments or supplements to it.

1.2    Other Definitions. Capitalized terms which are not defined above but are defined elsewhere in this Agreement shall have the same meanings given them in such provisions of this Agreement. Capitalized terms which are not defined in this Agreement and are defined in the Loan Documents shall have the same meaning given them in the respective Loan Document.

SECTION 2. LOAN

2.1    Amount, Interest and Term of Loan. The Loan shall be in the principal sum of Four Hundred Thousand and 00/100ths Dollars ($400,000.00) and shall bear interest pursuant to the terms of the Note, and the following provisions of this Agreement. The Loan shall mature on the date specified in the Note.

2.2    Application of Proceeds. The proceeds of the Loan will be applied as follows:

2.2.1 To the payment of the Loan Origination Fee described in this Agreement; and

2.2.2 To the payment directly to Lender of the underwriting fee in the amount of Nine Hundred Seventy-One and 00/100ths Dollars ($971.00); and

2.2.3 To the payment directly to Lender of the document preparation fee in the amount of Eight Hundred Ninety-Seven and 00/100ths Dollars ($897.00); and

2.2.4 To the payment directly to Lender of the flood certificate/tax service fees in the amount of Two Hundred Fifty and 00/100ths Dollars ($250.00);

2.2.5 To the payment directly to Lender of the collateral evaluation fee in the amount of Five Hundred and 00/100ths Dollars ($500.00);

EXHIBIT ___1___
PAGE ___2___ OF ___8___

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 2 of 47

2.2.6  To the payment directly to Lender of the transaction screening fee in the amount of Six Hundred and 00/100ths Dollars ($600.00);

2.2.7  To the payment directly to Lender of the loan setup fee in the amount of Two Hundred Fifty and 00/100ths Dollars ($250.00) (this fee is waived if Borrower signs up for Lender's automatic payment program at closing);

2.2.8  To the payment directly to First Quality Mortgage of the broker fee in the amount of Six Thousand and 00/100ths Dollars (36,000.00);

2.2.9  All less, a deposit in the amount of Two Thousand Five Hundred and 00/100ths Dollars ($2,500.00), already paid by the Borrower;

2.2.10  To the payment of all existing liens, agreements, encumbrances and taxes against the Real Property, in full, to the payment of all judgments against the Borrower, to the extent the same constitute a lien against the Real Property, and to the payment in full of property taxes against the Real Property, including those payable for the current tax period; and

2.2.9  To the payment directly to the Internal Revenue Service in the amount of $57,235.00 and to the Oregon Department of Revenue in the amount of $11,168.93, for certain debt of the Borrower;

2.2.10  To the payment directly to Carl Paulson and Susan Paulson in the amount of $40,000.00, as payment for subordination of a trust deed encumbering the Paulson Trust Property.

2.2.11.  The balance, if any, to be disbursed to the Borrower.

2.3  **Servicing Costs.**  In the event Lender elects to use a third party collection service to collect and process the loan payments, then Borrower shall pay any and all costs assessed by such collection service.

2.4  **Prepayment Privilege Penalty.**  The Note provides for payment of a prepayment privilege fee. The MAXIMUM PREPAYMENT PRIVILEGE FEE IS $20,000.00.

**SECTION 3. REPRESENTATIONS AND WARRANTIES BY BORROWER**

3.1  Borrower represents and warrants to Lender that:

3.1.1  **Title to Real Property.**  As of the Closing Date, Borrower has a good and marketable fee simple interest in the LLC Property portion of the Real Property, and The Lauren Paulson Trust has good and marketable fee simple interest in the Paulson Trust Property portion of the Real Property, free and clear of all defects, liens and encumbrances, except for Permitted Encumbrances, including a deed of trust in favor of the Carl Paulson and Susan Paulson, which encumbers the Paulson Trust Property, but will be subordinate to the Paulson Trust Trust Deed.

3.1.2  **No Hazardous Waste.**  None of the Real Property (i) has ever been used by previous owners and/or operators or by Borrower to generate, manufacture, refine, transport, treat, store, handle or dispose of any Hazardous Substances and Borrower does not intend to use any of the Real Property for any such purposes, and (ii) has never contained any Hazardous Substance whether used in construction or stored on the Real Property.

3.1.3  **Litigation.**  Except as disclosed in writing to Lender, there are no actions, suits or proceedings pending or, to the knowledge of Borrower, threatened against or affecting Borrower or the Real Property.

3.1.4  **Compliance by Borrower with Other Instruments.**  Borrower is not in violation of or in default with respect to any term, provision, or condition of any trust deed, mortgage, indenture, security instrument, contract, agreement or other instrument applicable to Borrower, or by which Borrower is bound, and the execution, delivery, and performance of and compliance with the Loan Documents will not result in any such violation.

3.1.5  **Commercial Use.**  The proceeds of the Loan will be used primarily for commercial or business purposes.

3.1.6  **Representations True.**  Every representation, warranty, covenant and agreement contained in every Loan Document and any other documents submitted to Lender in connection with the Loan, including, but not limited to, the financial statements of the Borrower and the rent rolls concerning the Premises, are true and accurate in all material respects.

**SECTION 4. CONDITIONS OF THE LENDER'S OBLIGATION**

4.1  Lender's obligation to make the Loan is subject to the fulfillment to Lender's satisfaction prior to the Closing Date of each and every one of the following conditions precedent:

4.1.1  **Proceedings and Documents.**  All proceedings taken by Borrower in connection with the Loan and every representation, warranty, covenant and agreement contained in every Loan Document and other documents submitted to Lender in connection with Loan shall be true and in satisfactory form and substance to Lender, and Lender shall have received from Borrower (a) executed original Loan Documents; (b) such authorizations and other documents as Lender, in its sole discretion, may require, and (c) such authenticated copies of any other documents as Lender may reasonably request.

PAGE 3 - LOAN AGREEMENT

EXHIBIT ___1___
PAGE __3_ OF _8_

Case 09-32439-rld7   Doc 100   Filed 04/27/10

4.1.2 **Legal Description.** Borrower shall have furnished to Lender for its approval a complete legal description of the Real Property.

4.1.3 **Title Insurance.** Borrower shall have delivered to Lender the Title Insurance Policy or the commitment from the Title Insurance Company to issue the Title Insurance Policy in form and substance acceptable to Lender.

4.1.4 **Insurance.** Borrower shall have in force and shall have delivered to Lender the Policy of Insurance required by Subsection 5.1.1 of this Agreement and by the Trust Deed.

4.1.5 **Payment of Fees and Expenses.** Borrower shall have paid to Lender prior to or on the Closing Date the Loan Fee and other expenses as may be due and payable.

4.1.6 **"Take Out" Investor/Financial Institution.** The "take out" Investor/Financial Institution selected by the Lender shall have reviewed and approved all Loan Documents and deposited the necessary loan proceeds with escrow.

## SECTION 5. BORROWER'S COVENANTS

5.1   Borrower covenants and agrees with Lender as follows:

5.1.1 **Insurance.** At all times, Borrower shall have in full force insurance as required by the terms of the Trust Deed.

5.1.2 **Absence of Hazardous Waste.** Borrower shall (i) use their best efforts to prevent any Person from releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping any Hazardous Substance onto the Real Property and (ii) immediately notify Lender in writing should Borrower become aware of any Hazardous Substance or other environmental problem or liability with respect to the Premises.

5.1.3 **Information.** Borrower shall (i) furnish to Lender promptly such data and information, financial or otherwise, concerning Borrower as from time to time may reasonably be requested by Lender; and (ii) promptly notify Lender of any condition or event which constitutes an Event of Default under any of the Loan Documents or any other agreement or of any materially adverse change in the financial condition of such Borrower.

5.1.4 **Litigation.** Borrower shall give Lender written notice within ten (10) days after Borrower first receives notice of all complaints and charges filed by any Governmental Authority or any other Person affecting the Premises or Borrower which may impair the security of Lender or adversely affect any of Lender's rights under this Agreement or adversely affects Borrower's ability to repay the Loan.

5.1.5 **Indemnification of Lender.** Borrower shall indemnify and hold harmless Lender and its officers, directors, employees and agents from any and all claims, liability, loss, damage or expense (including but not limited to attorney fees and disbursements incurred before, at trial, on appeal or in the event of threatened litigation) asserted against Lender by any Person or governmental authority arising out of or in connection with sale or use of the Premises.

5.1.6 **Expenses.** Borrower shall pay, pursuant to the Loan Documents, all premiums for the Title Insurance Policy, and recording and reconveyance fees, escrow fees and any and all other closing costs of any nature associated with the Loan.

5.1.7 **Loan Origination Fee; Other Fees.** On the Closing Date, Borrower shall pay to Lender the Loan Origination Fee, as well as the other fees listed in Subsection 2.1.

## SECTION 6. DEFAULT; REMEDIES ON DEFAULT

6.1   **Events of Default.** Any of the following events are an Event of Default:

6.1.1 If Borrower shall fail to pay when due any payments required to be made under the Note, this Agreement, the Trust Deed or other Loan Documents; or

6.1.2 If Borrower shall breach the observance or performance of any term, warranty, covenant, condition or provision contained in any of the Loan Documents, or in any other agreement or instrument executed by Borrower in connection with the Premises, and such default shall not have been remedied within any applicable cure period; or

6.1.3 **Insolvency of Borrower;** the commencement by Borrower of a voluntary case under the Bankruptcy Code or under any other federal or state law relating to insolvency or debtor's relief; the filing of an involuntary petition under the Bankruptcy Code or under any other applicable federal or state law relating to insolvency or debtor's relief which has not been dismissed by Borrower within thirty (30) days after such filing; the appointment or the consent by Borrower to the appointment of a receiver, trustee, custodian of Borrower or of any of Borrower's Real Property which Borrower has not caused to be withdrawn within thirty (30) days after such appointment; an assignment for the benefit of creditors by Borrower; the making of suffering by Borrower of a fraudulent transfer under applicable federal or state law; concealment by Borrower of any of its property in fraud of creditors; or

PAGE 4 - LOAN AGREEMENT                                    WPC:\WPDATA\RJC\62020\562020-XHIBIT LOAN DOCUMENTS\LOAN AGREEMENT.DOC
                                                           (October 17, 2005 [2:59 PM])

EXHIBIT ___1___
PAGE __4__ OF _8_

6.1.4 Except as permitted by the Trust Deed, if there is a sale, transfer, hypothecation, assignment or conveyance of the Premises, or any portion thereof or interest therein by Borrower without Lender's prior written consent; or

6.1.5 If any representation or warranty made by or on behalf of Borrower in connection with the Loan shall prove to have been false or incorrect in any material respect on the date as of which made; or

6.1.6 An Event of Default under any of the Loan Documents; or

6.1.7 If Borrower or any guarantor of the obligations of Borrower shall breach the observance or performance of any term, warranty, covenant, condition or provision of any and all other agreements, unrelated to the Loan Documents, under which Borrower may be obligated to Lender or any successor to Lender.

6.2    **Borrower.** The Events of Default in this Section shall apply and refer to Borrower, and to each of the individuals which are collectively referred to or comprise "Borrower."

6.3    **Lender's Remedies on Default.** Upon the occurrence of any Event of Default, in addition to exercising any remedy available to Lender at law, in equity or in any other Loan Documents, and without impairing any of Lender's right, powers or privilege under this Agreement or other Loan Documents, Lender may do any or all of the following:

6.3.1 Accelerate maturity of the Note and demand payment of the principal sums due thereunder, with interest, advances, and costs, and in default of said payment or any part thereof, to bring action on the Note and/or foreclose the Trust Deed; or

6.3.2 Institute appropriate proceedings to specifically enforce performance of this Agreement.

**SECTION 7. MISCELLANEOUS PROVISIONS**

7.1    **Attorney Fees.** In the event suit or action is instituted to enforce or interpret any of the terms of this Agreement, including, but not limited to, any action or participation by Borrower in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees, witness fees (expert and otherwise), deposition costs, copying charges and other expenses. Whether or not any court action is involved, all reasonable expenses, including, but not limited to, the costs of searching records, obtaining title reports, surveyor reports, title insurance, trustee fees, and attorney fees, incurred by Lender that are necessary or advisable at any time in Lender's opinion for the protection of its interest or enforcement of its rights shall be payable on Lender's demand and shall bear interest from the date or expenditure until paid at the default interest rate provided in the Note or other Loan Documents or, if the Note or other Loan Documents contain no default rate, then at the interest rate(s) then borne by the Loan, and shall be secured by the Collateral.

7.2    **Timeliness; Term of Agreement; Survival; of Representations and Warranties.** Time is of the essence of this Agreement. This Agreement shall continue in full force and effect until the Loan shall have been paid in full and all obligations of Borrower under the Loan Documents shall have been fully observed and performed. All representations and warranties contained herein or made in writing by or on behalf of Borrower in connection with the Loan shall survive the execution and delivery of the Loan Documents and any investigation at any time made by, through or on behalf of Lender. All statements contained in any certificate, other instrument or Loan Document constitute representations and warranties of Borrower under this Agreement.

7.3    **Amendments to Agreement; Waivers.** Neither this Agreement nor any provision hereof may be amended, waived, discharged or terminated, except by an instrument in writing, signed by the parties to this Agreement.

7.4    **Remedies, Cumulative.** All right, powers and remedies herein given to Lender are cumulative and not alternative and are in addition to all statutes or rules of law.

7.5    **No Waiver.** No waiver by Lender of any breach of this Agreement nor any forbearance or delay on the part of Lender in exercising any power or right under any of the Loan Documents shall be deemed to be or constitute a waiver or any prior, other, existing or subsequent breach of this Agreement or other Loan Documents or of any power or right granted to Lender.

7.6    **No Agency Relationship.** The execution of this Agreement and the exercise of any rights hereunder is not intended and shall not be construed to be a partnership or joint venture between Lender and any of the parties hereto. Lender is not the agent or representative of Borrower. This Agreement does not create a contractual relationship with and shall not be construed to make Lender liable to any contractors, subcontractors, materialmen, laborers or others, except as otherwise expressly provided by law.

7.7    **Consents of Lender.** In all events where the consent of Lender is required under the terms of this Agreement, Lender shall grant or refuse such consent within a reasonable period of time following the receipt of such request. Any such consent may be granted or refused by Lender in Lender's sole and absolute discretion.

7.8    **Notice.** All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

PAGE 5 - LOAN AGREEMENT

EXHIBIT __I__
PAGE __5__ OF __8__

Case 09-32439-rld7    Doc 100    Filed 04/27/10

| To the Borrower | : | Huber-Wheeler Crossing, LLC, an Oregon limited liability company<br>3980 SW 170th Avenue<br>Aloha, OR 97007 |
| To the Lender | : | Fairway Commercial Mortgage Corporation<br>an Oregon corporation<br>6650 SW Redwood Lane, Suite 290<br>Portland, OR 97224 |

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

7.9    **Entire Agreement.** The Loan Documents constitute the entire agreement between the parties relating to the Loan and supersede all other prior or concurrent oral or written letters, agreements or understandings relating to the Loan.

7.10    **Assignment; Parties in Interest.** Lender shall have the right to assign its interest in this Agreement to any subsequent holder or holders of the Note. Borrower shall not assign this Agreement without the prior written consent of Lender; and any such assignment shall not release Borrower from liability under this Agreement or any other Loan Document. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns, and, in particular, shall inure to the benefit of and be enforceable by the holder or holders from time to time of the Note or any part thereof or interest therein.

7.11    **Joint and Several Liability.** If Borrower consists of more than one person or entity, the obligations imposed upon Borrower under this Agreement shall be joint and several.

7.12    **Governing Law; Conflicts.** The laws of the State of Oregon shall govern in the interpretation, enforcement and all other aspects of this Agreement. In the event of any conflict between this Agreement and the terms of any other Loan Documents, the terms of the other Loan Documents shall be controlling.

7.13    **Headings of Sections.** The headings of sections and subsections in this Agreement are inserted only for convenience and reference and shall in no way define, limit or describe the scope or intent of any provision of this Agreement.

7.14    **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument, and, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

7.15    **Severability.** Unenforceability for any reason of any provision of this Agreement shall not limit or impair the operation or validity of any other provision of this Agreement.

UNDER OREGON LAW, MANY AGREEMENTS PROMISES AND COMMITMENTS MADE BY LENDER AFTER NOVEMBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.

NOTICE TO BORROWER: DO NOT SIGN THIS LOAN AGREEMENT BEFORE YOU READ IT. THIS LOAN AGREEMENT PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THIS AGREEMENT AND THIS PROMISSORY NOTE.

EXHIBIT    1
PAGE 6 OF 8

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 6 of 47

Case 09-32439-rld7    Doc 100    Filed 04/27/10

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

LENDER:                                  BORROWER:

FAIRWAY COMMERCIAL MORTGAGE              HUBER-WHEELER CROSSING, LLC
CORPORATION

By: _____             By: _____
     Robert S. Seidenwurm, Vice President      Lauren Paulson, Managing Member

PAGE 7 - LOAN AGREEMENT

EXHIBIT ___1___
PAGE _7_ OF _8_

Case 11-03309-rld   Doc 22   Filed 01/09/12

Case 09-32439-rld7   Doc 100   Filed 04/27/10

Order No. 23y0024421w

**EXHIBIT "A"**
**Legal Description**

PARCEL I:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 186.6 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 80 feet to a point
on the East right-of-way of 170th Avenue; thence South 0° 16' East,
along the East right-of-way, a distance of 133.3 feet to the Southeast
corner of said lot; thence South 81° 37' East along the South line of
said lot, a distance of 80 feet to a point; thence North 0° 16' East
to the South line of the Thomas tract and the point of beginning.

PARCEL II:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 70 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 116.6 feet to a
point; thence South 0° 16' East, a distance of 108 feet, more or less,
to a point on the South line of said lot that is North 81° 37' West,
186.6 feet from the Southeast corner of said lot; thence South 81° 37'
East along the South line of said lot, a distance of 116.6 feet;
thence North 0° 16' East, 108 feet, more or less, to the point of
beginning.

PARCEL III:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, in the County of Washington and State
of Oregon; and running thence South 0° 08' East along the East line of
said Lot 264, a distance of 119.5 feet; thence North 81° 37' West,
parallel with the Northerly line of said Lot 264, a distance of 293.9
feet to a point on the West line thereof; thence North 0° 16' West,
119.5 feet along the West line of said lot, to the Northwest corner of
said Lot 264; thence South 81° 37' East, 292.2 feet along the North
line of said lot to the place of beginning.

PARCEL IV:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded subdivision in the
County of Washington and State of Oregon; and running thence South 0°
08' East along the East line of said Lot 264, a distance of 119.5 feet
to the Southeast portion of that tract conveyed to Alan G. Thomas by
 (Continued)

EXHIBIT   I
PAGE   8   OF   8

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 8 of 47

Case 11-03309-rld   Doc 22   Filed 01/09/12

Case 09-32439-rld7   Doc 100   Filed 04/27/10

SECURED PROMISSORY NOTE

$400,000.00                                                                November 2_, 2005

SECTION 1. DEBT AND PAYMENT TERMS.

1.1     FOR VALUE RECEIVED, Huber-Wheeler Crossing, LLC, an Oregon limited liability company (the "Borrower") promises to pay to the order of Fairway Commercial Mortgage Corporation ("Holder") at the following address: 6650 SW Redwood Lane, Suite 290, Portland, OR 97224, or at such other place as the Holder hereof may from time to time designate in writing:

- The Principal Sum of:   Four Hundred Thousand and 00/100ths Dollars ($400,000.00) in lawful money of the United States.
- Interest rate:   12.5% per annum from the date of funding of this Note, until paid.
- Payments:   Minimum monthly installments of not less than Four Thousand Two Hundred Sixty-Nine and 03/100ths Dollars ($4,269.03) per month shall be made (the "Minimum Monthly Payment"), commencing on January 1, 2006, and continuing on the first (1st) day of each and every month thereafter, until December 1, 2010, at which time the entire unpaid principal balance and any accrued interest shall come due and payable in full.
- Prepaid Interest:   Paid through November 30, 2005
- Prepayment Penalty:   5% of principal repaid for 2 years (See Section 1.2 below).

Unpaid interest will be added to principal monthly. All payments shall first be applied to collection costs as provided herein, then to any late payment penalties, then to accrued and unpaid interest, if any, and the balance to principal.

The Holder of this Note has the right to require, by giving Borrower 15 days notice, at any time and in its sole discretion, that monthly payments be made by wire transfer or cashier's check. Any prior or subsequent acceptance of monthly payments in any other form will not constitute the Holder's right to require monthly payments to be paid in the manner directed by the Holder.

The final payment due hereunder shall be made via wire transfer, unless prior written consent is obtained from the Holder to make the payment in some other mutually agreed manner. The payment shall be deemed paid on the date of receipt and availability of such funds to the Holder hereof. Borrower shall pay all fees and costs, whether incurred by the Holder or Borrower, associated with such wire transfer. Such wire transfer fees and costs are in addition to, and not in lieu of, all fees and costs payable under the terms of this Note, as well as additional loan documents entered into in connection with this Note.

1.2 Prepayment Privilege Fee.

1.2.1 At any time during the term of this Note and prior to a date which is the two (2) year anniversary of the date of funding of this Note (the "Funding Date"), Borrower shall have the right to prepay this Note, but only on full satisfaction of all of the following terms and conditions:

(a) Delivery of ten (10) day's prior written notice to the Holder hereof of the intention to make the prepayment; and

(b) Payment of any and all unpaid and delinquent principal, accrued interest and any other charges of any nature due and payable under this Note; and

(c) From the Funding Date until the two (2) year anniversary of the Funding Date, if any principal amount is repaid, then Borrower shall be obligated to pay an additional amount equal to five percent (5%) of the additional principal balance repaid (the "Prepayment Privilege Fee").

1.2.2 Borrower shall be entitled to prepay all or any part of the principal due under this Note without any Prepayment Privilege Fee if such prepayment occurs at any time after a date which is beyond the two (2) year anniversary of the Funding Date.

1.2.3 The holder hereof shall not be required to accept any prepayment from Borrower unless such payment is accompanied by the applicable Prepayment Privilege Fee.

1.2.4 If there is an Event of Default under this Note prior to the two (2) year anniversary of the Funding Date, and Borrower fails to cure the Event of Default before the foreclosure sale, then the holder hereof shall be entitled to collect the Prepayment Privilege Fee as if Borrower had voluntarily elected to prepay this Note within said time period as of the date of the Event of Default. Such Prepayment Privilege Fee shall, at the option of the holder hereof, either be (a) payable on demand or (b) added to the principal balance of this Note.

1.2.5 The MAXIMUM PREPAYMENT PRIVILEGE FEE is $20,000.00.

SECTION 2. ADDITIONAL PARTIES AND TERMS.

The Holder hereof may, without prior notice to Borrower, cause additional parties to be added hereto, or

PAGE 1 - SECURED PROMISSORY NOTE

EXHIBIT __2__
PAGE __1__ OF __4__

release any party hereto, extend or renew this Note, extend the time for making any payment provided for herein, or accept any installment in advance, without affecting the liability of Borrower.

SECTION 3. EVENTS OF DEFAULT; CROSS-DEFAULT.

3.1    The following shall constitute Events of Default:

3.1.1    Nonpayment. Failure of Borrower to make any payment provided herein when due and/or the failure by Borrower to make payments related to the tax impound account, as provided in a Loan Agreement executed herewith.

3.1.2    Other Obligations. Failure of Borrower to make any payment or perform any obligation required by any other instrument evidencing or securing any indebtedness or obligation of Borrower, or any of them, to the Holder of this Note, including, but not limited to, default under any Deed of Trust given to secure payment of this Note, or default under any other instrument or agreement made by Borrower in connection with the indebtedness evidenced by this Note, or breach of any term or condition of any Deed of Trust.

SECTION 4. TIME IS OF THE ESSENCE.

TIME IS OF THE ESSENCE OF THIS NOTE. Any payment designated to be made to the Holder hereof under this Note or under any other agreement, designated in Subsection 3.1.2 herein, shall not be deemed to have been timely made unless actually received by the Holder hereof on or before 11:59 p.m. of the stated due date.

SECTION 5. REMEDIES IN CASE OF DEFAULT.

5.1    If an Event of Default shall occur, the Holder of this Note may exercise any of the following rights and remedies, in addition to any other remedies which may be available at law, in equity, or otherwise:

5.1.1    Acceleration and Interest Default Rate. The Holder of this Note may declare the entire unpaid principal and interest immediately due and collectible. Thereafter the principal balance and any other charges payable by Borrower shall bear interest at a rate of eight percent (8%) higher than the rate provided in Section 1 above (this adjusted rate shall be referred to as the "Default Rate"), but in no event to exceed the maximum rate permitted by law, running from the date of default until paid.

SECTION 6. SECURITY; NO TRANSFER WITHOUT CONSENT.

6.1    This obligation is secured by, among other instruments, two Commercial Deeds of Trust and Assignment of Rents, of even date herewith, encumbering certain real property and the improvements thereon located at Parcel R0149645, Aloha, OR, 16925 SW Blanton Street, Beaverton, OR 97007, 16919 SW Blanton Street, Beaverton, OR 97007, and 3980 SW 170th Avenue, Aloha, OR 97007 (collectively, the "Property").

6.2    A SALE, TRANSFER, ALIENATION OR INVOLUNTARY ENCUMBRANCE OF ANY OF THE PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF THE HOLDER HEREOF, WHICH CONSENT MAY BE GIVEN OR WITHHELD IN THE SOLE AND ABSOLUTE DISCRETION OF THE HOLDER HEREOF, SHALL BE A DEFAULT HEREUNDER AND UPON SUCH DEFAULT, ALL PRINCIPAL AND INTEREST, AT THE OPTION OF THE HOLDER OF THIS NOTE, SHALL BECOME IMMEDIATELY DUE AND PAYABLE.

SECTION 7. ATTORNEY FEES AND COSTS.

In the event of a default under this Note, Borrower agrees to pay all costs and expenses which may be incurred by the Holder with respect to such default, including without limitation all costs and expenses of investigating the same and circumstances and events surrounding or relating thereto, fees charged by and expenses of professional consultants and advisers, including attorneys and accountants, costs of title searches and premiums for title reports and all other costs and expenses. Attorney fees shall include costs and expenses of legal advice with respect to the event of default, rights and remedies, negotiations with Borrower and any other parties in interest, such as guarantors, other encumbrances, receivers, trustees, and the like, and attorney fees and expenses with respect to any action which the Holder may commence or in which the Holder might appear, whether for the purpose of protecting or preserving the Holder's rights or to realize upon the lien of any security interest upon real or personal property, or both, by foreclosure or otherwise, including, but not limited to, any action or participation as a debtor by Borrower in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, and all attorney fees and expenses in any review of or appeal from any such action. All costs, fees, or expenses herein referred to shall be reasonable. Such fees and costs may, at the option of the Holder, be added to the principal balance of this Note.

SECTION 8. LATE PAYMENT CHARGES.

8.1    If Borrower fails to pay any monthly installment provided herein within five (5) calendar days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday or legal holiday, the holder may assess a late charge equal to the greater of $100.00 or five percent (5%) of the installment not paid when due. Said late charge shall be paid on demand, and the holder hereof reserves the right (a) to refuse any late payment unless accompanied by such late charge, or (b) to add such late charge to the principal balance of the Note. The acceptance of a late charge shall not constitute a waiver of any remedies available to the holder of this Note arising from an event of default.

PAGE 2 - SECURED PROMISSORY NOTE

EXHIBIT _2_
PAGE _2_ OF _4_

Case 09-32439-rld7   Doc 100   Filed 04/27/10

8.2     If Borrower fails to pay any final balloon payment within five (5) calendar days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday or legal holiday, the holder may assess a late charge equal to the greater of $100.00 or five percent (5%) of the final balloon payment not paid when due. Said late charge shall be paid on demand, and the holder hereof reserves the right (a) to refuse any late payment unless accompanied by such late charge, or (b) to add such late charge to the principal balance of the Note. The acceptance of a late charge shall not constitute a waiver of any remedies available to the holder of this Note arising from an event of default.

## SECTION 9. WAIVER OF PRESENTMENT FOR PAYMENT, NOTICE OF DISHONOR, PROTEST AND NOTICE OF PROTEST; LOAN AGREEMENT.

9.1     All persons liable either now or hereafter for the payment of this Note severally waive presentment, demand for payment and notice of nonpayment thereof.

9.2     All parties liable under this Note hereby consent to, and the Holder hereof is hereby expressly authorized to make, without notice, any and all renewals, extensions, modifications, or waivers of the time for or the terms of payment of any sum or sums due hereunder, or under any documents or instruments relating to or securing this Note, or of the performance of any covenants, conditions or agreements hereof or thereof or the taking or release of collateral securing this Note. Any such action taken by the Holder of this Note shall not discharge the liability of any party to this Note.

9.3     This Note is issued under and subject to the terms and conditions of that certain Loan Agreement dated of even date herewith, between Borrower, as the Borrower, and Fairway Commercial Mortgage Corporation as the Lender. Capitalized terms which are not defined in this Note but are defined in the Loan Agreement have the meaning given to them in the Loan Agreement.

9.4     The proceeds of this Note are being used solely for business purposes and none of the loan proceeds evidenced by this Note will be expended for a personal, private or consumer use.

9.5     Borrower, or its agent, may request a payoff of this Promissory Note by sending written communication to the Holder of this Note. The Holder of this Note shall be entitle to charge a demand fee in an amount not to exceed $100.00 each, which shall be due and owing whether or not this Note is paid in full with respect to that payoff request.

## SECTION 10.     NONWAIVER.

Failure to exercise any option to declare a default or accelerate the balance due hereon shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Modification of the terms of payment of this Note made at the request of any person liable thereof shall not impair such person's liability or the liability of any other person now or hereafter liable for the payment hereof.

## SECTION 11.     NOTICE.

All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

To Borrower    :    Huber-Wheeler Crossing, LLC, an Oregon limited liability company
3980 SW 170th Avenue
Aloha, OR 97007

To the Holder    :    Fairway Commercial Mortgage Corporation
an Oregon corporation
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's receipt as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

## SECTION 12.     GOVERNING LAW.

PAGE 3 - SECURED PROMISSORY NOTE

EXHIBIT   2
PAGE   3   OF   4

Case 09-32439-rld7    Doc 100    Filed 04/27/10

This Note shall at all time be governed by the laws of the State of Oregon.  Borrower agree that this Note may be enforced in the courts of the State of Oregon and Borrower hereby consent to the jurisdiction thereof.

SECTION 13.        ENFORCEABILITY.

It is the intention of Borrower and the Holder to comply with the laws of the State of Oregon; accordingly, it is agreed that notwithstanding any provision to the contrary in this Note, no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by law.  If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for, in this Note, then in such event (a) the provisions of this section shall govern and control; (b) neither Borrower nor Borrower's successors or assigns or any other party liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount permitted by law; (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal amount hereof or refunded to Borrower; and (d) the effective rate of interest shall be automatically subject to reduction to the maximum lawful interest rate allowed under the usury laws of the State of Oregon.

SECTION 14.        SEVERABILITY.

If any provision of this Note is construed to be invalid, illegal, unenforceable or against public policy, the remaining provisions of this Note shall not be affected thereby and shall be enforceable without respect thereto.

SECTION 15.        NEGOTIATION.

This Note is freely transferable and assignable by the Holder hereof.  In the event this Note is negotiated, endorsed or assigned to any party, such party shall not be subject to (and Borrower hereby expressly waives as against such party) any defenses, setoffs, counterclaims, or other objections to the payment of this Note.

EXECUTED the day and year first above written.

Huber-Wheeler Crossing, LLC

By: _____
        Lauren Paulson, Managing Member


STATE OF HAWAII                    )
                                                        ) ss.
County of    Kavai                    )


SUBSCRIBED AND SWORN to before me this 28th day November, 2005, by Lauren Paulson, as Managing Member of Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

                                            _____
L.S.                                    Notary Public for Hawaii
                                            My Commission Expires:    02/18/2008


PAGE 4 - SECURED PROMISSORY NOTE

EXHIBIT    2
PAGE    4    OF    4





WHEN RECORDED, RETURN TO:

Fairway Commercial Mortgage Corporation
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

## COMMERCIAL DEED OF TRUST

### AND

### ASSIGNMENT OF RENTS

### (SECURITY AGREEMENT AND FIXTURE FILING)

THIS COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS (the "Trust Deed") is made this 28 day of November, 2005, among the Grantor, Huber-Wheeler Crossing, LLC, an Oregon limited liability company, whose address is 3980 SW 170th Avenue, Aloha, OR 97007 (the "Grantor"); Transnation Title Agency of Oregon, whose address is 5035 NE Elam Young Pkwy #500, Hillsboro, OR 97124 (the "Trustee"); and the Beneficiary, Fairway Commercial Mortgage Corporation, an Oregon corporation, whose address is 6650 SW Redwood Lane, Suite 290, Portland, OR 97224 (the "Beneficiary" or "Lender").

### I.   GRANTING CLAUSE

A.   Grantor, in consideration of the indebtedness recited in this Trust Deed and the trust created by this Trust Deed, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the County of Washington, State of Oregon, more particularly described as:

See Exhibit "A"

together with all buildings, improvements and tenements now or in the future erected on the property, and all previously or in the future vacated alleys and streets abutting the property, and all easements, rights, appurtenances, leases, including, without limitation, the leases, permits or agreements now or hereafter existing, however evidenced, covering all or any portion of the property, together with all rents or monies due or to become due thereunder; and together with all now existing or in the future arising or acquired; (a) revenues, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property; (b) fixtures, machinery, equipment located or to be located on the property, including, without limitation, personal property required for the maintenance and operation of the property (including, but not limited to, engines, boilers, incinerators, building materials, and all appliances, escalators and elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, communications apparatus, plumbing, plumbing fixtures, water heaters, paneling, attached floor and wall coverings); (c) timber to be cut; and (d) estate, interest, claims or demands, and other general intangibles now or in the future relating to the property, including, but not limited to, all insurance which the Grantor now has or may in the future acquire in and to the property, and all present or future refunds or rebates of taxes or assessments on the property and all compensation, awards, damages or rights of action arising out of or relating to any taking of the property described above. All of the foregoing shall be deemed to be and remain a part of the property covered by this Trust Deed. The specific enumerations herein shall not exclude the general. All of the property described above is referred to in this Trust Deed as the "Property."

B.   This Trust Deed is given as security for the following (collectively the "Indebtedness"): (a) the payment of the indebtedness evidenced by a promissory note in favor of Beneficiary dated of even date herewith and executed by Huber-Wheeler

PAGE 1 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000342**



Crossing, LLC, an Oregon limited liability company (the "Note"), in the principal sum of Four Hundred Thousand and 00/100ths Dollars ($400,000.00), with interest thereon, the balance of which, if not sooner paid, is due and payable on or before December 1, 2010, and all amendments, renewals, extensions and modifications of the Note; (b) the performance of the covenants and agreements of Borrower contained in the Loan Agreement, if any, between Beneficiary and Borrower dated of even date herewith, and any amendments (collectively the "Loan Agreement"); (c) the payment of all other sums, with interest thereon, advanced in accordance with this Trust Deed to protect the security of this Trust Deed; (d) the performance of the covenants and agreements of Borrower contained in this Trust Deed; and (e) payment and performance of Borrower's obligations now or in the future arising under any and all present or future indebtedness of Borrower to Beneficiary. The terms of the Note and Loan Agreement secured by this Trust Deed may provide that the interest rate or payment terms or balance due may be indexed, adjusted, renewed, or renegotiated from time to time. Capitalized terms which are not defined in this Trust Deed and are defined in the Loan Agreement shall have the meaning given them in the Loan Agreement. .

## II.    TERMS AND CONDITIONS

Borrower and Beneficiary covenant and agree as follows:

**SECTION 1. COVENANT OF TITLE.** Borrower covenants that Borrower is lawfully seized of the estate conveyed by this Trust Deed, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions acceptable to Beneficiary and listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiary's interest in the Property.

**SECTION 2. PROMISE TO PAY.** Borrower shall pay promptly when due the principal of and interest on the Indebtedness and any other charges provided in the Note, this Trust Deed, the Loan Agreement and other documents executed in connection with the Indebtedness (collectively the "Loan Documents").

**SECTION 3. LATE PAYMENT CHARGES.** Beneficiary may charge a late charge on any scheduled payment which Beneficiary fails to receive within five (5) days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday, or legal holiday. The amount of the late charge shall be as specified in the Note or Loan Agreement or, if the Note or Loan Agreement specifies no late charge, then five percent (5%) of the amount of the payment of principal and interest not paid when due. Such late charge shall in no event exceed the maximum charge, if any, specified under applicable law. Collection of a late charge shall not constitute a waiver of or prejudice the Beneficiary's right to pursue any other right or remedy available on account of the delinquency, including, without limitation, charging the default rate of interest under the Note.

**SECTION 4. APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, or unless specified to the contrary in the other Loan Documents, each complete installment payment received by Beneficiary under the Note or this Trust Deed or other Loan Documents shall be applied by Beneficiary first to payment of reserves, if any, due under Sections 5 and 6 of this Trust Deed, next to interest due and payable on the Indebtedness, then to principal due and payable on the Indebtedness and then to any other charges due and payable pursuant to the terms of the Note, this Trust Deed, and any other Loan Documents. Upon a breach of any covenant or agreement of Borrower in the Note, this Trust Deed or other Loan Document, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any payments received by Beneficiary under the Note, this Trust Deed or under the other Loan Documents. Beneficiary, at Beneficiary's option, may reject any partial payment. Any partial payment which Beneficiary accepts may be held in a non-interest bearing account until Beneficiary receives funds sufficient to equal a complete installment payment, or, may be applied to the Indebtedness in any amount and in any order as Beneficiary may determine in Beneficiary's sole discretion.

PAGE 2 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000343**

  

## SECTION 5. TAXES AND LIENS; RESERVES.

5.1    Payment. Borrower shall pay when due all taxes and assessments levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Borrower shall maintain the Property free of any liens having priority over or equal to the interest of Beneficiary under this Trust Deed, except for the lien of taxes and assessments not due. Without Beneficiary's prior written consent, Borrower shall not allow any lien inferior to this Trust Deed to be perfected against the Property.

5.2    Evidence of Payment. On Beneficiary's demand, Borrower promptly shall furnish evidence acceptable to Beneficiary of payment of taxes and assessments and shall authorize the appropriate county official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property.

5.3    Reserves. Upon any Event of Default or any event which with the passage of time or notice would become an event of default under this Trust Deed or any other Loan Documents, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of taxes and assessments. The reserves shall be created by monthly payments of a sum estimated by Beneficiary to be sufficient to produce, at least thirty (30) days before the taxes and assessments are due, amounts at least equal to the taxes and assessments to be paid. If Beneficiary determines that the reserve funds are insufficient at any time, Borrower shall promptly pay any deficiency to Beneficiary on its demand. The reserve funds shall be held by Beneficiary in a deposit account, and the funds may be commingled with other funds held by Beneficiary. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the funds, Beneficiary shall not be required to pay Borrower any interest on the funds. Beneficiary shall apply the reserve funds to pay the taxes and assessments so long as Borrower is not in breach of any covenant or agreement of Borrower in this Trust Deed, but only to the extent that funds are available to do so. Beneficiary does not hold the funds in trust for Borrower and is not the agent of Borrower for payment of taxes and assessments required to be paid by Borrower. Upon any Event of Default under this Trust Deed or any other Loan Documents, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any reserve funds held by Beneficiary (i) to pay taxes and assessments which are due or (ii) as a credit against the Indebtedness.

## SECTION 6. HAZARD INSURANCE; RESERVES.

6.1    Policies. Borrower shall keep any improvements now existing or in the future erected on the Property insured by carriers who are at all times satisfactory to Beneficiary against loss by fire, all hazards included within the term "extended coverage," flood, casualties, liabilities and contingencies as Beneficiary shall require from time to time or at any time during the term of this Trust Deed and in such amounts, on a one hundred percent (100%) replacement cost basis without coinsurance clause, and for such periods as Beneficiary shall require. All insurance policies and renewals thereof shall be in a form and substance acceptable to Beneficiary and shall include a loss payable endorsement in favor of and in form and substance acceptable to Beneficiary and a provision that coverage will not be canceled, altered or diminished without a minimum of ten (10) days' prior written notice to Beneficiary. Beneficiary shall have the right to hold the policies, and Borrower promptly shall furnish to Beneficiary all renewal notices. waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s)

PAGE 3 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000344

 

borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Such advances shall be secured by the Property.

6.1.1   Without waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s) borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Beneficiary may also charge a fee not to exceed $100.00 per month to monitor the insurance placed on the property.  Such advances shall be secured by the Property.

6.2    Payment; Reserves. All premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the carrier, or in such other manner as Beneficiary may designate in writing. Prior to the expiration date of any policy, Borrower shall deliver to Beneficiary a renewal policy in form and substance satisfactory to Beneficiary and receipts for paid premiums. At Beneficiary's option, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of insurance premiums. The reserves shall be created and held in the same manner as provided in Subsection 5.3 for reserves for payment of taxes and assessments.

6.3    Loss. In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to the Beneficiary. Beneficiary may give written notice to the insurance carrier if Borrower fails to do so within twenty (20) days of the casualty. Borrower hereby authorizes and empowers Beneficiary as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Beneficiary's expenses incurred in the collection of such proceeds; provided, however, that nothing contained in this Section 6 shall require Beneficiary to incur any expense or take any action hereunder.

6.4    Application of Proceeds. Borrower authorizes Beneficiary, at Beneficiary's option, (a) to apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due, or (b) after deducting Beneficiary's costs and expenses described above, to hold the balance of such proceeds to be disbursed to Borrower for the cost of reconstruction or repair of the Property. If the insurance proceeds are held by Beneficiary to disburse to Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Beneficiary may approve in writing. Beneficiary may require that Borrower deposit with Beneficiary any amount in excess of the insurance proceeds necessary to complete restoration, which amounts shall be disbursed prior to disbursement of any insurance proceeds. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the proceeds, Beneficiary shall not be required to pay Borrower any interest on the proceeds or any other sum which Beneficiary may require Borrower to deposit with Beneficiary pursuant to this Section. If the insurance proceeds are applied to the payment of the sums secured by this Trust Deed, any such application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due dates of any payments required under Section 2 or change the amounts of any such payments. If the Property is sold to Beneficiary pursuant to Section 17 of this Trust Deed or if Beneficiary otherwise acquires title to the Property, then in addition to the lien and security interests otherwise granted to Beneficiary under this Trust Deed, Beneficiary shall have all of the right, title and interest in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

PAGE 4 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000345



## SECTION 7. PRESERVATION AND MAINTENANCE OF PROPERTY: ENVIRONMENTAL LAWS: INDEMNIFICATION.

7.1     Preservation and Maintenance.

(a)     Shall not commit waste or permit impairment or deterioration of the Property;

(b)     Shall not abandon the Property;

(c)     Unless Beneficiary directs Borrower in writing to the contrary, shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing, in the event of any damage, injury or loss to the Property, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair;

(d)     Shall keep the Property in good condition and repair;

(e)     Shall operate and maintain the Property in compliance with all applicable laws and regulations; and

(f)     Shall give notice in writing to Beneficiary of and, unless otherwise directed in writing by Beneficiary, appear in and defend any action or proceeding purporting to affect the Property (including, without limitation, matters pertaining to land use, zoning and Environmental Laws, Hazardous Substances and Disabilities Laws, as defined below), the security of this Trust Deed or the rights or powers of Beneficiary. "Disabilities Laws" shall mean all applicable federal, state and local laws and regulations related to usability of and accessibility to the property by people with disabilities. The term "Disabilities Laws" includes, but is not limited to, the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990, all amendments thereto, and all regulations adopted thereunder. Neither Borrower nor any tenant nor other person, without the written approval of Beneficiary, shall remove, demolish or alter any improvement now existing or in the future erected on the Property or any fixtures, equipment, machinery or appliance in or on the Property and in which Beneficiary has any interest by virtue of this Trust Deed, any security agreement, or any other Loan Document, except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind, which shall thereupon become subject to the lien of this Trust Deed.

7.2     Environmental Laws. In this Trust Deed, "Environmental Laws" means any and all state, federal and local statutes, regulations, and ordinances relating to the protection of human health or the environment. "Hazardous Substances" is used in its very broadest sense and refers to materials that, because of their quantity, concentration of physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. "Hazardous Substances" shall include, without limitation, petroleum products or crude oil or any fraction thereof and any and all hazardous or toxic substances, materials or waste as defined by or listed under the Resource Conservation and Recovery Act, the Toxic Substances Control Act, the Comprehensive Environmental Response, Compensation and Liability Act, or any other of the Environmental Laws. Borrower shall cause the Property and all operations on the Property to comply with all Environmental Laws and orders of any governmental authorities having jurisdiction under any Environmental Laws. Borrower shall exercise extreme care in handling Hazardous Substances and shall undertake any and all preventive, investigatory or remedial action (including, without limitation, emergency response, removal, containment and other remedial action) (a) required by any applicable Environmental Laws or orders by any governmental authority having jurisdiction under Environmental Laws, or (b) necessary to prevent or minimize property damage (including, without limitation, damage to Borrower's own property), personal injury or damage to the environment, or the threat of any such damage or injury,

PAGE 5 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000346

  

by releases of or exposure to Hazardous Substances in connection with the Property or operations on the Property. In the event Borrower fails to perform any of its obligations under this Section, Beneficiary may perform (but shall not be required to perform) such obligations at Borrower's expense pursuant to Section 9 of this Trust Deed. In performing any such obligations of Borrower, Beneficiary shall at all times be deemed to the agent of Borrower and shall not by reason of such performance be deemed to be assuming any responsibility of Borrower under any Environmental Laws or to any third party.

7.3     **Further Assurances.** At any time Beneficiary requests, Borrower shall provide to Beneficiary further assurance of Borrower's compliance with this Section 7. The assurances shall be in form and substance satisfactory to Beneficiary in Beneficiary's sole discretion, and may include, but not be limited to, Borrower providing to Beneficiary an environmental audit from a source acceptable to Beneficiary at Borrower's expense.

7.4     **Indemnification.** Borrower agrees to indemnify and hold harmless Beneficiary and its officers, directors, employees and agents, and Beneficiary's successors and assigns and their officers, directors, employees and agents against any and all claims, demands, losses, liabilities, costs and expenses (including, without limitation, attorney fees at trial and on any appeal or petition for review) incurred by such person (a) arising out of or relating to any investigatory or remedial action involving the Property and the operations conducted on the Property and required by Environmental Laws or Disabilities Laws or by orders of any governmental authority having jurisdiction under any Environmental Laws or Disabilities Laws, or (b) on account of injury to any person whatsoever or damage to any property arising out of, in connection with or in any way relating to (i) the violation of any applicable laws or regulations, including without limitation Environmental Laws or Disabilities Laws, (ii) the use, treatment, storage, generation, manufacture, transport, release, spill, disposal or other handling of Hazardous Substances on the Property or in connection with operations, or (iii) the contamination of any of the Property by Hazardous Substances by any means whatsoever, and (c) without in any way limiting the foregoing, for any other reason, or on account of, or in connection with the Property or this Trust Deed.

7.5     **Survival.** The covenants contained in this Section 7 shall survive the repayment of the Indebtedness and the delivery of a deed in lieu of foreclosure to Beneficiary or any successor of Beneficiary and shall survive any foreclosure, whether judicial or nonjudicial, of the Property by Beneficiary or any successor of Beneficiary, and shall be for the benefit of Beneficiary, and any successor to Beneficiary, as holder of any security interest in the Property or the Indebtedness, or as owner of the Property or any other property of Borrower following foreclosure or the delivery of a deed in lieu of foreclosure.

**SECTION 8. USE OF PROPERTY.** Unless required by applicable law or unless Beneficiary has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Trust Deed was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification or comprehensive plan governing the Property without Beneficiary's prior written consent. Borrower warrants that this Trust Deed is and will at all times constitute a commercial deed of trust and not a residential deed of trust, as defined under applicable law. Borrower warrants the Indebtedness has been incurred solely for business purposes.

**SECTION 9. PROTECTION OF BENEFICIARY'S SECURITY.** If Borrower fails to perform the covenants and agreements contained in this Trust Deed, or if any action or proceeding is commenced which affects the Property or title to the Property or the interest of Beneficiary in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, violation of any law concerning environmental protection and pollution control referred to in Section 7 above, or arrangements or proceedings involving a bankrupt or decedent, then Beneficiary at Beneficiary's option may make such appearances, disburse such sums and take such action as Beneficiary deems necessary or advisable, in its sole discretion, to protect Beneficiary's interest, including, but not limited to, (a) employment of attorneys or other advisors, (b) entry upon the Property to investigate and make repairs, (c) procurement of satisfactory insurance, and (d) payment of any tax or liens. Any amounts disbursed by Beneficiary pursuant to this

PAGE 6 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000347

 

Section 9, with interest thereon, shall become additional Indebtedness of Borrower secured by this Trust Deed. Unless Borrower and Beneficiary agree in writing to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the default rate stated in the Note or the Loan Documents, or if no default rate is stated in the Note or Loan Documents, then at the interest rate(s) stated in the Note. Borrower hereby covenants and agrees that Beneficiary shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness secured by this Trust Deed. Nothing contained in this Section 9 shall require Beneficiary to incur any expense or take any action.

**SECTION 10.     UCC SECURITY AGREEMENT; LEASES OF THE PROPERTY; ASSIGNMENT OF RENTS; INSPECTIONS.**

10.1    This Trust Deed is intended to be a security agreement pursuant to the Uniform Commercial Code of Oregon for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code of Oregon, and Borrower hereby grants Beneficiary a security interest in said items. Borrower agrees that Beneficiary may file this Trust Deed, or a reproduction of it, in the real estate records, office of the Oregon Secretary of State, or other appropriate filing index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Trust Deed or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Beneficiary, upon Beneficiary's request, any financing statements, as well as extensions, renewals and amendments of them, and reproductions of this Trust Deed in such form as Beneficiary may require to prefect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases of them, and shall pay all costs and expenses of any record searches for financing statements Beneficiary may require. Borrower shall notify Beneficiary in writing prior to changing Borrower's name or moving Borrower's chief executive office or any of the Property secured by this Trust Deed. Without the prior written consent of Beneficiary, Borrower shall not create or suffer to be created any other security interest in those items, including, without limitation, replacements, substitutions and additions to them. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Trust Deed, including, but not limited to, the covenants to pay when due all sums secured by this Trust Deed, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code of Oregon and, at Beneficiary's option, may also invoke the remedies provided in this Trust Deed as to such items. In exercising any of said remedies, Beneficiary may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, whether by nonjudicial sale or otherwise, without in any way affecting the availability of Beneficiary's remedies under the Uniform Commercial Code of Oregon or of the other remedies provided in this Trust Deed. This Trust Deed shall constitute a security agreement and "fixture filing" under the Uniform Commercial Code-Secured Transactions statutes of the State of Oregon.  The mailing address of the Borrower and the address of the Beneficiary from which information may be obtained are set forth in the introductory paragraph of this Trust Deed.

10.2    Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower shall furnish Beneficiary with executed copies of all leases now existing or in the future made of all or any part of the Property, and all leases now or in the future entered into will be in form and substance subject to the prior written approval of Beneficiary. All leases of the Property shall specifically provide that such leases are subordinate to this Trust Deed; that the tenant attorns to Beneficiary, such attornment to be effective upon Beneficiary's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Beneficiary may from time to time request; that the attornment of tenant shall not be terminated by foreclosure; that the tenant agrees to execute such estoppel certificates in form and substance satisfactory to Beneficiary; and that Beneficiary, at Beneficiary's option, may accept or reject such attornments. Without Beneficiary's written consent, Borrower shall not request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Trust Deed. If

PAGE 7 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000348

 

Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of setoff against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a setoff against rent, (ii) notify Beneficiary thereof and of the amount of said setoffs, and (iii) within ten (10) days after such accrual, reimburse the tenant who shall have acquired such right to setoff or take such other steps as shall effectively discharge such setoff and as shall assure that rents thereafter due shall continue to be payable without setoff or deduction.

10.3     As Additional security under this Trust Deed, Borrower hereby assigns to Beneficiary the leases, rents or agreements concerning the Property now existing or in the future arising, provided that unless there is an event of default under the Loan Documents, Borrower shall have the right to collect and retain such rents as they become due and payable. Upon Beneficiary's request, Borrower shall execute any additional documents requested by Beneficiary to assign to Beneficiary any leases and all security and other deposits concerning the Property. This assignment is not a delegation or assignment to Beneficiary of Borrower's duties or obligations under or in connection with the Property. Beneficiary's acceptance of this assignment does not constitute a promise by it nor does it in any way obligate it to perform any of Borrower's duties or obligations under or in connection with the leases, rents or agreements. Borrower hereby agrees to indemnify Beneficiary against and hold it harmless from any and all liability, loss or damage which it may or might incur under the leases, rents or agreements or under or by reason of this assignment and of and from any and all claims and demands whatsoever which may be asserted against it by any reason of any alleged obligation or undertaking on Beneficiary's or Borrower's part to perform or discharge any of the terms of the leases, rents or agreements.

10.4     Beneficiary may make or cause to be made reasonable entries upon the Property to inspect the Property.

SECTION 11.     CONDEMNATION.

11.1     Borrower shall promptly notify Beneficiary of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Beneficiary in writing. Borrower authorizes Beneficiary, at Beneficiary's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Beneficiary's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with any such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Beneficiary.

11.2     Borrower authorizes Beneficiary to apply such awards, payments, proceeds or damages, after the deduction of Beneficiary's expenses incurred in the collection of such amounts, at Beneficiary's option, to restoration or repair of the Property or to payment of the Indebtedness, whether or not then due, with the balance, if any, to Borrower. Unless Borrower and Beneficiary otherwise agree in writing, any application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due date of any payments required under this Trust Deed or change the amount of any such payments. Borrower shall execute such further evidence or assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Beneficiary may require.

SECTION 12.     BORROWER AND LIEN NOT RELEASED.

12.1     From time to time, at Beneficiary's option, upon notice to Borrower but without any need to give notice to or obtain the consent of Borrower's successors or assigns or of any junior lienholder or guarantor and without any liability on Beneficiary's part and notwithstanding Borrower's breach of any covenant or agreement in this Trust Deed or the other Loan Documents, Beneficiary may do any or all of the following:

PAGE 8 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000349

  

(a) Extend the time for payment of the Indebtedness or any part of it;
(b) Reduce the payments on the Indebtedness;
(c) Release anyone liable on any part of the Indebtedness;
(d) Accept renewal note or notes for the Indebtedness;
(e) Release from the lien of this Trust Deed any part of the Property;
(f) Release other or additional security;
(g) Reconvey any part of the Property;
(h) Consent to any map or plat of the Property;
(i) Consent to any easement; and
(j) Execute any subordination agreement.

12.2   Any action taken by Beneficiary pursuant to the terms of this Section or any modification of the rate of interest upward or downward, or modification of the period of amortization of the Note or change in the amount of the monthly installments payable under the Note or other Loan Documents, or any combination thereof, which may extend or reduce the term of the Note or this Trust Deed or both, shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Trust Deed and to observe the covenants of Borrower contained in this Trust Deed, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the Indebtedness secured by this Trust Deed, and shall not affect the lien or priority of lien of this Trust Deed on the Property. Unless otherwise provided by law, the priority of this Trust Deed shall not be affected by any change in terms whether or not it adversely affects subordinate or prior interest holders.

**SECTION 13.   FORBEARANCE BY BENEFICIARY OR RECEIPT OF AWARDS NOT A WAIVER.** Any forbearance by Beneficiary in exercising any right or remedy under this Trust Deed, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy. The acceptance by Beneficiary of payment of any sum secured by this Trust Deed after the due date of such payment shall not be a waiver of Beneficiary's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment, nor shall Beneficiary's receipt of any awards, proceeds or damages under this Trust Deed operate to cure or waive any default in payment of sums secured by this Trust Deed.

**SECTION 14.   PROHIBITION OF TRANSFER OF PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.**

14.1   Without prior written consent of Beneficiary, Borrower shall not transfer or agree to transfer all or any part of the Property or any interest in the Property. For the purpose of this section, the occurrence of any of the following events, without limitation, or any agreement to do any of the following, without limitation, shall be deemed to be a transfer of the Property: any sale, contract to sell, conveyance, assignment or other transfer of, other lien, or other security interest in, all or any part of the legal or equitable title to the Property.

14.2   If any of the events described in Subsection 14.1 occurs, Beneficiary, at Beneficiary's option, may declare all of the sums secured by this Trust Deed to be immediately due and payable, and may invoke any of the remedies permitted by this Trust Deed. If Borrower or a prospective transferee applies to Beneficiary for consent to transfer, Beneficiary may require such information as may be reasonably necessary for Beneficiary to assess the prospective transferee's reputation and financial ability to perform Borrower's obligations under this Trust Deed. As a condition of its consent to any transfer, Beneficiary in its discretion may impose an assumption fee, and may increase the interest rate on the Note or under the other Loan Documents. However, notwithstanding any of the foregoing, Beneficiary, in its sole discretion, may withhold its consent to any transfer for any reason whether or not withholding consent is reasonable under the circumstances. Any consent, if granted, shall not release Borrower or any successor in interest from personal liability for payment and performance of the Indebtedness, or for performance of this Trust Deed, the Note or other Loan Documents.

PAGE 9 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000350**




**SECTION 15.     LOAN AGREEMENT PROVISIONS.** Borrower shall comply with the covenants and conditions of the Loan Agreement, if any, and all other Loan Documents executed in connection with the Indebtedness secured by this Trust Deed. If the terms of this Trust Deed are inconsistent with the terms of the Loan Agreement, if any, the terms of the Loan Agreement will control.

**SECTION 16.     DEFAULT.**

16.1   Events of Default. The following shall constitute "Events of Default":

(a)     Failure of Borrower to pay any portion of the Indebtedness when it is due.

(b)     Failure of Borrower within the time required by this Trust Deed to make any payment for taxes, insurance or any other payment necessary to prevent filing of or discharge of any lien.

(c)     Transfer or agreement to transfer any part or interest in the Property in any manner whatsoever, including, but not limited to, allowing any lien inferior to this Trust Deed on the Property without properly notifying Beneficiary, or transfer of any other interest of Borrower as described in Section 14.

(d)     Insolvency or business failure of Borrower; the commencement by Borrower of a voluntary case under the federal bankruptcy laws or under any other federal or state law relating to insolvency or debtor's relief; the filing of an involuntary petition against Borrower under the federal bankruptcy laws or under any other applicable federal or state law relating to insolvency or debtor's relief which Borrower has not caused to be dismissed within thirty (30) days after such filing; the appointment or the consent by Borrower to the appointment of a receiver, trustee, or custodian of Borrower or of any of Borrower's property which Borrower has not caused to be withdrawn within thirty (30) days after such appointment; an assignment for the benefit of creditors by Borrower; the making or suffering by Borrower of a fraudulent transfer under applicable federal or state law; concealment by Borrower of any of its property in fraud of creditors; or the imposition of a lien through legal proceedings or distraint upon any of the property of Borrower or Borrower's failure generally to pay its debts as such debts become due.

(e)     Failure of Borrower to make any payment or perform any obligation under any superior liens or encumbrances, within the time required under those liens or encumbrances, and without regard to any grace periods as may be afforded by the terms of such liens or encumbrances, or commencement of any suit or other action to foreclose any superior or inferior liens or encumbrances.

(f)     Breach or default under the Loan Agreement or any other Loan Documents, which is not cured within any applicable cure period.

(g)     Failure of Borrower to timely perform any other obligations under this Trust Deed.

16.2   The Events of Default in this Section shall apply and refer to Borrower, any guarantor of the Indebtedness, and to each of the individuals or entities which are collectively referred to as "Borrower."

**SECTION 17.     RIGHTS AND REMEDIES ON DEFAULT.**

17.1   Remedies. Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Beneficiary may exercise any one or more of the following rights and remedies:

(a)     Beneficiary may declare all sums secured by this Trust Deed immediately due and payable, including, without limitation, any prepayment premium

PAGE 10 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000351

 

which Borrower would be required to pay under the terms of the Note or Loan Agreement.

(b)     The Trustee shall have the right to foreclose by notice and sale, or Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with applicable law.

(c)     If this Trust Deed is foreclosed by judicial procedure, and if permitted by applicable law, Beneficiary shall be entitled to a judgment which will provide that if the foreclosure sale proceeds are insufficient to satisfy the judgment, execution may issue for the amount of the unpaid balance of the judgment.

(d)     Beneficiary shall have the right to take possession of the Property and, with or without taking possession of the Property, collect all the rents and revenues of the Property in accordance with this Trust Deed.

(e)     Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect all the rents and revenues from the Property and apply the proceeds, over and above cost of the receivership, against the sums due under this Trust Deed. The receiver may serve without bond if permitted by applicable law. Beneficiary's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the sums due under this Trust Deed by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

(f)     In the event Borrower remains in possession of the Property after the Property is sold as provided above or Beneficiary otherwise becomes entitled to possession of the Property upon the occurrence of an Event of Default, Borrower shall become a tenant at will of Beneficiary or the purchaser of the Property and shall pay a reasonable rental for use of the Property while in Borrower's possession.

(g)     Trustee and Beneficiary shall have any other right or remedy provided in this Trust Deed, the Note, the Loan Agreement, or any other Loan Document, or available at law, in equity or otherwise, and specifically, but not limited to, any and all rights and remedies granted by ORS 86.705, et seq.

17.2   Rights of Receiver or Beneficiary-in-Possession.   Upon taking possession of all or any part of the Property, the receiver or Beneficiary may:

(a)     Use, operate, manage, control and conduct business on the Property and make expenditures for all maintenance and improvements as in its judgment are proper;

(b)     Collect the income from the Property, including any past due, and apply such sums to the expenses of use, operation and management, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorney fees and to the sums secured by this Trust Deed in any order as Beneficiary shall determine in Beneficiary's sole discretion;

(c)     At Beneficiary's option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors and make any changes in plans or specifications as Beneficiary deems appropriate; and

(d)     Beneficiary or the receiver shall be liable to account only for those rents actually received. If the revenues produced by the Property are insufficient to pay expenses, the receiver may borrow from Beneficiary (if Beneficiary, in its sole discretion, agrees to lend) or otherwise, or Beneficiary may borrow or advance, such sums as the receiver or Beneficiary may deem necessary for purposes stated in this Subsection. The amounts borrowed or advanced shall bear interest from the date of expenditure until repaid at the same interest rate as provided in Section 9 of this Trust

PAGE 11 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000352



Deed. Such sums shall become a part of the Indebtedness secured by this Trust Deed and shall be payable by Borrower on demand.

17.3  **Waiver of Marshaling; Sale of the Property.** Notwithstanding the existence of any other mortgage, deed of trust, other lien or other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property, real or personal or mixed, shall be subjected to the remedies provided in this Trust Deed. Beneficiary shall have the right to determine the order in which any or all portions of the Indebtedness secured by this Trust Deed are satisfied from the proceeds realized upon the exercise of the remedies provided in this Trust Deed. In exercising its rights and remedies, Beneficiary, at Beneficiary's sole discretion, may cause all or any part of the Property to be sold as a whole or in parcels, and certain portions of the Property may be sold without selling other portions. Beneficiary may bid at any public sale on all or any portion of the Property. Borrower, any party who consents to this Trust Deed and any party who now or in the future acquires a security interest in the Property and who has actual or constructive notice of this Trust Deed hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided in this Trust Deed.

17.4  **Notice of Sale.** Beneficiary shall give Borrower reasonable notice of the time and place of any public sale of any personal property or of the time after which any private sale or other intended disposition of the personal property is to be made. Reasonable notice shall mean notice given in accordance with applicable law, and may include, without limitation, any notice required for the nonjudicial sale of the real property.

17.5  **Waiver; Election of Remedies; Remedies Cumulative.** A waiver by either party of a breach of a provision of this Trust Deed or the occurrence of an Event of Default shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. Election by Beneficiary to pursue any remedy shall not exclude pursuit of any other remedy, and all remedies of Beneficiary under this Trust Deed are distinct and cumulative and not exclusive to all other rights or remedies under this Trust Deed or Loan Documents or afforded by law or equity, and may be exercised concurrently, independently, or successively in any order whatsoever. An election to make expenditures or take action to perform an obligation of Borrower shall not affect Beneficiary's right to declare a default and exercise its remedies under this Trust Deed.

**SECTION 18.      SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.**

The covenants and agreement contained in this Trust Deed shall bind, and the rights under this Trust Deed shall inure to, the respective successors and assigns of Beneficiary and Borrower. However, nothing in this Trust Deed or other Loan Documents shall be deemed to permit Borrower to enter into any assignments or transfers except as specifically permitted pursuant to the preceding provisions of this Trust Deed. This Trust Deed and the Indebtedness secured hereby may be assigned in whole or in part or participated in whole or in part to any person by Beneficiary and without notice to or affecting Borrower's liability hereunder, and Beneficiary, in connection with such assignment, participation, or similar arrangement, may make all credit and financial data furnished and to be furnished by Borrower available to such existing or prospective assignee, participant or person. If Beneficiary assigns to any assignee, participants or other persons all of Beneficiary's interest in this Trust Deed and the Indebtedness secured hereby, then Beneficiary shall be and is released from any obligations under this Trust Deed and other Loan Documents. All covenants and agreements of Borrower shall be joint and several. In exercising any rights under this Trust Deed or taking any actions provided for in this Trust Deed, Beneficiary may act through its employees, agents or independent contractors as authorized by Beneficiary. The captions and headings of the sections and subsections of this Trust Deed are for convenience only and are not to be used to interpret or define the provisions of this Trust Deed.

PAGE 12 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000353

 

**SECTION 19.** **NOTICE.**

All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

To the Borrower : Huber-Wheeler Crossing, LLC
an Oregon limited liability company
3980 SW 170th Avenue
Aloha, OR 97007

To the Lender : Fairway Commercial Mortgage Corporation
an Oregon corporation
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

**SECTION 20.** **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statue of limitations as a bar to the enforcement of the lien of this Trust Deed or to any action brought to enforce the Note, the other Loan Documents or any other obligation secured by this Trust Deed.

**SECTION 21.** **RECONVEYANCE.** Upon payment of the Indebtedness secured by this Trust Deed, Beneficiary shall request Trustee to reconvey the Property and shall surrender this Trust Deed and all notes evidencing Indebtedness secured by this Trust Deed to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to the Property. Such person or persons shall pay the Trustee's fee and other costs incurred in so reconveying the Property.

**SECTION 22.** **SUBSTITUTE TRUSTEE.** In accordance with applicable law, Beneficiary may from time to time appoint a successor trustee to any Trustee appointed under this Trust Deed. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Trust Deed and by applicable law.

**SECTION 23.** **ATTORNEY FEES.** In the event suit or action is instituted to enforce or interpret any of the terms of this Trust Deed, including, but not limited to, any action or participation by Borrower as a debtor in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees, witness fees (expert and otherwise), deposition costs, copying charges and other

PAGE 13 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000354**

 

expenses. Whether or not any court action is involved, all reasonable expenses, including, but not limited to, the costs of searching records, obtaining title reports or appraisals, surveyor reports, title insurance, trustee fees, and attorney fees, incurred by Beneficiary that are necessary or advisable at any time in Beneficiary's opinion for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until paid at the default interest rate provided in the Note or other Loan Documents or if the Note or other Loan Documents contain no default rate, then at the interest rate(s) provided for in the Note.

**SECTION 24.        GOVERNING LAW; SEVERABILITY.** This Trust Deed shall be governed by the laws of the State of Oregon. In the event that any provision or clause of this Trust Deed, or the Note, or Loan Agreement or other Loan Documents conflicts with applicable law, such conflict shall not affect other provisions of this Trust Deed, the Note, the Loan Agreement or other Loan Documents which can be given effect without the conflicting provision, and to this end, the provisions of this Trust Deed, the Note, the Loan Agreement and other Loan Documents are declared to be severable.

**SECTION 25.        CONSENTS OF BENEFICIARY.** In all events where the consent of Beneficiary is required under the terms of this Agreement, Beneficiary shall grant or refuse such consent within a reasonable period of time following the receipt of such request. Any such consent may be granted or refused by Beneficiary in Beneficiary's sole and absolute discretion, without regard to any standard of good faith, fairness, or reasonableness.

**SECTION 26.        TIME OF ESSENCE.** Time is of the essence in the payment and performance of the obligations under and secured by this Trust Deed and the other Loan Documents.

**SECTION 27.        CHANGES IN WRITING.** Any term of this Trust Deed and any addendum to the Trust Deed may only be changed, waived, discharged or terminated by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. Any agreement subsequently made by Borrower or Beneficiary relating to this Trust Deed shall be superior to the rights of the holder of any intervening lien or encumbrance.

**SECTION 28.        ESTOPPEL CERTIFICATES.** Borrower, within five days of the request, shall furnish Trustee and Beneficiary a written statement, duly acknowledged, of the amount of the Indebtedness secured by this Trust Deed and whether any offsets or defenses exist against such Indebtedness. If Borrower shall fail to furnish such a statement within the time allowed, Beneficiary shall be authorized, as Borrower's attorney-in-fact, to execute and deliver such statement.

**SECTION 29.        ACCESS LAWS.**

29.1    Borrower agrees that Borrower and the Property shall at all times strictly comply with the requirements of the Americans with Disabilities Act of 1990; the Fair Housing Amendments Action of 1988; and other federal, state, or local laws or ordinances related to disabled access; any statute, rule, regulation, ordinance, order of governmental bodies and regulatory agencies, or order or decree of any court adopted or enacted with respect thereto , as now existing or hereafter amended or adopted (collectively, the "Access Laws"). At any time, Lender may require a certificate of compliance with the Access Laws and indemnification agreement in a form reasonably acceptable to Lender. Lender may also require a certificate of compliance with the Access Laws from an architect, engineer, or other third party acceptable to Lender.

29.2    Notwithstanding any provisions set forth herein or in any other document, Borrower shall not alter or permit any tenant or other person to alter the Property in any manner which would increase Borrower's responsibilities for compliance with the Access Laws without the prior written approval of Lender. In connection with such approval, Lender may require a certificate of compliance with the Access Laws from an architect, engineer, or other person acceptable to Lender.

PAGE 14 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000355



29.3   Borrower agrees to give prompt written notice to Lender of the receipt by Borrower of any claims of violation of any of the Access Laws and of the commencement of any proceedings or investigations which relate to compliance with any of the Access Laws.

29.4   Borrower shall indemnify, defend, and hold harmless Lender from and against any and all claims, demands, damages, costs, expenses, losses, liabilities, penalties, fines, and other proceedings including without limitation reasonable attorneys fees and expenses arising directly or indirectly from or out of on in any way connected with any failure of the Property to comply with any of the Access Laws. The obligations and liabilities of Borrower under this Section shall survive any termination, satisfaction, assignment, judicial or nonjudicial foreclosure proceeding, or delivery of a deed in lieu of foreclosure.

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930.

REQUEST FOR NOTICE OF DEFAULT AND NOTICE OF SALE PURSUANT TO ORS 86.785

Beneficiary hereby requests that Beneficiary be provided with copies of any Notice of Default or Notice of Sale concerning the Property.

WARNING

UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

PAGE 15 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000356

 

IN WITNESS WHEREOF, Borrower has executed this Trust Deed the day and year first written above.

Huber-Wheeler Crossing, LLC

By: _Lauren Paulson_
Lauren Paulson, Managing Member

STATE OF HAWAII        )
                       ) ss.
County of _Kavai_      )

This instrument was acknowledged before me on November 28, 2005 by Lauren Paulson, as Managing Member of Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

_D. Maile S. Taniguchi_
Notary Public - State of Hawaii
My Commission Expires: 02/18/2008

PAGE 16 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000357

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 28 of 47

 

Order No. 23y0024421w

EXHIBIT "A"
Legal Description

PARCEL I:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 186.6 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 80 feet to a point
on the East right-of-way of 170th Avenue; thence South 0° 16' East,
along the East right-of-way, a distance of 133.3 feet to the Southeast
corner of said lot; thence South 81° 37' East along the South line of
said lot, a distance of 80 feet to a point; thence North 0° 16' East
to the South line of the Thomas tract and the point of beginning.

PARCEL II:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 70 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 116.6 feet to a
point; thence South 0° 16' East, a distance of 108 feet, more or less,
to a point on the South line of said lot that is North 81° 37' West,
186.6 feet from the Southeast corner of said lot; thence South 81° 37'
East along the South line of said lot, a distance of 116.6 feet;
thence North 0° 16' East, 108 feet, more or less, to the point of
beginning.

PARCEL IV:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded subdivision in the
County of Washington and State of Oregon; and running thence South 0°
08' East along the East line of said Lot 264, a distance of 119.5 feet
to the Southeast portion of that tract conveyed to Alan G. Thomas by
deed recorded in Book 315, Page 36, Deed Records of Washington County,
Oregon, and the true point of beginning of the tract herein described;
thence North 81° 37' West along the South line of said Thomas tract, a
distance of 70 feet to a point; thence South 0° 16' East, parallel
with the West line of Lot 264, a distance of 108 feet, more or less,
to a point on the South line of said lot; thence South 81° 37' East,
70 feet to the Southeast corner of said Lot 264; thence North 0° 08'
East, a distance of 108 feet to the point of beginning.

ARB000359





Washington Co... Oregon
2005-150743
11/30/2005 03:33:05 PM
D-dt      Cnt=2 Stn=7 K GRUNEWALD
$90.00 $5.00 $6.00 $11.00 - Total = $112.00

00876533200501507430180162
Larry Hansen, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.
Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

WHEN RECORDED, RETURN TO:

Fairway Commercial Mortgage Corporation
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

TRANSNATION 034-002242 w 3—6-11
SM

## COMMERCIAL DEED OF TRUST

### AND

### ASSIGNMENT OF RENTS

### (SECURITY AGREEMENT AND FIXTURE FILING)

THIS COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS (the "Trust Deed") is made this _25_ day of November, 2005, among the Grantor, Lauren Paulson, as Successor Trustee to The Lauren Paulson Trust Agreement, dated October 18, 2004, whose address is 3980 SW 170th Avenue, Aloha, OR 97007 (the "Grantor"); Transnation Title Agency of Oregon, whose address is 5035 NE Elam Young Pkwy #500, Hillsboro, OR 97124 (the "Trustee"); and the Beneficiary, Fairway Commercial Mortgage Corporation, an Oregon corporation, whose address is 6650 SW Redwood Lane, Suite 290, Portland, OR 97224 (the "Beneficiary" or "Lender").

I.   GRANTING CLAUSE

A.   Grantor, in consideration of the indebtedness recited in this Trust Deed and the trust created by this Trust Deed, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the County of Washington, State of Oregon, more particularly described as:

See Exhibit "A"

together with all buildings, improvements and tenements now or in the future erected on the property, and all previously or in the future vacated alleys and streets abutting the property, and all easements, rights, appurtenances, leases, including, without limitation, the leases, permits or agreements now or hereafter existing, however evidenced, covering all or any portion of the property, together with all rents or monies due or to become due thereunder; and together with all now existing or in the future arising or acquired; (a) revenues, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property; (b) fixtures, machinery, equipment located or to be located on the property, including, without limitation, personal property required for the maintenance and operation of the property (including, but not limited to, engines, boilers, incinerators, building materials, and all appliances, escalators and elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, communications apparatus, plumbing, plumbing fixtures, water heaters, paneling, attached floor and wall coverings); (c) timber to be cut; and (d) estate, interest, claims or demands, and other general intangibles now or in the future relating to the property, including, but not limited to, all insurance which the Grantor now has or may in the future acquire in and to the property, and all present or future refunds or rebates of taxes or assessments on the property and all compensation, awards, damages or rights of action arising out of or relating to any taking of the property described above. All of the foregoing shall be deemed to be and remain a part of the property covered by this Trust Deed. The specific enumerations herein shall not exclude the general. All of the property described above is referred to in this Trust Deed as the "Property."

B.   This Trust Deed is given as security for the following (collectively the "Indebtedness"): (a) the payment of the indebtedness evidenced by a promissory note in favor of Beneficiary dated of even date herewith and executed by Huber-Wheeler

PAGE 1 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000360**

 

Crossing, LLC, an Oregon limited liability company (the "Note"), in the principal sum of Four Hundred Thousand and 00/100ths Dollars ($400,000.00), with interest thereon, the balance of which, if not sooner paid, is due and payable on or before December 1, 2010, and all amendments, renewals, extensions and modifications of the Note; (b) the performance of the covenants and agreements of Borrower contained in the Loan Agreement, if any, between Beneficiary and Borrower dated of even date herewith, and any amendments (collectively the "Loan Agreement"); (c) the payment of all other sums, with interest thereon, advanced in accordance with this Trust Deed to protect the security of this Trust Deed; (d) the performance of the covenants and agreements of Borrower contained in this Trust Deed; and (e) payment and performance of Borrower's obligations now or in the future arising under any and all present or future indebtedness of Borrower to Beneficiary. The terms of the Note and Loan Agreement secured by this Trust Deed may provide that the interest rate or payment terms or balance due may be indexed, adjusted, renewed, or renegotiated from time to time. Capitalized terms which are not defined in this Trust Deed and are defined in the Loan Agreement shall have the meaning given them in the Loan Agreement. For the purposes of this Trust Deed, the term "Borrower" shall refer to both The Lauren Paulson Trust Agreement, dated October 18, 2004 and to Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

II.    TERMS AND CONDITIONS

Borrower and Beneficiary covenant and agree as follows:

SECTION 1. COVENANT OF TITLE. Borrower covenants that The Lauren Paulson Trust Agreement, dated October 18, 2004 is lawfully seized of the estate conveyed by this Trust Deed, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions acceptable to Beneficiary and listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiary's interest in the Property.

SECTION 2. PROMISE TO PAY. Borrower shall pay promptly when due the principal of and interest on the Indebtedness and any other charges provided in the Note, this Trust Deed, the Loan Agreement and other documents executed in connection with the Indebtedness (collectively the "Loan Documents").

SECTION 3. LATE PAYMENT CHARGES. Beneficiary may charge a late charge on any scheduled payment which Beneficiary fails to receive within five (5) days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday, or legal holiday. The amount of the late charge shall be as specified in the Note or Loan Agreement or, if the Note or Loan Agreement specifies no late charge, then five percent (5%) of the amount of the payment of principal and interest not paid when due. Such late charge shall in no event exceed the maximum charge, if any, specified under applicable law. Collection of a late charge shall not constitute a waiver of or prejudice the Beneficiary's right to pursue any other right or remedy available on account of the delinquency, including, without limitation, charging the default rate of interest under the Note.

SECTION 4. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, or unless specified to the contrary in the other Loan Documents, each complete installment payment received by Beneficiary under the Note or this Trust Deed or other Loan Documents shall be applied by Beneficiary first to payment of reserves, if any, due under Sections 5 and 6 of this Trust Deed, next to interest due and payable on the Indebtedness, then to principal due and payable on the Indebtedness and then to any other charges due and payable pursuant to the terms of the Note, this Trust Deed, and any other Loan Documents. Upon a breach of any covenant or agreement of Borrower in the Note, this Trust Deed or other Loan Document, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any payments received by Beneficiary under the Note, this Trust Deed or under the other Loan Documents. Beneficiary, at Beneficiary's option, may reject any partial payment. Any partial payment which Beneficiary accepts may be held in a non-interest bearing account until Beneficiary receives funds sufficient to equal a complete installment

PAGE 2 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000361

  

payment, or, may be applied to the Indebtedness in any amount and in any order as Beneficiary may determine in Beneficiary's sole discretion.

## SECTION 5. TAXES AND LIENS: RESERVES.

5.1    Payment. Borrower shall pay when due all taxes and assessments levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Borrower shall maintain the Property free of any liens having priority over or equal to the interest of Beneficiary under this Trust Deed, except for the lien of taxes and assessments not due. Without Beneficiary's prior written consent, Borrower shall not allow any lien inferior to this Trust Deed to be perfected against the Property.

5.2    Evidence of Payment. On Beneficiary's demand, Borrower promptly shall furnish evidence acceptable to Beneficiary of payment of taxes and assessments and shall authorize the appropriate county official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property.

5.3    Reserves. Upon any Event of Default or any event which with the passage of time or notice would become an event of default under this Trust Deed or any other Loan Documents, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of taxes and assessments. The reserves shall be created by monthly payments of a sum estimated by Beneficiary to be sufficient to produce, at least thirty (30) days before the taxes and assessments are due, amounts at least equal to the taxes and assessments to be paid. If Beneficiary determines that the reserve funds are insufficient at any time, Borrower shall promptly pay any deficiency to Beneficiary on its demand. The reserve funds shall be held by Beneficiary in a deposit account, and the funds may be commingled with other funds held by Beneficiary. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the funds, Beneficiary shall not be required to pay Borrower any interest on the funds. Beneficiary shall apply the reserve funds to pay the taxes and assessments so long as Borrower is not in breach of any covenant or agreement of Borrower in this Trust Deed, but only to the extent that funds are available to do so. Beneficiary does not hold the funds in trust for Borrower and is not the agent of Borrower for payment of taxes and assessments required to be paid by Borrower. Upon any Event of Default under this Trust Deed or any other Loan Documents, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any reserve funds held by Beneficiary (i) to pay taxes and assessments which are due or (ii) as a credit against the Indebtedness.

## SECTION 6. HAZARD INSURANCE; RESERVES.

6.1    Policies. Borrower shall keep any improvements now existing or in the future erected on the Property insured by carriers who are at all times satisfactory to Beneficiary against loss by fire, all hazards included within the term "extended coverage," flood, casualties, liabilities and contingencies as Beneficiary shall require from time to time or at any time during the term of this Trust Deed and in such amounts, on a one hundred percent (100%) replacement cost basis without coinsurance clause, and for such periods as Beneficiary shall require. All insurance policies and renewals thereof shall be in a form and substance acceptable to Beneficiary and shall include a loss payable endorsement in favor of and in form and substance acceptable to Beneficiary and a provision that coverage will not be canceled, altered or diminished without a minimum of ten (10) days' prior written notice to Beneficiary. Beneficiary shall have the right to hold the policies, and Borrower promptly shall furnish to Beneficiary all renewal notices. waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower

PAGE 3 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000362

 

shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s) borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Such advances shall be secured by the Property.

6.1.1    Without waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s) borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Beneficiary may also charge a fee not to exceed $100.00 per month to monitor the insurance placed on the property.  Such advances shall be secured by the Property.

6.2    Payment; Reserves. All premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the carrier, or in such other manner as Beneficiary may designate in writing. Prior to the expiration date of any policy, Borrower shall deliver to Beneficiary a renewal policy in form and substance satisfactory to Beneficiary and receipts for paid premiums. At Beneficiary's option, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of insurance premiums. The reserves shall be created and held in the same manner as provided in Subsection 5.3 for reserves for payment of taxes and assessments.

6.3    Loss. In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to the Beneficiary. Beneficiary may give written notice to the insurance carrier if Borrower fails to do so within twenty (20) days of the casualty. Borrower hereby authorizes and empowers Beneficiary as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Beneficiary's expenses incurred in the collection of such proceeds; provided, however, that nothing contained in this Section 6 shall require Beneficiary to incur any expense or take any action hereunder.

6.4    Application of Proceeds. Borrower authorizes Beneficiary, at Beneficiary's option, (a) to apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due, or (b) after deducting Beneficiary's costs and expenses described above, to hold the balance of such proceeds to be disbursed to Borrower for the cost of reconstruction or repair of the Property. If the insurance proceeds are held by Beneficiary to disburse to Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Beneficiary may approve in writing. Beneficiary may require that Borrower deposit with Beneficiary any amount in excess of the insurance proceeds necessary to complete restoration, which amounts shall be disbursed prior to disbursement of any insurance proceeds. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the proceeds, Beneficiary shall not be required to pay Borrower any interest on the proceeds or any other sum which Beneficiary may require Borrower to deposit with Beneficiary pursuant to this Section. If the insurance proceeds are applied to the payment of the sums secured by this Trust Deed, any such application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due dates of any payments required under Section 2 or change the amounts of any such payments. If the Property is sold to Beneficiary pursuant to Section 17 of this Trust Deed or if Beneficiary otherwise acquires title to the Property, then in addition to the lien and security interests otherwise granted to Beneficiary under this Trust Deed,

PAGE 4 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000363



Beneficiary shall have all of the right, title and interest in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

## SECTION 7. PRESERVATION AND MAINTENANCE OF PROPERTY: ENVIRONMENTAL LAWS; INDEMNIFICATION.

7.1    **Preservation and Maintenance.**

(a)    Shall not commit waste or permit impairment or deterioration of the Property;

(b)    Shall not abandon the Property;

(c)    Unless Beneficiary directs Borrower in writing to the contrary, shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing, in the event of any damage, injury or loss to the Property, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair;

(d)    Shall keep the Property in good condition and repair;

(e)    Shall operate and maintain the Property in compliance with all applicable laws and regulations; and

(f)    Shall give notice in writing to Beneficiary of and, unless otherwise directed in writing by Beneficiary, appear in and defend any action or proceeding purporting to affect the Property (including, without limitation, matters pertaining to land use, zoning and Environmental Laws, Hazardous Substances and Disabilities Laws, as defined below), the security of this Trust Deed or the rights or powers of Beneficiary. "Disabilities Laws" shall mean all applicable federal, state and local laws and regulations related to usability of and accessibility to the property by people with disabilities. The term "Disabilities Laws" includes, but is not limited to, the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990, all amendments thereto, and all regulations adopted thereunder. Neither Borrower nor any tenant nor other person, without the written approval of Beneficiary, shall remove, demolish or alter any improvement now existing or in the future erected on the Property or any fixtures, equipment, machinery or appliance in or on the Property and in which Beneficiary has any interest by virtue of this Trust Deed, any security agreement, or any other Loan Document, except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind, which shall thereupon become subject to the lien of this Trust Deed.

7.2    Environmental Laws. In this Trust Deed, "Environmental Laws" means any and all state, federal and local statutes, regulations, and ordinances relating to the protection of human health or the environment. "Hazardous Substances" is used in its very broadest sense and refers to materials that, because of their quantity, concentration of physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. "Hazardous Substances" shall include, without limitation, petroleum products or crude oil or any fraction thereof and any and all hazardous or toxic substances, materials or waste as defined by or listed under the Resource Conservation and Recovery Act, the Toxic Substances Control Act, the Comprehensive Environmental Response, Compensation and Liability Act, or any other of the Environmental Laws. Borrower shall cause the Property and all operations on the Property to comply with all Environmental Laws and orders of any governmental authorities having jurisdiction under any Environmental Laws. Borrower shall exercise extreme care in handling Hazardous Substances and shall undertake any and all preventive, investigatory or remedial action (including, without limitation, emergency response, removal, containment and other remedial action) (a) required by any applicable Environmental Laws or orders by any governmental authority

PAGE 5 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000364

 

having jurisdiction under Environmental Laws, or (b) necessary to prevent or minimize property damage (including, without limitation, damage to Borrower's own property), personal injury or damage to the environment, or the threat of any such damage or injury, by release of or exposure to Hazardous Substances in connection with the Property or operations on the Property. In the event Borrower fails to perform any of its obligations under this Section, Beneficiary may perform (but shall not be required to perform) such obligations at Borrower's expense pursuant to Section 9 of this Trust Deed. In performing any such obligations of Borrower, Beneficiary shall at all times be deemed to the agent of Borrower and shall not by reason of such performance be deemed to be assuming any responsibility of Borrower under any Environmental Laws or to any third party.

7.3    Further Assurances. At any time Beneficiary requests, Borrower shall provide to Beneficiary further assurance of Borrower's compliance with this Section 7. The assurances shall be in form and substance satisfactory to Beneficiary in Beneficiary's sole discretion, and may include, but not be limited to, Borrower providing to Beneficiary an environmental audit from a source acceptable to Beneficiary at Borrower's expense.

7.4    Indemnification. Borrower agrees to indemnify and hold harmless Beneficiary and its officers, directors, employees and agents, and Beneficiary's successors and assigns and their officers, directors, employees and agents against any and all claims, demands, losses, liabilities, costs and expenses (including, without limitation, attorney fees at trial and on any appeal or petition for review) incurred by such person (a) arising out of or relating to any investigatory or remedial action involving the Property and the operations conducted on the Property and required by Environmental Laws or Disabilities Laws or by orders of any governmental authority having jurisdiction under any Environmental Laws or Disabilities Laws, or (b) on account of injury to any person whatsoever or damage to any property arising out of, in connection with or in any way relating to (i) the violation of any applicable laws or regulations, including without limitation Environmental Laws or Disabilities Laws, (ii) the use, treatment, storage, generation, manufacture, transport, release, spill, disposal or other handling of Hazardous Substances on the Property or in connection with operations, or (iii) the contamination of any of the Property by Hazardous Substances by any means whatsoever, and (c) without in any way limiting the foregoing, for any other reason, or on account of, or in connection with the Property or this Trust Deed.

7.5    Survival. The covenants contained in this Section 7 shall survive the repayment of the Indebtedness and the delivery of a deed in lieu of foreclosure to Beneficiary or any successor of Beneficiary and shall survive any foreclosure, whether judicial or nonjudicial, of the Property by Beneficiary or any successor of Beneficiary, and shall be for the benefit of Beneficiary, and any successor to Beneficiary, as holder of any security interest in the Property or the Indebtedness, or as owner of the Property or any other property of Borrower following foreclosure or the delivery of a deed in lieu of foreclosure.

SECTION 8. USE OF PROPERTY. Unless required by applicable law or unless Beneficiary has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Trust Deed was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification or comprehensive plan governing the Property without Beneficiary's prior written consent. Borrower warrants that this Trust Deed is and will at all times constitute a commercial deed of trust and not a residential deed of trust, as defined under applicable law. Borrower warrants the Indebtedness has been incurred solely for business purposes.

SECTION 9. PROTECTION OF BENEFICIARY'S SECURITY. If Borrower fails to perform the covenants and agreements contained in this Trust Deed, or if any action or proceeding is commenced which affects the Property or title to the Property or the interest of Beneficiary in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, violation of any law concerning environmental protection and pollution control referred to in Section 7 above, or arrangements or proceedings involving a bankrupt or decedent, then Beneficiary at Beneficiary's option may make such appearances, disburse such sums and take such action as Beneficiary deems necessary or advisable, in its sole discretion, to protect Beneficiary's interest, including,

PAGE 5 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000365**

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 35 of 47




but not limited to, (a) employment of attorneys or other advisors, (b) entry upon the Property to investigate and make repairs, (c) procurement of satisfactory insurance, and (d) payment of any tax or items. Any amounts disbursed by Beneficiary pursuant to this Section 9, with interest thereon, shall become additional Indebtedness of Borrower secured by this Trust Deed. Unless Borrower and Beneficiary agree in writing to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the default rate stated in the Note or the Loan Documents, or if no default rate is stated in the Note or Loan Documents, then at the interest rate(s) stated in the Note. Borrower hereby covenants and agrees that Beneficiary shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness secured by this Trust Deed. Nothing contained in this Section 9 shall require Beneficiary to incur any expense or take any action.

SECTION 10.    UCC SECURITY AGREEMENT; LEASES OF THE PROPERTY; ASSIGNMENT OF RENTS; INSPECTIONS.

10.1    This Trust Deed is intended to be a security agreement pursuant to the Uniform Commercial Code of Oregon for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code of Oregon, and Borrower hereby grants Beneficiary a security interest in said items. Borrower agrees that Beneficiary may file this Trust Deed, or a reproduction of it, in the real estate records, office of the Oregon Secretary of State, or other appropriate filing index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Trust Deed or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Beneficiary, upon Beneficiary's request, any financing statements, as well as extensions, renewals and amendments of them, and reproductions of this Trust Deed in such form as Beneficiary may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases of them, and shall pay all costs and expenses of any record searches for financing statements Beneficiary may require. Borrower shall notify Beneficiary in writing prior to changing Borrower's name or moving Borrower's chief executive office or any of the Property secured by this Trust Deed. Without the prior written consent of Beneficiary, Borrower shall not create or suffer to be created any other security interest in those items, including, without limitation, replacements, substitutions and additions to them. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Trust Deed, including, but not limited to, the covenants to pay when due all sums secured by this Trust Deed, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code of Oregon and, at Beneficiary's option, may also invoke the remedies provided in this Trust Deed as to such items. In exercising any of said remedies, Beneficiary may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, whether by nonjudicial sale or otherwise, without in any way affecting the availability of Beneficiary's remedies under the Uniform Commercial Code of Oregon or of the other remedies provided in this Trust Deed. This Trust Deed shall constitute a security agreement and "fixture filing" under the Uniform Commercial Code-Secured Transactions statutes of the State of Oregon.  The mailing address of the Borrower and the address of the Beneficiary from which information may be obtained are set forth in the introductory paragraph of this Trust Deed.

10.2    Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower shall furnish Beneficiary with executed copies of all leases now existing or in the future made of all or any part of the Property, and all leases now or in the future entered into will be in form and substance subject to the prior written approval of Beneficiary. All leases of the Property shall specifically provide that such leases are subordinate to this Trust Deed; that the tenant attorns to Beneficiary, such attornment to be effective upon Beneficiary's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Beneficiary may from time to time request; that the attornment of tenant shall not be terminated by foreclosure; that the tenant agrees to execute such estoppel certificates in form and substance satisfactory to Beneficiary; and

PAGE 7 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000366

 

that Beneficiary, at Beneficiary's option, may accept or reject such attornments. Without Beneficiary's written consent, Borrower shall not request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Trust Deed. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of setoff against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a setoff against rent, (ii) notify Beneficiary thereof and of the amount of said setoffs, and (iii) within ten (10) days after such accrual, reimburse the tenant who shall have acquired such right to setoff or take such other steps as shall effectively discharge such setoff and as shall assure that rents thereafter due shall continue to be payable without setoff or deduction.

10.3   As Additional security under this Trust Deed, Borrower hereby assigns to Beneficiary the leases, rents or agreements concerning the Property now existing or in the future arising, provided that unless there is an event of default under the Loan Documents, Borrower shall have the right to collect and retain such rents as they become due and payable. Upon Beneficiary's request, Borrower shall execute any additional documents requested by Beneficiary to assign to Beneficiary any leases and all security and other deposits concerning the Property. This assignment is not a delegation or assignment to Beneficiary of Borrower's duties or obligations under or in connection with the Property. Beneficiary's acceptance of this assignment does not constitute a promise by it nor does it in any way obligate it to perform any of Borrower's duties or obligations under or in connection with the leases, rents or agreements. Borrower hereby agrees to indemnify Beneficiary against and hold it harmless from any and all liability, loss or damage which it may or might incur under the leases, rents or agreements or under or by reason of this assignment and of and from any and all claims and demands whatsoever which may be asserted against it by any reason of any alleged obligation or undertaking on Beneficiary's or Borrower's part to perform or discharge any of the terms of the leases, rents or agreements.

10.4   Beneficiary may make or cause to be made reasonable entries upon the Property to inspect the Property.

SECTION 11.        CONDEMNATION.

11.1   Borrower shall promptly notify Beneficiary of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Beneficiary in writing. Borrower authorizes Beneficiary, at Beneficiary's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Beneficiary's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with any such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Beneficiary.

11.2   Borrower authorizes Beneficiary to apply such awards, payments, proceeds or damages, after the deduction of Beneficiary's expenses incurred in the collection of such amounts, at Beneficiary's option, to restoration or repair of the Property or to payment of the Indebtedness, whether or not then due, with the balance, if any, to Borrower. Unless Borrower and Beneficiary otherwise agree in writing, any application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due date of any payments required under this Trust Deed or change the amount of any such payments. Borrower shall execute such further evidence or assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Beneficiary may require.

SECTION 12.        BORROWER AND LIEN NOT RELEASED.

12.1   From time to time, at Beneficiary's option, upon notice to Borrower but without any need to give notice to or obtain the consent of Borrower's successors or

PAGE 8 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000367

  

assigns or of any junior lienholder or guarantor and without any liability on Beneficiary's part and notwithstanding Borrower's breach of any covenant or agreement in this Trust Deed or the other Loan Documents, Beneficiary may do any or all of the following:

      (a) Extend the time for payment of the Indebtedness or any part of it;
      (b) Reduce the payments on the Indebtedness;
      (c) Release anyone liable on any part of the Indebtedness;
      (d) Accept renewal note or notes for the Indebtedness;
      (e) Release from the lien of this Trust Deed any part of the Property;
      (f) Release other or additional security;
      (g) Reconvey any part of the Property;
      (h) Consent to any map or plat of the Property;
      (i) Consent to any easement; and
      (j) Execute any subordination agreement.

    12.2   Any action taken by Beneficiary pursuant to the terms of this Section or any modification of the rate of interest upward or downward, or modification of the period of amortization of the Note or change in the amount of the monthly installments payable under the Note or other Loan Documents, or any combination thereof, which may extend or reduce the term of the Note or this Trust Deed or both, shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Trust Deed and to observe the covenants of Borrower contained in this Trust Deed, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the Indebtedness secured by this Trust Deed, and shall not affect the lien or priority of lien of this Trust Deed on the Property. Unless otherwise provided by law, the priority of this Trust Deed shall not be affected by any change in terms whether or not it adversely affects subordinate or prior interest holders.

SECTION 13.    FORBEARANCE BY BENEFICIARY OR RECEIPT OF AWARDS NOT A WAIVER. Any forbearance by Beneficiary in exercising any right or remedy under this Trust Deed, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy. The acceptance by Beneficiary of payment of any sum secured by this Trust Deed after the due date of such payment shall not be a waiver of Beneficiary's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment, nor shall Beneficiary's receipt of any awards, proceeds or damages under this Trust Deed operate to cure or waive any default in payment of sums secured by this Trust Deed.

SECTION 14.    PROHIBITION OF TRANSFER OF PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.

    14.1   Without prior written consent of Beneficiary, Borrower shall not transfer or agree to transfer all or any part of the Property or any interest in the Property. For the purpose of this section, the occurrence of any of the following events, without limitation, or any agreement to do any of the following, without limitation, shall be deemed to be a transfer of the Property: any sale, contract to sell, conveyance, assignment or other transfer of, other lien, or other security interest in, all or any part of the legal or equitable title to the Property.

    14.2   If any of the events described in Subsection 14.1 occurs, Beneficiary, at Beneficiary's option, may declare all of the sums secured by this Trust Deed to be immediately due and payable, and may invoke any of the remedies permitted by this Trust Deed. If Borrower or a prospective transferee applies to Beneficiary for consent to transfer, Beneficiary may require such information as may be reasonably necessary for Beneficiary to assess the prospective transferee's reputation and financial ability to perform Borrower's obligations under this Trust Deed. As a condition of its consent to any transfer, Beneficiary in its discretion may impose an assumption fee, and may increase the interest rate on the Note or under the other Loan Documents. However, notwithstanding any of the foregoing, Beneficiary, in its sole discretion, may withhold its consent to any transfer for any reason whether or not withholding consent is reasonable under the circumstances. Any consent, if granted, shall not release Borrower or any

PAGE 9 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000368

 

successor in interest from personal liability for payment and performance of the Indebtedness, or for performance of this Trust Deed, the Note or other Loan Documents.

SECTION 15.     LOAN AGREEMENT PROVISIONS. Borrower shall comply with the covenants and conditions of the Loan Agreement, if any, and all other Loan Documents executed in connection with the Indebtedness secured by this Trust Deed. If the terms of this Trust Deed are inconsistent with the terms of the Loan Agreement, if any, the terms of the Loan Agreement will control.

SECTION 16.     DEFAULT.

16.1   Events of Default. The following shall constitute "Events of Default":

(a)     Failure of Borrower to pay any portion of the Indebtedness when it is due.

(b)     Failure of Borrower within the time required by this Trust Deed to make any payment for taxes, insurance or any other payment necessary to prevent filing of or discharge of any lien.

(c)     Transfer or agreement to transfer any part or interest in the Property in any manner whatsoever, including, but not limited to, allowing any lien inferior to this Trust Deed on the Property without properly notifying Beneficiary, or transfer of any other interest of Borrower as described in Section 14.

(d)     Insolvency or business failure of Borrower; the commencement by Borrower of a voluntary case under the federal bankruptcy laws or under any other federal or state law relating to insolvency or debtor's relief; the filing of an involuntary petition against Borrower under the federal bankruptcy laws or under any other applicable federal or state law relating to insolvency or debtor's relief which Borrower has not caused to be dismissed within thirty (30) days after such filing; the appointment or the consent by Borrower to the appointment of a receiver, trustee, or custodian of Borrower or of any of Borrower's property which Borrower has not caused to be withdrawn within thirty (30) days after such appointment; an assignment for the benefit of creditors by Borrower; the making or suffering by Borrower of a fraudulent transfer under applicable federal or state law; concealment by Borrower of any of its property in fraud of creditors; or the imposition of a lien through legal proceedings or distraint upon any of the property of Borrower or Borrower's failure generally to pay its debts as such debts become due.

(e)     Failure of Borrower to make any payment or perform any obligation under any superior liens or encumbrances, within the time required under those liens or encumbrances, and without regard to any grace periods as may be afforded by the terms of such liens or encumbrances, or commencement of any suit or other action to foreclose any superior or inferior liens or encumbrances.

(f)     Breach or default under the Loan Agreement or any other Loan Documents, which is not cured within any applicable cure period.

(g)     Failure of Borrower to timely perform any other obligations under this Trust Deed.

16.2   The Events of Default in this Section shall apply and refer to Borrower, any guarantor of the Indebtedness, and to each of the individuals or entities which are collectively referred to as "Borrower."

SECTION 17.     RIGHTS AND REMEDIES ON DEFAULT.

17.1   Remedies. Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Beneficiary may exercise any one or more of the following rights and remedies:

PAGE 10 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000369

 

(a) Beneficiary may declare all sums secured by this Trust Deed immediately due and payable, including, without limitation, any prepayment premium which Borrower would be required to pay under the terms of the Note or Loan Agreement.

(b) The Trustee shall have the right to foreclose by notice and sale, or Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with applicable law.

(c) If this Trust Deed is foreclosed by judicial procedure, and if permitted by applicable law, Beneficiary shall be entitled to a judgment which will provide that if the foreclosure sale proceeds are insufficient to satisfy the judgment, execution may issue for the amount of the unpaid balance of the judgment.

(d) Beneficiary shall have the right to take possession of the Property and, with or without taking possession of the Property, collect all the rents and revenues of the Property in accordance with this Trust Deed.

(e) Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect all the rents and revenues from the Property and apply the proceeds, over and above cost of the receivership, against the sums due under this Trust Deed. The receiver may serve without bond if permitted by applicable law. Beneficiary's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the sums due under this Trust Deed by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

(f) In the event Borrower remains in possession of the Property after the Property is sold as provided above or Beneficiary otherwise becomes entitled to possession of the Property upon the occurrence of an Event of Default, Borrower shall become a tenant at will of Beneficiary or the purchaser of the Property and shall pay a reasonable rental for use of the Property while in Borrower's possession.

(g) Trustee and Beneficiary shall have any other right or remedy provided in this Trust Deed, the Note, the Loan Agreement, or any other Loan Document, or available at law, in equity or otherwise, and specifically, but not limited to, any and all rights and remedies granted by ORS 86.705, et seq.

17.2 **Rights of Receiver or Beneficiary-in-Possession.** Upon taking possession of all or any part of the Property, the receiver or Beneficiary may:

(a) Use, operate, manage, control and conduct business on the Property and make expenditures for all maintenance and improvements as in its judgment are proper;

(b) Collect the income from the Property, including any past due, and apply such sums to the expenses of use, operation and management, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorney fees and to the sums secured by this Trust Deed in any order as Beneficiary shall determine in Beneficiary's sole discretion;

(c) At Beneficiary's option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors and make any changes in plans or specifications as Beneficiary deems appropriate; and

(d) Beneficiary or the receiver shall be liable to account only for those rents actually received. If the revenues produced by the Property are insufficient to pay expenses, the receiver may borrower from Beneficiary (if Beneficiary, in its sole discretion, agrees to lend) or otherwise, or Beneficiary may borrow or advance, such sums as the receiver or Beneficiary may deem necessary for purposes stated in this

PAGE 11 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000370

  

Subsection. The amounts borrowed or advanced shall bear interest from the date of expenditure until repaid at the same interest rate as provided in Section 9 of this Trust Deed. Such sums shall become a part of the Indebtedness secured by this Trust Deed and shall be payable by Borrower on demand.

17.3    **Waiver of Marshaling; Sale of the Property.** Notwithstanding the existence of any other mortgage, deed of trust, other lien or other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property, real or personal or mixed, shall be subjected to the remedies provided in this Trust Deed. Beneficiary shall have the right to determine the order in which any or all portions of the Indebtedness secured by this Trust Deed are satisfied from the proceeds realized upon the exercise of the remedies provided in this Trust Deed. In exercising its rights and remedies, Beneficiary, at Beneficiary's sole discretion, may cause all or any part of the Property to be sold as a whole or in parcels, and certain portions of the Property may be sold without selling other portions. Beneficiary may bid at any public sale on all or any portion of the Property. Borrower, any party who consents to this Trust Deed and any party who now or in the future acquires a security interest in the Property and who has actual or constructive notice of this Trust Deed hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided in this Trust Deed.

17.4    **Notice of Sale.** Beneficiary shall give Borrower reasonable notice of the time and place of any public sale of any personal property or of the time after which any private sale or other intended disposition of the personal property is to be made. Reasonable notice shall mean notice given in accordance with applicable law, and may include, without limitation, any notice required for the nonjudicial sale of the real property.

17.5    **Waiver; Election of Remedies; Remedies Cumulative.** A waiver by either party of a breach of a provision of this Trust Deed or the occurrence of an Event of Default shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. Election by Beneficiary to pursue any remedy shall not exclude pursuit of any other remedy, and all remedies of Beneficiary under this Trust Deed are distinct and cumulative and not exclusive to all other rights or remedies under this Trust Deed or Loan Documents or afforded by law or equity, and may be exercised concurrently, independently, or successively in any order whatsoever. An election to make expenditures or take action to perform an obligation of Borrower shall not affect Beneficiary's right to declare a default and exercise its remedies under this Trust Deed.

**SECTION 18.    SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.**

The covenants and agreement contained in this Trust Deed shall bind, and the rights under this Trust Deed shall inure to, the respective successors and assigns of Beneficiary and Borrower. However, nothing in this Trust Deed or other Loan Documents shall be deemed to permit Borrower to enter into any assignments or transfers except as specifically permitted pursuant to the preceding provisions of this Trust Deed. This Trust Deed and the Indebtedness secured hereby may be assigned in whole or in part or participated in whole or in part to any person by Beneficiary and without notice to or affecting Borrower's liability hereunder, and Beneficiary, in connection with such assignment, participation, or similar arrangement, may make all credit and financial data furnished and to be furnished by Borrower available to such existing or prospective assignee, participant or person. If Beneficiary assigns to any assignee, participants or other persons all of Beneficiary's interest in this Trust Deed and the Indebtedness secured hereby, then Beneficiary shall be and is released from any obligations under this Trust Deed and other Loan Documents. All covenants and agreements of Borrower shall be joint and several. In exercising any rights under this Trust Deed or taking any actions provided for in this Trust Deed, Beneficiary may act through its employees, agents or independent contractors as authorized by Beneficiary. The captions and headings of the

PAGE 12 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000371

 

sections and subsections of this Trust Deed are for convenience only and are not to be used to interpret or define the provisions of this Trust Deed.

SECTION 19.    NOTICE.

All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

|  |  |  |
|---|---|---|
| To the Borrower : | | The Lauren Paulson Trust Agreement, dated October 18, 2004 Lauren Paulson, Successor Trustee 3980 SW 170th Avenue Aloha, OR 97007 |
| To the Lender | : | Fairway Commercial Mortgage Corporation an Oregon corporation 6650 SW Redwood Lane, Suite 290 Portland, OR 97224 |

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

SECTION 20.    WAIVER OF STATUTE OF LIMITATIONS. Borrower hereby waives the right to assert any statue of limitations as a bar to the enforcement of the lien of this Trust Deed or to any action brought to enforce the Note, the other Loan Documents or any other obligation secured by this Trust Deed.

SECTION 21.    RECONVEYANCE. Upon payment of the Indebtedness secured by this Trust Deed, Beneficiary shall request Trustee to reconvey the Property and shall surrender this Trust Deed and all notes evidencing Indebtedness secured by this Trust Deed to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to the Property. Such person or persons shall pay the Trustee's fee and other costs incurred in so reconveying the Property.

SECTION 22.    SUBSTITUTE TRUSTEE. In accordance with applicable law, Beneficiary may from time to time appoint a successor trustee to any Trustee appointed under this Trust Deed. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Trust Deed and by applicable law.

SECTION 23.    ATTORNEY FEES. In the event suit or action is instituted to enforce or interpret any of the terms of this Trust Deed, including, but not limited to, any action or participation by Borrower as a debtor in, or in connection with, a case or

PAGE 13 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000372

 

proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees, witness fees (expert and otherwise), deposition costs, copying charges and other expenses. Whether or not any court action is involved, all reasonable expenses, including, but not limited to, the costs of searching records, obtaining title reports or appraisals, surveyor reports, title insurance, trustee fees, and attorney fees, incurred by Beneficiary that are necessary or advisable at any time in Beneficiary's opinion for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until paid at the default interest rate provided in the Note or other Loan Documents or if the Note or other Loan Documents contain no default rate, then at the interest rate(s) provided for in the Note.

**SECTION 24.    GOVERNING LAW; SEVERABILITY.** This Trust Deed shall be governed by the laws of the State of Oregon. In the event that any provision or clause of this Trust Deed, or the Note, or Loan Agreement or other Loan Documents conflicts with applicable law, such conflict shall not affect other provisions of this Trust Deed, the Note, the Loan Agreement or other Loan Documents which can be given effect without the conflicting provision, and to this end, the provisions of this Trust Deed, the Note, the Loan Agreement and other Loan Documents are declared to be severable.

**SECTION 25.    CONSENTS OF BENEFICIARY.** In all events where the consent of Beneficiary is required under the terms of this Agreement, Beneficiary shall grant or refuse such consent within a reasonable period of time following the receipt of such request. Any such consent may be granted or refused by Beneficiary in Beneficiary's sole and absolute discretion, without regard to any standard of good faith, fairness, or reasonableness.

**SECTION 26.    TIME OF ESSENCE.** Time is of the essence in the payment and performance of the obligations under and secured by this Trust Deed and the other Loan Documents.

**SECTION 27.    CHANGES IN WRITING.** Any term of this Trust Deed and any addendum to the Trust Deed may only be changed, waived, discharged or terminated by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. Any agreement subsequently made by Borrower or Beneficiary relating to this Trust Deed shall be superior to the rights of the holder of any intervening lien or encumbrance.

**SECTION 28.    ESTOPPEL CERTIFICATES.** Borrower, within five days of the request, shall furnish Trustee and Beneficiary a written statement, duly acknowledged, of the amount of the Indebtedness secured by this Trust Deed and whether any offsets or defenses exist against such Indebtedness. If Borrower shall fail to furnish such a statement within the time allowed, Beneficiary shall be authorized, as Borrower's attorney-in-fact, to execute and deliver such statement.

**SECTION 29.    ACCESS LAWS.**

29.1    Borrower agrees that Borrower and the Property shall at all times strictly comply with the requirements of the Americans with Disabilities Act of 1990; the Fair Housing Amendments Action of 1988; and other Federal, state, or local laws or ordinances related to disabled access; or any statute, rule, regulation, ordinance, order of governmental bodies and regulatory agencies, or order or decree of any court adopted or enacted with respect thereto , as now existing or hereafter amended or adopted (collectively, the "Access Laws"). At any time, Lender may require a certificate of compliance with the Access Laws and indemnification agreement in a form reasonably acceptable to Lender. Lender may also require a certificate of compliance with the Access Laws from an architect, engineer, or other third party acceptable to Lender.

29.2    Notwithstanding any provisions set forth herein or in any other document, Borrower shall not alter or permit any tenant or other person to alter the Property in any manner which would increase Borrower's responsibilities for compliance with the Access

PAGE 14 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000373

  

Laws without the prior written approval of Lender. In connection with such approval, Lender may require a certificate of compliance with the Access Laws from an architect, engineer, or other person acceptable to Lender.

29.3    Borrower agrees to give prompt written notice to Lender of the receipt by Borrower of any claims of violation of any of the Access Laws and of the commencement of any proceedings or investigations which relate to compliance with any of the Access Laws.

29.4    Borrower shall indemnify, defend, and hold harmless Lender from and against any and all claims, demands, damages, costs, expenses, losses, liabilities, penalties, fines, and other proceedings including without limitation reasonable attorneys fees and expenses arising directly or indirectly from or out of on in any way connected with any failure of the Property to comply with any of the Access Laws. The obligations and liabilities of Borrower under this Section shall survive any termination, satisfaction, assignment, judicial or nonjudicial foreclosure proceeding, or delivery of a deed in lieu of foreclosure.

**THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930.**

**REQUEST FOR NOTICE OF DEFAULT AND NOTICE OF SALE PURSUANT TO ORS 86.785**

Beneficiary hereby requests that Beneficiary be provided with copies of any Notice of Default or Notice of Sale concerning the Property.

**WARNING**

**UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.**

**YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR**

PAGE 15 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

**ARB000374**

 

PROPERTY DAMAGE COVERAGE OR ANY MANDATORY
LIABILITY INSURANCE REQUIREMENTS IMPOSED BY
APPLICABLE LAW.

IN WITNESS WHEREOF, Borrower has executed this Trust Deed the day and year first
written above.

The Lauren Paulson Trust Agreement, dated October 18, 2004

By: *Lauren Paulson*
Lauren Paulson, Successor Trustee


STATE OF HAWAII        )
                       ) ss.
County of _Kauai_      )


This instrument was acknowledged before me on November **28**, 2005 by Lauren
Paulson, as Successor Trustee of The Lauren Paulson Trust Agreement, dated October
18, 2004.

*D. Shaile L. Taniguchi*
Notary Public - State of Hawaii
My Commission Expires: **02/18/2008**


PAGE 16 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000375

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 45 of 47

 

## REQUEST FOR RECONVEYANCE

To Trustee:

      The undersigned is the holder of the Note or Notes secured by this Trust Deed. Said Note or Notes, together with all other Indebtedness secured by this Trust Deed, have been paid in full. You are hereby directed to cancel said Note or Notes and this Trust Deed, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Trust Deed to the person or persons legally entitled to that estate.

Date:_____

         By _____
         Title_____


--(Space Below This Line Reserved For Beneficiary and Recorder)--


PAGE 17 -- COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

ARB000376

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 46 of 47

 

Order No. 23y0024421w

**EXHIBIT "A"**
Legal Description

PARCEL III:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, in the County of Washington and State
of Oregon; and running thence South 0° 08' East along the East line of
said Lot 264, a distance of 119.5 feet; thence North 81° 37' West,
parallel with the Northerly line of said Lot 264, a distance of 293.9
feet to a point on the West line thereof; thence North 0° 16' West,
119.5 feet along the West line of said lot, to the Northwest corner of
said Lot 264; thence South 81° 37' East, 292.2 feet along the North
line of said lot to the place of beginning.

ARB000377

Case 09-32439-rld7   Doc 100   Filed 04/27/10

AFTER RECORDING RETURN TO:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNEE'S NAME AND ADDRESS:
FHLF, LLC
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNOR'S NAME AND ADDRESS:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Washington County, Oregon   2006-022801
02/17/2006 04:15:45 PM
D-A   Cnt=1   Stn=6   RECORDS1
$15.00 $5.00 $11.00 - Total = $32.00

Assignment of Deed of Trust
(Absolute Assignment)

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to FHLF, LLC, all beneficial interest under that certain Commercial Deed of Trust (the "Trust Deed"), executed by Lauren Paulson, as Successor Trustee to The Lauren Paulson Trust Agreement, dated October 18, 2004, (the "Grantor"), to Transnation Title Agency of Oregon, Trustee, and recorded on November 30, 2005 as Document No. 2005-150743, in the Official Records in the County Recorder's office of Washington County, Oregon, describing land therein as:

See Exhibit "A"

TOGETHER with all right, title and interest of the undersigned now owned or hereafter acquired in and to the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the note or notes and said Deed of Trust and that Loan Agreement of the same date as the Deed of Trust executed by the obligor under the note or notes secured by the Deed of Trust.

After Acquired Property: This Assignment covers all of Assignor's right, title and interest now or hereafter acquired with respect to the Property and the Trust Deed.

Covenants, Warranties and Agreements of Assignor: The Assignor represents, covenants, warrants and agrees with Assignee as follows:

1.    The Trust Deed and the note it secures (the "Note") are in full force and effect, enforceable according to their terms and there are no defenses to such enforceability held by the grantor under the Trust Deed and the obligor under the Note;

2.    As of the date of execution of this Assignment the total principal amount due under the Note is not less than the principal sum of $400,000.00;

EXHIBIT ___4___
PAGE __1__ OF __8__

FHLF000003

Case 09-32439-rld7    Doc 100    Filed 04/27/10

3.    This assignment is intended to be absolute and is not being given for security purposes.

FAIRWAY COMMERCIAL MORTGAGE CORPORATION

By: _____
Robert S. Seidenwurm, Vice President

STATE OF OREGON                    )
                                   ) ss.
County of Washington               )

This instrument was acknowledged before me on this ____ day of February, 2006, by Robert S. Seidenwurm, Vice President of FAIRWAY COMMERCIAL MORTGAGE CORPORATION.

_____
Notary Public for Oregon
My Commission Expires: 2/23/09

OFFICIAL SEAL
K C M REINHART
NOTARY PUBLIC - OREGON
COMMISSION NO. 369914
MY COMMISSION EXPIRES FEB. 23, 2009

EXHIBIT ____4____
PAGE ___2___ OF ___8___

FHLF000004

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 2 of 8

Case 09-32439-rld7    Doc 100    Filed 04/27/10

Order No. 23y0024421w

EXHIBIT "A"
Legal Description

PARCEL III:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, in the County of Washington and State
of Oregon; and running thence South 0° 08' East along the East line of
said Lot 264, a distance of 119.5 feet; thence North 81° 37' West,
parallel with the Northerly line of said Lot 264, a distance of 293.9
feet to a point on the West line thereof; thence North 0° 16' West,
119.5 feet along the West line of said lot, to the Northwest corner of
said Lot 264; thence South 81° 37' East, 292.2 feet along the North
line of said lot to the place of beginning.

EXHIBIT ___4___
PAGE ___3___ OF ___8___

FHLF000005

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 3 of 8



# FAIRWAY AMERICA

Effective February 4th, 2006, Fairway Commercial Mortgage Corporation, an Oregon corporation ("Fairway"), assigned the rights and interest in the Assignment of Leases and Rents dated November 28, 2005, between Fairway and Lauren Paulson, as Successor Trustee of the Lauren Paulson Trust Agreement dated October 18, 2004, to FHLF, an Oregon limited liability company.

Fairway America, LLC, successor in interest to Fairway Commercial Mortgage Corporation

By: Skylands Investment Corporation, Member

By: _____
Matthew W. Burk, President

(503) 906-9100 office  (503) 906-9101 fax
6650 SW REDWOOD LANE, SUITE 290  PORTLAND, OR 97224
www.fairwayamerica.com

EXHIBIT 4
PAGE 4 OF 8

SPECIALTY FINANCE & INVESTMENTS

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 4 of 8

Case 09-32439-rld7    Doc 100    Filed 04/27/10

AFTER RECORDING RETURN TO:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNEE'S NAME AND ADDRESS:
FHLF, LLC
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNOR'S NAME AND ADDRESS:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Washington County, Oregon
0 ... /2006 04:13:45 PM    **2006-022802**
0...
$13.00 $5.00 $11.00 - Total = $22.00

Assignment of Deed of Trust
(Absolute Assignment)

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to FHLF, LLC,
all beneficial interest under that certain Commercial Deed of Trust (the "Trust Deed"), executed
by Huber-Wheeler Crossing, LLC, an Oregon limited liability company, (the "Grantor"), to
Transnation Title Agency of Oregon, Trustee, and recorded on November 30, 2005 as Document
No. 2005-150742, in the Official Records in the County Recorder's office of Washington
County, Oregon, describing land therein as.

    See Exhibit "A"

TOGETHER with all right, title and interest of the undersigned now owned or hereafter acquired
in and to the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under the note or notes and said Deed of
Trust and that Loan Agreement of the same date as the Deed of Trust executed by the obligor
under the note or notes secured by the Deed of Trust.

    After Acquired Property: This Assignment covers all of Assignor's right, title and
interest now or hereafter acquired with respect to the Property and the Trust Deed.

    Covenants, Warranties and Agreements of Assignor. The Assignor represents,
covenants, warrants and agrees with Assignee as follows:

    1.    The Trust Deed and the note it secures (the "Note") are in full force and effect,
enforceable according to their terms and there are no defenses to such enforceability held by the
grantor under the Trust Deed and the obligor under the Note;

    2.    As of the date of execution of this Assignment the total principal amount due
under the Note is not less than the principal sum of $400,000.00;

EXHIBIT __4__
PAGE __5__ OF __8__

FHLF000026

3.    This assignment is intended to be absolute and is not being given for security purposes

FAIRWAY COMMERCIAL MORTGAGE CORPORATION

By: _____
Robert S. Seidenwurm, Vice President

STATE OF OREGON                    )
                                   ) ss
County of Washington               )

This instrument was acknowledged before me on this 24th day of February, 2006, by Robert S. Seidenwurm, Vice President of FAIRWAY COMMERCIAL MORTGAGE CORPORATION.

OFFICIAL SEAL
K C M REINHART
NOTARY PUBLIC - OREGON
COMMISSION NO. 382914
MY COMMISSION EXPIRES FEB. 23, 1999

_____
Notary Public for Oregon
My Commission Expires   2/23/09

EXHIBIT  4
PAGE  6  OF  8

FHLF000027

Case 09-32439-rld7    Doc 100    Filed 04/27/10

Order No. 23y0024421w

EXHIBIT "A"
Legal Description

PARCEL I:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 186.6 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 80 feet to a point
on the East right-of-way of 170th Avenue; thence South 0° 16' East,
along the East right-of-way, a distance of 133.3 feet to the Southeast
corner of said lot; thence South 81° 37' East along the South line of
said lot, a distance of 80 feet to a point; thence North 0° 16' East
to the South line of the Thomas tract and the point of beginning.

PARCEL II:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 70 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 116.6 feet to a
point; thence South 0° 16' East, a distance of 108 feet, more or less,
to a point on the South line of said lot that is North 81° 37' West,
186.6 feet from the Southeast corner of said lot; thence South 81° 37'
East along the South line of said lot, a distance of 115.6 feet;
thence North 0° 16' East, 108 feet, more or less, to the point of
beginning.

PARCEL IV:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded subdivision in the
County of Washington and State of Oregon; and running thence South 0°
08' East along the East line of said Lot 264, a distance of 119.5 feet
to the Southeast portion of that tract conveyed to Alan G. Thomas by
deed recorded in Book 315, Page 36, Deed Records of Washington County,
Oregon, and the true point of beginning of the tract herein described;
thence North 81° 37' West along the South line of said Thomas tract, a
distance of 70 feet to a point; thence South 0° 16' East, parallel
with the West line of Lot 264, a distance of 108 feet, more or less,
to a point on the South line of said lot; thence South 81° 37' East,
70 feet to the Southeast corner of said Lot 264; thence North 0° 08'
East, a distance of 108 feet to the point of beginning.

EXHIBIT 4
PAGE 7 OF 8

FHLF000028

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 7 of 8



# F A I R W A Y   A M E R I C A

Effective February 4th, 2006, Fairway Commercial Mortgage Corporation, an Oregon corporation ("Fairway"), assigned the rights and interest in the Assignment of Leases and Rents dated November 28, 2005, between Fairway and Huber-Wheeler Crossing LLC, an Oregon limited liability company to FHLF, an Oregon limited liability company.

Fairway America, LLC, successor in interest to Fairway Commercial Mortgage Corporation

By: Skylands Investment Corporation, Member

By: _____
    Matthew W. Burk, President

(503) 906-9100 office   (503) 906-9101 fax
6650 SW REDWOOD LANE   SUITE 290   PORTLAND, OR 97224
www.fairwayamerica.com

EXHIBIT  4
PAGE  8  OF  8

SPECIALTY FINANCE & INVESTMENTS

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 8 of 8

**S&W** | SCHWABE, WILLIAMSON & WYATT
ATTORNEYS AT LAW

Pacwest Center, 1211 SW 5th Ave., Suite 1900, Portland, OR 97204 | Phone 503.222.9981 | Fax 503.796.2900 | www.schwabe.com

CRAIG G. RUSSILLO
Admitted in Oregon and Washington
Direct Line: 503-796-2092
E-Mail: crussillo@schwabe.com

February 4, 2010

**CONFIDENTIAL SETTLEMENT STATEMENT**

Amy E. Mitchell
Attorney at Law
P.O. Box 2289
Lake Oswego, OR  97035

> Re:   Resolution of Paulson Claims
>        Our File No.: 116063-160139

Dear Amy:

As we discussed, our office represents FHLF, LLC.  The purpose of our telephone conversation last week was to discuss the resolution of certain claims asserted on behalf of Lauren Paulson, individually or on behalf of entities that he controls, against FHLF and others. Before I set forth our offer, I want to give you a brief history of this dispute.

On November 28, 2005, Fairway Commercial Mortgage Corporation ("Fairway") made a business loan (the "Loan") to Huber-Wheeler Crossing LLC ("HWC").  A copy of the Loan Agreement is attached as Exhibit 1.  HWC is a single-member, Oregon limited liability company, with Mr. Paulson as the sole member.  To secure HWC's repayment of the Loan, Fairway was granted two trust deeds ("Trust Deeds") over certain real property located in Washington County ("Property")[1].  HWC was the grantor under one Trust Deed; the grantor under the other Trust Deed was Lauren Paulson, Trustee of The Lauren Paulson Trust Agreement.  Copies of the Trust Deeds are collectively attached as Exhibit 2. Fairway's rights under the Trust Deeds were assigned to FHLF.

In 2008, HWC was unable to make the payments under the Loan, which resulted in FHLF initiating non-judicial foreclosure proceedings. Prior to the sales, Mr. Paulson, acting as a representative of HWC, attempted to negotiate a forbearance agreement with FHLF.  The parties were unable to reach an agreement, primarily because Mr. Paulson would not agree to release

---

[1] The Property is actually made up of four separate tax lots. For ease of reference, the four properties are collectively referred to as the Property.

Portland, OR  503.222.9981 | Salem, OR  503.540.4262 | Bend, OR  541.749.4044
Seattle, WA  206.622.1711 | Vancouver, WA  360.694.7551 | Washington, DC  202.488.4302

PDX/116063/160139/CGR/5580325.1

EXHIBIT __9__
PAGE __1__ OF __4__

R6

ARB003565

language contained in the forbearance agreement. Mr. Paulson repeatedly told FHLF counsel that he did not have any claims against FHLF and, thus, a release was not necessary. When negotiations concluded without the execution of a forbearance agreement, mere days later, on August 21, 2008, Mr. Paulson, purporting to act on behalf of HWC, sued FHLF and others, including FHLF's then counsel, Joel Parker, in federal court in Oregon ("Lawsuit"). A copy of the Second Amended Complaint filed by Mr. Paulson is attached as Exhibit 3.

In the Lawsuit, Mr. Paulson claimed to represent HWC, even though Mr. Paulson is a now-disbarred lawyer.[2] The caption reads that Mr. Paulson is acting as "Trustee and Operating Manger of Huber-Wheeler Crossing, LLC (inactive). In the Lawsuit, Mr. Paulson made numerous, bizarre claims against FHLF and others. Mr. Paulson has asserted three federal claims: Violation of the Truth in Lending Act, Home Ownership and Equity Protection Act of 1994, and Real Estate Settlement Procedure Act. Mr. Paulson has also alleged a claim for fraudulent inducement and various contractual claims. As will be explained below, all claims are without merit and FHLF is confident that they will be dismissed.

Despite the Lawsuit, FHLF continued with the non-judicial foreclosures of the Trust Deeds. In a desperate attempt to stop the foreclosure sales, Mr. Paulson filed a motion for TRO. The day before the hearing, Mr. Paulson transferred the Property into his own name and filed a chapter 11 bankruptcy. The chapter 11 was filed on April 9, 2009. As a result of the bankruptcy, Judge Stewart (the judge assigned to the Lawsuit) stayed all proceedings in the Lawsuit.

After Mr. Paulson filed his chapter 11, FHLF filed a motion for relief from stay on the grounds, in part, that there was no equity in the Property and the Property was not necessary to an effective reorganization. Rather than go to hearing, Mr. Paulson stipulated to relief from stay. Attached as Exhibit 4 is a copy of the Stipulated Order for Relief ("Order"). Under the Order, relief from stay was immediately granted but Mr. Paulson was given until August 31, 2009 to sell the Property. If he did not, FHLF would be entitled to hold its foreclosure sales. Mr. Paulson did not finalize a sale by the end of August. Despite its ability to hold a foreclosure sale of the Property, FHLF gave Mr. Paulson additional time to close a sale of the Property, but Mr. Paulson was unable to do so. FHLF waited until September 25, 2009, at which time FHLF held a foreclosure sale and purchased the Property via a credit bid. Mr. Paulson did not attend the sale. FHLF then gave Mr. Paulson until November 29, 2009 to vacate the Property.

After FHLF purchased the Property, Mr. Paulson converted his chapter 11 to his current chapter 7. In an abundance of caution, FHLF sought and obtained an order for relief from the automatic stay to initiate FED proceedings to evict Mr. Paulson from the Property. On January 13, 2010, FHLF filed FED proceedings in Washington County. Before the first appearance in those cases, Mr. Paulson filed a "Petition for Removal," whereby he purported to remove the FED cases into the Lawsuit. Attached as Exhibit 5 is a copy of the "Petition for Removal." Mr. Paulson's attempted removal is procedurally and substantively defective for a number of reasons. Suffice it to say, Mr. Paulson has no right to remove the FED cases to federal court.

---

[2] At the time the Lawsuit was filed, Mr. Paulson's license was suspended.

SWW

EXHIBIT 9
PAGE 2 OF 4

ARB003566

Although the "Petition for Removal" listed the case number in the Lawsuit, he has managed to obtain a new case number and has filed a Third-Party Complaint against all of the defendants in the Lawsuit, asserting most of the same claims ("Second Lawsuit"). In the Second Lawsuit, Mr. Paulson has seen fit to sue me, personally. A copy of the Third-Party Complaint is attached as Exhibit 6.

All of Mr. Paulson's claims are without merit and will be ultimately dismissed. A brief discussion of the claims follows. As further support for FHLF's position regarding Mr. Paulson's claims, attached as Exhibit 7 is FHLF's Motion to Dismiss filed in the Lawsuit.

•    Mr. Paulson was not a party to the business loan between Fairway and HWC, he lacks the right to demand relief under its terms. Therefore, his claims for Fraud, violation of Oregon Lending Law, Promissory Estoppel, Usury, Rescission, Accord and Satisfaction, Unfair Trade Practices, Breach of Contract, Violation of the Truth in Lending Act, Home Ownership and Equity Protection Act of 1994, and Real Estate Settlement Procedure Act all address the loan agreement under which he has no right to recover. Those claims will be dismissed.

•    Mr. Paulson asserts three federal claims: Violation of the Truth in Lending Act, Home Ownership and Equity Protection Act of 1994, and Real Estate Settlement Procedure Act. These claims are unavailable to him because these federal statutes only provide protection to consumers and transactions principally for a personal, family, or household purpose. The whole case has arisen out of a business loan made to an entity that was supported by an affidavit executed by Mr. Paulson at the time of the loan that none of the funds were to be used for a personal, family, or household purpose. Even if these federal statutes somehow protected Mr. Paulson, however, these claims are time barred as a matter of law.

•    In addition to failing to state the requirements for his claim of Fraud, Mr. Paulson asserts that FHLF did not receive relief from the automatic stay of bankruptcy before the foreclosure sale. The Order shows that FHLF did have relief from the stay before proceeding with the foreclosure sale.

•    Mr. Paulson's Breach of Good Faith and Fair Dealing claims will not succeed because he failed to allege any contract to which the duty of good faith and fair dealing attaches. Instead, Mr. Paulson alleges that FHLF repeatedly promised to cancel the business loan in its entirety. (His claim for Promissory Estoppel also alleges this promise.) FHLF made no such promise. Similarly, Mr. Paulson's Breach of Contract claims are based on easily refuted factual allegations.

•    Mr. Paulson claims that Ms. Keefe, the court approved real estate broker under the Order, was involved in a conspiracy with FHLF to prevent the sale of the Property. This claim is spurious and does not warrant a response.

FHLF is prepared to defend against the claims in the Lawsuit and the Second Lawsuit. It is confident that whatever case remains, the judge handling the matter will see the claims for what they are and dismiss them. That said, FHLF recognizes that it will incur attorney fees

PDX/116063/160139/CGR/5580325.1

S&W

EXHIBIT 9
PAGE 3 OF 4

ARB003567

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 3 of 4

having to resolve the claims. Therefore, it wants to explore resolving those claims through a payment to the chapter 7 trustee. FHLF seeks four things from the chapter 7 trustee: (1) settlement of all claims in the Lawsuit and Second Lawsuit against all defendants; (2) release of any and all claims Mr. Paulson (on behalf of himself and all entities or trusts he controls) had, has, or may have against any defendant named in the Lawsuit or Second Lawsuit, their officers, agents, independent contractors, affiliates, assigns, and attorney; (3) acquisition of all membership units in HWC owned or held by Mr. Paulson; and (4) any interest Mr. Paulson has or had in The Lauren Paulson Trust Agreement. In exchange, FHLF is willing to pay the chapter 7 trustee the sum of $5,000.00. This is the amount that FHLF believes it will have to incur to rid itself of the Lawsuit and Second Lawsuit. Please contact me as soon as possible so we can discuss this matter in greater depth.

Respectfully,

Craig G. Russillo

cc:    Greg Blair

S&W

EXHIBIT 9
PAGE 4 OF 4

PDX/116063/160139/CGR/5580325.1

ARB003568

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 4 of 4

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made this 17th of May, 2010 ("Effective Date"), between FHLF, LLC, an Oregon limited liability company ("FHLF"), and Amy Mitchell, in her capacity as Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate of Lauren J. Paulson ("Estate"). The above parties are sometimes hereinafter individually referred to as a "Party," and collectively as the "Parties."

### Recitals

A.   On or about November 28, 2005, Fairway Commercial Mortgage Corporation now-known-as Skylands Investment Corporation ("Skylands") entered into a loan agreement ("Loan Agreement") with Huber-Wheeler Crossing, LLC ("HWC") for a loan in the amount of $400,000 ("Loan"). A copy of the Loan Agreement is attached as Exhibit 1. In connection with the Loan, HWC executed and delivered to Skylands a Secured Promissory Note ("Note") in the original principal balance of $400,000. A copy of the Note is attached as Exhibit 2.

B.   To secure HWC's complete and timely performance under the Loan Agreement and Note, HWC executed and delivered to Skylands a Commercial Deed of Trust covering certain real property located in Aloha, Oregon ("HWC Deed of Trust"). A copy of the HWC Deed of Trust is attached as Exhibit 3. In addition to the HWC Deed of Trust, to secure HWC's complete and timely performance under the Loan Agreement and Note, the Lauren Paulson Trust ("LP Trust") executed and delivered to Skylands a Commercial Deed of Trust covering certain real property located in Aloha, Oregon ("LP Trust Deed of Trust"). A copy of the LP Trust is attached as Exhibit 4. The HWC Deed of Trust and the LP Deed of Trust are collectively referred to herein as the "Trust Deeds." The real property covered under the Trust Deeds is collectively referred to herein as the "Properties." The Loan Agreement, Note, HWC Deed of Trust, and LP Deed of Trust are collectively referred to herein as the "Loan Documents," although they may not constitute all of the loan documents executed in connection with the Loan.

C.   In early 2006, Skylands assigned the Loan and Loan Documents to FHLF, who currently has the right to enforce those agreements.

D.   In 2008, HWC defaulted under the Loan by reason of its failure to pay the required payments due under the Note. In August of 2008, FHLF notified HWC that FHLF intended to initiate nonjudicial foreclosures of the Trust Deeds. On or about August 21, 2008, Lauren Paulson filed an action against Skylands, Fairway America, LLC, the successor in interest to the Fairway business ("Fairway"), FHLF, and other person and companies in United States District Court for the District of Oregon, under case No. 3:08-CV- 00982-ST ("2008 Lawsuit"). A copy of Mr. Paulson's Second Amended Complaint filed in the 2008 Lawsuit is attached as Exhibit 5. In the 2008 Lawsuit, Mr. Paulson asserted a variety of claims against Fairway, FHLF, Skylands, and other parties arising out of or related to the Loan.

1 - SETTLEMENT AGREEMENT AND RELEASE
PDX/116063/160139/CGR/5969073.7

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 1 of 6

E.    In November of 2008, FHLF initiated nonjudicial foreclosures of the Trust Deeds, setting the foreclosure sales for April 10, 2009.  On April 8, 2009, HWC and the LP Trust deeded the Properties to Mr. Paulson, who then filed a chapter 11 bankruptcy under case No. 09-32439-rld11 ("Chapter 11 Case").  In the Chapter 11 Case, Mr. Paulson and FHLF stipulated to relief from stay ("Stipulation") regarding the Properties, which gave Mr. Paulson a finite amount of time to sell the Properties, after which FHLF could continue with the foreclosure sales.  A copy of the Stipulation is attached as Exhibit 6.

F.    Mr. Paulson failed to sell the Properties within the time set forth in the Stipulation.  As a result, FHLF held the foreclosure sales and purchased the Properties by credit bid on September 25, 2009.

G.    On or about November 25, 2009, Mr. Paulson converted his Chapter 11 Case to a case under chapter 7 of the bankruptcy code ("Chapter 7 Case").  The Chapter 7 Case was given case No. 09-32439rld7.  Upon the conversion to the Chapter 7 Case, the Trustee was appointed to act as the Chapter 7 trustee in Mr. Paulson's bankruptcy case.

H.    On November 5, 2009, FHLF demanded that Paulson vacate the Properties.  He refused.  On January 12, 2010, FHLF filed three separate actions in Washington County Circuit Court to evict Mr. Paulson from the Properties ("FED Cases").  Immediately after filing the FED Cases, Mr. Paulson removed the cases to the United States District Court for the District of Oregon, and asserted numerous third party claims.  The removed FED Cases were given case No. CV-00048-MO ("2009 Lawsuit").  A copy of Mr. Paulson's Answer and Third Party Complaint filed in the 2009 Lawsuit is attached as Exhibit 7.  In the 2009 Lawsuit, Mr. Paulson asserted a variety of claims against Fairway, FHLF, Skylands, and other parties arising out or related to the Loan, many of which were identical to the claims contained in the 2008 Lawsuit.  On or about March 4, 2010, Judge Mossman remanded the FED Cases back to Washington County Circuit Court.  Once remanded, Mr. Paulson filed an amended Answer and Third Party Claims, a copy of which is attached as Exhibit 8.

I.    On February 4, 2010, FHLF, through counsel, offered the Trustee $5,000 to: (1) settle all claims that Mr. Paulson, HWC, or the LP Trust may have against Fairway, FHLF, Skylands, and all parties concerning (a) the 2008 Lawsuit and the 2009 Lawsuit (collectively, the "Litigation"), (b) the Loan, and (c) the Properties; (2) purchase Mr. Paulson's units in HWC; and, (3) purchase any interest Mr. Paulson owns in the LP Trust related in any way to the Loan, Litigation, or the Properties.  A copy of FHLF's February 4, 2010 letter is attached as Exhibit 9.  The Trustee accepted FHLF's proposal ("Settlement").

J.    On February 25, 2010, the Trustee filed her Motion and Notice of Intent to Settle and Compromise and Order Thereon related to the Settlement ("Motion").  A copy of the Motion is attached as Exhibit 10.  Mr. Paulson objected to the Motion.  On May 7, 2010, the Honorable Randall L. Dunn held an evidentiary hearing on

2 - SETTLEMENT AGREEMENT AND RELEASE

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 2 of 6

the Motion. Judge Dunn overruled Mr. Paulson's objection and approved the Settlement. A copy of Judge Dunn's Order is attached as Exhibit 11.

K.     Based upon the Motion and Judge Dunn's Order, FHLF and the Trustee seek to memorialize the terms of the Settlement, as set forth below.

<u>Agreement</u>

NOW, THEREFORE, in consideration of the following mutual covenants, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, FHLF and the Trustee, intending to be legally bound, agree to the following:

1.     **Recitals.**    The Parties expressly incorporate the above Recitals into this Agreement.

2.     **Payment to Trustee.**    Within five (5) days of the complete execution of this Agreement, FHLF shall pay to the Trustee the sum of 5,000 ("Settlement Amount"). The Settlement Amount shall be paid by check made payable to "The Bankruptcy Estate of Paulson."

3.     **Trustee's Releases.**    In exchange for and in consideration of payment of the Settlement Amount, promises contained herein, and except for any material breach of this Agreement by FHLF, the Trustee, on behalf of the Estate, completely releases and forever discharges FHLF, Fairway, Skylands, Mathew Burk, Sterling Savings Bank, Wells Fargo Foothills, Franki Keefe, Joel Parker, and Craig Russillo as well as each of their members, partners, affiliates, parents, subsidiaries, officers, directors, agents, employees, representatives, related entities, attorneys, and successors and assigns ("FHLF Released Parties"), from any and all actions, causes of action, claims, charges, judgments, obligations, demands, grievances, damages, costs, attorney fees, expenses or liabilities of any kind or nature whatsoever, in law or in equity, which exist as of the Effective Date of this Agreement, or which may hereafter accrue on account of any circumstance, whether known or unknown, patent or latent, anticipated or unanticipated, asserted or unasserted, arising out of or in any way related to the Loan or the Litigation, specifically including, but not limited to, any claims arising out of or related to ORS §§ 86.705 – 86.990 and any claims of ownership or other interest in the Properties. The Trustee acknowledges the intention that this Agreement shall be effective as a full and final accord and satisfaction in settlement of and as a bar to each and every claim identified herein and released which Estate now has, may have, have had, or may have had against the FHLF Released Parties. In connection with such waiver and relinquishment, the Trustee acknowledges that it is her intention to fully, finally, absolutely and forever settle any and all claims, disputes and differences which exist, may exist, or may have existed between Mr. Paulson or his bankruptcy estate and the FHLF Released Parties, arising out of or related to in any way the Loan or Litigation. In furtherance of that intention, the releases herein shall be and remain in effect as full and complete general releases notwithstanding the discovery of any such different or additional facts.

4.     **Assignment of HWC Units.**    In exchange for and in consideration of payment of the Settlement Amount and promises contained herein, the Trustee shall assign to FHLF all of

3 - SETTLEMENT AGREEMENT AND RELEASE
PDX/116063/160139/CGR/5969073.7

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 3 of 6

the Estate's units in HWC. Attached to this Agreement as Exhibit 12 is a form Assignment Agreement that the Parties shall execute to memorialize the assignment.

     5.    **Assignment of LP Trust Interest.** The LP Trust is a revocable trust, as defined under ORS § 130.010(15). Under ORS § 130.415, the assets of the LP Trust are property of Paulson's bankruptcy estate. To the extent not otherwise covered in section 3, above, in exchange for and in consideration of payment of the Settlement Amount and promises contained herein, the Trustee, as successor trustee of the LP Trust, assigns to FHLF, without recourse and without warranty of any kind, all of the Estate's right, title, and interest in the Trust related in any way to the Loan, Litigation, or the Properties.

     6.    **Advice of Counsel.** The Parties hereby acknowledge the following: (1) that they were provided a reasonable period of time to review and consider this Agreement; (2) that they have sought and received the advice of their attorney prior to signing this Agreement, or had the opportunity to consult with an attorney and chose not to do so; (3) that they understand that they are waiving legal rights by signing this Agreement; (4) that they have reviewed this Agreement, that this Agreement is written in a manner that is understandable to them, and that they indeed understand the entirety of this Agreement and the effect(s) of signing this Agreement; and (5) that they sign this Agreement of their own free act and deed, without any coercion or duress, and that they hereby release the rights and claims set forth above in exchange for the consideration set forth in this Agreement.

     7.    **Time Essence.** Time is of the essence with respect to all obligations set forth in this Agreement.

     8.    **Attorney Fees and Costs.** Except as otherwise provided for in this Agreement, the Parties agree that each Party shall be responsible for its own costs, expenses and attorney fees incurred in connection with the subject matter and negotiation of this Agreement. If any action is instituted to interpret, enforce, or rescind this Agreement, including but not limited to any proceeding brought under the United States Bankruptcy Code, the prevailing party on a claim will be entitled to recover with respect to the claim, in addition to any other relief awarded, the prevailing party's reasonable attorney fees and other fees, costs, and expenses of every kind, including but not limited to the costs and disbursements specified in ORCP 68 A(2), incurred in connection with the litigation, any appeal or petition for review, the collection of any award, or the enforcement of any order.

     9.    **Final Agreement.** It is fully understood and agreed that except as otherwise provided in this Agreement, this Agreement, along with all exhibits, constitutes the full agreement between the Parties regarding the subject matter hereof. All prior and contemporaneous agreements, covenants, negotiations, conversations, representations and understandings of the Parties, oral or written, concerning the subject matter of this Agreement are hereby superseded and merged herein. Any modifications or amendments to this Agreement must be in writing and executed by all of the Parties.

     10.    **No Waiver.** Except as otherwise expressly provided in this Agreement, no delay by a Party in exercising any right or remedy will constitute a waiver of a Party's rights under this Agreement, and no waiver by either Party of the breach of any covenant of this Agreement by

4 - SETTLEMENT AGREEMENT AND RELEASE
PDX/116063/160139/CGR/5969073.7

the other will be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of this Agreement.

11.     **Construction of Agreement.** This Agreement is the result of negotiations among the Parties and, accordingly, will not be construed for or against either Party, regardless of which Party drafted this Agreement or any portion thereof.

12.     **Binding Agreement.** This Agreement is binding upon the Parties hereto and upon their respective members, partners, affiliates, parents, subsidiaries, officers, directors, agents, employees, representatives, related entities, successors and assigns and will inure to the benefit of said Parties. The Parties agree and expressly warrant that they are the sole owners of all of their respective rights, causes of action and claims released in this Agreement and have not sold, assigned, transferred or granted to any person or entity any interest in any rights, causes of action, or claims released in this Agreement.

13.     **Amendments.** This Agreement may be amended only by a written agreement signed by each Party.

14.     **Counterpart.** This Agreement may be signed in counterparts. A fax transmission of a signature page will be considered an original signature page. At the request of a Party, the other Party will confirm a fax-transmitted signature page by delivering an original signature page to the requesting Party.

FHLF, LLC

By: _____

Its: _____DESIGNATED AGENT_____

Address: __6650 SW Redwood Ln. #390__

__PORTLAND, OR 97224__

Dated: _____5-17-10_____

**BANKRUPTCY ESTATE OF LAUREN J. PAULSON**

By: _____

Its: Trustee _____

Address: _____

_____

Dated: _____

5 - SETTLEMENT AGREEMENT AND RELEASE
PDX/116063/160139/CGR/5969073.7

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 5 of 6

the other will be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of this Agreement.

11.     **Construction of Agreement.** This Agreement is the result of negotiations among the Parties and, accordingly, will not be construed for or against either Party, regardless of which Party drafted this Agreement or any portion thereof.

12.     **Binding Agreement.** This Agreement is binding upon the Parties hereto and upon their respective members, partners, affiliates, parents, subsidiaries, officers, directors, agents, employees, representatives, related entities, successors and assigns and will inure to the benefit of said Parties. The Parties agree and expressly warrant that they are the sole owners of all of their respective rights, causes of action and claims released in this Agreement and have not sold, assigned, transferred or granted to any person or entity any interest in any rights, causes of action, or claims released in this Agreement.

13.     **Amendments.** This Agreement may be amended only by a written agreement signed by each Party.

14.     **Counterpart.** This Agreement may be signed in counterparts. A fax transmission of a signature page will be considered an original signature page. At the request of a Party, the other Party will confirm a fax-transmitted signature page by delivering an original signature page to the requesting Party.

FHLF, LLC

By:_____
Its:_____
Address:_____
_____
Dated:_____


BANKRUPTCY ESTATE OF LAUREN J. PAULSON

By:_____
Its: Trustee_____
Address:_____ PO Box 2289_____
_____ Lake Oswego, OR 97035___
Dated: 5/18/2010_____


5 - SETTLEMENT AGREEMENT AND RELEASE
PDX/116063/160139/CGR/5969073.7


Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 6 of 6

Case: 10-1173   Document: 009180762   Filed: 05/10/2011   Page: 1 of 20

**FILED**

NOT FOR PUBLICATION

MAY 10 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No.   OR-10-1173-MkHJu |
| LAUREN PAULSON, | ) Bk. No.   09-32439-rld7 |
| Debtor. | ) |
| LAUREN PAULSON, | ) |
| Appellant, | ) |
| v. | ) MEMORANDUM[*] |
| AMY MITCHELL, Chapter 7 | ) |
| Trustee; FHLF, LLC, | ) |
| Appellees. | ) |

Argued and Submitted on March 16, 2011
at Pasadena, California

Filed - May 10, 2011

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Randall L. Dunn, Bankruptcy Judge, Presiding

Appearances:   Appellant Lauren Paulson, pro se, argued on his
own behalf; and Craig Russillo of Schwabe,
Williamson & Wyatt, P.C., argued on behalf of
Appellee FHLF, Inc.

Before:   MARKELL, HOLLOWELL and JURY, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtor and appellant Lauren Paulson ("Paulson") appeals the order of the bankruptcy court approving the settlement between chapter 7[1] trustee Amy Mitchell ("Trustee") and FHLF, LLC. ("FHLF"). We AFFIRM.

**FACTS**

In November 2005, FHLF's predecessor in interest Fairway Commercial Mortgage Corporation[2] made a $400,000 loan (the "Loan") secured by four parcels of real property (collectively, the "Property"). Paulson's LLC, Huber-Wheeler Crossing, LLC (the "LLC"), owned three of the four parcels, and the Lauren Paulsen Trust owned the fourth parcel (the "Trust"). The Property contains three structures of note, Paulson's former law offices and two separate rental properties. At some point, Paulson ceased practicing law, but he continued to occupy a portion of the Property as his residence until he was evicted in May 2010. Paulson is the sole and managing member of his LLC. According to Paulson, he formed the LLC to own and operate the two rental properties on the Property.

All of the documentation for the Loan identifies the Loan as a commercial loan and identifies the LLC as the borrower. Paulson nonetheless has disputed these facts. Paulson claims that he always intended to use the Loan proceeds as a personal

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] FHLF and its predecessor in interest are jointly referred to herein as "Fairway."

2

1  loan for consumer purposes.  According to Paulson, he does not

2  recall ever reading the Loan documents, even though he admits

3  that he signed them.  The signature block on one of the two deeds

4  of trust indicates that Paulson signed as "Successor Trustee" of

5  the Trust.  The signature blocks on all of the other Loan

6  documents indicate that Paulson signed as "Managing Member" of

7  the LLC.

8      The LLC defaulted on payments due under the Loan in February

9  2008.  During the next several months, the parties engaged in

10  negotiations concerning the Loan.  Also during this period,

11  Paulson unsuccessfully attempted to market and sell the Property.

12  In August 2008, when negotiations faltered, Fairway sent the LLC

13  a formal demand letter for the cure of the Loan default, and

14  Paulson filed a "predatory lending" lawsuit against Fairway and

15  others in the United States District Court for the District of

16  Oregon, Case No. CV-08-00982-ST (the "Predatory Lending

17  Lawsuit").

18      Paulson asserted numerous causes of action in his Predatory

19  Lending Lawsuit, including: violations of the Truth in Lending

20  Act ("TILA"); violations of the Real Estate Settlement Procedures

21  Act ("RESPA"); violations of the Home Ownership and Equity

22  Protection Act of 1994 ("HOEPA"); fraud; violations of Oregon

23  lending law; breach of contract; breach of good faith and fair

24  dealing; promissory estoppel; declaratory relief; conspiracy;

25  injunction; interference with prospective economic advantage;

26  usury; rescission; accord and satisfaction; and unfair and

27  deceptive trade practices.  Paulson further alleged that the

28  Predatory Lending Lawsuit should be tried as a class action.

3

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 3 of 20

Case: 10-1173   Document: 009180762   Filed: 05/10/2011   Page: 4 of 20

1    While Paulson alleged a number of different grounds for the

2    relief he sought, the grounds essentially boiled down to three

3    separate instances of alleged misconduct: (1) breach, fraud and

4    nondisclosure relating to the 2005 Loan; (2) breach, fraud and

5    nondisclosure during the course of the 2008 workout/forbearance

6    negotiations; and (3) breach, fraud and interference in

7    connection with Paulson's attempts to market and sell the

8    Property.  According to Paulson, all of the acts of Fairway and

9    the other Predatory Lending Lawsuit defendants were part of an

10   overarching scheme primarily intended to deprive Paulson of his

11   ownership and equity in the Property.[3]

12       In March 2009, Fairway and some of the other defendants in

13   the Predatory Lending Lawsuit filed a Civil Rule 12(b)(6) motion

14   to dismiss most of the causes of action stated in Paulson's

15   second amended complaint.  In the motion to dismiss, Fairway

16   contended, inter alia: (1) that Paulson was not a party to the

17   loan, so he personally had no rights to enforce with respect to

18   the Loan; (2) that TILA, RESPA and HOEPA only apply to consumer

19   loans made primarily for personal, family or household use,

20   whereas the Loan was a commercial loan expressly made for

21

_____

22       [3]Paulson also later complained about Fairway's conduct
23   during his bankruptcy case, which conduct ultimately led to
     Fairway's foreclosure on the Property and Paulson's eviction
24   therefrom.  Paulson filed counterclaims and third party claims
     against Fairway and others in Fairway's Oregon state court
25   litigation for possession of the Property (the "Eviction
     Proceedings").  While Paulson's counterclaims and third party
26   claims in the Eviction Proceedings largely overlapped with his
     causes of action in the Predatory Lending Lawsuit, Paulson's
27   Predatory Lending Lawsuit predated Paulson's bankruptcy filing
     and did not contain any allegations covering Fairway's alleged
28   postpetition conduct.

4

1   business purposes; (3) that Paulson had failed to state his fraud

2   claims with specificity; and (4) that Paulson had not

3   sufficiently alleged the elements for claims for relief based on

4   breach of good faith and fair dealing, interference with

5   prospective economic advantage and usury.

6        Fairway also commenced and continued to pursue foreclosure

7   proceedings against the Property, but before foreclosure occurred

8   and before the hearing on its motion to dismiss, Paulson filed a

9   chapter 11 bankruptcy petition, on April 8, 2009.  According to

10  Paulson, he caused his LLC and the Trust to convey the Property

11  to him at the time of his bankruptcy filing, so he listed the

12  Property in his Schedule A listing of real property.  He also

13  listed Fairway's security interest in the Property in his

14  Schedule D listing of secured creditors, but he did not list the

15  Predatory Lending Lawsuit as an asset of his estate.[4]

16       Shortly after Paulson filed his bankruptcy, Fairway filed a

17  motion seeking relief from stay to permit Fairway to resume its

18  foreclosure proceedings against the Property.  In June 2009,

19  Paulson and Fairway stipulated to relief from stay.  In exchange

20  for Paulson's consent to modification of the stay, Fairway agreed

21  to give Paulson until September 14, 2009 to close a sale of the

22  Property.  Fairway further agreed not to resume its foreclosure

23  proceedings until after September 14, 2009.  Ultimately, Paulson

24  _____

25       [4]We obtained copies of Paulson's bankruptcy schedules and
    statement of financial affairs by accessing the bankruptcy
26  court's electronic docket.  We may take judicial notice of the
    filing and contents of these documents.  See O'Rourke v. Seaboard
27  Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th
    Cir. 1989); Atwood v. Chase Manhattan Mrtg. Co. (In re Atwood),
28  293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

5

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 5 of 20

1   was unable to close a sale on or before September 14, 2009, and

2   Fairway completed its nonjudicial foreclosure of the Property by

3   successfully credit-bidding for the Property on September 25,

4   2009.

5       Having lost ownership of the Property, Paulson moved to

6   convert his bankruptcy case from chapter 11 to chapter 7.  Based

7   on Paulson's motion, the bankruptcy court entered an order on

8   November 25, 2009, converting his bankruptcy case and appointing

9   the Trustee.  Shortly thereafter, Fairway sought and obtained an

10  order granting relief from stay to permit Fairway to commence the

11  Eviction Proceedings (the "January 2010 Relief From Stay Order").

12  Paulson ultimately was evicted in May 2010.

13      The Trustee learned of the Predatory Lending Lawsuit from a

14  telephone conversation with Fairway's counsel in December 2009,

15  and asked Paulson about it at his January 2010 § 341

16  examination.[5]  After the § 341 exam, the Trustee gathered further

17  information regarding the Predatory Lending Lawsuit in separate

18  telephone conversations with Fairway and Paulson.  In addition,

19  Fairway sent the Trustee a letter on February 4, 2010, proposing

20  to settle the claims asserted in the Predatory Lending Lawsuit in

21  exchange for a payment to the Trustee of $5,000 (the "Settlement

22  Letter").  In the Settlement Letter, Fairway explained why it

23  believed the Predatory Lending Lawsuit was meritless and attached

24  in support of its contentions a number of documents, including,

25  _____

26  [5]According to the Trustee, Paulson and his counsel asserted
    at the § 341 examination that the Predatory Lending Lawsuit was
27  of no value to the estate, so the Trustee should abandon the
    lawsuit to Paulson pursuant to § 554, which in general authorizes
28  a trustee to abandon estate property that is either burdensome to
    the estate or of inconsequential value.

6

1  among others: (1) the Loan documents, (2) the second amended
2  complaint in the Predatory Lending Lawsuit, (3) various pleadings
3  from the Eviction Proceedings, and (4) Fairway's Civil Rule
4  12(b)(6) motion to dismiss.
5       In assessing the merits of the Predatory Lending Lawsuit,
6  the Trustee primarily focused on the fact that the transaction
7  appeared to be a commercial transaction, and that TILA, RESPA and
8  HOEPA only applied to consumer transactions.  But in her
9  telephone conversation with Paulson, they also discussed his
10 allegations that Fairway interfered with his attempts to sell the
11 Property and wrongfully foreclosed on the Property.  During these
12 discussions, Paulson apparently focused on Fairway's postpetition
13 conduct and his desire to reclaim the property, even though
14 Fairway already had successfully foreclosed.  At no point during
15 her telephone conversations with Paulson or his attorney did
16 either of them suggest that Paulson was interested in making a
17 competing bid to what Fairway was offering.
18      On February 25, 2010, the Trustee filed a motion for
19 authority to enter into a settlement with Fairway along the lines
20 of Fairway's Settlement Letter, and Paulson thereafter filed an
21 objection to the motion.  In response, Fairway filed a memorandum
22 and a declaration in support of the settlement, which largely
23 recounted what Fairway had presented in its Settlement Letter.
24 The bankruptcy court then set the matter for an evidentiary
25 hearing on May 7, 2010.
26      On the eve of the May 7, 2010 evidentiary hearing, Paulson
27 filed a memorandum in support of his objection.  Paulson asserted
28 that it was premature to attempt to assess the likelihood of

7

1   success in the Predatory Lending Lawsuit, that the lawsuit had

2   not sufficiently progressed to afford a reasonable means of

3   valuing its true worth.  Paulson did not explain or even suggest

4   who would bear the risk and cost of prosecuting the Predatory

5   Lending Lawsuit until it reached a point where the Trustee could

6   better evaluate its worth.  According to Paulson, the most

7   important factor demonstrating his likelihood of success was the

8   absence of a copy of a loan agreement signed by both parties.

9   Paulson pointed out that the copy Fairway had provided only was

10  signed by Paulson.  But Paulson did not dispute that he signed

11  the loan agreement and the other Loan documents and admitted that

12  Fairway funded the Loan in the amount of $375,000.  Moreover,

13  Paulson did not explain how the absence of Fairway's signature on

14  the loan agreement tended to support any of his causes of action

15  in the Predatory Lending Lawsuit, nor was such support apparent.

16      Paulson further asserted that the bankruptcy court should

17  not approve the Trustee's settlement because the district court

18  was presiding over the Predatory Lending Lawsuit and because

19  Paulson sought to try the Predatory Lending Lawsuit as a class

20  action.  In particular, Paulson contended that it would be

21  inequitable to settle Paulson's claims because it would deprive

22  the class of Paulson's representation as class representative.

23  Finally, Paulson argued that Fairway's foreclosure proceedings

24  did not comply with Oregon law governing foreclosures on

25  residential real property, but Paulson did not explain how any

26  alleged defects in Fairway's foreclosure proceedings support any

27  of his causes of action in the Predatory Lending Lawsuit, nor is

28  such support apparent.

8

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 8 of 20

1    On May 7, 2010, the bankruptcy court held its evidentiary

2  hearing, at which both the Trustee and Paulson testified.  After

3  the close of testimony, each party (the Trustee, Fairway and

4  Paulson) made a closing argument, and then the court announced

5  its decision, and its findings of fact and conclusions of law,

6  orally on the record.  The court relied on the "fair and

7  equitable" standards articulated in Martin v. Kane (In re A & C

8  Props.), 784 F.2d 1377, 1381 (9th Cir. 1986) ((1) likelihood of

9  success on the merits; (2) difficulty of collection efforts;

10  (3) complexity, cost, inconvenience and delay associated with the

11  litigation; and (4) paramount interests of the estate's

12  creditors, and their reasonable views).

13    The bankruptcy court found with respect to the first factor

14  that success on the merits appeared "problematic."  The court

15  concurred with the Trustee's evaluation of the Predatory Lending

16  Lawsuit and focused on the facts that the Loan appeared to be a

17  commercial loan and that Paulson was not personally a party to

18  the Loan.  The court particularly noted that Paulson had signed

19  the Loan documents (apparently without reading any of them),

20  including a one-page affidavit in which he swore under oath "that

21  the proceeds of the note are being used solely for business

22  purposes, and none of the loan proceeds evidenced by the note

23  will be expended for a personal, private or consumer use."

24  May 7, 2010 Ev. Hrg. Trans. at 60:18-24.[6]

25

26    [6]The court apparently was quoting or paraphrasing from
27  Paulson's affidavit executed at the time of the Loan (Evidentiary
   Hearing Exhibit No. 108 -- see also Ev. Hrg Trans. at 4:22-23),
28  but neither party has provided this exhibit to us as part of the
   excerpts of record on appeal.

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 9 of 20

1     Regarding the second factor (difficulty of collection), the
2  Trustee neither argued nor presented evidence indicating that
3  Fairway could not answer any judgment that might ultimately be
4  awarded against it.  Even though this factor did not militate in
5  favor of settlement, the court found that this factor was
6  outweighed by the other factors.

7     With respect to the third factor (complexity, cost,
8  inconvenience and delay associated with the litigation), the
9  bankruptcy court found that the Predatory Lending Lawsuit would
10 be "enormously expensive and time consuming" to prosecute, that
11 the estate had no funds to hire an attorney to prosecute the
12 Predatory Lending Lawsuit, and that no one had offered or likely
13 would offer to prosecute the Predatory Lending Lawsuit on behalf
14 of the estate at their own risk and expense.  Consequently, the
15 court reasoned that the third factor militated strongly in favor
16 of the settlement.

17     Finally, the court noted that no creditor of the estate had
18 objected to or had appeared to oppose the proposed settlement.
19 According to the court, this tended to indicate that the
20 settlement was consistent with the fourth factor, which focuses
21 on the interests of the creditors and the views they have
22 expressed.

23     During the course of making its oral ruling, the court
24 repeatedly pointed out that neither Paulson nor any other party
25 had stepped forward and proposed any competing bid to what
26 Fairway had offered for the Predatory Lending Lawsuit.  The court
27 found this fact significant for two reasons: (1) it significantly
28 limited the Trustee's options and ability to liquidate the

10

1  Predatory Lending Lawsuit as an asset of the estate; and (2) it

2  made it impracticable to employ formal sale procedures under

3  § 363.

4      On May 13, 2010, the court entered an order approving the

5  settlement, and on May 17, 2010, Paulson filed a notice of

6  appeal.  In his notice of appeal, Paulson stated that he was

7  seeking appellate review of both the settlement order, and the

8  January 2010 Relief From Stay Order.

9                          **JURISDICTION**

10     The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

11 §§ 1334 and 157(b)(1).  We have jurisdiction under 28 U.S.C.

12 § 158(a)(1), subject to the jurisdictional issue discussed below.

13                            **ISSUES**

14 1.  Does the BAP have jurisdiction to review the January 2010

15     Relief From Stay Order?

16 2.  Did the Bankruptcy Court abuse its discretion when it

17     approved the Trustee's settlement with Fairway?

18                    **STANDARDS OF REVIEW**

19     We have an independent duty to determine whether we have

20 jurisdiction over an appeal, and we review such jurisdictional

21 questions de novo.  Belli v. Temkin (In re Belli), 268 B.R. 851,

22 853-54 (9th Cir. BAP 2001); Gen. Elec. Capital Auto Lease, Inc.

23 v. Broach (In re Lucas Dallas, Inc.), 185 B.R. 801, 804 (9th Cir.

24 BAP 1995).

25     We review a bankruptcy court's decision to approve a

26 compromise for abuse of discretion.  Goodwin v. Mickey Thompson

27 Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.),

28 292 B.R. 415, 420 (9th Cir. BAP 2003) (citing In re A & C Props.,

                                11

1  784 F.2d at 1380).

2      Under the abuse of discretion standard of review, we first

3  "determine de novo whether the [bankruptcy] court identified the

4  correct legal rule to apply to the relief requested." United

5  States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

6  And if the bankruptcy court identified the correct legal rule, we

7  then determine under the clearly erroneous standard whether its

8  factual findings and its application of the facts to the relevant

9  law were: "(1) illogical, (2) implausible, or (3) without support

10 in inferences that may be drawn from the facts in the record."

11 Id. (internal quotation marks omitted).

12                              DISCUSSION

13 1.   Paulson did not timely appeal the January 2010 Relief From
        Stay Order, and thus we lack jurisdiction to review that
14      order.

15      In this appeal, one of our motions panels issued an order on

16 July 21, 2010, excluding the January 2010 Relief From Stay Order

17 from the scope of review on appeal (the "Exclusion Order").  Our

18 motions panel issued the Exclusion Order because Paulson did not

19 file his appeal from the January 2010 Relief From Stay Order

20 until May 17, 2010.

21      Notwithstanding our issuance of the Exclusion Order, Paulson

22 included argument in his brief seeking review of the January 2010

23 Relief From Stay Order.  As indicated in our Exclusion Order, we

24 lack jurisdiction to review the January 2010 Relief From Stay

25 Order.

26      An order granting relief from stay is final for purposes of

27 filing an appeal.  See Bonner Mall P'ship v. U.S. Bancorp

28 Mortgage Co. (In re Bonner Mall P'ship), 2 F.3d 899, 903 (9th

                                  12

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 12 of 20

1   Cir. 1993).  An appeal from a final bankruptcy court order must

2   be filed within fourteen days of entry of the order, see Rule

3   8002(a), and the time deadline for filing an appeal is mandatory

4   and jurisdictional.  See Browder v. Director, Dep't of

5   Corrections, 434 U.S. 257, 264 (1978); Slimick v. Silva (In re

6   Slimick), 928 F.2d 304, 306 (9th Cir. 1990).  Accordingly, if we

7   were to consider the merits of Paulson's untimely appeal of the

8   January 2010 Relief From Stay Order, we would be committing

9   reversible error.  See Browder, 434 U.S. at 271-72.

10      In short, we cannot review the January 2010 Relief From Stay

11  Order, and our review will be limited to the bankruptcy court's

12  settlement order, entered on May 13, 2010.

13  **2.    The bankruptcy court did not abuse its discretion when it**
        **approved the Trustee's settlement with Fairway.**
14

15      The bankruptcy court enjoys broad discretion in approving

16  compromises.  In re A & C Props., 784 F.2d at 1380-81.  As stated

17  in A & C Props.:

18          The purpose of a compromise agreement is to allow the
            trustee and the creditors to avoid the expenses and
19          burdens associated with litigating sharply contested
            and dubious claims.  The law favors compromise and not
20          litigation for its own sake, and as long as the
            bankruptcy court amply considered the various factors
21          that determined the reasonableness of the compromise,
            the court's decision must be affirmed.
22

23  Id. (citations omitted).

24      On the other hand, even though the bankruptcy court has wide

25  latitude in approving compromises, its discretion is not

26  completely unfettered.  See Woodson v. Fireman's Fund Ins. Co.

27  (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  Bankruptcy

28  courts only may approve a settlement if it is "fair and

13

1   equitable" and "reasonable, given the particular circumstances of

2   the case."   In re A & C Props., 784 F.2d at 1381.

3        As mentioned previously, A & C Props. adopted a four-part

4   test to assist bankruptcy courts in determining the "fairness,

5   reasonableness and adequacy" of proposed settlement agreements:

6        (a)  the likelihood of success on the merits of the

7   litigation;

8        (b)  the difficulties anticipated in collecting on any

9   judgment obtained;

10       (c)  the complexity, cost, inconvenience and delay

11   associated with the litigation; and

12       (d)  the paramount interest of the creditors, and deference

13   to their reasonable views.

14   See In re A & C Props., 784 F.2d at 1381.  The trustee bears the

15   burden of proof to establish that the compromise is fair and

16   equitable.   Id.

17       In this case, the bankruptcy court correctly identified each

18   of the A & C Props. factors, so the only remaining question is

19   whether the court's determination that the settlement was fair

20   and equitable, and in the best interests of the estate, was

21   clearly erroneous.  See Hinkson 585 F.3d at 1262.  We will look

22   at each of the A & C Props. factors in turn.

23       a.  Likelihood of success on the merits.

24       In rendering its finding on the first A & C Props. factor –

25   likelihood of success on the merits – the bankruptcy court

26   characterized the estate's chances of success in the Predatory

27   Lending Lawsuit as "problematic."  The court focused on Paulson's

28   marquee claims – his federal consumer credit causes of action

14

1  alleging violation of TILA, RESPA and HOEPA.  The court found the
2  merits of these claims doubtful at best because the Loan appeared
3  on its face to be a commercial credit transaction, whereas TILA,
4  RESPA and HOEPA generally apply only to consumer credit
5  transactions.  See 12 U.S.C. § 2606(a)(1); 12 C.F.R. 226.3(a).

6      The court further pointed out that Paulson did not appear to
7  be a party to the transaction from which Paulson's causes of
8  action allegedly arose; rather, Paulson's LLC was the party.  As
9  a result, it was doubtful that Paulson had any personal rights to
10 vindicate with respect to the claims he asserted in the Predatory
11 Lending Lawsuit.

12     Under these circumstances, we cannot conclude that the
13 court's findings regarding the estate's likelihood of success in
14 the Predatory Lending Lawsuit were "illogical," "implausible," or
15 "without support in inferences that may be drawn from the facts
16 in the record."  Hinkson, 585 F.3d at 1262.

17     b.  Difficulties of collection.
18     The bankruptcy court determined that the Trustee did not
19 offer any evidence tending to suggest that there would be any
20 difficulty in collecting a judgment from Fairway if any part of
21 the Predatory Lending Lawsuit succeeded.  Accordingly, the court
22 found that this factor did not militate in favor of settlement.
23 On the other hand, the court also found that this factor was
24 outweighed by the other A & C Props. factors.  We perceive no
25 error in this determination, nor has Paulson pointed us to any.

26     c.  Complexity, expense, delay and inconvenience.
27     The bankruptcy court found that this factor strongly
28 militated in favor of settlement.  Based primarily on Paulson's

15

1  second amended complaint, on Fairway's motion to dismiss, and on

2  Paulson's first document production request, the bankruptcy court

3  found that the Predatory Lending Lawsuit would be "enormously

4  expensive and time consuming" to litigate.  The court also found,

5  based primarily on its own experience, that it was very unlikely

6  that any attorney would agree to prosecute the lawsuit on a

7  contingency-fee basis.  The court further noted that the estate

8  had no money to fund the prosecution of the Predatory Lending

9  Lawsuit, and that no party had stepped forward and offered to

10 prosecute the lawsuit for the benefit of the estate at the

11 party's own risk and expense.  Once again, Paulson has not

12 pointed us to any error with respect to these findings, nor do we

13 perceive any error.[7]

14      **d.  Interests of creditors.**

15      The bankruptcy court found that the settlement was in the

16 interests of creditors and the estate.  The court found that the

17 $5,000 offered by Fairway would bring at least some funds into

18 the bankruptcy estate, and that there was no practicable means

19 available to the Trustee to increase the estate's recovery on

20 account of the Predatory Lending Lawsuit.  The court also noted

21 that no creditor had filed an objection to the settlement, and

22 that no creditor appeared at the hearing to oppose the

---

24 [7]Paulson for the first time on appeal perhaps suggests that
   he might have been willing to prosecute the Predatory Lending
25 Lawsuit for the benefit of the estate, but he gives no indication
   how he could afford to fund the litigation.  Furthermore, we
26 decline to consider this factual matter for the first time on
   appeal.  See United States v. Waters, 627 F.3d 345, 355 (9th Cir.
27 2010) (quoting Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.,
   23 F.3d 1508, 1511 n.5 (9th Cir. 1994)) ("Facts not presented to
28 the [trial] court are not part of the record on appeal.")

16

1  settlement.

2      **e.  Compromise as sale of estate property.**

3      Some of our recent decisions have held that, when a

4  settlement disposes of causes of action that are property of the

5  estate, it may be appropriate under certain circumstances for the

6  court to examine the settlement as both a compromise under

7  Rule 9019 and a sale under § 363.  See Fitzgerald v. Ninn Worx Sr

8  Inc. (In re Fitzgerald), 428 B.R. 872, 884 (9th Cir. BAP 2010);

9  Simantob v. Claims Prosecutor, LLC. (In re Lahijani), 325 B.R.

10  282, 290 (9th Cir. BAP 2005); In re Mickey Thompson Entm't Group,

11  Inc., 292 B.R. at 421-22.

12      However, as emphasized in Mickey Thompson, whether it is

13  appropriate to analyze a settlement as a sale depends on the

14  facts of the particular case.  See id. at 421-422 ("Whether to

15  impose formal sale procedures is ultimately a matter of

16  discretion that depends upon the dynamics of the particular

17  situation.").

18      Here, the bankruptcy court found that there was no

19  practicable means of conducting an auction sale of the Predatory

20  Lending Lawsuit to obtain a better price for it because no one

21  had expressed any interest in purchasing the Predatory Lending

22  Lawsuit, other than Fairway for its nuisance value.  This finding

23  is consistent with our observation in Fitzgerald and Lahijani

24  that, when a bankruptcy trustee seeks to sell a cause of action,

25  competition often is limited to the parties to that cause of

26  action.  See In re Fitzgerald 428 B.R. at 883; In re Lahijani,

27  325 B.R. at 289.  In this instance, despite the court's repeated

28  inquiries, not even Paulson, the plaintiff, was willing to make a

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 17 of 20

1  competing bid for the Predatory Lending Lawsuit.

2      In sum, the bankruptcy court did not abuse its discretion

3  when it approved the Trustee's settlement with Fairway.  The

4  court properly considered the A & C Props. factors, and the

5  record was sufficient to support the court's findings that the

6  settlement satisfied those factors.

7  **3.   None of Paulson's arguments on appeal justify reversal.**

8      We have reviewed and considered Paulson's other arguments on

9  appeal, but none of them have persuaded us that the bankruptcy

10  court committed reversible error under the abuse of discretion

11  standard of review.

12     For instance, Paulson argued that the bankruptcy court

13  lacked authority to approve the settlement.  Paulson did not

14  dispute that Rule 9019 generally gave the bankruptcy court broad

15  discretion to approve settlements.  Rather, Paulson argued that

16  the court lacked authority to approve the settlement because it

17  dealt with claims pending in another court; namely, the claims

18  asserted in the Predatory Lending Lawsuit.  But Paulson cited no

19  legal authority to support his argument.  Contrary to his

20  argument, we have routinely upheld the application of Rule 9019

21  to the estate's settlement of litigation pending in other courts.

22  See, e.g., In re Fitzgerald, 428 B.R. at 884.  Nor did Paulson's

23  class action allegations limit the bankruptcy court's authority

24  under Rule 9019.  While Civil Rule 23(e) does place procedural

25  restrictions on the settlement of class actions, these

26  restrictions on their face only apply after a class has been

27  certified.  Here, no class was certified in the Predatory Lending

28  Lawsuit, so Paulson's lack of authority argument has no merit.

18

1    Paulson also argued that the settlement inequitably deprived

2  the litigant class he sought to represent of its prospective

3  class representative.  However, Paulson did not point out how

4  this would prejudice the members of this prospective class, nor

5  do we perceive any prejudice, especially when the class was never

6  certified.  Moreover, any alleged impact of the settlement on the

7  interests of the prospective class members, who did not have any

8  stake in Paulson's bankruptcy estate, was not properly a concern

9  of the bankruptcy court's under the A & C Props. factors, which

10  focus exclusively on the estate's interests.

11    Finally, Paulson argued that the bankruptcy court was biased

12  against him.  To support this contention, Paulson pointed to the

13  court's comment during the evidentiary hearing: "so your defense

14  in the [Predatory Lending Lawsuit] is going to be pure heart,

15  empty head even though you were a lawyer."  May 7, 2010 Ev. Hrg.

16  Trans. at 26:15-17.  We fail to perceive how the court's

17  characterization of Paulson's litigation position constituted any

18  evidence of bias.  Furthermore, the court's comment would not

19  justify any action by an appellate court for two additional

20  reasons: (1) Paulson did not ask the bankruptcy judge to recuse

21  himself, and (2) the alleged bias does not meet the extrajudicial

22  source requirement.  See Cordoza v. Pac. States Steel Corp., 320

23  F.3d 989, 998-99 (9th Cir. 2003).  Thus, Paulson's bias argument

24  also fails.[6]

25  ────────────────────

26  [6]Paulson's appeal brief contains a bald assertion that the A
     & C Props. factor requiring the bankruptcy court to consider the
27  "paramount interests of creditors" violates his constitutional
     right to equal protection of the laws.  We decline to consider
28  this assertion because it was raised for the first time on appeal
                                              (continued...)

Declaration of Craig G. Russillo in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 19 of 20

1

## CONCLUSION

2       For all of the reasons set forth above, the bankruptcy

3 court's settlement order is AFFIRMED.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25       *(...continued)

26 and because it was not adequately addressed in Paulson's brief.
See <u>Golden v. Chicago Title Ins. Co. (In re Choo)</u>, 273 B.R. 608,
27 613 (9th Cir. BAP 2002); <u>Branam v. Crowder (In re Branam)</u>, 226
B.R. 45, 55 (9th Cir. BAP 1998), <u>aff'd</u>, 205 F.3d 1350 (table)
28 (9th Cir. 1999).

20

# U.S. Bankruptcy Appellate Panel
## of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

**TO:** Clerk, Bankruptcy Court, Portland District of Oregon

**RE:** LAUREN PAULSON

**CA No.:** 11-60038

**BAP No.:** OR-10-1173-MkHJu

**Bkcy Court No.:** 09-32439-rld7

**Adv No.:**


The judgment of this Panel entered on 05/10/2011 was appealed to the United States Court of Appeals for the Ninth Circuit.

Attached is a copy of the mandate of the Court of Appeals received on 08/16/2011.

The Court of Appeals DISMISSED the appeal of the BAP decision for failure to pay the docketing/filing fees in this case.


Susan M Spraul, BAP Clerk

By: Cherri Yuen, Deputy Clerk
Date: August 18, 2011

Case 09-32439-rld7    Doc 125    Filed 10/04/11

UNITED STATES COURT OF APPEALS
Case: 11-60038    08/16/2011    ID: 7860255    DktEntry: 4    Page: 1 of 2
Case: 10-1173    Document 0094040    Filed 08/16/2011    Page: 1 of 2
FOR THE NINTH CIRCUIT

**FILED**

AUG 16 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In Re: LAUREN JOHN PAULSON,

    Debtor,

_____

LAUREN JOHN PAULSON,

    Appellant,

    v.

AMY MITCHELL, Chapter 7 Trustee;
FHLF, LLC,

    Appellees,

No. 11-60038

BAP No. 10-1173
BAP, Portland Bankruptcy Court

**ORDER**

    A review of the file in this case reveals that the appellant has failed to perfect the appeal as prescribed by the Federal Rules of Appellate Procedure.

    Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to pay the docketing/filing fees in this case.

    This order served on the Bankruptcy Appellate Panel shall constitute the mandate of this court.

Case 09-32439-rld7   Doc 125   Filed 10/04/11               (3 of 3)

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Katie De La Serna
Deputy Clerk

Case: 11-60038   08/16/2011   ID: 7860255   DktEntry: 4   Page: 2 of 2
Case: 10-1173   Document: 009194016   Filed: 08/18/2011   Page: 2 of 2

Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cosgravelaw.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail: pberg@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
500 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Telephone:   (503) 323-9000
Facsimile:    (503) 323-9019
Of Attorneys for Defendants Matt Arbaugh
          and Craig Russillo

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>LAUREN PAULSON,<br><br>          Debtor.<br>_____<br><br>LAUREN PAULSON,<br><br>          Plaintiff,<br><br>    v.<br><br>MATT ARBAUGH, AMY MITCHELL,<br>CRAIG RUSSILLO,<br><br>          Defendants.<br>_____ | Case No. 09-32439-rld7<br><br>Adv. Proc. No. 11-03309-rld<br><br>**DECLARATION OF PAUL A. C. BERG<br>IN SUPPORT OF DEFENDANT<br>RUSSILLO'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Hearing Date: March 12, 2012<br>Time:        1:30 p.m.<br>Courtroom:   3 |

I, Paul A. C. Berg, under penalty of perjury, declare pursuant to 28 U.S.C.

§ 1746, as follows:

1.      I am one of the attorneys for Craig G. Russillo (Russillo) in this adversary

proceeding.  I represented Russillo and his partner Joel Parker in prior litigation

involving Mr. Paulson.

Page 1 –  DECLARATION OF PAUL A. C. BERG IN SUPPORT OF DEFENDANT
          RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

2.     Attached hereto as Exhibit 1 is a true and correct copy of the April 8, 2009 Voluntary Petition for Chapter 11 bankruptcy, which I accessed and printed via the Public Access to Court Electronic Records ("PACER") system.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the August 21, 2008 Complaint filed in Case No. 3:08-CV-00982-ST in the United States District Court for the District of Oregon ("Paulson's federal lawsuit").

4.     Attached hereto as Exhibit 3 is a true and correct copy of the January 29, 2009 second amended complaint in Paulson's federal lawsuit.

5.     Attached hereto as Exhibit 4 is a true and correct copy of the November 25, 2009 order converting Chapter 11 bankruptcy case to case under Chapter 7 and appointing Amy Mitchell (Mitchell) as trustee, which I accessed and printed via PACER.

6.     Attached hereto as Exhibit 5 is a true and correct copy of the January 15, 2010 notice of removal in Case No. 3:10-CV-00048-MO in the U.S. District Court for the District of Oregon ("Paulson's third-party lawsuit").

7.     Attached hereto as Exhibit 6 is a true and correct copy of Paulson's January 25, 2010 answer and third-party complaint in Paulson's third-party lawsuit.

8.     Attached hereto as Exhibit 7 is a true and correct copy of the February 25, 2010 motion and notice of intent to settle and compromise in the bankruptcy case, the order thereon, which I accessed and printed via PACER.

9.     Attached hereto as Exhibit 8 is a true and correct copy of the March 4, 2010 opinion and order remanding the FED cases and 2009 Lawsuit to state court, which I accessed and printed via PACER.

10.    Attached hereto as Exhibit 9 is a true and correct copy of Paulson's March 18, 2010 objection to motion and notice of intent to settle and compromise, which I accessed and printed via PACER.

Page 2 –  DECLARATION OF PAUL A. C. BERG IN SUPPORT OF DEFENDANT
          RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

1374131

11.    Attached hereto as Exhibit 10 is a true and correct copy of FHLF's April 27, 2010 memorandum in support of Mitchell's motion and notice of intent to settle and compromise, which I accessed and printed via PACER.

12.    Attached hereto as Exhibit 11 is a true and correct copy of the May 13, 2010 order approving settlement, which I accessed and printed via PACER.

13.    Attached hereto as Exhibit 12 is a true and correct copy of defendants' motions for summary judgment and motions to dismiss in Paulson's federal lawsuit dated June 10, 2010.

14.    Attached hereto as Exhibit 13 is a true and correct copy of plaintiff's response to defendants' motion to dismiss and motion for summary judgment in the Paulson's federal lawsuit dated June 29, 2010.

15.    Attached hereto as Exhibit 14 is a true and correct copy of the September 20, 2010 amended findings and recommendation in Paulson's federal lawsuit.

16.    Attached hereto as Exhibit 15 is a true and correct copy of United States District Court Judge Haggerty's order adopting the amended findings and recommendations granting defendants' motion for summary judgment in Paulson's federal lawsuit dated December 9, 2010.

17.    Attached hereto as Exhibit 16 is a true and correct copy of the judgment entered in Paulson's federal lawsuit dated December 9, 2010.

18.    Attached hereto as Exhibit 17 is a true and correct copy of the March 16, 2011 order filed by the United States Court of Appeals for the Ninth Circuit, which found Paulson's appeal frivolous and ordered him to show cause why the challenged judgment should not be summarily affirmed.

19.    Attached hereto as Exhibit 18 is a true and correct copy of the June 28, 2011 order filed by the United States Court of Appeals for the Ninth Circuit that summarily affirmed the district court's judgment.

Page 3 –  DECLARATION OF PAUL A. C. BERG IN SUPPORT OF DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

1374131

20.     Attached hereto as Exhibit 19 is a true and correct copy of the June 16, 2009 stipulated order for relief from stay which I accessed and printed via PACER.

21.     Attached hereto as Exhibit 20 is a true and correct copy of the March 8, 2010 Chapter 7 order regarding discharge of debtor, which I accessed and printed via PACER.

22.     Attached hereto as Exhibit 21 is a true and correct copy of Paulson's Chapter 7 schedules, which I accessed and printed via PACER.  PACER does not reflect any subsequent amendment to these schedules.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

EXECUTED this 9th day of January, 2012, at Portland, Oregon.


*/s/ Paul A. C. Berg*
Paul A. C. Berg

1374131

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

# CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing

**DECLARATION OF PAUL A. C. BERG IN SUPPORT OF DEFENDANT RUSSILLO'S**

**MOTION FOR SUMMARY JUDGMENT** on the date indicated below by:

☒    mail with postage prepaid, deposited in the US mail at Portland, Oregon;

☒    email

☒    electronic filing notification.

If served by facsimile transmission, attached to this certificate is the printed confirmation of receipt of the document(s) generated by the transmitting machine.  I further certify that said copy was placed in a sealed envelope delivered as indicated above and addressed to said attorney(s) at the address(es) listed below:

Lauren Paulson          **(VIA EMAIL AND US MAIL)**
PO Box 19303
Portland, OR 97280
Plaintiff Pro Se

Justin D. Leonard          **(VIA ELECTRONIC FILING NOTIFICATION)**
Ball Janik LLP
101 SW Main St, Ste 1100
Portland, OR  97204
Of Attorneys for Defendant Amy Mitchell

DATED:  January 9, 2012.


/s/ **Paul A. C. Berg**
Paul A. C. Berg

Page 1 - **CERTIFICATE OF SERVICE**

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

Case 09-32439-rld7   Doc 1   Filed 04/08/09

B1 (Official Form 1)(1/08)

| United States Bankruptcy Court<br>District of Oregon | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Paulson, Lauren John** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**xxx-xx-4301** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**3980 SW 170th Avenue**<br>**Aloha, OR**<br>ZIP Code **97007** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Washington** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| **Type of Debtor**<br>(Form of Organization)<br>(Check one box) | **Nature of Business**<br>(Check one box) | **Chapter of Bankruptcy Code Under Which**<br>**the Petition is Filed** (Check one box) |
|---|---|---|
| ■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>□ Corporation (includes LLC and LLP)<br>□ Partnership<br>□ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | □ Health Care Business<br>□ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>□ Railroad<br>□ Stockbroker<br>□ Commodity Broker<br>□ Clearing Bank<br>□ Other | □ Chapter 7<br>□ Chapter 9<br>■ Chapter 11<br>□ Chapter 12<br>□ Chapter 13 |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>□ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | □ Chapter 15 Petition for Recognition<br>of a Foreign Main Proceeding<br>□ Chapter 15 Petition for Recognition<br>of a Foreign Nonmain Proceeding<br>**Nature of Debts**<br>(Check one box)<br>■ Debts are primarily consumer debts,<br>defined in 11 U.S.C. § 101(8) as<br>"incurred by an individual primarily for<br>a personal, family, or household purpose."<br>□ Debts are primarily<br>business debts. |

| **Filing Fee** (Check one box) | Check one box:<br>□ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>□ Debtor's aggregate noncontingent liquidated debts (excluding debts owed<br>to insiders or affiliates) are less than $2,190,000.<br>Check all applicable boxes:<br>□ A plan is being filed with this petition.<br>□ Acceptances of the plan were solicited prepetition from one or more<br>classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
|---|---|
| ■ Full Filing Fee attached<br>□ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the debtor<br>is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br>□ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | |

| **Statistical/Administrative Information**   *** Matthew A. Arbaugh 02025 ***<br>■ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>□ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,<br>there will be no funds available for distribution to unsecured creditors. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

Estimated Number of Creditors

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 1 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B1 (Official Form 1)(1/08)                                                                                              Page 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Paulson, Lauren John** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) |||
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) |||
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | **X  /s/ Matthew A. Arbaugh**         **April  8, 2009**<br>Signature of Attorney for Debtor(s)         (Date)<br>**Matthew A. Arbaugh 02025** |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

■    Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐    There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐    Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes)

☐    Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐    Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐    Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐    Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

Case 09-32439-rld7   Doc 1   Filed 04/08/09

B1 (Official Form 1)(1/08)                                                                                    Page 3

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Paulson, Lauren John** |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Lauren John Paulson**
Signature of Debtor **Lauren John Paulson**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**April 8, 2009**
Date

**Signature of Attorney\***

X **/s/ Matthew A. Arbaugh**
Signature of Attorney for Debtor(s)

**Matthew A. Arbaugh 02025**
Printed Name of Attorney for Debtor(s)

**Field Jerger LLP**
Firm Name

**610 SW Alder, Suite 910**
**Portland, OR 97205**

_____
Address

**Email: matt@fieldjerger.com**
**503 228-9115  Fax: 503 225-0276**
Telephone Number

**April 8, 2009**
Date
*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B 1D(Official Form 1, Exhibit D) (12/08)

## United States Bankruptcy Court
### District of Oregon

In re    Lauren John Paulson                                    Case No. _____

                                    Debtor(s)          Chapter        11

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH
## CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee aud you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☐ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

■ 2. Within the 180 days **before the filiug of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 15 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the five days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* ____

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

B 1D(Official Form 1, Exhibit D) (12/08) - Cont.

☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor:    /s/ Lauren John Paulson
                        Lauren John Paulson

Date:    April 8, 2009

Case 09-32439-rld7    Doc 1    Filed 04/08/09

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. _____ |
| **Lauren John Paulson** | ) | |
| | ) | **EXHIBIT "C-1"** |
| | ) | |
| | ) | [NOTE: Must be <u>FULLY</u> completed by <u>ALL</u> debtors |
| Debtor(s) | ) | and attached to <u>ALL</u> copies of the Petition.] |

**(NOTE: You must answer ALL questions.  Attach additional sheets if necessary.  Use of "UNKNOWN" is <u>NOT</u> acceptable!)**

1.  DESCRIBE ASSETS REQUIRING TRUSTEE'S IMMEDIATE ATTENTION:
     **NONE**

2.  Street address and description of principal assets (note property):
     **3980 SW 170th Avenue
     Aloha OR 97007-0000**

3.  **The BANKRUPTCY DOCUMENT PREPARER DECLARATION below has been completed for any person who helped, for compensation, prepare any of the bankruptcy papers if the debtor does <u>not</u> have an attorney.**

I declare under penalty of perjury that the above information provided in this Exhibit "C-1" is true and correct.

DATE:    April 8, 2009_____    /s/ Lauren John Paulson_____
                              Debtor's Signature        Phone #        Joint Debtor's Signature

**BANKRUPTCY DOCUMENT PREPARER DECLARATION**

**I, the undersigned, declare under penalty of perjury that (1) neither I, nor anyone else listed herein, collected or received any payment from or on behalf of the debtor for court fees in connection with filing the petition; (2) I have received $_____ from or on behalf of the debtor within the previous 12 month period; (3) $_____ is the unpaid fee charged to the debtor; and (4) the following is true and accurate about myself and any other assistants:**
Individual Name <u>and</u>  Firm (Type or Print): _____
Address (Type or Print): _____
Last 4 digits of Social Security Number of all OTHER individuals who prepared or assisted in the preparation of these bankruptcy documents:
_____

Signature: _____Last 4 digits of Social Security #:_____ Phone #:_____
[NOTE: Penalties up to $500 per item may be assessed for omission of any required information (11 USC §110; 18 USC §156) and Fed. Bankruptcy Rule 1006 prohibits further payment to any person for services until the court filing fees are paid in full.]

EXHIBIT C-1 (8/8/08)

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 6 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

# United States Bankruptcy Court
## District of Oregon

In re    **Lauren John Paulson**                              Case No. _____

                              Debtor(s)                          Chapter    **11**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that
     compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to
     be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

     For legal services, I have agreed to accept ........................................................... $            **5,000.00**

     Prior to the filing of this statement I have received ........................................ $            **5,000.00**

     Balance Due ................................................................................................. $                 **0.00**

2.   The source of the compensation paid to me was:

     ■ Debtor        ☐ Other (specify):

3.   The source of compensation to be paid to me is:

     ☐ Debtor        ☐ Other (specify):

4.   ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

     ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A
       copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

     a.   Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
     b.   Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
     c.   Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
     d.   [Other provisions as needed]

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:
     **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or
     any other adversary proceeding. Negotiations with secured creditors to reduce to market value; exemption
     planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing
     of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in
this bankruptcy proceeding.

Dated:    __April 8, 2009__                          /s/ Matthew A. Arbaugh
                                                     Matthew A. Arbaugh 02025
                                                     Field Jerger LLP
                                                     610 SW Alder, Suite 910
                                                     Portland, OR 97205
                                                     503 228-9115   Fax: 503 225-0276
                                                     matt@fieldjerger.com

---

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 7 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6 Summary (Official Form 6 - Summary) (12/07)

## United States Bankruptcy Court
### District of Oregon

In re    Lauren John Paulson _____    Case No. _____

Debtor

Chapter _____ **11**

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 995,500.00 | | |
| B - Personal Property | Yes | 4 | 41,375.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 415,078.12 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 11,207.01 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 3,100.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 6,351.03 |
| Total Number of Sheets of ALL Schedules | | 14 | | | |
| Total Assets | | | 1,036,875.00 | | |
| Total Liabilities | | | | 426,285.13 | |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Case 09-32439-rld7   Doc 1   Filed 04/08/09

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## District of Oregon

In re    Lauren John Paulson                                    Case No. _____

_____,
                                    Debtor

Chapter _____ 11 _____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 3,100.00 |
| Average Expenses (from Schedule J, Line 18) | 6,351.03 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 1,500.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 0.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 0.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 11,207.01 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 11,207.01 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Case 09-32439-rld7   Doc 1   Filed 04/08/09

B6A (Official Form 6A) (12/07)

In re    **Lauren John Paulson**                                    Case No. _____
                                                                          _____
                                              Debtor

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for
the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W,"
"J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under
"Description and Location of Property."

  **Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and
Unexpired Leases.**

  If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or
if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **3980 SW 170th Avenue, Aloha OR**<br>**16925 SW Blanton Street, Aloha OR**<br>**16919A SW Blanton Street, Aloha OR**<br>**16919B SW Blanton Street, Aloha OR** | **Fee simple** | - | 995,500.00 | 415,078.12 |

|  | | |
|---|---|---|
| Sub-Total > | 995,500.00 | (Total of this page) |
| Total > | 995,500.00 | |

(Report also on Summary of Schedules)

  __0__  continuation sheets attached to the Schedule of Real Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6B (Official Form 6B) (12/07)

In re    **Lauren John Paulson**                                              Case No. _____
_____
                        Debtor

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Key Bank Checking Account** | - | 1,000.00 |
| | | **Bank of the West Savings Account** | - | 2,000.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **Furniture** Location: 3980 SW 170th Avenue, Aloha OR | - | 5,000.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | **Clothes.** Location: 3980 SW 170th Avenue, Aloha OR | - | 250.00 |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | | **Firearms.** Location: 3980 SW 170th Avenue, Aloha OR | - | 100.00 |
| | | **Miscellaneous sports equipment.** Location: 3980 SW 170th Avenue, Aloha OR | - | 25.00 |
| | | **Cameras** Location: 3980 SW 170th Avenue, Aloha OR | - | 1,000.00 |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

                                                                            Sub-Total >          9,375.00
                                                                            (Total of this page)

___3___ continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                        Best Case Bankruptcy

Case 09-32439-rld7 Doc 1 Filed 04/08/09

B6B (Official Form 6B) (12/07) - Cont.

In re **Lauren John Paulson**                                    Case No. _____

                                              Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | Account receiveables from former clients. | - | 20,000.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

|  | Sub-Total >  | 20,000.00 |
|---|---|---|
|  | (Total of this page) |  |

Sheet  **1**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6B (Official Form 6B) (12/07) - Cont.

In re    **Lauren John Paulson**                                              Case No. _____
                                                  Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Claim for small pension from Nationwide Insurance, where the Debtor worked in the 1970s. Nationwide insurance has denied the claim.** | - | **Unknown** |
| | | **Pending lawsuit for $30,000 against Barbara Parmenter for Breach of Contract** | - | **Unknown** |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | | **Client list for former law practice.** | - | **Unknown** |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **1992 Subaru** **Location: 3980 SW 170th Avenue, Aloha OR** | - | **2,000.00** |
| | | **1980 Ford Pickup** **Location: 3980 SW 170th Avenue, Aloha OR** | - | **500.00** |
| | | **1973 FMC Motor Home** **Location: 3980 SW 170th Avenue, Aloha OR** | - | **4,500.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Office equiptment from former law practice.** **Location: 3980 SW 170th Avenue, Aloha OR** | - | **5,000.00** |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |

Sub-Total >          **12,000.00**
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **Lauren John Paulson**                                          Case No. _____
                                                    Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  |  |
|---|---|
| Sub-Total > | 0.00 |
| (Total of this page) | |
| Total > | 41,375.00 |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 14 of 39

Case 09-32439-rld7   Doc 1   Filed 04/08/09

B6C (Official Form 6C) (12/07)

In re   **Lauren John Paulson**                                          Case No. _____
                                                                                    Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                              $136,875.
  ☐ 11 U.S.C. §522(b)(2)
  ☒ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property**<br>3980 SW 170th Avenue, Aloha OR<br>16925 SW Blanton Street, Aloha OR<br>16919A SW Blanton Street, Aloha OR<br>16919B SW Blanton Street, Aloha OR | ORS §§ 18.395, 18.402 Claimed on 3980 SW 170th Avenue, Aloha OR only | 30,000.00 | 995,500.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit**<br>Key Bank Checking Account | ORS § 18.345(1)(o) | 400.00 | 1,000.00 |
| **Household Goods and Furnishings**<br>Furniture<br>Location: 3980 SW 170th Avenue, Aloha OR | ORS § 18.345(1)(f) | 3,000.00 | 5,000.00 |
| **Wearing Apparel**<br>Clothes.<br>Location: 3980 SW 170th Avenue, Aloha OR | ORS § 18.345(1)(b) | 250.00 | 250.00 |
| **Firearms and Sports, Photographic and Other Hobby Equipment**<br>Firearms.<br>Location: 3980 SW 170th Avenue, Aloha OR | ORS § 18.362 | 100.00 | 100.00 |
| **Other Contingent and Unliquidated Claims of Every Nature**<br>Claim for small pension from Nationwide Insurance, where the Debtor worked in the 1970s.  Nationwide Insurance has denied the claim. | ORS §§ 238.445; 18.348(2) | 0.00 | Unknown |
| **Automobiles, Trucks, Trailers, and Other Vehicles**<br>1992 Subaru<br>Location: 3980 SW 170th Avenue, Aloha OR | ORS § 18.345(1)(d) | 2,000.00 | 2,000.00 |

|  | Total: | 35,750.00 | 1,003,850.00 |
|---|---|---|---|

  __0__   continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                      Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 15 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6D (Official Form 6D) (12/07)

In re   **Lauren John Paulson**                                             Case No. _____
                                          Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No.<br><br>FHLF, LLC<br>6650 SW Redwood Lane<br>Suite 290<br>Portland, OR 97224 | | | | | November 28, 2005<br>Deed of Trust<br>3980 SW 170th Avenue, Aloha OR<br>16926 SW Blanton Street, Aloha OR<br>16919A SW Blanton Street, Aloha OR<br>16919B SW Blanton Street, Aloha OR | | | | | |
| | | | | | Value $            995,500.00 | | | | 400,000.00 | 0.00 |
| Account No.<br><br>Representing:<br>FHLF, LLC | | | | | Craig Russillo and Anna Smith<br>Schwabe Williamson & Wyatt PC<br>1211 SW Fifth Ave<br>Suite 1900<br>Portland, OR 97204 | | | | | |
| | | | | | Value $ | | | | | |
| Account No. 149627; 149663; 149654; 149645 | | | | | July 1, 2008<br>Property taxes | | | | | |
| Washington County<br>155 N. First Avenue, Room 130<br>Hillsboro, OR 97124 | | | | | 3980 SW 170th Avenue, Aloha OR<br>16925 SW Blanton Street, Aloha OR<br>16919A SW Blanton Street, Aloha OR<br>16919B SW Blanton Street, Aloha OR | | | | | |
| | | | | | Value $            995,500.00 | | | | 15,078.12 | 0.00 |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| _0_   continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | 415,078.12 | 0.00 |
| | | | | | Total<br>(Report on Summary of Schedules) | | | | 415,078.12 | 0.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                             Best Case Bankruptcy

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6E (Official Form 6E) (12/07)

In re   **Lauren John Paulson**                                                    Case No. _____
                                                                        Debtor

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                                                        **0**    continuation sheets attached

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 17 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6F (Official Form 6F) (12/07)

In re    __Lauren John Paulson_____,    Case No. _____
                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | Need date of judgment Judgment in United States District Court - District of Oregon case number CV 04 01501. | | | | |
| Oregon State Bar P.O. Box 231935 Tigard, OR 97281 | | | | | | | | | 6,039.46 |
| Account No. | | | | | Need date of judgment Judgment in Oregon Supreme Court case number SC S53185 | | | | |
| Oregon State Bar P.O. Box 231935 Tigard, OR 97281 | | | | | | | | | 1,228.05 |
| Account No. | | | | | March 12, 2007 | | | | |
| Scott Richardson PO Box 25544 Portland, OR 97298 | - | | | | | X | X | X | 3,939.50 |
| Account No. | | | | | | | | | |

| | | |
|---|---|---|
| __0____ continuation sheets attached | Subtotal (Total of this page) | 11,207.01 |
| | Total (Report on Summary of Schedules) | 11,207.01 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037          S/N:28228-090406   Best Case Bankruptcy

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6G (Official Form 6G) (12/07)

In re    **Lauren John Paulson**                                                          Case No. _____

                                                                        ,
                                          Debtor

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code,<br>of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest.<br>State whether lease is for nonresidential real property.<br>State contract number of any government contract. |
| --- | --- |
| | |

     0
_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                                 Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 19 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6H (Official Form 6H) (12/07)

In re    **Lauren John Paulson**                                                Case No. _____
                                                              Debtor

## SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
| --- | --- |

**0**
_____ continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 20 of 39

Case 09-32439-rld7   Doc 1   Filed 04/08/09

B6I (Official Form 6I) (12/07)

In re __Lauren John Paulson_____     Case No. _____
                                    Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| **Single** | RELATIONSHIP(S):<br>**None.** | AGE(S): | |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Retired Lawyer** | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | | $ 0.00 | $ | N/A |
| 2. Estimate monthly overtime | | 0.00 | | N/A |
| 3. SUBTOTAL | | $ 0.00 | $ | N/A |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|   a. Payroll taxes and social security | | $ 0.00 | $ | N/A |
|   b. Insurance | | 0.00 | | N/A |
|   c. Union dues | | 0.00 | | N/A |
|   d. Other (Specify): _____ | | 0.00 | | N/A |
| | | 0.00 | | N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | | $ 0.00 | $ | N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | | $ 0.00 | $ | N/A |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | | $ 0.00 | $ | N/A |
| 8. Income from real property | | 1,500.00 | | N/A |
| 9. Interest and dividends | | 0.00 | | N/A |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | | 0.00 | | N/A |
| 11. Social security or government assistance<br>(Specify): **Social Security** | | 1,600.00 | | N/A |
| | | 0.00 | | N/A |
| 12. Pension or retirement income | | 0.00 | | N/A |
| 13. Other monthly income<br>(Specify): _____ | | 0.00 | | N/A |
| | | 0.00 | | N/A |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | | $ 3,100.00 | $ | N/A |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | | $ 3,100.00 | $ | N/A |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | | $ 3,100.00 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6J (Official Form 6J) (12/07)

In re    __Lauren John Paulson_____    Case No. _____
                                          Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed.  Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.  The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | | | |
|---|---|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | | $ | 4,269.03 |
| a. Are real estate taxes included? | Yes ___ | No _X_ | | |
| b. Is property insurance included? | Yes ___ | No _X_ | | |
| 2. Utilities:    a. Electricity and heating fuel | | | $ | 200.00 |
| b. Water and sewer | | | $ | 100.00 |
| c. Telephone | | | $ | 75.00 |
| d. Other   **See Detailed Expense Attachment** | | | $ | 150.00 |
| 3. Home maintenance (repairs and upkeep) | | | $ | 100.00 |
| 4. Food | | | $ | 200.00 |
| 5. Clothing | | | $ | 35.00 |
| 6. Laundry and dry cleaning | | | $ | 0.00 |
| 7. Medical and dental expenses | | | $ | 50.00 |
| 8. Transportation (not including car payments) | | | $ | 200.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | | $ | 100.00 |
| 10. Charitable contributions | | | $ | 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | | | |
| a. Homeowner's or renter's | | | $ | 86.00 |
| b. Life | | | $ | 0.00 |
| c. Health | | | $ | 0.00 |
| d. Auto | | | $ | 66.00 |
| e. Other | | | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | | | |
| (Specify)   **Real Estate Taxes** | | | $ | 400.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | | | |
| a. Auto | | | $ | 0.00 |
| b. Other | | | $ | 0.00 |
| c. Other | | | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | | | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | | | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | | $ | 0.00 |
| 17. Other   **See Detailed Expense Attachment** | | | $ | 320.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | | $ | 6,351.03 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

20. STATEMENT OF MONTHLY NET INCOME

| | | | |
|---|---|---|---|
| a. | Average monthly income from Line 15 of Schedule I | $ | 3,100.00 |
| b. | Average monthly expenses from Line 18 above | $ | 6,351.03 |
| c. | Monthly net income (a. minus b.) | $ | -3,251.03 |

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B6J (Official Form 6J) (12/07)

In re   Lauren John Paulson                                              Case No. _____
_____
                                    Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

Other Utility Expenditures:

| | | |
|---|---|---|
| Wireless internet | $ | 75.00 |
| Cable | $ | 75.00 |
| Total Other Utility Expenditures | $ | 150.00 |

Other Expenditures:

| | | |
|---|---|---|
| Postage | $ | 35.00 |
| Education | $ | 25.00 |
| Personal items and household supplies | $ | 125.00 |
| Pet supplies | $ | 35.00 |
| Litigation expenses | $ | 100.00 |
| Total Other Expenditures | $ | 320.00 |

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## District of Oregon

In re  Lauren John Paulson                                        Case No. _____
                              Debtor(s)              Chapter     11

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of
__16__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __April 8, 2009_____          Signature   __/s/ Lauren John Paulson_____
                                                     **Lauren John Paulson**
                                                     Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Case 09-32439-rld7   Doc 1   Filed 04/08/09

B7 (Official Form 7) (12/07)

# United States Bankruptcy Court
## District of Oregon

In re  Lauren John Paulson

Debtor(s)

Case No.

Chapter  11

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
■

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 25 of 39

2

**2. Income other than from employment or operation of business**

None ☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $0.00 | 2008- Debtor recieved $_____ in social security income and $_____ in rental income. |
| | 2007- Debtor recieved $_____ in social security income and $_____ in rental income. |

**3. Payments to creditors**

None ☐

*Complete a. or b., as appropriate, and c.*

a.    *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| American Express | Debtor uses his American Express card for household and personal purchases and pays off the balance in full every month, approximately $700 per month. | $2,100.00 | $0.00 |

None ■

b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None ■

c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 26 of 39

3

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐    a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Lauren Paulson v. Barbara Parmenter, Case Number 06-2483 | Breach of Contract | Lane County Circuit Court | Pending |
| Lauren Paulson v. Fairway America Corporation, et al., Case Number CV08-982-ST | Truth in Lending Act | United States District Court - District of Oregon | Pending |
| Mr. Handyman of NW Portland v. Lauren Paulson, Case Number C082223CV | Breach of Contract | Washington County Circuit Court | Pending |
| Lynda James v. Lauren Paulson, Case Number 06-2054 | Malpractice | Columbia County Circuit Court | Pending |

None
☐    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| ODR Bkcy 955 Center NE #353 Salem, OR 97310 | | $114 garnished for unpaid parking tickets |

**5. Repossessions, foreclosures and returns**

None
■    List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None
☐    a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|
| FHLF, LLC 6650 SW Redwood Lane Suite 290 Portland, OR 97224 | | Granted Assignment of Rents to FHLF, LLC however FHLF, LLC has not exercised. |

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 27 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

4

| None ■ | b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|---|---|

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

| None ■ | List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|---|---|

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

| None ■ | List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case**. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|---|---|

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

| None ☐ | List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case. |
|---|---|

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Field Jerger, LLP 610 SW Alder Street Suite #910 Portland, OR 97205** | **March 24, 2009.** | **$5,000** |

**10. Other transfers**

| None ■ | a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |
|---|---|

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

| None ■ | b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary. |
|---|---|

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 28 of 39

5

**11. Closed financial accounts**

None ☐

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| washington mutual | Business checking account 935-005034-3 with a $275 final balance. | Closed in 2008. |
| washington mutual | IOLTA account 935-005033-5, final balance $65.00. | Closed in 2008. |

**12. Safe deposit boxes**

None ■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None ■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 29 of 39

6

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■ a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■ b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■ c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None □ a. *If the debtor is an individual,* list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership,* list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation,* list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Lauren Paulson, Attorney at Law | 4301 | 3980 SW 170th Avenue Beaverton, OR 97007 | Sole proprietor law firm. | 1988 to 2006 |
| Huber Wheeler Crossing, LLC | | 3980 SW 170th Avenue Beaverton, OR 97007 | Sole member LLC that held debtor's rental properties. | 12/10/99 -2/9/07 |

Case 09-32439-rld7    Doc 1    Filed 04/08/09

7

None ☐    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                      ADDRESS

      The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

      *(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None ☐    a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
| --- | --- |
| Keith Bebb, CPA<br>17899 SW Tualatin Valley Highway<br>Beaverton, OR 97006 | Prepared Debtor's 2006 and 2007 tax returns |

None ☑    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME               ADDRESS               DATES SERVICES RENDERED

None ☑    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                        ADDRESS

None ☑    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS               DATE ISSUED

**20. Inventories**

None ☑    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY        INVENTORY SUPERVISOR        DOLLAR AMOUNT OF INVENTORY<br>                                                       (Specify cost, market or other basis)

None ☑    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

DATE OF INVENTORY                        NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY<br>                                                       RECORDS

**21 . Current Partners, Officers, Directors and Shareholders**

None ☑    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS              NATURE OF INTEREST             PERCENTAGE OF INTEREST

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                             Best Case Bankruptcy

Case 09-32439-rld7    Doc 1    Filed 04/08/09

8

None ■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

**22 . Former partners, officers, directors and shareholders**

None ■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None ■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23 . Withdrawals from a partnership or distributions by a corporation**

None ■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group.**

None ■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

**25. Pension Funds.**

None ■    If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 32 of 39

9

**DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR**

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  __April 8, 2009_____        Signature  __/s/ Lauren John Paulson_____
                                                                                    **Lauren John Paulson**
                                                                                    Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 33 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B4 (Official Form 4) (12/07)

## United States Bankruptcy Court
### District of Oregon

In re    Lauren John Paulson                                    Case No. _____
                                    Debtor(s)                    Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Oregon State Bar<br>P.O. Box 231935<br>Tigard, OR 97281 | Oregon State Bar<br>P.O. Box 231935<br>Tigard, OR 97281 | Judgment in United States District Court - District of Oregon case number CV 04 01501. | | 6,039.46 |
| Oregon State Bar<br>P.O. Box 231935<br>Tigard, OR 97281 | Oregon State Bar<br>P.O. Box 231935<br>Tigard, OR 97281 | Judgment in Oregon Supreme Court case number SC S53185 | | 1,228.05 |
| Scott Richardson<br>PO Box 25544<br>Portland, OR 97298 | Scott Richardson<br>PO Box 25544<br>Portland, OR 97298 | | Contingent Unliquidated Disputed | 3,939.50 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 34 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

B4 (Official Form 4) (12/07) - Cont.

In re    **Lauren John Paulson**
_____
Debtor(s)

Case No. _____

### LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

### DECLARATION UNDER PENALTY OF PERJURY
### ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, **Lauren John Paulson**, the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    April 8, 2009 _____    Signature    **/s/ Lauren John Paulson** _____
                                                            **Lauren John Paulson**
                                                            Debtor

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

B 201 (12/08)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

### NOTICE TO CONSUMER DEBTOR(S) UNDER § 342(b)
### OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a joint case (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

### 1. Services Available from Credit Counseling Agencies

With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis. The briefing must be given within 180 days before the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge. The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

### 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

**Chapter 7: Liquidation ($245 filing fee, $39 administrative fee; $15 trustee surcharge: Total Fee $299)**
1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**
1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 36 of 39

B 201 (12/08)                                                                                                    Page 2

over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the
Bankruptcy Code.
    2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them,
using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your
income and other factors. The court must approve your plan before it can take effect.
    3. After completing the payments under your plan, your debts are generally discharged except for domestic support
obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly
listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)
    Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite
complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)
    Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings
and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a
family-owned farm or commercial fishing operation.

### 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

    A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either
orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a
debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United
States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors,
assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not
filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of Attorney
    I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

| Matthew A. Arbaugh 02025 | X /s/ Matthew A. Arbaugh | April 8, 2009 |
|---|---|---|
| Printed Name of Attorney | Signature of Attorney | Date |

Address:
**610 SW Alder, Suite 910
Portland, OR 97205
503 228-9115
matt@fieldjerger.com**

### Certificate of Debtor
    I (We), the debtor(s), affirm that I (we) have received and read this notice.

| Lauren John Paulson | X /s/ Lauren John Paulson | April 8, 2009 |
|---|---|---|
| Printed Name(s) of Debtor(s) | Signature of Debtor | Date |
| Case No. (if known) | X | |
| | Signature of Joint Debtor (if any) | Date |

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 37 of 39

Case 09-32439-rld7    Doc 1    Filed 04/08/09

# United States Bankruptcy Court
### District of Oregon

In re   Lauren John Paulson _____    Case No. _____

                                    Debtor(s)          Chapter    __11__

## VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:   **April 8, 2009** _____        /s/ Lauren John Paulson _____
                                                 **Lauren John Paulson**
                                                 Signature of Debtor

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 38 of 39

## United States Bankruptcy Court
### District of Oregon

In re  Lauren John Paulson _____    Case No. _____

                                        Debtor(s)          Chapter    11 _____

### CERTIFICATION PURSUANT TO LBR 1001-1.G

I certify that the foregoing documents have been prepared by a computer and conform to versions of the Official
Bankruptcy Forms available and applicable at this time.

The software utilized is Best Case Bankruptcy, developed by Best Case Solutions, Inc.

Dated:    April 8, 2009 _____    /s/ Matthew A. Arbaugh _____
                                           Matthew A. Arbaugh 02025
                                           Field Jerger LLP
                                           610 SW Alder, Suite 910
                                           Portland, OR 97205
                                           503 228-9115

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 1
Page 39 of 39



1    Lauren Paulson, Pro Se
2    3980 S. W. 170th Ave.          FILED '08 AUG 21 15:30USDC-ORP
     Aloha, OR 97007
3    971 219 5859
4    Plaintiff

5

6

7

8              UNITED STATES DISTRICT COURT FOR THE

9                     DISTRICT OF OREGON

10   LAUREN PAULSON,                )
                                    )   Civil Action No.
11          Plaintiff,              )
                                    )   COMPLAINT CV'08 - 982 -- ST
12   v.                             )
                                    )   (Federal Truth in Lending Act)
13                                  )
14   FAIRWAY AMERICA                )   Demand for Jury Trial
     CORPORATION, fka               )
15   FAIRWAY COMMERCIAL             )
     MORTGAGE CORPORATION,          )
16   an Oregon corporation,         )
     and FRANKI KEEFE,              )
17                                  )
            Defendants,             )
18

19          Plaintiff alleges:

20                     COUNT ONE

21          (Violation of Federal Truth in Lending Act)

22              I. Preliminary Statement

23          1. This action seeks declaratory relief, injunctive relief, equitable relief,

24   compensatory damages, punitive damages, and costs, attorney fees and other

25   appropriate relief for the violation , inter alia, by the Defendants of the Federal Truth in

26

Page

       1. COMPLAINT

                                              **LAUREN PAULSON**

                                            3980 S.W. 170TH AVE.
                                            ALOHA, OREGON 97007
                                            TELEPHONE (503) 591-1819

# ZZ695

1  Lending Act.

2                                    II. Jurisdiction

3          2.  This action arises under the Federal Truth in Lending Act, 15 USC

4   1601 et seq. (The "Act").

5

6                                      III. Venue

7          3.  This action properly lies in the United States District Court for the

8   District of Oregon, pursuant to 29 USC § 1391(b), because the claim arose in this

9   judicial district and because the violation of the Truth in Lending Act was committed in

10  this judicial district.

11

12                                     IV. Parties

13         4.  The Plaintiff is a local consumer and at all times material hereto is a

14  citizen of the United States and a resident of the State of Oregon, County of

15  Washington.

16         5.   At all times material hereto, Defendant "Fairway" is an Oregon

17  corporation transacting business in the State of Oregon.

18         6.  At all times material hereto, Defendant Keefe is a licensed real estate

19  agent and doing business in the State of Oregon.

20

21                                       V. Facts

22         7.  On or about November, 2005 Plaintiff Paulson and Defendant Fairway

23  executed certain loan documents which did not comply with the Federal Truth in Lending

24  Act and which did not make the required disclosures.

25         8.  Defendant Fairway is a creditor as defined in Federal Reserve Regulation Z,

26

Page
       2. COMPLAINT

                                                        LAUREN PAULSON

                                                        3980 S.W. 170TH AVE.
                                                        ALOHA, OREGON 97007
                                                        TELEPHONE (503) 591-1819

12 CFR 226 ("Reg Z") which promulgates the "Act" and is a creditor who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments on transactions secured by a dwelling.

9. As a direct and proximate result of Defendant Fairway's actions and failure to comply with the "Act", Plaintiff has suffered great economic and other loss in amount of $200,000 or such amounts as are proved at trial.

10. In addition to the compensatory damages aforesaid, Plaintiff is entitled to recover statutory damages as provided in the "Act" in an amount equal to twice the amount of the finance charge in the transaction, his reasonable attorney fees and costs.

COUNT TWO

(Fraud)

11. At all times material hereto, the Defendants made material representations in said loan documents and otherwise in subsequent contracts outlined below, upon which the Plaintiff relied to his detriment. Said representations were false and fraudulent and known to the Defendants to be false and fraudulent intended to extract further funds from the Plaintiff illegally pursuant to those representations.

12. As a direct and proximate result of Defendant's fraud, Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved at trial. Plaintiff also seeks punitive damages in an amount to be determined at trial.

COUNT THREE

(Oregon Lending Law)

Page

3. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

13.  At all times material hereto, Defendant Fairway and their agents violated Oregon's Lending Law, ORS 59.840 to 59.965, by failing to make the disclosures required by those statutes.

14.  As a direct and proximate result of Defendant Fairway's failure, through their agents, to make the required disclosures aforesaid, Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved at trial.

COUNT FOUR

(Breach of Contract)

15.  Defendant Fairway promised to provide a bridge loan to Plaintiff on agreed upon terms on or about February, 2008 and Plaintiff relied on that promise to his detriment.  Fairway subsequently failed to provide said loan as promised.

16.  As a direct and proximate result of Defendant Fairway's breach of contract, Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved at trial.

COUNT FIVE

(Breach of Good Faith and Fair Dealing)

17.  Defendants engaged in a subsequent series of promises to the Plaintiff upon which Plaintiff relied, when in truth and in fact, Defendants had no intention of honoring said promises, rather made such promises to enhance their interest rate and fees all to Plaintiff's detriment.

18.  As a direct and proximate result of the Defendants breach of good faith and fair dealing, Plaintiff has been damaged in an amount of $200,000 or such

Page
    4. COMPLAINT

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 4 of 7

1   amounts as are proved at trial.  Plaintiff also seeks punitive damages in an amount to

2   be determined at trial.

3

4                                    COUNT SIX

5                              (Breach of Contract)

6           19.  On or about July, 2008 Defendant Fairway and the Plaintiff orally

7   agreed to the terms of a "Forbearance Agreement".  In reliance on that agreement, the

8   Plaintiff partially performed by paying to Fairway $1,500 on or about July 18, 2008 under

9   the specific terms of that oral contract.  On or about August 12, 2008 Fairway notified

10  the Plaintiff that Fairway would not honor the terms of the forbearance agreement

11  previously agreed to and honored by Plaintiff's payment on July 18, 2008 which was

12

13  accepted and retained by Defendant Fairway.

14          20.  As a direct and proximate result of Defendant Fairway's acts, the

15  Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved

16  at trial.

17

18                                  COUNT SEVEN

19                      (Breach of Good Faith and Fair Dealing)

20          21.  Plaintiff incorporates paragraph 19 herein as though fully set forth.

21          22.  As a direct and proximate result of Defendant Fairway's acts, the

22  Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved

23  at trial.  Plaintiff also seeks punitive damages in an amount to be determined at trial.

24                                  COUNT EIGHT

25                  (Promissory Estoppel and Declaratory Relief)

26

Page

    5. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 2
Page 5 of 7

21.  Plaintiff incorporates paragraph 19 herein as though fully set forth.

22.  As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved at trial.  Plaintiff also seeks declaratory and equitable relief declaring the aforementioned oral agreements valid, rescinding any and all loan agreements signed in 2005, waiving any and all penalties from February, 2008 forward, declaring said loan agreements unconscionable and other relief according to proof at trial.

COUNT NINE

(Conspiracy)

23.  The Defendants and each of them entered into a conspiracy to defraud the Plaintiff out of interest, fees, costs and other monies by requiring the Plaintiff to list his property for sale with Defendant's agent Keefe when in truth and in fact they had no intentions of actually selling Plaintiff's property in order to avoid foreclosure by Defendant Fairway.

24.  As a direct result of Defendant's acts, Plaintiff has been damaged in an amount of $200,000 or such amounts as are proved at trial.  Plaintiff also seeks punitive damages according to proof at trial.

COUNT TEN

(Injunction)

25.  The Defendant Fairway should be enjoined from any foreclosure proceedings presently being threatened by Defendant Fairway.  Said injunction is required because the Plaintiff's historic property, listed on the National Register of

Page

6. COMPLAINT

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

1  Historic Places will be irreparably harmed.  Any such foreclosure will prevent Plaintiff

2  from otherwise marketing said property.  Defendant Fairway is equitably estopped from

3  proceeding with foreclosure due to the oral binding forbearance agreement upon which

4  Plaintiff has made the agreed upon payment which was accepted by Defendant

5  Fairway.

6

7                                    VI.  Relief Requested

8      26.  WHEREFORE, Plaintiff respectfully requests this court or jury  to:

9      27.  (a.)  Assume jurisdiction over this action.

10

11          (b.)  On Plaintiff's COUNTS ONE THROUGH NINE:

12              (1.)  To award Plaintiff damages in the amount of $200,000 or such

13              amounts as are proved at trial.

14          (c.)  To enjoin the Defendant Fairway from any and all foreclosure

15          proceedings  on  said  property  unless  and  until  there  is  a

16          determination on Plaintiffs COUNTS ONE through NINE.

17

18          (d.)  To award Plaintiff's costs and attorney fees.

19          (e.)  To grant such other equitable relief as it may deem just and

20          proper.

21      DATED this 21 day of August, 2008.

22                                    *Lauren Paulson*
                                       Lauren Paulson, Pro Se
23

24

25

26

Page

    7. COMPLAINT

**LAUREN PAULSON**

3980 S.W. 170TH AVE
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

1  Lauren Paulson, Pro Se
2  3980 S. W. 170th Ave.
   Aloha, OR 97007
3  971 219 5859
4  Plaintiff

5

6

7

8              UNITED STATES DISTRICT COURT FOR THE

9                      DISTRICT OF OREGON

10  LAUREN PAULSON, Trustee       )
    and Operating Manager of Huber- )
11  Wheeler Crossing, LLC (Inactive) )
                                     )   Civil Action No.  CV 08-982-ST
12          Plaintiff,               )
                                     )   SECOND AMENDED COMPLAINT
13     v.                            )
                                     )   (Federal Truth in Lending Act)
14                                   )      15 USC §1601 et seq.
                                     )
15  FAIRWAY AMERICA                  )   Demand for Jury Trial
    CORPORATION, fka                 )
16  FAIRWAY COMMERCIAL              )   Class Action -- FRCP 23
    MORTGAGE CORPORATION,           )
17   Oregon corporations, FHLF, LLC, )
    an Oregon corporation, MATT      )
18  BURK, STERLING SAVINGS BANK,    )
    a Washington corporation,        )
19  WELLS FARGO FOOTHILLS, a        )
    California corporation, JOAN DOE, )
20  a mortgage broker,               )
    FRANKI KEEFE, a real estate broker )
21  and JOEL PARKER                  )
                                     )
22          Defendants,              )

23          Plaintiff alleges:

24                      COUNT ONE

25          (Violation of Federal Truth in Lending Act)

26              15 USC §1601 et seq,

Page

        1. COMPLAINT

                                    **LAUREN PAULSON**

                                    3980 S.W. 170TH AVE
                                    ALOHA, OREGON 97007

## I. Preliminary Statement

1.  This action seeks declaratory relief, injunctive relief, equitable relief, compensatory damages, statutory damages, punitive damages, and costs, attorney fees and other appropriate relief for the violation , inter alia, by the Defendants of the Federal Truth in Lending Act.

## II. Jurisdiction

2.  This action arises, inter alia, under the Federal Truth in Lending Act (TILA), 15 USC 1601 et seq. (The "Act") and thus this Court has subject matter jurisdiction.

## III. Venue

3.  This action properly lies in the United States District Court for the District of Oregon, pursuant to 29 USC § 1391(b), because the claim arose in this judicial district and because the violation of the Truth in Lending Act and other federal laws was committed in this judicial district.

## IV. Parties

4.  The Plaintiff is a local consumer and at all times material hereto is a citizen of the United States and a resident of the State of Oregon, County of Washington.

CLASS ACTION ALLEGATIONS

The Plaintiff is representative of a class as defined by FRCP 23 and brings this action on behalf of the entire class.  The class is so numerous that joinder of all of its hundreds (or thousands) of members is impracticable.  There are questions of law and fact common to the class, the claims of the Plaintiff are typical of the claims of the

Page

2. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE
ALOHA, OREGON 97007

1    class, and the Plaintiff will fairly and adequately protect the interests of the class. The

2    class consists of all the borrowers of these Defendants from 1997 to present. Upon

3    information and belief the Defendants have a minimum of approximately one hundred

4    and fifty (150) such borrowers but this minimum number may actually be in the

5    thousands. The Plaintiff alleges a common course of similar misrepresentations against

6    these defendants amounting to fraud by aiding and abetting predatory lending through

7    standardized centrally-orchestrated marketing techniques resulting in a large class of

8    borrowers entering into loan agreements they would not have entered had they known

9    the true terms.

10

11        5. At all times material hereto, Defendants "Fairway", "Sterling", and "Wells Fargo

12    Foothills" are transacting business in the State of Oregon. At all times material hereto

13    the foregoing defendant corporations and Matt Burk, Fairway's president, operate

14    together as part of a common enterprise. At all times material hereto, Sterling and

15    Wells Fargo Foothills knowingly aided and abetted the contractual practices and

16    deceptions practiced by Fairway giving substantial assistance or encouragement to

17    Fairway in these predatory lending practices and as such are subject to third party

18    liability for Fairway's fraud under state and federal law.

19

20        6. At all times material hereto, Defendant Joan Doe is a licensed real estate

21    broker transacting business on behalf of Fairway. At all times material hereto,

22    Defendant Keefe is a licensed real estate agent and doing business in the State of

23    Oregon for Fairway. At all times material hereto, Defendant Joel Parker is a licensed

24    attorney practicing law in the State of Oregon.

25

26

Page

    3. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

## V. Facts

7.  At all times material hereto Fairway advertises, offers, extends and sells first mortgage loans on small businesses and consumer's homes. Fairway styles itself as a niche lender catering to the "subprime" loan market which are customers with poor or insufficient credit histories, records, or ratings who might experience difficulty securing conventional financing.   Fairway charges consumers substantial prepaid finance charges such as loan origination fees, document fees, underwriting fees, loan processing fees, brokers fees (commissions) and other fees.  These charges typically total between ten and thirty percent of the amount financed.  As part of Fairway's marketing campaign Fairway targets financially vulnerable consumers including individuals who have significant equity in their properties and a "...pressing need for a loan".  Fairway partners with investors such as Sterling and Wells Fargo Foothills in charging 10% to 14% interest on loans with a balloon payment ranging from six (6) months to five (5) years.  Most Fairway loans are interest only monthly payments with a balloon payment at the end of the term.  According to Fairway, these loans can be "assess(ed) over the phone in 10-15 minutes by Fairway and if it looks promising (Fairway) can issue a loan approval within 24 hours."  Fairway does not need to work with "...an approved broker" according to their promotional materials.  "Protecting the broker's fee and assuring (the broker) gets paid is (Fairway's) number 1 priority."  The sales presentations and loan documents by Fairway and agents contain false or misleading statements that cause consumers to be deceived about the material terms of the loan, or fails to make required disclosures and thereby misleads consumers about

Page    4. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 4 of 16

1   the meaning of the actual and material information required to be disclosed by Section

2   128 of The Act, 15 USC § 1601 et seq.,1638, and Section 226.18 of Regulation Z, 12

3   CFR §226.18 ("TILA disclosure statement").  Fairway does not provide any of the

4   required information under this Act nor does it identify any of the five factors required

5   by TILA to determine if the loan is a business loan.  Therefore, Fairway misleads

6   consumers about the amount financed, the annual percentage rate, the interest rate on

7   the loan, along with other costs and fees.  Moreover, penalty interest rates and other

8   charges similarly are not disclosed to the borrower in the form and in a manner required

9   by law.

10

11        As aforesaid Fairway also fails to supply the information required by nor does

12  Fairway follow the procedures of the **Real Estate Settlement Procedures Act** (RESPA)

13  12 USC §2601(b) passed in 1974 which was enacted to curb undisclosed kickbacks

14  between lenders and brokers (or others) who "steered" borrowers whose circumstances

15  pressed them to the subprime mortgage market.  RESPA requires lenders to provide

16  a good faith estimate for all of the approximate costs of a particular loan along with a

17  HUD-1 or 1A prior to or at the closing of the transaction which was not done here.  The

18  purpose of the act is to allow the borrower to know specifically the costs of the loan and

19  to whom the fees are being allotted which was not done here.

20

21        Further, the Fairway loans violate the **Home Ownership and Equity Protection**

22  **Act of 1994** (HOEPA) [*See*, Riegle Community Development and Regulatory

23  Improvement Act, Pub. L. No. 103-325, § 151-58, 108 Stat. 2190-98 (1994) enacted as

24  a part of the federal Truth in Lending Act (TILA) to curb a pattern of abuses in the

25

26

Page

    5. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE
ALOHA. OREGON 97007

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 5 of 16

subprime mortgage market].  This act requires certain additional disclosures and protections for certain high-interest and high-fee equity loans including calculations which were not done here by Fairway even though applicable.

Fairway's practices aforesaid constitute deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 USC§ 45(a) justifying federal agency intervention and therefore, a copy of this complaint is being sent to the Federal Trade Commission.  *[See Federal Trade Commission v. First Alliance Mortgage Company, et al.*, Civil Case No. SACV 00-964 DOC (Eex) in USDC Central District of California, Southern Division (2000), and In re:  First Alliance Mortgage Company, Case No. 04-55396/04-55942/DC No CV-01-971-DOC/CV-01-01111-DOV  in the United States Court of Appeals for the Ninth Circuit (2006)].

On or before November, 2005 Defendant Joan Doe mortgage broker directed Paulson to Fairway, as part of the predatory loan practice known as "steering" (the practice of directing borrowers "...with pressing loan needs" to lenders with extraordinarily high interest rates or finance charges relative to the loan risk).

Plaintiff Paulson and Defendant Fairway executed certain loan documents which did not comply with TILA, RESPA nor HOEPA.  Fairway did not make the required disclosures, misrepresented the terms of the loan and failed to comply with federal law and state law as aforesaid.  Thus, these Defendants engaged in "yield spread premium" loans which rewards brokers for originating loans at above-market interest rates and excessive other fees and charges with cash payments when the borrower's credit risk does not justify these high interest rates or charges.  A joint task force conducted by the

Page

6. COMPLAINT

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
--

1  Department of Housing and Urban Development (HUD) and the Department of the

2  Treasury of the United States determined that these subprime mortgage loans aforesaid

3  constitutes predatory lending when loan originators and lenders use fraud, deception,

4  or other manipulative techniques to extend credit in ways *intended to strip borrowers of*

5  *the equity in their property*.  See Regulation Z (Final Rule (Dec.21, 2001)

6

7      8.  Defendant Fairway is a creditor as defined in Federal Reserve Regulation Z,

8  12 CFR 226 ("Reg Z") which promulgates the "Act" and is a creditor who regularly

9  extends consumer credit that is subject to a finance charge or is payable by written

10  agreement in more than four installments on transactions secured by a dwelling.

11

12      9.  As a direct and proximate result of Defendant Fairway's actions and failure to

13  comply with the "Act",  Plaintiff has suffered great economic and other loss in amount

14  of $1,000,000 or such amounts as are proved at trial.

15      10.  In addition to the compensatory damages aforesaid, Plaintiff is entitled to

16  recover statutory damages as provided in the "Act" in an amount equal to twice the

17  amount of the finance charge in the transaction, his reasonable attorney fees and costs.

18                        COUNT TWO

19

20                          (Fraud)

21      11.  The Plaintiff incorporates the **"Facts"** alleged above and further alleges that

22  at all times material hereto, the Defendants made material  misrepresentations in said

23  loan documents and otherwise in subsequent contracts outlined below, upon which the

24  Plaintiff relied to his detriment as was intended by the Defendants.  Said representations

25  aforesaid were false and fraudulent and known to the Defendants to be false and

26

Page

      7. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
--

1   fraudulent intended to extract further funds from the Plaintiff illegally pursuant to those

2   representations.  The Defendant's acts constitute aiding and abetting a fraud through

3   the common scheme described above and otherwise described here.

4

5        In furtherance of said fraud, Defendants Fairway, FHLF, Burk and Parker

6   proffered to Plaintiff a "Forbearance Agreement" on or about August of 2008 in which

7   these Defendants proposed that Plaintiff give up all his legal rights present, past and

8   future as to these matters.  Said agreements aforesaid were unconscionable in the

9   extreme and constituted a fraud on the Plaintiff and a conspiracy to "dehorse" the

10  Plaintiff from his equity interest in the property owned by him.

11

12       12.  As a direct and proximate result of Defendant's fraud, Plaintiff has been

13  damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Plaintiff

14  also seeks punitive damages in an amount to be determined at trial.

15

16                              COUNT THREE

17                          (Oregon Lending Law)

18

19       13.  At all times material hereto, Defendant Fairway and their agents violated

20  Oregon's Lending Law, ORS 59.840 to 59.965, by failing to make the disclosures

21  required by those statutes.

22       14.  As a direct and proximate result of Defendant Fairway's failure, through their

23  agents, to make the required disclosures aforesaid, Plaintiff has been damaged in an

24  amount of $1,000,000 or such amounts as are proved at trial.

25                              COUNT FOUR

26

Page

        8. COMPLAINT

                                   LAUREN PAULSON

                                   3980 S.W 170TH AVE.
                                   ALOHA, OREGON 97007
                                   ~~

(Breach of Contract)

15.  Defendant Fairway promised, with adequate consideration to provide a bridge loan to Plaintiff on agreed upon terms on or about  February, 2008 and Plaintiff relied on that promise to his detriment.  Fairway subsequently failed to provide said loan as promised.

16.  As a direct and proximate result of Defendant Fairway's breach of contract, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT FIVE

(Breach of Good Faith and Fair Dealing)

17.  Commencing on or about February, 2008 Defendants Fairway, FHLF, Burk and Joel Parker engaged in a subsequent series of promises to the Plaintiff upon which Plaintiff relied, when in truth and in fact, Defendants  had no intention of honoring said promises, rather made such promises to ensure foreclosure, enhance their penalty interest rate and fees all to Plaintiff's detriment.  Said fees and charges were known to be or should have been known to be in violation of state and federal law.

18.  As a direct and proximate result of the Defendants breach of good faith and fair dealing, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Plaintiff also seeks punitive damages in an amount to be determined at trial.

COUNT SIX

(Breach of Contract)

Page

9. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
--

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 9 of 16

19. On or about July, 2008 Defendant Fairway and the Plaintiff orally agreed to the terms of a "Forbearance Agreement". In reliance on that agreement, the Plaintiff performed by paying to Fairway $1,500 on or about July 18, 2008 under the specific terms of that oral contract. On or about August 12, 2008 Fairway notified the Plaintiff that Fairway would not honor the terms of the forbearance agreement previously agreed to and honored by Plaintiff's payment on July 18, 2008 which was accepted and retained by Defendant Fairway.

20. As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT SEVEN

(Breach of Good Faith and Fair Dealing)

21. Plaintiff incorporates paragraph 7,8 and 19 herein as though fully set forth.

22. As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial. Plaintiff also seeks punitive damages in an amount to be determined at trial.

COUNT EIGHT

(Promissory Estoppel and Declaratory Relief)

23. Plaintiff incorporates paragraph 7, 8 and 19 herein as though fully set forth. At various times in 2008 Fairway promised to cancel and extinguish said loans in their entirety. Plaintiff relied on those promises to his detriment.

24. As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

Page

10. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
--

1  Plaintiff also seeks declaratory and equitable relief declaring the aforementioned oral

2  agreements valid, rescinding any and all loan agreements signed in 2005, waiving any

3  and all penalties from February, 2008 forward, declaring said loan agreements

4  unconscionable and other relief according to proof at trial.

5

6                                    COUNT NINE

7                                     (Conspiracy)

8          25.  The Plaintiff incorporates the "Facts" described above in paragraphs 7 and

9  8 and further alleges that the Defendants and each of them entered into a conspiracy

10  to defraud the Plaintiff out of interest, fees, costs and other monies by requiring the

11  Plaintiff to list his property for sale with Defendant's agent Keefe when in truth and in

12  fact they had no intentions of actually selling Plaintiff's property which would have

13

14  avoided foreclosure by Defendant Fairway.  Thus, Fairway would claim to be entitled to

15  additional penalty interest the longer the property did not sell.

16          26.  As a direct result of Defendant's acts, Plaintiff has been damaged in an

17  amount of $1,000,000 or such amounts as are proved at trial.  Plaintiff also seeks

18  punitive damages according to proof at trial.

19

20                                    COUNT TEN

21                                     (Injunction)

22          27.  The Defendant Fairway should be enjoined from any foreclosure

23  proceedings presently being threatened by Defendant Fairway.  Said injunction is

24  required because the Plaintiff's historic property, listed on the National Register of

25  Historic Places will be irreparably harmed.  Any such foreclosure will prevent Plaintiff

26

Page

        11. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1  from otherwise protecting said unique, historical property.    Defendant Fairway is

2  equitably estopped from proceeding with foreclosure due to the oral binding forbearance

3  agreement upon which Plaintiff has made the partial  payment which was accepted by

4  Defendant Fairway.

5

## COUNT ELEVEN

6

7  (Home Ownership and Equity Protection Act of 1994)

8  15 USC § 1601 et seq.

9  28.  The Plaintiff incorporates paragraphs 7 and 8 as though full set forth here.

10

11  29.  The Defendant Fairway violated the Home Ownership and Equity Protection

12  Act (HOEPA) of 1994 as aforesaid.  Under this federal law the borrower is entitled to a

13  private right of action not only against the broker and lender, but also against

14  subsequent purchasers or "assignees" which include Sterling and Wells Fargo Foothills.

15  Under HOEPA the financiers of predatory lending are accountable for the misconduct

16  of their counterparts in the primary mortgage origination market and thus, Sterling and

17  Wells Fargo Foothills are liable for the misconduct of Fairway under this federal law.

18  The Plaintiff did not learn of Sterling' and Wells Fargo Foothill's  involvement until

19  November of 2008.

20

21  30.  As a result of Defendant's of HOEPA Plaintiff has been damaged in an

22  amount of$1,000,000 or in such amounts as are proved at trial.

23

24

## COUNT TWELVE

25

(Real Estate Settlement Procedures Act)

26

Page

12. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
--

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 12 of 16

12 USC §2601 et seq.

31.  Plaintiff incorporates paragraphs 7 and 8 as though fully set forth here.

32.  The Defendant has violated the Real Estate Settlement Procedures Act (RESPA) as aforesaid.

33.  As a result of Defendant's violation of RESPA Plaintiff has been damaged in an amount of $1,000,000 or in such amounts as are proved at trial.

### COUNT THIRTEEN

#### (Interference with Prospective Economic Advantage)

34.  On or after September, 2008 Mr. Scott Swenson and his wife, Janet Swenson (Swensons) committed to purchase the M.E.Blanton House for $500,000, depending on approvals by governmental agencies, for use as a Tea House and restaurant.  In reliance on Fairways agreement to this transaction, the Swenson's completed virtually all due diligence requirements and were prepared to proceed with the sale when Matt Burk  interfered with the sale because the closing of said sale would disclose to Sterling Savings Bank and Wells Fargo Foothills that the Paulson loan was in arrearage and that fact had not been disclosed to Sterling nor Wells Fargo.

35.  As a result of Defendant's actions aforesaid, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

### COUNT FOURTEEN

#### (Usury)

#### ORS 84.010

36.  The Plaintiff incorporates paragraphs 7 and 8 as though fully set forth herein.

Page

13. COMPLAINT

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
--

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 13 of 16

37.  Said loans described above by Fairway violates common law usury laws and the exceptions are unconstitutional under the Due Process Clause of the U.S. Constitution as applied to the states under the 14th Amendment.

38.  As a result of said actions, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT FIFTEEN

(Rescission)

40.  The Plaintiff incorporates paragraphs 7 and 8 as though fully set forth herein.

41.  The loans described aforesaid should be canceled, rescinded, and deemed of no force and effect under the federal and state laws aforesaid.  The Plaintiff hereby tenders back those funds less adjustments allowed by law.  The Plaintiff as only recently discovered the violations of these federal and state laws by the Defendants.

42.  As a result of said actions, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT SIXTEEN

(Accord and Satisfaction)

43.  Plaintiff incorporates by this reference paragraphs 7,8,15,17,19 and 23 as though fully set forth herein.

44.  At various times between February, 2008 and November 2008 Fairway orally and in writing declared the aforementioned loans satisfied and entered into an accord under new terms with the Plaintiff which the Plaintiff relied upon.  At all times material

Page

14. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1    hereto, the Plaintiff relied on these agreements to his detriment.

2       45.  As a result of Defendants actions aforesaid, Plaintiff has been damaged in

3    an amount of $1,000,000 or such amounts as are proved at trial.

4                         COUNT SEVENTEEN

5                            (Illegal)

6

7       46.  Plaintiff incorporates by this reference paragraphs 7 and 8 as though fully set

8    forth herein.

9       47.  Defendant's contracts are illegal under state and federal law.

10      48.  As a result of Defendant's actions aforesaid, Plaintiff has been damaged in

11   an amount of $1,000,000 or such amounts as are proved at trial.

12                        COUNT EIGHTEEN

13             (Unfair and Deceptive Trade Practices)

14                      ORS 646.010 et seq.

15

16      49.  Plaintiff realleges paragraphs 7,8,15,17,19 and 23 as though fully set forth

17   herein.

18      50.  Defendant's actions aforesaid constitute Unfair and Deceptive Trade

19   Practices under Oregon law.

20

21      51.  As a result of Defendant's actions aforesaid Plaintiff has been damaged in

22   an amount of $1,000,000 or such amounts as are proved at trial along with attorney fees

23   and statutory damages.

24                    **VI.  Relief Requested**

25      52.  WHEREFORE, Plaintiff respectfully requests this court or jury  to:

26

Page

     15. COMPLAINT

                                    LAUREN PAULSON

                                    3980 S.W. 170TH AVE.
                                    ALOHA, OREGON 97007

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 15 of 16

(a.)   Assume jurisdiction over this action.

(b.)   On Plaintiff's COUNTS ONE THROUGH NINE AND ELEVEN THROUGH EIGHTEEN to award Plaintiff damages in the amount of $1,000,000 or such amounts as are proved at trial;

(c.)   To enjoin the Defendant Fairway from any and all foreclosure proceedings on said property unless and until there is a determination on Plaintiffs COUNTS ONE through EIGHTEEN.

(d.)   To award Plaintiff's costs and attorney fees.

(e.)   To grant such other equitable relief or other relief as it may deem just and proper.

DATED this 29th day of January, 2009.

Lauren Paulson, Plaintiff Pro Se

Page

16. COMPLAINT

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 3
Page 16 of 16

Case 09-32439-rld7    Doc 76    Filed 11/25/09

**DISTRICT OF OREGON**
# F I L E D
**November 25, 2009**
**Clerk, U.S. Bankruptcy Court**

Below is an Order of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

O11to7e (4/1/09) tlh

## UNITED STATES BANKRUPTCY COURT
### District of Oregon

In re
  **Lauren John Paulson**
Debtor(s)

)
)
)
)
)
)
)
)
)

Case No. **09-32439-rld11**

ORDER CONVERTING
CHAPTER 11 CASE TO
CASE UNDER CHAPTER 7;
TRUSTEE APPOINTMENT

A motion having been filed to convert the Chapter 11 case, and it appearing conversion is appropriate,

**IT IS ORDERED** that this case is converted to a case under Chapter 7 of United States Code Title 11.

**IT IS FURTHER ORDERED** that:

1.  Lauren John Paulson is designated, pursuant to Fed. Rule of Bankruptcy Procedure 9001(5), to perform
    the duties imposed upon the debtor(s) by United States Code Title 11, the Fed. Rules of Bankruptcy
    Procedure, and this court's Local Rules.

2.  The debtor(s), or Chapter 11 trustee, if one appointed by the court, **MUST FILE, WITHIN 15 DAYS of the
    above "FILED" date, ONLY AN ORIGINAL OF** all documents required by either the following pt. a. or pt.
    b.:

    a.  (1) A complete set of Schedules, Statement of Affairs, AND Local Form #521.05 if the debtor(s) an
        individual, with **each detailing** the **debtor(s)' status** as of this conversion date; (2) an Official Form
        #B22A detailing the debtor(s)' status as of the case filing date; **AND** (3) a <u>SEPARATE</u> Master Mailing
        Matrix (NO copy required), following Local Form #104, **LISTING ONLY NEW CREDITORS** whose
        unpaid debts were **INCURRED AFTER** filing of the Chapter 11 Petition **AND BEFORE** this date of
        conversion.

Page 1 of 2

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 1 of 2

Case 09-32439-rld7    Doc 76    Filed 11/25/09

**OR** b. (1) A Declaration, under penalty of perjury, stating that all previously filed Schedules, Statement of Affairs, and any amendments thereto, substantially reflect the condition of the debtor(s) and the estate on this date of conversion; (2) an Official Form #B22A detailing the debtor(s)' status as of the case filing date; **AND** (3) Schedules I & J **detailing debtor(s)' status** at conversion, AND a Local Form #521.05 if debtor(s) an individual.

3. (If debtor(s) fails to comply with pt. 2 above) **THE DEBTOR(S)** (or designated person in pt. 1 above) **MUST APPEAR BEFORE THE COURT AT** 02:00 PM on 12/21/09 in US Bankruptcy Court, Courtroom #3, 1001 SW 5th Ave, 7th Floor, Portland, OR 97204, and explain the reasons, if any, for the failure to obey a lawful court order as set forth in pt. 2 above. If the failure to obey is not adequately explained, the court may (a) order a third person to perform the above duties and enter a judgment against the debtor(s) to pay such person reasonable compensation for the services performed and other reasonable costs; (b) deny the debtor(s)' discharge for failure to obey a lawful order of the court; (c) dismiss this case; or (d) order such other relief as the court may deem appropriate.

4. Any court appointed Chapter 11 trustee must, **WITHIN 35 DAYS** of the above "FILED" date, file a final report on Local Form #1198 with estate information from the filing date to this date of conversion. Upon filing, and without further court order, that trustee shall be discharged as trustee of the debtor's estate.

### ###

Amy E. Mitchell, POB 2289, Lake Oswego, OR 97035, is appointed interim trustee of this estate. The trustee's bond shall be the blanket bond on file with the U.S. Bankruptcy Court Clerk.

UNITED STATES TRUSTEE

Page 2 of 2

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 4
Page 2 of 2



Lauren Paulson, Pro Se
3980 S. W. 170th Ave.
Aloha, OR 97007
971 219 5859
Plaintiff

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF OREGON

LAUREN PAULSON,                          )
                                         )
                                         )
              Plaintiff,                 )    Civil Action No.  CV 08-982-ST
                                         )
                                         )
       v.                                )
                                         )    NOTICE OF REMOVAL
                                         )
FAIRWAY AMERICA                          )    FOR CASE NOS. C100084EV,
CORPORATION, fka                         )    C100085EV, C100086EV
FAIRWAY COMMERCIAL                       )
MORTGAGE CORPORATION,                    )    Circuit Court of the State of Oregon,
 Oregon corporations, FHLF, LLC,         )    County of Washington
an Oregon corporation, MATT              )
BURK, STERLING SAVINGS BANK,             )
a Washington corporation,                )
WELLS FARGO FOOTHILLS, a                 )
California corporation, JOAN DOE,        )
a mortgage broker,                       )
FRANKI KEEFE, a real estate broker       )
and JOEL PARKER                          )
                                         )
              Defendants,                )
_____)

TO: CLERK OF WASHINGTON COUNTY CIRCUIT COURT, STATE OF OREGON

Page

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 1 of 2

CIRCUIT COURT FOR THE STATE OF OREGON
COUNTY OF WASHINGTON

1

2

FHLF, LLC, an Oregon limited liability
company,

4

5                    Plaintiff,                          Case Nos. C100084EV
                                                         C100085EV, C100086EV
6

7  v,

8  LAUREN PAULSON, an individual; and
9  all occupants,

10

                     Defendant

11

12        Please take notice that on January 15, 2010, Lauren Paulson,

13  defendant in the Washington County Circuit Court proceedings Case Nos.

14  C100084EV, C100085EV and C100086EV, filed a petition and bond for

15  removal, copies of which are attached, of the above-entitled action, to the

16  United States District Court for The District of Oregon.

17        You are also advised that defendant, Lauren Paulson, on filing such

18  petition and bond for removal in the office of the Clerk of the United States

19  District Court for The District of Oregon, also filed copies of it with the Clerk

20  of the Circuit Court of the State of Oregon for the County of Washington to

21  effect removal pursuant to 28 USC § 1446(e).

22        Dated this 15th day of January, 2010.

23

24                                              _Lauren Paulson_

25                                              LAUREN PAULSON

26

Page

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 5
Page 2 of 2



Lauren Paulson, Pro Se
3980 S. W. 170th Ave.
Aloha, OR 97007
971 219 5859
Defendant

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF OREGON

FHLF,LLC, an Oregon limited liability
company,                                    )
                                            )
                Plaintiff                   )        Case No. 3:10-CV-48-MO
                                            )
vs.                                         )        **DEFENDANT'S ANSWER,**
                                            )        AFFIRMATIVE DEFENSES, AND
LAUREN PAULSON, an individual; and          )        COUNTERCLAIMS TO
all occupants                               )        PLAINTIFF'S COMPLAINTS
                                            )
----------------------------------------    )-----------------------------------
LAUREN PAULSON,                             )
                                            )
                Plaintiff,                  )        **THIRD PARTY COMPLAINT**
                                            )
v.                                          )        (Federal Truth in Lending Act)
                                            )          15 USC §1601 et seq.
FAIRWAY AMERICA                             )
CORPORATION, fka                            )        Demand for Jury Trial
FAIRWAY COMMERCIAL                          )
MORTGAGE CORPORATION,                       )        Class Action -- FRCP 23
Oregon corporations, MATTHEW W.             )
BURK, aka MATT BURK,                        )
STERLING SAVINGS BANK,                      )
a Washington corporation,                   )
WELLS FARGO FOOTHILLS, a                    )
California corporation, JOAN DOE,           )
a mortgage broker,                          )
FRANKI KEEFE, a real estate broker,         )
SKYLANDS INVESTMENT CORP-                   )
ORATION, an Oregon corporation,             )
Manager, FHLF, LLC,CRAIG RUSSILLO )
and JOEL PARKER                             )
                                            )
                Defendants,                 )

Page

**LAUREN PAULSON**
                    1
            3980 S.W. 170TH AVE.
         ALOHA, OREGON 97007
        TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 1 of 24

# ANSWER

1

2  For their Answer, Affirmative Defenses, Counterclaims and Third Party

3  Complaint as to the claims of the Plaintiff, Defendant admits, denies, sets forth

4  affirmative defenses, counterclaims and third party complaints as follows:

5                  1.

6

7  Denies paragraph 1, denies paragraph 2, except admits Paulson filed for

8  Chapter 11 bankruptcy on April 9, 2009 in the United States Bankruptcy Court for

9  the District of Oregon, Case No. 09-32439 in paragraph 2.  Denies paragraph 3,

10  denies paragraph 4, denies paragraph 5, denies paragraph 6, denies paragraph

11  7, denies paragraph 8, denies paragraph 9 and denies paragraph 10  of each

12  complaint and the denies the whole thereof in each complaint except as to where

13  specifically admitted herein.  Defendant incorporates his answers here as if set

14  forth in each and every complaint.

15                  2.

16

17  ## AFFIRMATIVE ALLEGATIONS

18  ### FIRST AFFIRMATIVE DEFENSE

19  (Failure to State a Claim)

20  As to all of Plaintiff's claims, Plaintiff has failed to state a claim upon

21  which relief can be granted.

22

23  ### SECOND AFFIRMATIVE DEFENSE

24  (Statute of Limitations)

25  Some or all of Plaintiff's claims are barred by the applicable statute

26  of limitations.

Page

LAUREN PAULSON
2
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

THIRD AFFIRMATIVE DEFENSE

(Illegality)

Some or all of Plaintiff's claims are illegal under contract law or

Usury.

FOURTH AFFIRMATIVE DEFENSE

(Failure of Consideration)

Some or all of Plaintiff's claims failed due to lack of or failure of

consideration.

FIFTH AFFIRMATIVE DEFENSE

(Accord and Satisfaction)

Some or all of Plaintiff's claims were settled based on an accord

and satisfaction.

SIXTH AFFIRMATIVE DEFENSE

(Discharge in Bankruptcy)

Some or all of Plaintiff's claims were discharged in bankruptcy

SEVENTH AFFIRMATIVE DEFENSE

(Bankruptcy automatic stay)

Some or all of Plaintiff's claims are or were stayed in bankruptcy

and Plaintiff's failed to obtain a proper stay in the bankruptcy proceedings.

EIGHTH AFFIRMATIVE DEFENSE

(Payment)

Some or all of Plaintiff's claims were paid by Defendant

Page

**LAUREN PAULSON**

3980 S.W. 170TH AVE
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 3 of 24

NINTH AFFIRMATIVE DEFENSE

(Rescission)

Some or all of Plaintiff's claims were rescinded by the parties.

TENTH AFFIRMATIVE DEFENSE

(Redemption)

Some or all of Plaintiff's claims are eligible for redemption under the law.

ELEVENTH AFFIRMATIVE DEFENSE

(Unconstitutionality)

Some or all of Plaintiff's claims are unconstitutional under state and federal law.

TWELFTH AFFIRMATIVE DEFENSE

(Fraud)

Some or all of Plaintiff's claims are based on intentional fraud by the Defendant.

THIRTEENTH AFFIRMATIVE DEFENSE

(Release)

Some or all of Plaintiff's claims are released.

FOURTEENTH AFFIRMATIVE DEFENSE

(Promissory Estoppel)

Some or all of Plaintiff's claims are barred by promissory estoppel

Page

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 4 of 24

1

2                              FIFTEENTH AFFIRMATIVE DEFENSE

3                                          (Waiver)

4                 Some or all of Plaintiff's claims are barred by waiver.

5                                              3.

6                        **COUNTERCLAIMS AND THIRD PARTY CLAIMS**

7

8                                        COUNT ONE

9                        (Violation of Federal Truth in Lending Act)

10                              15 USC §1601 et seq,

11                            **I. Preliminary Statement**

12

13        1.  These counterclaims and third party claims seek declaratory relief,

14   injunctive relief, equitable relief, compensatory damages, statutory damages,

15   punitive damages, and costs, attorney fees and other appropriate relief for the

16   violation, inter alia, by the Defendants of the Federal Truth in Lending Act.

17                                **II. Jurisdiction**

18        2.  These actions arise, inter alia, under the Federal Truth in Lending Act

19   (TILA), 15 USC 1601 et seq. (The "Act") and thus this Court has subject matter

20   jurisdiction.

21                                   **III. Venue**

22        3.  These actions are properly in the United States District Court for the

23   District of Oregon, pursuant to 29 USC § 1391(b), because the claims arose in

24   this judicial district and because the violation of the Truth in Lending Act and

25   other federal laws was committed in this judicial district.

26

Page

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

## IV. Parties

4.  The Third Party Plaintiff is a local consumer and at all times material hereto is a citizen of the United States and a resident of the State of Oregon, County of Washington.  Paulson is the only interested party in the claims of the Plaintiff and does not represent anyone else's interest in either the inactive former LLC nor Paulson's testamentary trust.  There are no other party's interests anywhere other than Paulson's in the claims asserted herein except as found in the class action allegations.  In that regard, Paulson is admitted to practice in this judicial district as an attorney.

The Plaintiff is described in relevant documents as follows:  FHLF, LLC an Oregon limited liability company Skylands Investment Corporation an Oregon Corporation, Manager, by Matthew W. Burk, President.  All references to "Fairway" herein include all of these entities plus any Fairway affiliated company including Fairway Commercial Mortgage Corporation and Fairway America Corporations, and successors and assigns.

### CLASS ACTION ALLEGATIONS

The Third Party Plaintiff is representative of a class as defined by FRCP 23 and brings this action on behalf of the entire class.  The class is so numerous that joinder of all of its hundreds (or thousands) of members is impracticable.  There are questions of law and fact common to the class, the claims of the Third Party Plaintiff are typical of the claims of the class, and the Third Party Plaintiff will fairly and adequately protect the interests of the class. The class consists of all the borrowers of these Third Party Defendants from 1997 to present.  The class, upon information and belief, the Third Party Defendants have a minimum of approximately one hundred and fifty (150) such borrowers but this minimum number may actually be in the thousands.  The Third Party Plaintiff alleges a common course of similar misrepresentations against

**LAUREN PAULSON**

3990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    these defendants amounting to fraud by aiding and abetting predatory lending

2    through standardized centrally-orchestrated marketing techniques resulting in a

3    large class of borrowers entering into loan agreements they would not have

4    entered had they known the true terms.  Were it not for Sterling and Wells

5    Fargo's "warehouse" credit line loans, Fairway would not have been able to

6    continue to fund its fraudulently obtained loans from the class.  These loans

7    predatory practices were further aided and abetted by Keefe, Burk, Russillo and

8    Parker as described below.

9       5.  At all times material hereto, Third Party Defendants "Fairway",

10    "Sterling", "Wells Fargo Foothills", Keefe, Russillo and Parker are transacting

11    business in the State of Oregon. At all times material hereto the foregoing Third

12    Party Defendants and Matt Burk, Fairway's president, operate together as part of

13    a common enterprise.  At all times material hereto, these defendants and each of

14    them knowingly aided and abetted the fraudulent contractual scheme engaged in

15    by Fairway giving substantial assistance or encouragement to Fairway in these

16    predatory lending practices and as such are subject to third party liability for

17    Fairway's fraud under state and federal law.  These Third Party Defendant's

18    business model was to originate mortgages to consumer borrows such as the

19    Third Party Plaintiff then pledge them to a secondary lender such as Sterling or

20    Wells Fargo or other financial institution in return for a loan under a revolving line

21    of credit.  Craig Russillo and Joel Parker's role was to design the model and draft

22    or approve the legal documents for Fairway designed to "dehorse" or use

23    fraudulent legal process for Fairway to obtain real property whose owner was rich

24    in the value of land, but poor in cash.  Keefe's role was to work with Fairway to

25    feign an effort to sell the distressed real estate in order to perfect the financial

26    default so Fairway would come into titled ownership of the consumer's property.

Page    Joel Parker's further role in conjunction with Fairway's employee, Chris Cobb,

LAUREN PAULSON

7

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    was to secure "Forbearance Agreement", drafted by Parker in 2008 which

2    required Paulson to give up any and all legal rights he may have in the Fairway

3    contracts.  Parker's further role in the scheme was to require the debtor to not

4    only give up any present defenses, but also to require the debtor to give up any

5    defenses or claims he may have against Fairway in the future all to ensure that

6    Fairway secures titled ownership of the debtor's property.  All of these

7    representations by these Third Party Defendants were intentional, false, material,

8    personally observed by the Third Party Plaintiff, unknown to the Third Party

9    Plaintiff at the time he secured this loan, relied upon by the Third Party Plaintiff to

10    his detriment having had a right to rely on them and caused the foreseeable

11    harm to the Third Party Plaintiff as described herein.

12        6.  At all times material hereto, Defendant Joan Doe is a licensed real

13    estate broker transacting business on behalf of Fairway.  At all times material

14    hereto, Defendant Keefe is a licensed real estate agent and doing business in

15    the State of Oregon for Fairway.  At all times material hereto, Defendant Joel

16    Parker and Craig Russillo are licensed attorneys practicing law in the State of

17    Oregon.

18                  **V.  Facts**

19        7.  At all times material hereto Paulson was the owner of that certain

20    property known as "The M.E. Blanton House" and adjoining property.  As

21    putatively described in the loan documents Paulson entered into a loan with

22    Fairway on or about November, 2005.  Fairway advertises, offers, extends and

23    sells first mortgage loans on small businesses and consumer's homes. Fairway

24    styles itself as a niche lender catering to the "subprime" loan market which are

25    customers with poor or insufficient credit histories, records, or ratings who might

26    experience difficulty securing conventional financing.  Fairway charges

Page    consumers substantial prepaid finance charges such as loan origination fees,

**LAUREN PAULSON**

8

3980 S.W. 170TH AVE

ALOHA, OREGON 97007

TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 8 of 24

1  document fees, underwriting fees, loan processing fees, broker's fees

2  (commissions) and other fees.  These charges typically total between ten and

3  thirty percent of the amount financed.  As part of Fairway's marketing campaign

4  Fairway targets financially vulnerable consumers including individuals who have

5  significant equity in their properties and a "...pressing need for a loan".  Fairway

6  partners with investors such as Sterling and Wells Fargo Foothills in charging

7  10% to 14% interest on loans with a balloon payment ranging from six (6) months

8  to five (5) years.  Most Fairway loans are interest only monthly payments with a

9  balloon payment at the end of the term.  According to Fairway, these loans can

10  be "assess(ed) over the phone in 10-15 minutes by Fairway and if it looks

11  promising (Fairway) can issue a loan approval within 24 hours."  Fairway does

12  not need to work with "...an approved broker" according to their promotional

13  materials.  "Protecting the broker's fee and assuring (the broker) gets paid is

14  (Fairway's) number 1 priority."  The sales presentations and loan documents by

15  Fairway and agents contain false or misleading statements that cause

16  consumers to be deceived about the material terms of the loan, or fails to make

17  required disclosures and thereby misleads consumers about the meaning of the

18  actual and material information required to be disclosed by Section 128 of The

19  Act, 15 USC § 1601 et seq.,1638, and Section 226.18 of Regulation Z, 12 CFR

20  §226.18 ("TILA disclosure statement").  Fairway does not provide any of the

21  required information under this Act nor does it identify any of the five factors

22  required by TILA to determine if the loan is a business loan.  Therefore, Fairway

23  misleads consumers about the amount financed, the annual percentage rate, the

24  interest rate on the loan, along with other costs and fees.  Moreover, penalty

25  interest rates and other charges similarly are not disclosed to the borrower in the

26  form and in a manner required by law.

Page

LAUREN PAULSON

3980 S.W. 170TH AVE
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    As aforesaid Fairway also fails to supply the information required by nor

2    does Fairway follow the procedures of the **Real Estate Settlement Procedures**

3    **Act** (RESPA) 12 USC §2601(b) passed in 1974 which was enacted to curb

4    undisclosed kickbacks between lenders and brokers (or others) who "steered"

5    borrowers whose circumstances pressed them to the subprime mortgage market.

6    RESPA requires lenders to provide a good faith estimate for all of the

7    approximate costs of a particular loan along with a HUD-1 or 1A prior to or at the

8    closing of the transaction which was not done here.  The purpose of the act is to

9    allow the borrower to know specifically the costs of the loan and to whom the

10    fees are being allotted which was not done here.

11    Further, the Fairway loans violate the **Home Ownership and Equity**

12    **Protection Act of 1994** (HOEPA) [*See,* Riegle Community Development and

13    Regulatory Improvement Act, Pub. L. No. 103-325, § 151-58, 108 Stat. 2190-98

14    (1994) enacted as a part of the federal Truth in Lending Act (TILA) to curb a

15    pattern of abuses in the subprime mortgage market].  This act requires certain

16    additional disclosures and protections for certain high-interest and high-fee equity

17    loans including calculations which were not done here by Fairway even though

18    applicable.

19    Fairway's practices aforesaid constitute deceptive acts or practices in or

20    affecting commerce in violation of Section 5(a) of the Federal Trade Commission

21    Act, 15 USC§ 45(a) justifying federal agency intervention and therefore, a copy of

22    this complaint is being sent to the Federal Trade Commission.    [*See* Federal

23    Trade Commission v. First Alliance Mortgage Company, et al., Civil Case No.

24    SACV 00-964 DOC (Eex) in USDC  Central District of California, Southern

25    Division (2000), and In re:  First Alliance Mortgage Company, Case No. 04-

26    55396/04-55942/DC No CV-01-971-DOC/CV-01-01111-DOV  in the United

Page    States Court of Appeals for the Ninth Circuit (2006)].

**LAUREN PAULSON**

3980 SW 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 10 of 24

1    On or before November, 2005 Defendant Joan Doe mortgage broker

2    directed Paulson to Fairway, as part of the predatory loan practice known as

3    "steering" (the practice of directing borrowers "...with pressing loan needs" to

4    lenders with extraordinarily high interest rates or finance charges relative to the

5    loan risk).

6    Third Party Plaintiff Paulson and Third Party Defendant Fairway executed

7    certain loan documents which did not comply with TILA, RESPA or HOEPA.

8    Fairway did not make the required disclosures, misrepresented the terms of the

9    loan and failed to comply with federal law and state law as aforesaid.  Thus,

10    these Defendants engaged in "yield spread premium" loans which rewards

11    brokers for originating loans at above-market interest rates and excessive other

12    fees and charges with cash payments when the borrower's credit risk does not

13    justify these high interest rates or charges.  A joint task force conducted by the

14    Department of Housing and Urban Development (HUD) and the Department of

15    the Treasury of the United States determined that these subprime mortgage

16    loans aforesaid constitutes predatory lending when loan originators and lenders

17    use fraud, deception, or other manipulative techniques to extend credit in ways

18    *intended to strip borrowers of the equity in their property.*  See Regulation Z

19    (Final Rule (Dec.21, 2001)

20    In 2001, the Schwabe Law Firm now representing Fairway, represented

21    Paulson with respect to the very same property when Paulson's property was

22    being condemned by Washington County for a road widening project.

23    8.  Third Party Defendant Fairway is a creditor as defined in Federal

24    Reserve Regulation Z, 12 CFR 226 ("Reg Z") which promulgates the "Act" and is

25    a creditor who regularly extends consumer credit that is subject to a finance

26    charge or is payable by written agreement in more than four installments on

Page    transactions secured by a dwelling.

**LAUREN PAULSON**

3980 SW 170TH AVE
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 11 of 24

1   9.  As a direct and proximate result of Third Party Defendant Fairway's

2   actions and failure to comply with the "Act", Third Party Plaintiff has suffered

3   great economic and other loss in amount of $1,000,000 or such amounts as are

4   proved at trial.

5   10.  In addition to the compensatory damages aforesaid, Third Party

6   Plaintiff is entitled to recover statutory damages as provided in the "Act" in an

7   amount equal to twice the amount of the finance charge in the transaction, his

8   reasonable attorney fees and costs.

9   COUNT TWO

10   (Fraud)

11   11.  The Third Party Plaintiff incorporates the **"Facts"** alleged above and

12   further alleges that at all times material hereto, the Third Party Defendants made

13   material misrepresentations in said loan documents and otherwise in subsequent

14   contracts outlined below, upon which the Third Party Plaintiff relied to his

15   detriment as was intended by the Third Party Defendants.  Said representations

16   aforesaid were false and fraudulent and known to the Third Party Defendants to

17   be false and fraudulently intended to extract further funds from the Third Party

18   Plaintiff illegally pursuant to those representations.  The Third Party Defendant's

19   acts constitute aiding and abetting a fraud through the common scheme

20   described above and otherwise described here.

21   In furtherance of said fraud, Third Party Defendants Fairway, FHLF, Burk,

22   Russillo and Parker proffered to Third Party Plaintiff a "Forbearance Agreement"

23   on or about August of 2008 in which these Defendants proposed that Plaintiff

24   give up all his legal rights present, past and future as to these matters.  Said

25   agreements aforesaid were unconscionable in the extreme and constituted a

26   fraud on the Third Party Plaintiff and a conspiracy to "dehorse" the Third Party

Page   Plaintiff from his equity interest in the property owned by him.

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 12 of 24

1    Third Party Joel Parker was appointed successor trustee to the

2    aforementioned trust deeds on or about November 19, 2008.  Following that

3    appointment, Third Party Defendant Joel Parker became a defendant in Third

4    Party Plaintiff's original federal court complaint, Paulson v. Fairway, et al., Case

5    No. 3:08-CV-00982-ST.  Therefore, Third Party Defendant Joel Parker , as a

6    defendant in the original federal court proceeding was subject to the automatic

7    stay occasioned by Paulson's Chapter 11 bankruptcy filing.  As a further fraud on

8    the Third Party Plaintiff and the courts, Third Party Defendant's Parker and

9    Russillo sought to transfer Third Party Plaintiff's property outside of these federal

10   court proceedings by illegally attempting to hold a nonjudicial foreclosure sale

11   without providing the required notices to the Third Party Plaintiff in accordance

12   with federal and state court law.  Third Party Defendant Parker and Third Party

13   Defendant Russillo acting as Parker's agent then purported to hold a foreclosure

14   sale on Paulson's property without Third Party Defendant Parker's first obtaining

15   relief from the automatic stay obtained in Third Party Plaintiff's aforementioned

16   Chapter 11 bankruptcy filing.

17       12.  As a direct and proximate result of Third Party Defendant's fraud, the

18   Third Party Plaintiff has been damaged in an amount of $1,000,000 or such

19   amounts as are proved at trial.  Plaintiff also seeks punitive damages in an

20   amount to be determined at trial.

21

22                          COUNT THREE

23                       (Oregon Lending Law)

24       13.  At all times material hereto, Third Party Defendant Fairway and their

25   agents violated Oregon's Lending Law, ORS 59.840 to 59.965, by failing to have

26   a license to make said loans within the State of Oregon and by failing to make

Page
     the disclosures required by state and federal law when making such loans.

                                          LAUREN PAULSON

                                    3980 S.W. 170TH AVE.
                                    ALOHA, OREGON 97007
                                    TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 13 of 24

1    14.  As a direct and proximate result of Third Party Defendant Fairway's

2    failure, through their agents, to make the required disclosures aforesaid, Third

3    Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts

4    as are proved at trial plus statutory damages, attorneys fees and costs.

5                              COUNT FOUR

6                           (Breach of Contract)

7    15.  Third Party Defendant Fairway promised, with adequate consideration

8    to provide a bridge loan to Third Party Plaintiff on agreed upon terms on or about

9    February, 2008 and Third Party Plaintiff relied on that promise to his detriment.

10    Fairway subsequently failed to provide said loan as promised.

11    16.  As a direct and proximate result of Third Party Defendant Fairway's

12    breach of contract, Third Party Plaintiff has been damaged in an amount of

13    $1,000,000 or such amounts as are proved at trial.

14                              COUNT FIVE

15                 (Breach of Good Faith and Fair Dealing)

16    17.  Commencing on or about February, 2008 Third Party Defendants

17    Fairway, FHLF, Burk, Russillo and Joel Parker engaged in a subsequent series

18    of promises to the Third Party Plaintiff upon which he relied, when in truth and in

19    fact, Third Party Defendants had no intention of honoring said promises, rather

20    made such promises to ensure foreclosure, enhance their penalty interest rate

21    and fees all to Third Party Plaintiff's detriment.  Said fees and charges were

22    known to be or should have been known to be in violation of state and federal

23    law.

24    18.  As a direct and proximate result of the Third Party Defendants breach

25    of good faith and fair dealing, Plaintiff has been damaged in an amount of

26    $1,000,000 or such amounts as are proved at trial.  Plaintiff also seeks punitive

Page    damages in an amount to be determined at trial.

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 14 of 24

COUNT SIX

(Breach of Contract)

19.  On or about July, 2008 Third Party Defendant Fairway and the Third Party Plaintiff orally agreed to the terms of a "Forbearance Agreement".  In reliance on that agreement, the Third Party Plaintiff performed by paying to Fairway $1,500 on or about July 18, 2008 under the specific terms of that oral contract.  On or about August 12, 2008 Fairway notified the Third Party Plaintiff that Fairway would not  honor the terms of the forbearance agreement previously agreed to and honored by Third Party Plaintiff's payment on July 18, 2008 which was accepted and retained by Fairway.

20.  As a direct and proximate result of Third Party Defendant Fairway's acts, the Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT SEVEN

(Breach of Good Faith and Fair Dealing)

21.  The Third Party Plaintiff incorporates paragraph 7,8 and 19 herein as though fully set forth.

22.  As a direct and proximate result of Third Party Defendant Fairway's acts, the Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Third Party Plaintiff also seeks punitive damages in an amount to be determined at trial.

COUNT EIGHT

(Promissory Estoppel and Declaratory Relief)

23.  Third Party Plaintiff incorporates paragraph 7, 8 and19 herein as though fully set forth.  At various times in 2008 Fairway promised to cancel and extinguish said loans in their entirety.  Third Party Plaintiff relied on those promises to his detriment.

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

24.  As a direct and proximate result of Third Party Defendant Fairway's acts, the Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Third Party Plaintiff also seeks declaratory and equitable relief declaring the aforementioned oral agreements valid, rescinding any and all loan agreements signed in 2005, waiving any and all penalties from February, 2008 forward, declaring said loan agreements unconscionable and other relief according to proof at trial.

COUNT NINE

(Aiding and Abetting a Fraud)

25.  The Third Party Plaintiff incorporates the **"Facts"** described above in paragraphs 7 and 8 and further alleges that the Third Party Defendants and each of them entered into a conspiracy to defraud the Third Party Plaintiff out of interest, fees, costs and other monies by requiring the Third Party Plaintiff to list his property for sale with Third Party Defendant's agent Keefe when in truth and in fact they had no intentions of actually selling Third Party Plaintiff's property which would have avoided foreclosure by Third Party Defendant Fairway.  Thus, Fairway could claim to be entitled to additional penalty interest the longer the property did not sell.

26.  As a direct result of Third Party Defendant's acts, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Third Party Plaintiff also seeks punitive damages according to proof at trial.

COUNT TEN

(Injunction)

27.  The Third Party Defendant Fairway should be enjoined from any foreclosure proceedings presently being threatened by Defendant Fairway or any putative foreclosure sale including any claims for possession under said putative

LAUREN PAULSON

16

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 16 of 24

1   foreclosure sale for the reasons aforesaid and because notices required by

2   federal and state law were not provided nor given by Fairway nor FHLF, LLC,

3   their agents and assigns.   Said injunction is required because the Third Party

4   Plaintiff's historic property, listed on the National Register of Historic Places will

5   be irreparably harmed.  Any such foreclosure will prevent Third Party Plaintiff

6   from otherwise protecting said unique, historical property.   Third Party Defendant

7   Fairway is equitably estopped from proceeding with foreclosure due to the oral

8   binding forbearance agreement upon which Third Party Plaintiff has made the

9   partial payment which was accepted by Third Party Defendant Fairway.

COUNT ELEVEN

(Home Ownership and Equity Protection Act of 1994)

15 USC § 1601 et seq.

13   28.  The Third Party Plaintiff incorporates paragraphs 7 and 8 as though

14   full set forth here.

15   29.  The Third Party Defendant Fairway violated the Home Ownership and

16   Equity Protection Act (HOEPA) of 1994 as aforesaid.  Under this federal law the

17   borrower is entitled to a private right of action not only against the broker and

18   lender, but also against subsequent purchasers or "assignees" which include

19   Sterling and Wells Fargo Foothills.  Under HOEPA the financiers of predatory

20   lending are accountable for the misconduct of their counterparts in the primary

21   mortgage origination market and thus, Sterling and Wells Fargo Foothills are

22   liable for the misconduct of Fairway under this federal law.  The Third Party

23   Plaintiff did not learn of Sterling' and Wells Fargo Foothill's involvement until

24   November of 2008.

25   30.  As a result of Third Party Defendant's failure to follow the

26   requirements of HOEPA Third Party Plaintiff has been damaged in an amount

Page  of$1,000,000 or in such amounts as are proved at trial.

**LAUREN PAULSON**

17
3980 S W 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1

2                              COUNT TWELVE

3                    (Real Estate Settlement Procedures Act)

4                          12 USC §2601 et seq.

5          31. Third Party Plaintiff incorporates paragraphs 7 and 8 as though fully

6    set forth here.

7          32. The Third Party Defendants have violated the Real Estate Settlement

8    Procedures Act (RESPA) as aforesaid.

9          33. As a result of Third Party Defendant's violation of RESPA Third Party

10   Plaintiff has been damaged in an amount of $1,000,000 or in such amounts as

11   are proved at trial.

12                             COUNT THIRTEEN

13                  (Interference with Prospective Economic Advantage)

14         34. On or after September, 2008 Mr. Scott Swenson and his wife, Janet

15   Swenson (Swensons) committed to purchase the M.E.Blanton House for

16   $500,000, depending on approvals by governmental agencies, for use as a Tea

17   House and restaurant.  In reliance on Fairway's agreement to this transaction,

18   the Swenson's completed virtually all due diligence requirements and were

19   prepared to proceed with the sale when Matt Burk interfered with the sale

20   because the closing of said sale would disclose to Sterling Savings Bank and

21   Wells Fargo Foothills that the Paulson loan was in arrearage and that fact had

22   not been disclosed to Sterling nor Wells Fargo by Fairway when the latter was

23   obliged to do so under the agreements between them.

24         On or about June, 2009 a stipulated order was rendered in the above

25   referenced Chapter 11 bankruptcy proceedings which called for the Third Party

26   Plaintiff's property to be sold.  Said property was, in fact, sold pursuant to an

Page  unconditional cash sale of three of the properties and a reverse mortgage

18

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    eligibility on the fourth property which would have resolved the interests of the

2    Plaintiff.  Intentionally, and without notice, the Plaintiff held a putative foreclosure

3    sale without providing notices as required by federal and state law.  Said illegal

4    foreclosure sale was intentionally done by the Plaintiffs and Third Party

5    Defendants to vitiate said sales thereby intentionally interfering with the

6    economic advantage to the Third Party Plaintiff provided therein.

7        35.  Three other bona fide sale transactions have been voided by the

8    actions of the Third Party Defendants as aforesaid all to Third Party Plaintiff's

9    economic damage

10       36.  At all times material hereto, there existed a business relationship

11   between the Third Party Plaintiff and the Third Party Defendants herein.  Those

12   Third Party Defendants intentionally interfered with the transactions as described

13   above through improper means and for an improper purpose of "dehorsing" the

14   Plaintiff from his ownership in the property herein described.  As a result of

15   Defendant's actions aforesaid, Plaintiff has been damaged in an amount of

16   $2,000,000 or such amounts as are proved at trial.

17                          COUNT FOURTEEN

18                              (Usury)

19                          ORS 84.010

20       37.  The Third Party Plaintiff incorporates paragraphs 7 and 8 as though

21   fully set forth herein.

22       38.  Said loans described above by Fairway violates common law usury

23   laws and the exceptions are unconstitutional under the Due Process Clause of

24   the U.S. Constitution as applied to the states under the 14th Amendment.

25       39.  As a result of said actions, Third Party Plaintiff has been damaged in

26   an amount of $1,000,000 or such amounts as are proved at trial.

Page

LAUREN PAULSON
19
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 19 of 24

COUNT FIFTEEN

(Rescission)

40. The Third Party Plaintiff incorporates paragraphs 7 and 8 as though fully set forth herein.

41. The loans described aforesaid should be canceled, rescinded, and deemed of no force and effect under the federal and state laws aforesaid. The Third Party Plaintiff hereby tenders back those funds less adjustments allowed by law. The Third Party Plaintiff as only recently discovered the violations of these federal and state laws by the Plaintiff and Third Party Defendants.

42. As a result of said actions, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT SIXTEEN

(Breach of an Accord and Satisfaction)

43. Third Party Plaintiff incorporates by this reference paragraphs 7, 8,15,17,19 and 23 as though fully set forth herein.

44. At various times between February, 2008 and November 2008 Fairway orally and in writing declared the aforementioned loans satisfied and entered into an accord under new terms with the Third Party Plaintiff which the Third Party Plaintiff relied upon. At all times material hereto, the Third Party Plaintiff relied on these agreements to his detriment. The actions of the Plaintiff and Third Party Defendants and each of them were fraudulently intended to "dehorse" the Third Party Plaintiff from his real property ownership through this common scheme. The Third Party Defendants then breached the terms of the accord and satisfaction.

45. As a result of the Third Party Defendants actions aforesaid, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

**LAUREN PAULSON**
20
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 20 of 24

1                        COUNT SEVENTEEN

2                              (Illegal)

3          46.  Third Party Plaintiff incorporates by this reference paragraphs 7 and 8

4   as though fully set forth herein.

5          47.  The Plaintiff and Third Party Defendant's contracts are illegal under

6   state and federal law and known by them to be illegal and each of them, yet were

7   fraudulently foisted upon the Third Party Plaintiff notwithstanding their knowledge

8   of the illegality.

9          48.  As a result of Plaintiff and Third Party Defendant's actions aforesaid,

10  Third Party Plaintiff has been damaged in an amount of $1,000,000 or such

11  amounts as are proved at trial.

12                        COUNT EIGHTEEN

13               (Unfair and Deceptive Trade Practices)

14                      ORS 646.010 et seq.

15         49.  Third Party Plaintiff realleges paragraphs 7, 8,15,17,19 and 23 as

16  though fully set forth herein.

17         50.  Plaintiff and Third Party Defendant's actions aforesaid constitute

18  Unfair and Deceptive Trade Practices under Oregon law.

19         51.  As a result of Plaintiff and Third Party Defendant's actions aforesaid

20  Third Party Plaintiff has been damaged in an amount of$1,000,000 or such

21  amounts as are proved at trial along with attorney fees and statutory damages.

22                        COUNT NINETEEN

23                        (Outrageous Conduct)

24         52.  Third Party Plaintiff realleges paragraphs 11 through 51 as though

25  fully set forth here.

26         53.  From February, 2008 until January 25, 2010 the Third Party

Page  Defendants and each of them have engaged in conduct intended to inflict mental

                                        **LAUREN PAULSON**

                                        21

                              3980 S.W. 170TH AVE.
                              ALOHA, OREGON 97007
                              TELEPHONE (503) 591-1619

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 21 of 24

1    distress on the Third Party Plaintiff by engaging in predatory loan practices as

2    above described.  The Third Party Defendants practice a scheme of alternatively

3    engaging in litigation tactics intentionally calculated to 'dehorse' people from their

4    properties.  This scheme is outrageous in the extreme with no socially redeeming

5    purpose all while these Third Party Defendants are preying on local citizens in

6    financial distress for the sole economic benefit of said Third Party Defendants.

7        54.  As a result of Third Party Defendant's actions aforesaid Third Party

8    Plaintiff has been damaged in an amount of $5,000,000 or such amounts as are

9    proved at trial along with attorney fees and costs and disbursements.

10                        **VI.  Relief Requested**

11        55.  WHEREFORE, Third Party Plaintiff respectfully requests this court or

12    jury  to:

13            (a.)  Assume jurisdiction over this action.

14            (b.)  On Third Party Plaintiff's COUNTS ONE THROUGH NINE

15                AND ELEVEN, TWELVE, AND FOURTEEN THROUGH

16                EIGHTEEN to award Third Party Plaintiff damages in the amount

17                of $1,000,000 or such amounts as are proved at trial; On Third

18                Party Plaintiff's COUNT THIRTEEN to award Third Party Plaintiff

19                damages of $2,000,000 or such amounts as are proved at trial.

20                On Third Party Plaintiff's NINETEENTH COUNT to award Third

21                Party Plaintiff $5,000,000 or such amounts as are proved at trial.

22            (c.)  To enjoin the Third Party Defendants from any and all

23                foreclosure proceedings on said property unless and until there

24                is a determination on Third Party Plaintiff's COUNTS ONE

25                through NINETEEN.  To declare the putative foreclosure sale of

26                September 25, 2009 or any other alleged foreclosure sale of

Page            Third Party Plaintiff's properties null and void.

**LAUREN PAULSON**

3980 SW. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

22

1          (d.)  To award Third Party Plaintiff's costs and attorney fees.

2          (e.)  To grant such other equitable relief or other relief as it may

3  deem just and proper.

4          (f.)  To dismiss Plaintiff's claims in their entirety with prejudice and

5  with costs and attorney fees to Third Party Plaintiff

6          DATED this 25th day of January, 2010

7

8                          LAUREN PAULSON Pro Se

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page

**LAUREN PAULSON**
23
3990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 23 of 24

1

2                            CERTIFICATE OF SERVICE

3        I, Lauren Paulson certify that on this day, I served my DEFENDANT'S
4   ANSWER AND THIRD PARTY COMPLAINT to the following parties by:

5        1.    Anna Helton, Attorney at Law, 1211 SW 5th Ave., #1900
              Portland, Oregon 97204 Hand Delivery
6

7        2.    Leslie R. Weatherhead, Attorney at Law, 422 West Riverside Ave,
              #1100 Spokane, WA 99201-0300 U.S. Postal Service
8

9        3.    Paul A. Berg, Attorney at Law, 805 SW Broadway, 8th Flr.,
              Portland, OR 97205 Hand Delivery
10

11       4.    Calliste Korach, Attorney at Law, 1000 SW Broadway, 20th Flr.,
              Portland, OR 97205 Hand Delivery
12

13        Dated this 25th day of January, 2010

14                                        Lauren Paulson
                                          Lauren Paulson
15

16

17

18

19

20

21

22

23

24

25

26

Page

                                              **LAUREN PAULSON**

                                          3980 S.W. 170TH AVE.
                                          ALOHA, OREGON 97007
                                          TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 6
Page 24 of 24

DISTRICT OF OREGON
# F I L E D
**February 25, 2010**

Clerk, U.S. Bankruptcy Court

IT IS ORDERED AND NOTICE IS GIVEN that unless within 23 days of the date in the FILED stamp above an interested party BOTH:  (1) files a written objection to the Motion below, SETTING FORTH the specific grounds for such objection, with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with 3 or 4, at 1001 SW 5th Ave. #700, Portland OR 97204; OR, if it begins with a 6 or 7, at 405 E 8th Ave #2600, Eugene OR 97401, AND (2) serves a copy on the movant and any attorney for the movant at the service address(es) below, the movant will thereafter settle and compromise the matter upon the terms below and the settlement will be deemed approved without further order.

*Randall L. Dunn*

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | ) |
| Lauren Paulson | ) Case No. **09-32439-rld7** |
| | ) |
| | ) MOTION AND NOTICE OF INTENT |
| | ) TO SETTLE AND COMPROMISE, |
| | ) **AND ORDER THEREON** |
| Debtor(s) | ) |

The undersigned trustee, _____ Amy Mitchell _____, moves to settle and compromise the following described dispute upon the following terms:

Prior to filing bankruptcy under Chapter 11, Debtor filed a lawsuit against parties involved in a financing transaction for 4 parcels of real property located in Washington County, Oregon (collectively the "Property"). The defendants in the lawsuit are Fairway Commercial Mortgage Corporation; FHLF, LLC; Sterling Savings Bank; Wells Fargo Foothills; and individual mortgage brokers, realtors and attorneys (the "Defendants").

In the lawsuit, Debtor asserted claims based on many causes of action, including violations of the Truth in Lending Act, fraud, and breach of contract (the "Claims").  The Claims are based on loans from Fairway Commercial Mortgage Corporation to Huber-Wheeler Crossing, LLC, a defunct entity solely owned by Debtor.

After the Chapter 11 filing, Creditor FHLF obtained Relief from the Automatic Stay.  The stipulated relief gave the Debtor time to try to sell the Property prior to a foreclosure sale.  The Debtor was unable to complete a sale and FHLF foreclosed on the property September 25, 2009.  The Debtor asserts that the foreclosure was improper. This case was converted from one under Chapter 11 to one under Chapter 7 on November 25, 2009.

The Claims are property of the Bankruptcy Estate, as are all membership units in Huber-Wheeler Crossing, LLC and any interest Debtor has in The Lauren Paulson Trust.  Both the LLC and Trust have or have had an ownership interest in the Property.

761.2 (12/18/06) **Page 1 of 2**        *** CONTINUED ON NEXT PAGE ***

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 7
Page 1 of 2

Case 09-32439-rld7    Doc 93    Filed 02/25/10

The Trustee has reviewed the documents filed in the lawsuit and other relevant materials. It does not appear that it is in the best interests of the Bankruptcy Estate to pursue the Claims. FHLF wants to resolve all claims against all Defendants.

In exchange for $5,000 paid to the Bankruptcy Estate within 10 days of approval of this settlement, the Estate will:
(1) settle all outstanding claims whether known or not against FHLF and all other Defendants;
(2) release all claims against FHLF and all other Defendants;
(3) convey all membership units in the Huber-Wheeler Crossing, LLC to FHLF, LLC; and
(4) convey the Bankruptcy Estate's interest in The Lauren Paulson Trust to FHLF, LLC.

This settlement will avoid the substantial risk and uncertainty of further litigation and provide a distribution to creditors.

###

DATE:    2/23/10             /s/ Amy Mitchell
                                                        Trustee

            Service Address:    PO Box 2289

                                        Lake Oswego, OR 97035

Name of Attorney for Trustee:    none

            Service Address:    n/a

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 7
Page 2 of 2

UNITED STATES DISTRICT COURT   FILED'10 MAR 05 14:06USDC-ORP

DISTRICT OF OREGON

FHLF, LLC,

            Plaintiff,

     v.

LAUREN PAULSON,

            Defendant.

No. CV 10-48-MO

OPINION AND ORDER

_____

LAUREN PAULSON,

            Third-Party Plaintiff

     v.

FAIRWAY AMERICA CORPORATION;
FAIRWAY COMMERCIAL MORTGAGE
CORPORATION; MATTHEW W. BURK;
STERLING SAVINGS BANK; WELLS FARGO
FOOTHILLS; JOHN DOE, a mortgage broker;
FRANKI KEEFE; SKYLANDS INVESTMENT
CORPORATION; FHLF, LLC, CRAIG
RUSSILLO and JOEL PARKER,

            Third-Party Defendants

MOSMAN, J.,

     This matter comes before the Court on plaintiff FHLF, LLC's Motion to Remand Case to

State Court (#6). For the following reasons, I GRANT plaintiff's motion.

     FHLF filed three state law claims for forcible entry and detainer against defendant Lauren

-1-

Paulson in Washington County Circuit Court. No aspect of these claims arises under federal law,

and, because FHLF is an Oregon corporation and Mr. Paulson is an Oregon resident, there is no

diversity between the parties. Therefore, FHLF's claims could not have been brought in federal

court. *See* 18 U.S.C. § 1441 (providing for removal only where a district court would have

"original jurisdiction" over the action); *see also* 18 U.S.C. §§ 1331, 1332.

 Mr. Paulson asserts that the Court may exercise supplemental subject matter jurisdiction

under 18 U.S.C. § 1367, because FHLF's claims are related to claims he brought against FHLF in

federal court.[1] *See* 18 U.S.C. § 1367 (allowing district courts to exercise supplemental

jurisdiction "over all other [state law] claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of

the United States Constitution"). But 18 U.S.C. § 1367 "does not allow a party to remove an

otherwise unremovable action to federal court for consolidation with a related federal action." *In

re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa. 1995); *see also* Wright, Miller & Cooper,

Federal Practice & Procedure: Jurisdiction 3d § 3722, at 384 ("[S]upplemental jurisdiction under

Section 1367 of Title 28 is not a source of original subject matter jurisdiction for federal question

purposes and thus a removal notice under Section 1441(a) may not base removal subject matter

jurisdiction on the supplemental jurisdiction statute.").

 The Court does not have subject matter jurisdiction over this case, and removal was

improper. Under these circumstances, it is appropriate to remand the entire case, including Mr.

Paulson's third-party complaint, to state court. *See* 18 U.S.C. § 1447(c) (requiring remand of "the

---

 [1] The federal case, CV 09-982-ST, has been stayed since Mr. Paulson filed for bankruptcy in April 2009.

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 8
Page 2 of 3

case" rather than "claims" or "matters"); *see also RMP Consulting Group, Inc. v. Datronic Rental Corp.*, No. 98-5062, 1999 WL 617690, at *4 (10th Cir. Aug. 16, 1999) (unpublished).

Accordingly, I GRANT plaintiff's Motion to Remand (#6) and HEREBY ORDER that this case be REMANDED to Washington County Circuit Court.

DATED this 4 day of March, 2010.

MICHAEL W. MOSMAN
United States District Court

-3-

Matthew A. Arbaugh, OSB #02025
Field Jerger LLP
621 SW Morrison, Suite 1225
Portland, OR 97205
Phone: (503) 228-9115
Fax: (503) 225-0276
Email: matt@fieldjerger.com
         Of Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ) |
| | ) Case No. 09-32439-rld7 |
| LAUREN J. PAULSON, | ) |
| | ) OBJECTION TO MOTION AND |
| Debtor. | ) NOTICE OF INTENT TO SETTLE |
| | ) AND COMPROMISE |
| ——————————————— | ) |

Lauren J. Paulson (the "Debtor"), hereby appears and objects to the trustee's motion and notice of intent to settle and compromise (DKT# 93) filed in this case.  The trustee has moved the court to approve a settlement in the debtor's pre-bankruptcy federal court litigation, identified as *Paulson v Fairway, et al.,* District of Oregon, Case No. CV08-982-ST, (the "Lawsuit").  In the proposed settlement defendants will settle/purchase the litigation for the sum of $5,000.00 paid to the debtor's bankruptcy estate.

The debtor objects to this settlement for several reasons outlined below.

1.  The Lawsuit has not even proceeded to the discovery stage so creating a valuation is entirely subjective and cannot be based on any reasonable criteria.  To settle the Lawsuit at this stage is premature.

*In re: Paulson*

2.  The Lawsuit seeks over $17 million in damages.  Settling for nearly nothing is not
    representative of the potential recovery to creditors given the claims stated and that as
    noted above discovery has not yet begun in this litigation.  The debtor recognizes the
    costs and risks inherent in litigation but believes there to be greater value to the
    Lawsuit to his creditors though a higher sale price or any agreement to devote any
    proceeds to pay creditors.

3.  The Lawsuit is a class action and to settle with a dismissal is outside the scope of the
    trustee's authority in this circumstance.

4.  The Lawsuit also seeks the return of the debtor's former residence as a remedy.  This
    property was foreclosed on in September of 2009.  The foreclosure is also subject to
    challenge in a state court FED proceeding.  This settlement endangers the debtor's
    ability to assert his rights to obtain his property which he believes was wrongfully
    taken and subject to an unfair trade practice.

5.  Debtor and the defendants in question had several discussions on a settlement
    allowing retention of the property and dismissal of this litigation earlier in the
    debtor's Chapter 11 case.  Those discussions resulted in a three part settlement
    proposal which while never made official would have brought benefit to creditors by
    allowing Debtor to retain his property and propose a partial repayment plan to his
    remaining creditors.

6.  The settlement called for the sale of parcels of real estate owned by the debtor and
    commonly known as the "3 sisters" for $230,000 resulting in process of $200,000 to
    FHLF (based on an unconditional offer to purchase from a third party), a reverse
    mortgage on the parcel known as the "Blanton House" resulting in proceeds of
    $225,000 for FHLF, and a promissory note from debtor to FHLF in the amount of
    $75,000 secured by a lien junior to the reverse mortgage.  FHLF and its

Page 2 of 4
**Objection to Notice of
Intent to Settle**

*In re: Paulson*

Field Jerger LLP
621 SW Morrison St., Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 9
Page 2 of 4

representatives were made aware of these transactions and the value to FHLF but instead of continuing negotiations, FHLF undertook to conduct a foreclosure sale on the property. Debtor is now challenging the sale based on allegations that FHLF failed to adhere to the process set forth in the foreclosure statutes by not giving proper and/or sufficient notice of the sale.

7. Debtor believes this settlement combined with some proceeds to his unsecured creditors is more to the benefit of all his creditors and provides him with the ability to start fresh.

Debtor believes the settlement proposed by the trustee in her motion is inequitable and not in the best interests of his creditors given the nature of the litigation to be settled and alternate resolutions available to the parties.

Debtor hereby requests a hearing on this objection to the motion and notice of intent to settle and compromise.

Dated March 18, 2010

/s/ Matthew A. Arbaugh
Matthew A. Arbaugh, OSB # 020251
Field Jerger LLP
621 SW Morrison Street, Ste. 1225
Portland, OR 97205
Phone: 503.228.9115
Facsimile: 503.225.0276
E mail: matt@fieldjerger.com

Page 3 of 4
**Objection to Notice of
Intent to Settle**

*In re: Paulson*

Field Jerger LLP
621 SW Morrison St., Ste. 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276

Case 09-32439-rld7    Doc 97    Filed 03/18/10

CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2010 I served the foregoing document on the following

individuals through the Court's ECF system:

Creditor Attorneys                    US Trustee

Via ECF

Dated March 18, 2010

                       /s/ Matthew A. Arbaugh
                    Matthew A. Arbaugh
                    Field Jerger LLP

Page 4 of 4                *In re: Paulson*                Field Jerger LLP
**Objection to Notice of**                                 621 SW Morrison St., Ste. 1225
**Intent to Settle**                                      Portland, OR 97205
                                                  Tel: (503) 228-9115
                                                Fax: (503) 225-0276

1   Craig G. Russillo, OSB #973875
    SCHWABE, WILLIAMSON & WYATT, P.C.
2   Pacwest Center
    1211 SW 5th Ave., Suite 1900
3   Portland, OR 97204
    Telephone 503.222.9981
4   Fax 503.796.2900

5       Of Attorneys for Creditor, FHLF, LLC

6

7

8

9            IN THE UNITED STATES BANKRUPTCY COURT

10              FOR THE DISTRICT OF OREGON

11   LAUREN J. PAULSON,                    | Chapter 7

12           Debtor.                       | No. 09-32439-rld7

13                                         | FHLF'S MEMORANDUM IN SUPPORT OF
                                           | TRUSTEE'S MOTION OF INTENT TO
14                                         | INTENT TO SETTLE AND COMPROMISE

15       Creditor FHLF, LLC's files this Memorandum In Support of Trustee's Motion of Intent o

16   Settle and Compromise ("Motion"). [Docket No. 93]

17   I.    INTRODUCTION

18       The court should grant the Trustee's Motion because the proposed settlement is in the

19   best interest of the estate.  FHLF is offering to pay $5,000 for dubious claims asserted by the

20   Debtor pre-petition against FHLF and other parties.  Debtor has objected to the Motion but has

21   failed to provide any evidence or indication that any other person has or may be willing to pay

22   more than $5,000 for the claims.  The absence of any actual or potential competing bidder,

23   coupled with the costs the Trustee would incur prosecuting the claims and the very low

24   likelihood of success is sufficient basis for this court to conclude that the proposed settlement set

25   forth in the Trustee's Motion is "fair and equitable" and should be approved.

26   ///

Page 1 of    FHLF, LLC'S MEMORANDUM IN SUPPORT OF          SCHWABE, WILLIAMSON & WYATT, P.C.
10-          MOTION AND NOTICE OF INTENT TO SETTLE AND                Attorneys at Law
             COMPROMISE                                             Pacwest Center
                                                                 1211 SW 5th Ave., Suite 1900
             PDX/116063/160139/CGR/5766364.3                       Portland, OR 97204
                                                           Telephone 503.222.9981  Fax 503.796.2900

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 1 of 133

Case 09-32439-rld7    Doc 100    Filed 04/27/10

1    **II.    FACTUAL BACKGROUND**

2         On or about November 28, 2005, Fairway Commercial Mortgage Corporation

3    ("Fairway"), predecessor in interest to FHLF, made a commercial loan ("Commercial Loan") to

4    Huber-Wheeler Crossing, LLC, ("HWC"), an inactive Oregon limited liability company.[1]  The

5    Commercial Loan was memorialized by a Loan Agreement and Secured Promissory Note, both

6    of which are attached as Exhibits 1 and 2, respectively.  The Loan Agreement and Secured

7    Promissory Note clearly state that the loan proceeds are to be used solely for business or

8    commercial purposes.  To secure HWC's complete and timely performance of the Commercial

9    Loan, Fairway acquired trust deeds ("Trust Deeds") on properties owned by HWC and by debtor

10   Paulson, as the trustee of The Lauren Paulson Trust ("Trust").  Copies of the Trust Deeds are

11   attached as Exhibit 3.  The Trust Deeds encumber four separate legal lots, and three separate

12   street addresses[2], referred to herein as the "Properties."  Through an Assignment, FHLF now

13   holds all of Fairway's rights in the Trust Deeds.  A copy of the Assignment is attached as

14   Exhibit 4.

15        In 2008, HWC defaulted on the Commercial Loan by reason of its failure to make the

16   required payments.  (Declaration of Greg Blair, ¶3).  As a result, in November of 2008, Fairway

17   initiated non-judicial foreclosure proceedings to foreclose the Trust Deeds and take possession of

18   the Properties.  (Blair Dec. ¶5).  The foreclosures sales were set for April 10, 2009. (Id).

19        Between February 2008 (the time that HWC stopped paying on the Commercial Loan)

20   and August 2008, FHLF negotiated with HWC (exclusively through the Debtor) to avoid a

21   foreclosure.  (Blair Dec. ¶4).  Unfortunately, the parties were unable to reach an agreement.  On

22   August 12, 2008, FHLF, through counsel, notified HWC that FHLF would proceed with a

23   foreclosure if HWC was unable to cure the default under the Commercial Loan.  A copy of the

24   August 12, 2008, letter is attached as Exhibit 5.

25        _____

          [1] Debtor, a former Oregon lawyer, is the sole member of HWC.

26        [2] 3980 SW 170th Ave, 16919 Blanton Street, and 16925 Blanton Street, Aloha, Oregon 97007.

Page 2 of    FHLF, LLC'S MEMORANDUM IN SUPPORT OF            SCHWABE, WILLIAMSON & WYATT, P.C.
10-          MOTION AND NOTICE OF INTENT TO SETTLE AND                    Attorneys at Law
                                                                         Pacwest Center
             COMPROMISE                                            1211 SW 5th Ave., Suite 1900
                                                                       Portland, OR 97204
       PDX/116063/160139/CGR/5766364.3                     Telephone 503.222.9981  Fax 503.796.2900

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 2 of 133

1      On August 21, 2008, the day before the August 12, 2008, demand letter was to expire, the

2  Debtor, purporting to act as "Trustee and Operating Manager of Huber Wheeler Crossing, LLC,"

3  filed an action in United States District Court (Case No. 08-cv-00982-ST) against FHLF and

4  others alleging various claims arising out of the Commercial Loan ("Federal Action"). A copy

5  of the Second Amended Complaint ("Complaint") filed in the Federal Action is attached as

6  Exhibit 6. In the Federal Action, among other things, the Debtor filed numerous claims

7  including, but not limited to, violation of the Federal Truth in Lending Act, fraud, breach of

8  contract, violation of the Home Ownership and Equity Protection Act of 1994, violation of the

9  Real Estate Settlement Procedures Act, and usury. Debtor also sought to enjoin the foreclosure

10  sales.

11     On March 20, 2009, FHLF, and other defendants, filed a Motion to Dismiss virtually all

12  of the claims in Complaint under Fed. R. Civ. P. Rule 12(b)(6). (Blair Dec. ¶6). A copy of

13  FHLF's Motion to Dismiss is attached as Exhibit 7. On April 8, 2009, two days before the

14  scheduled foreclosure sales, Debtor conveyed the Properties to himself and filed a chapter 11

15  bankruptcy case, under Case no. 09-32439-rld11 ("Chapter 11 Case"). As a result of the

16  automatic stay imposed under 11 USC §362, the foreclosures sales and Federal Action were

17  stayed.

18     After the filing of the Chapter 11 Case, FHLF filed a motion for relief from the automatic

19  stay to continue with the foreclosure sales. [Docket No. 16] Prior to the hearing on the motion,

20  FHLF and the Debtor executed a Stipulated Order for Relief from Stay [Docket No. 51] that

21  gave the Debtor until August 31, 2009, to sell the Properties. (Blair Dec. ¶7). If the Debtor was

22  unable to sell the Properties by August 31, 2009, FHLF could hold a foreclosure sale any time on

23  or after September 1, 2009. (Blair Dec. ¶8). Paulson failed to sell the Properties by August, 31,

24  2009. (Blair Dec. ¶9). As a result, FHLF held a non-judicial foreclosure sale on September 25,

25  2009, and purchased the Properties through credit bids. (Id. at ¶10).

26  ///

Page 3 of    FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-         MOTION AND NOTICE OF INTENT TO SETTLE AND
             COMPROMISE
PDX/116063/160139/CGR/5766364 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 - Fax 503.796.2900

Case 09-32439-rld7    Doc 100    Filed 04/27/10

1        On November, 25, 2009, the Debtor converted his Chapter 11 Case to a chapter 7 case

2    ("Chapter 7 Case"). [Docket No. 76]  In an abundance of caution, on December 9, 2009, FHLF

3    filed a motion for relief from stay in the Chapter 7 Case to allow it to begin state court eviction

4    proceedings with respect to the Properties. [Docket No. 78]  On January 5, 2010, this court

5    granted FHLF relief to proceed with the state court eviction proceedings. [Docket No. 87]  On

6    January 13, 2009, FHLF filed three complaints in Washington County Circuit Court for forcible

7    entry and detainer to evict the Debtor from the Properties ("FED Cases").

8        On January 15, 2010, the Debtor purported to remove the FED Cases to federal court, and

9    was given a case number of 3:10-cv-48- MO ("Second Federal Action").  In the Second Federal

10   Action, the Debtor filed an answer and third-party complaint that included virtually all of the

11   claims asserted in the Federal Action.  A copy of the First Amended Answer and Third-Party

12   Complaint is attached as Exhibit 8.  On March 4, 2010, Judge Mossman remanded the Second

13   Federal Action to Washington County.

14       On February 4, 2010, FHLF sent a letter to the Trustee proposing to resolve all of the

15   claims in the Federal Action and Second Federal Action, on behalf of all parties to those cases,

16   for $5,000.  Attached as Exhibit 9 is a copy of FHLF's letter to the Trustee, which sets forth the

17   justification for the proposed settlement.

18       Between April 20 and 22, the FED Cases were tried.[3]  On April 22, the judge presiding

19   over the trial, Andrew R. Erwin, granted FHLF a directed verdict on all claims.  FHLF is in the

20   process of obtaining possession of the Properties.

21   III.    **ARGUMENT**

22       A.    **Standard**

23       This court is being asked to approve a settlement under Federal Bankruptcy Rule 9019(a).

24   In such a case, the court has 'great latitude' in authorizing a compromise of and is reviewed for

25   _____

26       [3] All three FED Cases were consolidated into one action.

Page 4 of    FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-          MOTION AND NOTICE OF INTENT TO SETTLE AND
             COMPROMISE
     PDX/116063/160139/CGR/5766364.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 4 of 133

1  abuse of discretion. *Goodwin v. Thompson Entertainment Group, Inc. (In re Mickey Thompson*

2  *Entertainment Group, Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). While courts are granted

3  broad deference in approving settlements, only settlements that are "fair and equitable" should be

4  approved. *Id; see also CAM/RPC Elecs. v. Roberston (In re MGS Marketing)*, 11 B.R. 264, 266-

5  267, citing *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir.

6  1987). A decision authorizing a compromise will not be reversed absent a definite and firm

7  conviction that the court committed a clear error of judgment in the conclusion it reached after

8  weighing the relevant factors. *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996).

9      The relevant factors for the court to consider are: (1) the probability of success on the

10  merits; (2) the complexity of the litigation involved, and the expense, inconvenience and delay

11  necessarily attending it; (3) the difficulties, if any to be encountered in the matter of collection;

12  and (4) the paramount interest of the creditors and a proper deference to their reasonable views in

13  the premises. *Goodwin*, at 420.

14      All of these factors are either neutral or weigh in favor of approving the proposed

15  settlement set forth in the Motion.

16      **B.    If Litigated, Debtor's Claims Will Fail.**

17      A cursory review of the Debtor's claims leads to the conclusion that they are wholly

18  without merit. The Commercial Loan documents clearly show that the loan was a commercial

19  loan, not to be used for personal, family, or household purposes. Despite this clear language, the

20  Debtor has asserted numerous claims that are only available to consumers involved in consumer

21  loans. Virtually all of the claims are based upon the artifice that the loan from Fairway to HWC

22  – the Debtor's limited liability **company** – was, essentially, a consumer transaction. The Debtor

23  is flat wrong. The Commercial Loan was just that, commercial. Thus, the vast majority of the

24  Debtor's claims fail as a matter of law.

25      Moreover, the Debtor has no right to bring most of the claims because they arise from a

26  contract to which he is not a party; some claims are time barred by the applicable statues of

Page 5 of      FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-          MOTION AND NOTICE OF INTENT TO SETTLE AND
            COMPROMISE
      PDX/116063/160139/CGR/5766364.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

1   limitations, while still others are simply inapplicable. The Debtor's claims fail for a myriad of

2   other reasons, as more fully set forth in FHLF's Motion to Dismiss and its February 2010 letter

3   to the Trustee proposing settlement. The Trustee has certainly considered the likelihood of

4   success of these claims and has made a decision, based on the facts available to her, that the

5   claims are not worth pursuing. The likelihood of success on the Debtor's claims is 0%.

6        **C.**     **Litigation would be Complex, Costly, and Time Consuming.**

7        The second factor the court must consider when evaluating whether a proposed

8   settlement is "fair and equitable," is the complexity of the litigation involved, and the expense,

9   inconvenience and delay necessarily attending it. While the Federal Case is not extraordinarily

10   complex, the costs to the Estate to litigate would be astronomical. The Debtor is seeking over

11   $17,000,000 from FHLF, which will necessitate a vigorous defense by FHLF, as well as the

12   other defendants. The Estate's legal fees to litigate the claims could easily eclipse $150,000, if

13   not more. While FHLF is confident it will ultimately prevail, having to thrash through the jumble

14   of claims asserted by the Debtor will take time and money, the latter of which the Estate does not

15   have. FHLF is aware of no discussions with any counsel to litigate the claims on a contingency

16   fee basis. Thus, should the Trustee decide to proceed with the claims, the Estate would have to

17   pay hourly for the legal services. Since the Estate is effectively insolvent, prosecuting the claims

18   is cost prohibitive. Moreover, the Trustee has indicated no willingness to proceed forward with

19   the claims.

20        **D.**     **Collection of Judgment not a Factor.**

21        This factor is neutral.

22        **E.**     **Interest of the Creditors Supports the Proposed Settlement.**

23        The last factor the court is to consider is the "paramount interest of the creditors and a

24   proper deference to their reasonable views in the premises." No creditor has objected to the

25   Trustee's Motion. The lack of property of estate in this case suggests that funds from this

26   settlement are the only funds that the unsecured creditors will receive. *See, In re Ernst Home*

Page 6 of      FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-          MOTION AND NOTICE OF INTENT TO SETTLE AND
            COMPROMISE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/116063/160139/CGR/5766364.3

1    *Center, Inc.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997)(approving a purchase agreement that

2    was the only source of distribution for unsecured creditors and therefore of "significantly

3    benefit" to the estate). FHLF is aware of no other party willing to pay anything, much less more

4    than $5,000, to resolve the Debtor's claims. The fact that the funds from the proposed settlement

5    are likely the only means for paying creditors anything, coupled with the lack of any objection

6    from other creditors, strongly suggests that the interest of the creditors is for the court to grant

7    the Trustee's Motion and approve the proposed settlement.

8        **F.    Debtor's Specific Objections.**

9        The Debtor has filed an objection to the Trustee's Motion, outlining seven points why the

10    court should not approve the proposed settlement. All seven points are without merit and should

11    be disregarded in total. Nevertheless, FHLF responds to each point.

12        **1.**    The Debtor's first point is that no discovery has taken place making

13    valuation "subjective" and not based on any "reasonable criteria." Where the Federal Action is

14    in terms of discovery is irrelevant. The Trustee has chosen to resolve the matter now, not eight

15    months from now after the Trustee has expended $30,000 on discovery. To require the Trustee

16    to spend money she does not have to confirm that the claims are without merit is simply

17    incorrect. FHLF made the settlement proposal before the parties engaged in significant

18    discovery. That offer was anything but "premature."

19        **2.**    The Debtor's second point is that the claims are worth "$17 million in

20    damages," and that the creditors will get more if the claims are litigated. Simply stating that

21    claims are worth "$17 million" does not make it so. Interestingly, the Debtor in his schedules

22    failed to list any of the claims, and during his §341 hearing advocated that the Trustee simply

23    abandon the claims as they did not have much value. To argue now that the claims are actually

24    worth "$17 million" and that those funds will be available for creditors is specious, at best. For

25    the reasons set forth above, the only value to the Debtor's claims is nuisance value. That is

26    ///

Page 7 of    FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-    MOTION AND NOTICE OF INTENT TO SETTLE AND
    COMPROMISE
    PDX/116063/160139/CGR/5766364.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

Case 09-32439-rld7   Doc 100   Filed 04/27/10

1  consistent with the amount that FHLF has offered to settle.   Moreover, the Debtor's failure to

2  provide any analysis as to why his claims are worth "$17 million" is telling.

3          3.       The Debtor next argues that the Federal Action is a class action and

4  outside the scope of the Trustee's authority to settle.  That is incorrect.  Neither the Federal

5  Action nor any other lawsuit brought by the Debtors has been certified as a class action.  Even if

6  it was, the Trustee is not seeking to resolve all class claims, only those belonging to the Debtor.

7  Thus, even if the Federal Action had been certified as a class action (which it was not), the class

8  action could still proceed forward, although it would need a new class representative as the

9  Debtor would no longer have any claims and, thus, would not be a proper class representative.

10          4.       The Debtor next argues that the settlement will negatively affect the state

11  court eviction cases.  That is a moot point as those cases have been litigated with FHLF

12  obtaining a directed verdict granting it possession of the Properties.

13          5.       In points 5-7 the Debtor tries to revive settlement negotiations and,

14  ostensibly, foist on FHLF a settlement agreement that FHLF rejected.  These points are wholly

15  irrelevant to whether the Trustee should settle the Debtor's claims as proposed.  While FHLF and

16  the Debtor did engage in settlement discussions, those ended unsuccessfully.

17  **IV.    CONCLUSION**

18          The Debtor's opposition of the settlement is nothing more than an act of desperation

19  exerted in a final attempt to continue his prosecution of absurd and meritless claims.  The

20  Trustee has identified the only party willing to pay anything to resolve the claims.  No other

21  party has come forth with an offer or indication that it will pay anything, much less more than

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

Page 8 of        FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-              MOTION AND NOTICE OF INTENT TO SETTLE AND
                 COMPROMISE
PDX/116063/160139/CGR/5766364.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 8 of 133

1    $5,000, for the claims.  For the reasons set forth above, the proposed settlement is fair and

2    equitable.  FHLF respectfully requests that the court grant the Trustee's Motion and approve the

3    proposed settlement.

4         Dated this 27th day of April, 2010.

5              SCHWABE, WILLIAMSON & WYATT, P.C.

6

7            By:   /s/ Craig G. Russillo

8                Craig G. Russillo, OSB #973875
            crussillo@schwabe.com

9                Facsimile: 503.796.2900
            Of Attorneys for Creditor, Fairway America

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 9 of    FHLF, LLC'S MEMORANDUM IN SUPPORT OF
10-    MOTION AND NOTICE OF INTENT TO SETTLE AND
    COMPROMISE

PDX/116063/160139/CGR/5766364.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 9 of 133

Case 09-32439-rld7    Doc 100    Filed 04/27/10

1                          **CERTIFICATE OF SERVICE**

2          I hereby certify that on the 27th day of April, 2010, I served the foregoing FHLF's

3    MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION OF INTENT TO INTENT TO

4    SETTLE AND COMPROMISE on the following persons:

5          Internal Revenue Service              Lauren J. Paulson
           Insolvency 3, M/S 0240                3980 SW 170th Avenue
6          1220 SW Third Avenue                  Aloha, Oregon 97007
           Portland, Oregon 97204
7

8    by mailing to them a true and correct copy thereof, placed in a sealed envelope addressed to them

9    at the addresses set forth below, and deposited in the U.S. Post Office at Portland, Oregon on

10   said day with postage prepaid; and to:

11         MATTHEW A. ARBAUGH on behalf of Debtor Lauren Paulson
           matt@fieldjerger.com, koren@fieldjerger.com
12
           US TRUSTEE, PORTLAND
13         USTPRegion18.PL.ECF@usdoj.gov

14         AMY E. MITCHELL, Chapter 7 Trustee
           mitchelltrustee@comcast.net
15
           CRAIG G. RUSSILLO
16         crussillo@schwabe.com, dkinonen@schwabe.com, docket@schwabe.com

17         ANNA M. SMITH
           asmith@schwabe.com, dgibson@schwabe.com, docket@schwabe.com
18
19   by ECF electronic service.

20                              By:    /s/ Craig G. Russillo
                                       Craig G. Russillo, OSB# 973875
21                                     Of Attorneys for FHLF, LLC

22

23

24

25

26

Page 1 -    CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

PDX/116063/160139/CGR/5766364.3

## LOAN AGREEMENT

THIS LOAN AGREEMENT is made and entered into this 28 day of November, 2005, by and between Fairway Commercial Mortgage Corporation, an Oregon corporation (the "Lender") and Huber-Wheeler Crossing, LLC, an Oregon limited liability company (the "Borrower").

### RECITALS

A.    Borrower is (or will be on the Closing Date) the sole owner of the Real Property (as defined below).

B.    Borrower desires to borrow Four Hundred Thousand and 00/100ths Dollars ($400,000.00). Lender is willing to loan Borrower said sum on the terms and conditions set forth in this Agreement, and not otherwise.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the Lender and Borrower agree as follows:

### AGREEMENT

### SECTION 1. DEFINITIONS

1.1    **Definitions.**  For the purposes of this Agreement each of the following terms shall have the meaning specified with respect thereto unless a different meaning clearly appears from the context:

1.1.1  "Agreement" shall mean this Loan Agreement.

1.1.2  "Lender" shall mean Fairway Commercial Mortgage Corporation, an Oregon corporation.

1.1.3  "Bankruptcy Code" shall mean the United States Bankruptcy Code, as amended, 11 U.S.C. 101, et seq.

1.1.4  "Borrower" shall mean Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

1.1.5  "Closing Date" shall mean the date of the Note, or, in the event this transaction is subject to the Federal Truth in Lending Act, the date of expiration of the three day rescission period.

1.1.6  "Collateral" shall mean all of the Real Property, Personal Property, the vehicle described in Subsection 4.1.7 below, and other interests of Borrower which are subject to the lien of the Trust Deed.

1.1.7  "Environmental Laws" shall mean any present or future local, municipal, state or federal law, rule, order, regulation or restriction relating to environmental protection and pollution control (including but not limited to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 as amended by the Superfund Amendment and Reauthorization Act of 1986, the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, the Toxic Substances Control Act, and the Federal Insecticide, Fungicide and Rodenticide Act and any similar federal or state statutes and regulations), land use and zoning, energy and industrial facilities siting, or occupational health and safety.

1.1.8  "Event of Default" shall mean any Event of Default as provided in Subsection 6.1 hereof.

1.1.9  "Hazardous Substances" shall mean and include all hazardous and toxic substances, wastes or materials, any pollutants or contaminates (including, without limitation, petroleum products or crude oil or any fraction thereof, asbestos and raw materials which include hazardous constituents), or other similar substances, or materials which are included now or in the future under or regulated by any Environmental Law.

1.1.10  "Lease(s)" shall mean any present or future lease of all or any portion of the Premises, together with all monies due and to become due under any such Leases.

1.1.11  "Loan" shall mean the Lender's loan of funds to Borrower in an amount and on the terms and conditions set forth in this Agreement and other Loan Documents, in the terms of repayment of which are more particularly described in the Note and any extensions, renewals or modifications of the Loan.  The term "Loan" also includes but is not limited to any amounts required to be paid to Lender by Borrower under the Agreement or other Loan Documents.

1.1.12  "Loan Documents" shall mean this Agreement; the Note; the Trust Deed, and all other instruments and agreements required to be executed in connection with the Loan, and any amendments or supplements to any such documents.

1.1.13  "Loan Origination Fee" shall mean a nonrefundable Loan Fee in the amount of Fourteen Thousand and 00/100ths Dollars ($14,000.00).

1.1.14  "Note" shall mean the Secured Promissory Note executed by Borrower, dated of even date herewith, in the original principal amount of Four Hundred Thousand and 00/100ths Dollars ($400,000.00) payable to the order of Lender, together with any renewals or extensions of it and together with any amendments or supplements to it.

PAGE 1 - LOAN AGREEMENT

EXHIBIT    1
PAGE    1    OF    8

Case 09-32439-rld7   Doc 100   Filed 04/27/10

1.1.15 "Permitted Encumbrances" shall mean, at any particular time, (i) liens created or contemplated by the Loan Documents, (ii) the liens, encumbrances and restrictions on the Real Property which are otherwise approved in writing by Lender.

1.1.16 "Person" means any individual, firm, corporation, trust, association, partnership, joint venture, tribunal or other entity.

1.1.17 "Policies of Insurance" shall mean the insurance to be obtained and maintained by Borrower as provided by the following Section 5.1 of this Agreement.

1.1.18 "Premises" shall mean the Real Property and all improvements and fixtures which now are or in the future are situated upon the Real Property.

1.1.19 "Real Property" shall mean the property described as:

See Exhibit "A"

together with all buildings, structures and other improvements situate or to be situated thereon, together with all easements appurtenant thereto associated with the above legal description.  For the purposes of this document, Parcels I, II and IV shall be known as the "LLC Property" and Parcel III shall be known as the "Paulson Trust Property."

1.1.20 "Title Insurance Company" shall mean Transnation Title Agency of Oregon, together with such reinsurers with direct access as are requested by Lender or other title insurance company or companies as may be acceptable to Lender.

1.1.21 "Title Insurance Policy" shall mean the ALTA extended coverage lender's policy of title insurance to be issued on the Closing Date by Title Insurance Company in the amount of Four Hundred Thousand and 00/100ths Dollars ($400,000.00) insuring Lender that the LLC Trust Deed is a first lien on the LLC Property and the Paulson Trust Trust Deed is a first lien on the Paulson Trust Property, without exception as to the condition of the title or priority, other than Permitted Encumbrances, together with such endorsements as Lender, in its sole discretion, may require and subject only to such exceptions as are acceptable to Lender.

1.1.22 The "LLC Trust Deed" shall mean the Commercial Deed of Trust and Assignment of Rents executed by the Borrower, as Grantor, naming Title Insurance Company as Trustee, and Lender as Beneficiary, encumbering the LLC Property portion of the Real Property, and given for the purpose of securing payment of the Loan and compliance with the terms of the Note, this Agreement, and other Loan Documents, together with any amendments or supplements to it.

1.1.23 The "Paulson Trust Trust Deed" shall mean the Commercial Deed of Trust and Assignment of Rents executed by Lauren Paulson, as Successor Trustee of The Lauren Paulson Trust Agreement, dated October 18, 2004, as Grantor, naming Title Insurance Company as Trustee, and Lender as Beneficiary, encumbering the Paulson Trust Property portion of the Real Property, and given for the purpose of securing payment of the Loan and compliance with the terms of the Note, this Agreement, and other Loan Documents, together with any amendments or supplements to it.

1.2    Other Definitions. Capitalized terms which are not defined above but are defined elsewhere in this Agreement shall have the same meanings given them in such provisions of this Agreement. Capitalized terms which are not defined in this Agreement and are defined in the Loan Documents shall have the same meaning given them in the respective Loan Document.

SECTION 2. LOAN

2.1    Amount, Interest and Term of Loan. The Loan shall be in the principal sum of Four Hundred Thousand and 00/100ths Dollars ($400,000.00) and shall bear interest pursuant to the terms of the Note, and the following provisions of this Agreement. The Loan shall mature on the date specified in the Note.

2.2    Application of Proceeds. The proceeds of the Loan will be applied as follows:

2.2.1 To the payment of the Loan Origination Fee described in this Agreement; and

2.2.2 To the payment directly to Lender of the underwriting fee in the amount of Nine Hundred Seventy-One and 00/100ths Dollars ($971.00); and

2.2.3 To the payment directly to Lender of the document preparation fee in the amount of Eight Hundred Ninety-Seven and 00/100ths Dollars ($897.00); and

2.2.4 To the payment directly to Lender of the flood certificate/tax service fees in the amount of Two Hundred Fifty and 00/100ths Dollars ($250.00);

2.2.5 To the payment directly to Lender of the collateral evaluation fee in the amount of Five Hundred and 00/100ths Dollars ($500.00);

PAGE 2 - LOAN AGREEMENT

EXHIBIT  1
PAGE  2  OF  8

2.2.6  To the payment directly to Lender of the transaction screening fee in the amount of Six Hundred and 00/100ths Dollars ($600.00);

2.2.7  To the payment directly to Lender of the loan setup fee in the amount of Two Hundred Fifty and 00/100ths Dollars ($250.00) (this fee is waived if Borrower signs up for Lender's automatic payment program at closing);

2.2.8  To the payment directly to First Quality Mortgage of the broker fee in the amount of Six Thousand and 00/100ths Dollars ($6,000.00);

2.2.9  All less a deposit in the amount of Two Thousand Five Hundred and 00/100ths Dollars ($2,500.00), already paid by the Borrower;

2.2.10  To the payment of all existing liens, agreements, encumbrances and taxes against the Real Property, in full, to the payment of all judgments against the Borrower, to the extent the same constitute a lien against the Real Property, and to the payment in full of property taxes against the Real Property, including those payable for the current tax period; and

2.2.9  To the payment directly to the Internal Revenue Service in the amount of $57,235.00 and to the Oregon Department of Revenue in the amount of $11,168.93, for certain debt of the Borrower;

2.2.10  To the payment directly to Carl Paulson and Susan Paulson in the amount of $40,000.00, as payment for subordination of a trust deed encumbering the Paulson Trust Property.

2.2.11.  The balance, if any, to be disbursed to the Borrower.

2.3  Servicing Costs.  In the event Lender elects to use a third party collection service to collect and process the loan payments, then Borrower shall pay any and all costs assessed by such collection service.

2.4  Prepayment Privilege Penalty.  The Note provides for payment of a prepayment privilege fee. The MAXIMUM PREPAYMENT PRIVILEGE FEE IS $20,000.00.

## SECTION 3. REPRESENTATIONS AND WARRANTIES BY BORROWER

3.1  Borrower represents and warrants to Lender that:

3.1.1  Title to Real Property.  As of the Closing Date, Borrower has a good and marketable fee simple interest in the LLC Property portion of the Real Property and, The Lauren Paulson Trust has good and marketable fee simple interest in the Paulson Trust Property portion of the Real Property, free and clear of all defects, liens and encumbrances, except for Permitted Encumbrances, including a deed of trust in favor of the Carl Paulson and Susan Paulson, which encumbers the Paulson Trust Property, but will be subordinate to the Paulson Trust Trust Deed.

3.1.2  No Hazardous Waste.  None of the Real Property (i) has ever been used by previous owners and/or operators or by Borrower to generate, manufacture, refine, transport, treat, store, handle or dispose of any Hazardous Substances and Borrower does not intend to use any of the Real Property for any such purposes, and (ii) has never contained any Hazardous Substance whether used in construction or stored on the Real Property.

3.1.3  Litigation.  Except as disclosed in writing to Lender, there are no actions, suits or proceedings pending or, to the knowledge of Borrower, threatened against or affecting Borrower or the Real Property.

3.1.4  Compliance by Borrower with Other Instruments.  Borrower is not in violation of or in default with respect to any term, provision, or condition of any trust deed, mortgage, indenture, security instrument, contract, agreement or other instrument applicable to Borrower, or by which Borrower is bound, and the execution, delivery, and performance of and compliance with the Loan Documents will not result in any such violation.

3.1.5  Commercial Use.  The proceeds of the Loan will be used primarily for commercial or business purposes.

3.1.6  Representations True.  Every representation, warranty, covenant and agreement contained in every Loan Document and any other documents submitted to Lender in connection with the Loan, including, but not limited to, the financial statements of the Borrower and the rent rolls concerning the Premises, are true and accurate in all material respects.

## SECTION 4. CONDITIONS OF THE LENDER'S OBLIGATION

4.1  Lender's obligation to make the Loan is subject to the fulfillment to Lender's satisfaction prior to the Closing Date of each and every one of the following conditions precedent:

4.1.1  Proceedings and Documents.  All proceedings taken by Borrower in connection with the Loan and every representation, warranty, covenant and agreement contained in every Loan Document and other documents submitted to Lender in connection with Loan shall be true and in satisfactory form and substance to Lender, and Lender shall have received from Borrower (a) executed original Loan Documents; (b) such authorizations and other documents as Lender, in its sole discretion, may require, and (c) such authenticated copies of any other documents as Lender may reasonably request.

PAGE 3 - LOAN AGREEMENT

EXHIBIT  1
PAGE  3  OF  8

4.1.2  **Legal Description.** Borrower shall have furnished to Lender for its approval a complete legal description of the Real Property.

4.1.3  **Title Insurance.** Borrower shall have delivered to Lender the Title Insurance Policy or the commitment from the Title Insurance Company to issue the Title Insurance Policy in form and substance acceptable to Lender.

4.1.4  **Insurance.** Borrower shall have in force and shall have delivered to Lender the Policy of Insurance required by Subsection 5.1.1 of this Agreement and by the Trust Deed.

4.1.5  **Payment of Fees and Expenses.** Borrower shall have paid to Lender prior to or on the Closing Date the Loan Fee and other expenses as may be due and payable.

4.1.6  **"Take Out" Investor/Financial Institution.** The "take out" Investor/Financial Institution selected by the Lender shall have reviewed and approved all Loan Documents and deposited the necessary loan proceeds with escrow.

**SECTION 5. BORROWER'S COVENANTS**

5.1  Borrower covenants and agrees with Lender as follows:

5.1.1  **Insurance.** At all times, Borrower shall have in full force insurance as required by the terms of the Trust Deed.

5.1.2  **Absence of Hazardous Waste.** Borrower shall (i) use their best efforts to prevent any Person from releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping any Hazardous Substance onto the Real Property and (ii) immediately notify Lender in writing should Borrower become aware of any Hazardous Substance or other environmental problem or liability with respect to the Premises.

5.1.3  **Information.** Borrower shall (i) furnish to Lender promptly such data and information, financial or otherwise, concerning Borrower as from time to time may reasonably be requested by Lender; and (ii) promptly notify Lender of any condition or event which constitutes an Event of Default under any of the Loan Documents or any other agreement or of any materially adverse change in the financial condition of such Borrower.

5.1.4  **Litigation.** Borrower shall give Lender written notice within ten (10) days after Borrower first receives notice of all complaints and charges filed by any Governmental Authority or any other Person affecting the Premises or Borrower which may impair the security of Lender or adversely affect any of Lender's rights under this Agreement or adversely affects Borrower's ability to repay the Loan.

5.1.5  **Indemnification of Lender.** Borrower shall indemnify and hold harmless Lender and its officers, directors, employees and agents from any and all claims, liability, loss, damage or expense (including but not limited to attorney fees and disbursements incurred before, at trial, on appeal or in the event of threatened litigation) asserted against Lender by any Person or governmental authority arising out of or in connection with sale or use of the Premises.

5.1.6  **Expenses.** Borrower shall pay, pursuant to the Loan Documents, all premiums for the Title Insurance Policy, and recording and reconveyance fees, escrow fees and any and all other closing costs of any nature associated with the Loan.

5.1.7  **Loan Origination Fee; Other Fees.** On the Closing Date, Borrower shall pay to Lender the Loan Origination Fee, as well as the other fees listed in Subsection 2.1.

**SECTION 6. DEFAULT; REMEDIES ON DEFAULT**

6.1  **Events of Default.** Any of the following events are an Event of Default:

6.1.1  If Borrower shall fail to pay when due any payments required to be made under the Note, this Agreement, the Trust Deed or other Loan Documents; or

6.1.2  If Borrower shall breach the observance or performance of any term, warranty, covenant, condition or provision contained in any of the Loan Documents, or in any other agreement or instrument executed by Borrower in connection with the Premises, and such default shall not have been remedied within any applicable cure period; or

6.1.3  **Insolvency of Borrower;** the commencement by Borrower of a voluntary case under the Bankruptcy Code or under any other federal or state law relating to insolvency or debtor's relief; the filing of an involuntary petition under the Bankruptcy Code or under any other applicable federal or state law relating to insolvency or debtor's relief which has not been dismissed by Borrower within thirty (30) days after such filing; the appointment of the consent by Borrower to the appointment of a receiver, trustee, custodian of Borrower or of any of Borrower's Real Property which Borrower has not caused to be withdrawn within thirty (30) days after such appointment; an assignment for the benefit of creditors by Borrower; the making of suffering by Borrower of a fraudulent transfer under applicable federal or state law; concealment by Borrower of any of its property in fraud of creditors; or

PAGE 4 - LOAN AGREEMENT

EXHIBIT ___1___
PAGE __4__ OF __8__

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 14 of 133

Case 09-32439-rld7   Doc 100   Filed 04/27/10

6.1.4  Except as permitted by the Trust Deed, if there is a sale, transfer, hypothecation, assignment or conveyance of the Premises, or any portion thereof or interest therein by Borrower without Lender's prior written consent; or

6.1.5  If any representation or warranty made by or on behalf of Borrower in connection with the Loan shall prove to have been false or incorrect in any material respect on the date as of which made; or

6.1.6  An Event of Default under any of the Loan Documents; or

6.1.7  If Borrower or any guarantor of the obligations of Borrower shall breach the observance or performance of any term, warranty, covenant, condition or provision of any and all other agreements, unrelated to the Loan Documents, under which Borrower may be obligated to Lender or any successor to Lender.

6.2   **Borrower.**  The Events of Default in this Section shall apply and refer to Borrower, and to each of the individuals which are collectively referred to or comprise "Borrower."

6.3   **Lender's Remedies on Default.**  Upon the occurrence of any Event of Default, in addition to exercising any remedy available to Lender at law, in equity or in any other Loan Documents, and without impairing any of Lender's right, powers or privilege under this Agreement or other Loan Documents, Lender may do any or all of the following:

6.3.1  Accelerate maturity of the Note and demand payment of the principal sums due thereunder, with interest, advances, and costs, and in default of said payment or any part thereof, to bring action on the Note and/or foreclose the Trust Deed; or

6.3.2  Institute appropriate proceedings to specifically enforce performance of this Agreement.

SECTION 7. MISCELLANEOUS PROVISIONS

7.1   **Attorney Fees.**  In the event suit or action is instituted to enforce or interpret any of the terms of this Agreement, including, but not limited to, any action or participation by Borrower in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees, witness fees (expert and otherwise), deposition costs, copying charges and other expenses. Whether or not any court action is involved, all reasonable expenses, including, but not limited to, the costs of searching records, obtaining title reports, surveyor report, title insurance, trustee fees and attorney fees, incurred by Lender that are necessary or advisable at any time in Lender's opinion for the protection of its interest or enforcement of its rights shall be payable on Lender's demand and shall bear interest from the date or expenditure until paid at the default interest rate provided in the Note or other Loan Documents or, if the Note or other Loan Documents contain no default rate, then at the interest rate(s) then borne by the Loan, and shall be secured by the Collateral.

7.2   **Timeliness; Term of Agreement; Survival; of Representations and Warranties.**  Time is of the essence of this Agreement. This Agreement shall continue in full force and effect until the Loan shall have been paid in full and all obligations of Borrower under the Loan Documents shall have been fully observed and performed. All representations and warranties contained herein or made in writing by or on behalf of Borrower in connection with the Loan shall survive the execution and delivery of the Loan Documents and any investigation at any time made by, through or on behalf of Lender. All statements contained in any certificate, other instrument or Loan Document constitute representations and warranties of Borrower under this Agreement.

7.3   **Amendments to Agreement; Waivers.**  Neither this Agreement nor any provision hereof may be amended, waived, discharged or terminated, except by an instrument in writing, signed by the parties to this Agreement.

7.4   **Remedies, Cumulative.**  All right, powers and remedies herein given to Lender are cumulative and not alternative and are in addition to all statutes or rules of law.

7.5   **No Waiver.**  No waiver by Lender of any breach of this Agreement nor any forbearance or delay on the part of Lender in exercising any power or right under any of the Loan Documents shall be deemed to be or constitute a waiver or any prior, other, existing or subsequent breach of this Agreement or other Loan Documents or of any power or right granted to Lender.

7.6   **No Agency Relationship.**  The execution of this Agreement and the exercise of any rights hereunder is not intended and shall not be construed to be a partnership or joint venture between Lender and any of the parties hereto. Lender is not the agent or representative of Borrower. This Agreement does not create a contractual relationship with and shall not be construed to make Lender liable to any contractors, subcontractors, materialmen, laborers or others, except as otherwise expressly provided by law.

7.7   **Consents of Lender.**  In all events where the consent of Lender is required under the terms of this Agreement, Lender shall grant or refuse such consent within a reasonable period of time following the receipt of such request. Any such consent may be granted or refused by Lender in Lender's sole and absolute discretion.

7.8   **Notice.**  All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

PAGE 5 - LOAN AGREEMENT

EXHIBIT ___1___
PAGE __5__ OF __8__

| To the Borrower | : | Huber-Wheeler Crossing, LLC, an Oregon limited liability company |
| | | 3980 SW 170th Avenue |
| | | Aloha, OR 97007 |
| | | |
| To the Lender | : | Fairway Commercial Mortgage Corporation |
| | | an Oregon corporation |
| | | 6650 SW Redwood Lane, Suite 290 |
| | | Portland, OR 97224 |

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

7.9   **Entire Agreement.** The Loan Documents constitute the entire agreement between the parties relating to the Loan and supersede all other prior or concurrent oral or written letters, agreements or understandings relating to the Loan.

7.10   **Assignment; Parties in Interest.** Lender shall have the right to assign its interest in this Agreement to any subsequent holder or holders of the Note. Borrower shall not assign this Agreement without the prior written consent of Lender, and any such assignment shall not release Borrower from liability under this Agreement or any other Loan Document. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns, and, in particular, shall inure to the benefit of and be enforceable by the holder or holders from time to time of the Note or any part thereof or interest therein.

7.11   **Joint and Several Liability.** If Borrower consists of more than one person or entity, the obligations imposed upon Borrower under this Agreement shall be joint and several.

7.12   **Governing Law; Conflicts.** The laws of the State of Oregon shall govern in the interpretation, enforcement and all other aspects of this Agreement. In the event of any conflict between this Agreement and the terms of any other Loan Documents, the terms of the other Loan Documents shall be controlling.

7.13   **Headings of Sections.** The headings of sections and subsections in this Agreement are inserted only for convenience and reference and shall in no way define, limit or describe the scope or intent of any provision of this Agreement.

7.14   **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument, and, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

7.15   **Severability.** Unenforceability for any reason of any provision of this Agreement shall not limit or impair the operation or validity of any other provision of this Agreement.

UNDER OREGON LAW, MANY AGREEMENTS PROMISES AND COMMITMENTS MADE BY LENDER AFTER NOVEMBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.

NOTICE TO BORROWER: DO NOT SIGN THIS LOAN AGREEMENT BEFORE YOU READ IT. THIS LOAN AGREEMENT PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THIS AGREEMENT AND THIS PROMISSORY NOTE.

PAGE 6 - LOAN AGREEMENT

EXHIBIT   1
PAGE  6  OF  8

Case 09-32439-rld7    Doc 100    Filed 04/27/10

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

LENDER:                                    BORROWER:

FAIRWAY COMMERCIAL MORTGAGE              HUBER-WHEELER CROSSING, LLC
CORPORATION

By:_____              By:_____
Robert S. Seidenwurm, Vice President         Lauren Paulson, Managing Member

PAGE 7 - LOAN AGREEMENT

EXHIBIT____1____
PAGE__7__OF__8__

Order No. 23y0024421w

**EXHIBIT "A"**
**Legal Description**

PARCEL I:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 186.6 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 80 feet to a point
on the East right-of-way of 170th Avenue; thence South 0° 16' East,
along the East right-of-way, a distance of 133.3 feet to the Southeast
corner of said lot; thence South 81° 37' East along the South line of
said lot, a distance of 80 feet to a point; thence North 0° 16' East
to the South line of the Thomas tract and the point of beginning.

PARCEL II:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 70 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 116.6 feet to a
point; thence South 0° 16' East, a distance of 108 feet, more or less,
to a point on the South line of said lot that is North 81° 37' West,
186.6 feet from the Southeast corner of said lot; thence South 81° 37'
East along the South line of said lot, a distance of 116.6 feet;
thence North 0° 16' East, 108 feet, more or less, to the point of
beginning.

PARCEL III:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, in the County of Washington and State
of Oregon; and running thence South 0° 08' East along the East line of
said lot, 264, a distance of 119.5 feet; thence North 81° 37' West,
parallel with the Northerly line of said Lot 264, a distance of 293.9
feet to a point on the West line thereof; thence North 0° 16' West,
119.5 feet along the West line of said lot, to the Northwest corner of
said Lot 264; thence South 81° 37' East, 292.2 feet along the North
line of said lot to the place of beginning.

PARCEL IV:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded subdivision in the
County of Washington and State of Oregon; and running thence South 0°
08' East along the East line of said Lot 264, a distance of 119.5 feet
to the Southeast portion of that tract conveyed to Alan G. Thomas by
    (Continued)

EXHIBIT ____1____
PAGE __8__ OF __8__

Case 09-32439-rld7    Doc 100    Filed 04/27/10

SECURED PROMISSORY NOTE

$400,000.00                                                                November 25, 2005

SECTION 1. DEBT AND PAYMENT TERMS.

1.1    FOR VALUE RECEIVED, Huber-Wheeler Crossing, LLC, an Oregon limited liability company (the "Borrower") promises to pay to the order of Fairway Commercial Mortgage Corporation ("Holder") at the following address: 6650 SW Redwood Lane, Suite 290, Portland, OR 97224, or at such other place as the Holder hereof may from time to time designate in writing:

- The Principal Sum of:    Four Hundred Thousand and 00/100ths Dollars ($400,000.00) in lawful money of the United States.
- Interest rate:    12.5% per annum from the date of funding of this Note, until paid.
- Payments:    Minimum monthly installments of not less than Four Thousand Two Hundred Sixty-Nine and 03/100ths Dollars ($4,269.03) per month shall be made (the "Minimum Monthly Payment"), commencing on January 1, 2006, and continuing on the first (1st) day of each and every month thereafter, until December 1, 2010, at which time the entire unpaid principal balance and any accrued interest shall come due and payable in full.
- Prepaid Interest:    Paid through November 30, 2005
- Prepayment Penalty:    5% of principal repaid for 2 years (See Section 1.2 below).

Unpaid interest will be added to principal monthly. All payments shall first be applied to collection costs as provided herein, then to any late payment penalties, then to accrued and unpaid interest, if any, and the balance to principal.

The Holder of this Note has the right to require, by giving Borrower 15 days notice, at any time and in its sole discretion, that monthly payments be made by wire transfer or cashier's check. Any prior or subsequent acceptance of monthly payments in any other form will not constitute the Holder's right to require monthly payments to be paid in the manner directed by the Holder.

The final payment due hereunder shall be made via wire transfer, unless prior written consent is obtained from the Holder to make the payment in some other mutually agreed manner. The payment shall be deemed paid on the date of receipt and availability of such funds to the Holder hereof. Borrower shall pay all fees and costs, whether incurred by the Holder or Borrower, associated with such wire transfer. Such wire transfer fees and costs are in addition to, and not in lieu of, all fees and costs payable under the terms of this Note, as well as additional loan documents entered into in connection with this Note.

1.2 Prepayment Privilege Fee.

1.2.1 At any time during the term of this Note and prior to a date which is the two (2) year anniversary of the date of funding of this Note (the "Funding Date"), Borrower shall have the right to prepay this Note, but only on full satisfaction of all of the following terms and conditions:

(a) Delivery of ten (10) day's prior written notice to the Holder hereof of the intention to make the prepayment; and

(b) Payment of any and all unpaid and delinquent principal, accrued interest and any other charges of any nature due and payable under this Note; and

(c) From the Funding Date until the two (2) year anniversary of the Funding Date, if any principal amount is repaid, then Borrower shall be obligated to pay an additional amount equal to five percent (5%) of the additional principal balance repaid (the "Prepayment Privilege Fee").

1.2.2 Borrower shall be entitled to prepay all or any part of the principal due under this Note without any Prepayment Privilege Fee if such prepayment occurs at any time after a date which is beyond the two (2) year anniversary of the Funding Date.

1.2.3 The holder hereof shall not be required to accept any prepayment from Borrower unless such payment is accompanied by the applicable Prepayment Privilege Fee.

1.2.4 If there is an Event of Default under this Note prior to the two (2) year anniversary of the Funding Date, and Borrower fails to cure the Event of Default before the foreclosure sale, then the holder hereof shall be entitled to collect the Prepayment Privilege Fee as if Borrower had voluntarily elected to prepay this Note within said time period as of the date of the Event of Default. Such Prepayment Privilege Fee shall, at the option of the holder hereof, either be (a) payable on demand or (b) added to the principal balance of this Note.

1.2.5 The MAXIMUM PREPAYMENT PRIVILEGE FEE is $20,000.00.

SECTION 2. ADDITIONAL PARTIES AND TERMS.

The Holder hereof may, without prior notice to Borrower, cause additional parties to be added hereto, or

PAGE 1 - SECURED PROMISSORY NOTE

EXHIBIT    2
PAGE    1    OF    4

Case 09-32439-rld7    Doc 100    Filed 04/27/10

release any party hereto, extend or renew this Note, extend the time for making any payment provided for herein, or accept any installment in advance, without affecting the liability of Borrower.

SECTION 3. EVENTS OF DEFAULT; CROSS-DEFAULT.

3.1    The following shall constitute Events of Default:

3.1.1    Nonpayment. Failure of Borrower to make any payment provided herein when due and/or the failure by Borrower to make payments related to the tax impound account, as provided in a Loan Agreement executed herewith.

3.1.2    Other Obligations. Failure of Borrower to make any payment or perform any obligation required by any other instrument evidencing or securing any indebtedness or obligation of Borrower, or any of them, to the Holder of this Note, including, but not limited to, default under any Deed of Trust given to secure payment of this Note, or default under any other instrument or agreement made by Borrower in connection with the indebtedness evidenced by this Note, or breach of any term or condition of any Deed of Trust.

SECTION 4. TIME IS OF THE ESSENCE.

TIME IS OF THE ESSENCE OF THIS NOTE. Any payment designated to be made to the Holder hereof under this Note or under any other agreement, designated in Subsection 3.1.2 herein, shall not be deemed to have been timely made unless actually received by the Holder hereof on or before 11:59 p.m. of the stated due date.

SECTION 5. REMEDIES IN CASE OF DEFAULT.

5.1    If an Event of Default shall occur, the Holder of this Note may exercise any of the following rights and remedies, in addition to any other remedies which may be available at law, in equity, or otherwise:

5.1.1    Acceleration and Interest Default Rate. The Holder of this Note may declare the entire unpaid principal and interest immediately due and collectible. Thereafter the principal balance and any other charges payable by Borrower shall bear interest at a rate of eight percent (8%) higher than the rate provided in Section 1 above (this adjusted rate shall be referred to as the "Default Rate"), but in no event to exceed the maximum rate permitted by law, running from the date of default until paid.

SECTION 6. SECURITY; NO TRANSFER WITHOUT CONSENT.

6.1    This obligation is secured by, among other instruments, two Commercial Deeds of Trust and Assignment of Rents, of even date herewith, encumbering certain real property and the improvements thereon located at Parcel R0149645, Aloha, OR, 16925 SW Blanton Street, Beaverton, OR 97007, 16919 SW Blanton Street, Beaverton, OR 97007, and 3980 SW 170th Avenue, Aloha, OR 97007 (collectively, the "Property").

6.2    A SALE, TRANSFER, ALIENATION OR INVOLUNTARY ENCUMBRANCE OF ANY OF THE PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF THE HOLDER HEREOF, WHICH CONSENT MAY BE GIVEN OR WITHHELD IN THE SOLE AND ABSOLUTE DISCRETION OF THE HOLDER HEREOF, SHALL BE A DEFAULT HEREUNDER AND UPON SUCH DEFAULT, ALL PRINCIPAL AND INTEREST, AT THE OPTION OF THE HOLDER OF THIS NOTE, SHALL BECOME IMMEDIATELY DUE AND PAYABLE.

SECTION 7. ATTORNEY FEES AND COSTS.

In the event of a default under this Note, Borrower agrees to pay all costs and expenses which may be incurred by the Holder with respect to such default, including without limitation all costs and expenses of investigating the same and circumstances and events surrounding or relating thereto, fees charged by and expenses of professional consultants and advisers, including attorneys and accountants, costs of title searches and premiums for title reports and all other costs and expenses. Attorney fees shall include costs and expenses of legal advice with respect to the event of default, rights and remedies, negotiations with Borrower and any other parties in interest, such as guarantors, other encumbrances, receivers, trustees, and the like, and attorney fees and expenses with respect to any action which the Holder may commence or in which the Holder might appear, whether for the purpose of protecting or preserving the Holder's rights or to realize upon the lien of any security interest upon real or personal property, or both, by foreclosure or otherwise, including, but not limited to, any action or participation as a debtor by Borrower in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, and all attorney fees and expenses in any review of or appeal from any such action. All costs, fees, or expenses herein referred to shall be reasonable. Such fees and costs may, at the option of the Holder, be added to the principal balance of this Note.

SECTION 8. LATE PAYMENT CHARGES.

8.1    If Borrower fails to pay any monthly installment provided herein within five (5) calendar days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday or legal holiday, the holder may assess a late charge equal to the greater of $100.00 or five percent (5%) of the installment not paid when due. Said late charge shall be paid on demand, and the holder hereof reserves the right (a) to refuse any late payment unless accompanied by such late charge, or (b) to add such late charge to the principal balance of the Note. The acceptance of a late charge shall not constitute a waiver of any remedies available to the holder of this Note arising from an event of default.

PAGE 2 - SECURED PROMISSORY NOTE

EXHIBIT  2
PAGE  2  OF  4

Case 09-32439-rld7    Doc 100    Filed 04/27/10

8.2    If Borrower fails to pay any final balloon payment within five (5) calendar days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday or legal holiday, the holder may assess a late charge equal to the greater of $100.00 or five percent (5%) of the final balloon payment not paid when due. Said late charge shall be paid on demand, and the holder hereof reserves the right (a) to refuse any late payment unless accompanied by such late charge, or (b) to add such late charge to the principal balance of the Note. The acceptance of a late charge shall not constitute a waiver of any remedies available to the holder of this Note arising from an event of default.

SECTION 9. WAIVER OF PRESENTMENT FOR PAYMENT, NOTICE OF DISHONOR, PROTEST AND
NOTICE OF PROTEST; LOAN AGREEMENT.

9.1    All persons liable either now or hereafter for the payment of this Note severally waive presentment, demand for payment and notice of nonpayment thereof.

9.2    All parties liable under this Note hereby consent to, and the Holder hereof is hereby expressly authorized to make, without notice, any and all renewals, extensions, modifications, or waivers of the time for or the terms of payment of any sum or sums due hereunder, or under any documents or instruments relating to or securing this Note, or of the performance of any covenants, conditions or agreements hereof or thereof or the taking or release of collateral securing this Note. Any such action taken by the Holder of this Note shall not discharge the liability of any party to this Note.

9.3    This Note is issued under and subject to the terms and conditions of that certain Loan Agreement dated of even date herewith, between Borrower, as the Borrower, and Fairway Commercial Mortgage Corporation as the Lender. Capitalized terms which are not defined in this Note but are defined in the Loan Agreement have the meaning given to them in the Loan Agreement.

9.4    The proceeds of this Note are being used solely for business purposes and none of the loan proceeds evidenced by this Note will be expended for a personal, private or consumer use.

9.5    Borrower, or its agent, may request a payoff of this Promissory Note by sending written communication to the Holder of this Note. The Holder of this Note shall be entitle to charge a demand fee in an amount not to exceed $100.00 each, which shall be due and owing whether or not this Note is paid in full with respect to that payoff request.

SECTION 10.    NONWAIVER.

Failure to exercise any option to declare a default or accelerate the balance due hereon shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Modification of the terms of payment of this Note made at the request of any person liable thereof shall not impair such person's liability or the liability of any other person now or hereafter liable for the payment hereof.

SECTION 11.    NOTICE.

All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

To Borrower    :    Huber-Wheeler Crossing, LLC, an Oregon limited liability company
                     3980 SW 170th Avenue
                     Aloha, OR 97007

To the Holder    :    Fairway Commercial Mortgage Corporation
                      an Oregon corporation
                      6650 SW Redwood Lane, Suite 290
                      Portland, OR 97224

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

SECTION 12.    GOVERNING LAW.

PAGE 5 - SECURED PROMISSORY NOTE

EXHIBIT    2
PAGE    3    OF    4

This Note shall at all time be governed by the laws of the State of Oregon. Borrower agree that this Note may be enforced in the courts of the State of Oregon and Borrower hereby consent to the jurisdiction thereof.

SECTION 13.        ENFORCEABILITY.

It is the intention of Borrower and the Holder to comply with the laws of the State of Oregon; accordingly, it is agreed that notwithstanding any provision to the contrary in this Note, no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by law. If any excess of interest in such respect is provided for, or shall be adjudicated to be provided for, in this Note, then in such event (a) the provisions of this section shall govern and control; (b) neither Borrower nor Borrower's successors or assigns or any other party liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount permitted by law; (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal amount hereof or refunded to Borrower; and (d) the effective rate of interest shall be automatically subject to reduction to the maximum lawful interest rate allowed under the usury laws of the State of Oregon.

SECTION 14.        SEVERABILITY.

If any provision of this Note is construed to be invalid, illegal, unenforceable or against public policy, the remaining provisions of this Note shall not be affected thereby and shall be enforceable without respect thereto.

SECTION 15.        NEGOTIATION.

This Note is freely transferable and assignable by the Holder hereof. In the event this Note is negotiated, endorsed or assigned to any party, such party shall not be subject to (and Borrower hereby expressly waives as against such party) any defenses, setoffs, counterclaims, or other objections to the payment of this Note.

EXECUTED the day and year first above written.

Huber-Wheeler Crossing, LLC

By: _____
Lauren Paulson, Managing Member


STATE OF HAWAII                        )
                                       ) ss.
County of   Kavai                      )


SUBSCRIBED AND SWORN to before me this 28th day November, 2005, by Lauren Paulson, as Managing Member of Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

L.S.                                   _____
                                       Notary Public for Hawaii
                                       My Commission Expires:   02/18/2008


PAGE 4 - SECURED PROMISSORY NOTE

EXHIBIT    2
PAGE   4   OF   4

WHEN RECORDED, RETURN TO:

Fairway Commercial Mortgage Corporation
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Washington County, Oregon   **2005-150742**
11/30/2005 03:33:08 PM
D-M   Cnt=1 Stn=7 K GRUNEWALD
$90.00 $5.00 $6.00 $11.00 - Total = $112.00

L Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.

Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

TRANSNATION 23400248W

COMMERCIAL DEED OF TRUST

AND

ASSIGNMENT OF RENTS

(SECURITY AGREEMENT AND FIXTURE FILING)

THIS COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS (the "Trust Deed") is made this 28 day of November, 2005, among the Grantor, Huber-Wheeler Crossing, LLC, an Oregon limited liability company, whose address is 3980 SW 170th Avenue, Aloha, OR 97007 (the "Grantor"); Transnation Title Agency of Oregon, whose address is 5035 NE Elam Young Pkwy #500, Hillsboro, OR 97124 (the "Trustee"); and the Beneficiary, Fairway Commercial Mortgage Corporation, an Oregon corporation, whose address is 6650 SW Redwood Lane, Suite 290, Portland, OR 97224 (the "Beneficiary" or "Lender").

I.      GRANTING CLAUSE

A.      Grantor, in consideration of the indebtedness recited in this Trust Deed and the trust created by this Trust Deed, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the County of Washington, State of Oregon, more particularly described as:

See Exhibit "A"

together with all buildings, improvements and tenements now or in the future erected on the property, and all previously or in the future vacated alleys and streets abutting the property, and all easements, rights, appurtenances, leases, including, without limitation, the leases, permits or agreements now or hereafter existing, however evidenced, covering all or any portion of the property, together with all rents or monies due or to become due thereunder; and together with all now existing or in the future arising or acquired; (a) revenues, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property; (b) fixtures, machinery, equipment located or to be located on the property, including, without limitation, personal property required for the maintenance and operation of the property (including, but not limited to, engines, boilers, incinerators, building materials, and all appliances, escalators and elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, communications apparatus, plumbing, plumbing fixtures, water heaters, paneling, attached floor and wall coverings); (c) timber to be cut; and (d) estate, interest, claims or demands, and other general intangibles now or in the future relating to the property, including, but not limited to, all insurance which the Grantor now has or may in the future acquire in and to the property, and all present or future refunds or rebates of taxes or assessments on the property and all compensation, awards, damages or rights of action arising out of or relating to any taking of the property described above. All of the foregoing shall be deemed to be and remain a part of the property covered by this Trust Deed. The specific enumerations herein shall not exclude the general. All of the property described above is referred to in this Trust Deed as the "Property."

B.      This Trust Deed is given as security for the following (collectively the "Indebtedness"): (a) the payment of the indebtedness evidenced by a promissory note in favor of Beneficiary dated of even date herewith and executed by Huber-Wheeler

PAGE 1 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT     3
PAGE     1     OF 36

Crossing, LLC, an Oregon limited liability company (the "Note"), in the principal sum of Four Hundred Thousand and 00/100ths Dollars ($400,000.00), with interest thereon, the balance of which, if not sooner paid, is due and payable on or before December 1, 2010, and all amendments, renewals, extensions and modifications of the Note; (b) the performance of the covenants and agreements of Borrower contained in the Loan Agreement, if any, between Beneficiary and Borrower dated of even date herewith, and any amendments (collectively the "Loan Agreement"); (c) the payment of all other sums, with interest thereon, advanced in accordance with this Trust Deed to protect the security of this Trust Deed; (d) the performance of the covenants and agreements of Borrower contained in this Trust Deed; and (e) payment and performance of Borrower's obligations now or in the future arising under any and all present or future indebtedness of Borrower to Beneficiary. The terms of the Note or Loan Agreement secured by this Trust Deed may provide that the interest rate or payment terms or balance due may be indexed, adjusted, renewed, or renegotiated from time to time. Capitalized terms which are not defined in this Trust Deed and are defined in the Loan Agreement shall have the meaning given them in the Loan Agreement.

## II.    TERMS AND CONDITIONS

Borrower and Beneficiary covenant and agree as follows:

SECTION 1. COVENANT OF TITLE. Borrower covenants that Borrower is lawfully seized of the estate conveyed by this Trust Deed, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions acceptable to Beneficiary and listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiary's interest in the Property.

SECTION 2. PROMISE TO PAY. Borrower shall pay promptly when due the principal of and interest on the Indebtedness and any other charges provided in the Note, this Trust Deed, the Loan Agreement and other documents executed in connection with the Indebtedness (collectively the "Loan Documents").

SECTION 3. LATE PAYMENT CHARGES. Beneficiary may charge a late charge on any scheduled payment which Beneficiary fails to receive within five (5) days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday, or legal holiday. The amount of the late charge shall be as specified in the Note or Loan Agreement or, if the Note or Loan Agreement specifies no late charge, then five percent (5%) of the amount of the payment of principal and interest not paid when due. Such late charge shall in no event exceed the maximum charge, if any, specified under applicable law. Collection of a late charge shall not constitute a waiver of or prejudice the Beneficiary's right to pursue any other right or remedy available on account of the delinquency, including, without limitation, charging the default rate of interest under the Note.

SECTION 4. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, or unless specified to the contrary in the other Loan Documents, each complete installment payment received by Beneficiary under the Note or this Trust Deed or other Loan Documents shall be applied by Beneficiary first to payment of reserves, if any, due under Sections 5 and 6 of this Trust Deed, next to interest due and payable on the Indebtedness, then to principal due and payable on the Indebtedness and then to any other charges due and payable pursuant to the terms of the Note, this Trust Deed, and any other Loan Documents. Upon a breach of any covenant or agreement of Borrower in the Note, this Trust Deed or other Loan Document, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any payments received by Beneficiary under the Note, this Trust Deed or under the other Loan Documents. Beneficiary, at Beneficiary's option, may reject any partial payment. Any partial payment which Beneficiary accepts may be held in a non-interest bearing account until Beneficiary receives funds sufficient to equal a complete installment payment, or, may be applied to the Indebtedness in any amount and in any order as Beneficiary may determine in Beneficiary's sole discretion.

PAGE 2 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT 3
PAGE 2 OF 36



### SECTION 5. TAXES AND LIENS; RESERVES.

5.1    **Payment.** Borrower shall pay when due all taxes and assessments levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Borrower shall maintain the Property free of any liens having priority over or equal to the interest of Beneficiary under this Trust Deed, except for the lien of taxes and assessments not due. Without Beneficiary's prior written consent, Borrower shall not allow any lien inferior to this Trust Deed to be perfected against the Property.

5.2    **Evidence of Payment.** On Beneficiary's demand, Borrower promptly shall furnish evidence acceptable to Beneficiary of payment of taxes and assessments and shall authorize the appropriate county official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property.

5.3    **Reserves.** Upon any Event of Default or any event which with the passage of time or notice would become an event of default under this Trust Deed or any other Loan Documents, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of taxes and assessments. The reserves shall be created by monthly payments of a sum estimated by Beneficiary to be sufficient to produce, at least thirty (30) days before the taxes and assessments are due, amounts at least equal to the taxes and assessments to be paid. If Beneficiary determines that the reserve funds are insufficient at any time, Borrower shall promptly pay any deficiency to Beneficiary on its demand. The reserve funds shall be held by Beneficiary in a deposit account, and the funds may be commingled with other funds held by Beneficiary. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the funds, Beneficiary shall not be required to pay Borrower any interest on the funds. Beneficiary shall apply the reserve funds to pay the taxes and assessments so long as Borrower is not in breach of any covenant or agreement of Borrower in this Trust Deed, but only to the extent that funds are available to do so. Beneficiary does not hold the funds in trust for Borrower and is not the agent of Borrower for payment of taxes and assessments required to be paid by Borrower. Upon any Event of Default under this Trust Deed or any other Loan Documents, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any reserve funds held by Beneficiary (i) to pay taxes and assessments which are due or (ii) as a credit against the Indebtedness.

### SECTION 6. HAZARD INSURANCE; RESERVES.

6.1    **Policies.** Borrower shall keep any improvements now existing or in the future erected on the Property insured by carriers who are at all times satisfactory to Beneficiary against loss by fire, all hazards included within the term "extended coverage," flood, casualties, liabilities and contingencies as Beneficiary shall require from time to time or at any time during the term of this Trust Deed and in such amounts, on a one hundred percent (100%) replacement cost basis without coinsurance clause, and for such periods as Beneficiary shall require. All insurance policies and renewals thereof shall be in a form and substance acceptable to Beneficiary and shall include a loss payable endorsement in favor of and in form and substance acceptable to Beneficiary and a provision that coverage will not be canceled, altered or diminished without a minimum of ten (10) days' prior written notice to Beneficiary. Beneficiary shall have the right to hold the policies, and Borrower promptly shall furnish to Beneficiary all renewal notices, waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s)

PAGE 3 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE __3__ OF _36_

Case 09-32439-rld7  Doc 100  Filed 04/27/10



borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Such advances shall be secured by the Property.

6.1.1  Without waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s) borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Beneficiary may also charge a fee not to exceed $100.00 per month to monitor the insurance placed on the property. Such advances shall be secured by the Property.

6.2  Payment; Reserves. All premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the carrier, or in such other manner as Beneficiary may designate in writing. Prior to the expiration date of any policy, Borrower shall deliver to Beneficiary a renewal policy in form and substance satisfactory to Beneficiary and receipts for paid premiums. At Beneficiary's option, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of insurance premiums. The reserves shall be created and held in the same manner as provided in Subsection 5.3 for reserves for payment of taxes and assessments.

6.3  Loss. In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to the Beneficiary. Beneficiary may give written notice to the insurance carrier if Borrower fails to do so within twenty (20) days of the casualty. Borrower hereby authorizes and empowers Beneficiary as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Beneficiary's expenses incurred in the collection of such proceeds; provided, however, that nothing contained in this Section 6 shall require Beneficiary to incur any expense or take any action hereunder.

6.4  Application of Proceeds. Borrower authorizes Beneficiary, at Beneficiary's option, (a) to apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due, or (b) after deducting Beneficiary's costs and expenses described above, to hold the balance of such proceeds to be disbursed to Borrower for the cost of reconstruction or repair of the Property. If the insurance proceeds are held by Beneficiary to disburse to Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Beneficiary may approve in writing. Beneficiary may require that Borrower deposit with Beneficiary any amount in excess of the insurance proceeds necessary to complete restoration, which amounts shall be disbursed prior to disbursement of any insurance proceeds. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the proceeds, Beneficiary shall not be required to pay Borrower any interest on the proceeds or any other sum which Beneficiary may require Borrower to deposit with Beneficiary pursuant to this Section. If the insurance proceeds are applied to the payment of the sums secured by this Trust Deed, any such application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due dates of any payments required under Section 2 or change the amounts of any such payments. If the Property is sold to Beneficiary pursuant to Section 17 of this Trust Deed or if Beneficiary otherwise acquires title to the Property, then in addition to the lien and security interests otherwise granted to Beneficiary under this Trust Deed, Beneficiary shall have all of the right, title and interest in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

PAGE 4 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT  3
PAGE  4  OF  36

**SECTION 7.  PRESERVATION AND MAINTENANCE OF PROPERTY: ENVIRONMENTAL LAWS; INDEMNIFICATION.**

　　7.1　　**Preservation and Maintenance.**

　　　　(a)　　Shall not commit waste or permit impairment or deterioration of the Property;

　　　　(b)　　Shall not abandon the Property;

　　　　(c)　　Unless Beneficiary directs Borrower in writing to the contrary, shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing, in the event of any damage, injury or loss to the Property, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair;

　　　　(d)　　Shall keep the Property in good condition and repair;

　　　　(e)　　Shall operate and maintain the Property in compliance with all applicable laws and regulations; and

　　　　(f)　　Shall give notice in writing to Beneficiary of and, unless otherwise directed in writing by Beneficiary, appear in and defend any action or proceeding purporting to affect the Property (including, without limitation, matters pertaining to land use, zoning and Environmental Laws, Hazardous Substances and Disabilities Laws, as defined below), the security of this Trust Deed or the rights or powers of Beneficiary. "Disabilities Laws" shall mean all applicable federal, state and local laws and regulations related to usability of and accessibility to the property by people with disabilities. The term "Disabilities Laws" includes, but is not limited to, the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990, all amendments thereto, and all regulations adopted thereunder. Neither Borrower nor any tenant nor other person, without the written approval of Beneficiary, shall remove, demolish or alter any improvement now existing or in the future erected on the Property or any fixtures, equipment, machinery or appliance in or on the Property and in which Beneficiary has any interest by virtue of this Trust Deed, any security agreement, or any other Loan Document, except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind, which shall thereupon become subject to the lien of this Trust Deed.

　　　　7.2　　**Environmental Laws.** In this Trust Deed, "Environmental Laws" means any and all state, federal and local statutes, regulations, and ordinances relating to the protection of human health or the environment. "Hazardous Substances" is used in its very broadest sense and refers to materials that, because of their quantity, concentration of physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. "Hazardous Substances" shall include, without limitation, petroleum products or crude oil or any fraction thereof and any and all hazardous or toxic substances, materials or waste as defined by or listed under the Resource Conservation and Recovery Act, the Toxic Substances Control Act, the Comprehensive Environmental Response, Compensation and Liability Act, or any other of the Environmental Laws. Borrower shall cause the Property and all operations on the Property to comply with all Environmental Laws and orders of any governmental authorities having jurisdiction under any Environmental Laws. Borrower shall exercise extreme care in handling Hazardous Substances and shall undertake any and all preventive, investigatory or remedial action (including, without limitation, emergency response, removal, containment and other remedial action) (a) required by any applicable Environmental Laws or orders by any governmental authority having jurisdiction under Environmental Laws, or (b) necessary to prevent or minimize property damage (including, without limitation, damage to Borrower's own property), personal injury or damage to the environment, or the threat of any such damage or injury,

PAGE 5 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE __5__ OF _36_

Case 09-32439-rld7   Doc 100   Filed 04/27/10



by releases of or exposure to Hazardous Substances in connection with the Property or operations on the Property. In the event Borrower fails to perform any of its obligations under this Section, Beneficiary may perform (but shall not be required to perform) such obligations at Borrower's expense pursuant to Section 9 of this Trust Deed. In performing any such obligations of Borrower, Beneficiary shall at all times be deemed to the agent of Borrower and shall not by reason of such performance be deemed to be assuming any responsibility of Borrower under any Environmental Laws or to any third party.

    7.3    **Further Assurances.** At any time Beneficiary requests, Borrower shall provide to Beneficiary further assurance of Borrower's compliance with this Section 7. The assurances shall be in form and substance satisfactory to Beneficiary in Beneficiary's sole discretion, and may include, but not be limited to, Borrower providing to Beneficiary an environmental audit from a source acceptable to Beneficiary at Borrower's expense.

    7.4    **Indemnification.** Borrower agrees to indemnify and hold harmless Beneficiary and its officers, directors, employees and agents, and Beneficiary's successors and assigns and their officers, directors, employees and agents against any and all claims, demands, losses, liabilities, costs and expenses (including, without limitation, attorney fees at trial and on any appeal or petition for review) incurred by such person (a) arising out of or relating to any investigatory or remedial action involving the Property and the operations conducted on the Property and required by Environmental Laws or Disabilities Laws or by orders of any governmental authority having jurisdiction under any Environmental Laws or Disabilities Laws, or (b) on account of injury to any person whatsoever or damage to any property arising out of, in connection with or in any way relating to (i) the violation of any applicable laws or regulations, including without limitation Environmental Laws or Disabilities Laws, (ii) the use, treatment, storage, generation, manufacture, transport, release, spill, disposal or other handling of Hazardous Substances on the Property or in connection with operations, or (iii) the contamination of any of the Property by Hazardous Substances by any means whatsoever, and (c) without in any way limiting the foregoing, for any other reason, or on account of, or in connection with the Property or this Trust Deed.

    7.5    **Survival.** The covenants contained in this Section 7 shall survive the repayment of the Indebtedness and the delivery of a deed in lieu of foreclosure to Beneficiary or any successor of Beneficiary and shall survive any foreclosure, whether judicial or nonjudicial, of the Property by Beneficiary or any successor of Beneficiary, and shall be for the benefit of Beneficiary, and any successor to Beneficiary, as holder of any security interest in the Property or the Indebtedness, or as owner of the Property or any other property of Borrower following foreclosure or the delivery of a deed in lieu of foreclosure.

**SECTION 8. USE OF PROPERTY.** Unless required by applicable law or unless Beneficiary has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Trust Deed was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification or comprehensive plan governing the Property without Beneficiary's prior written consent. Borrower warrants that this Trust Deed is and will at all times constitute a commercial deed of trust and not a residential deed of trust, as defined under applicable law. Borrower warrants the Indebtedness has been incurred solely for business purposes.

**SECTION 9. PROTECTION OF BENEFICIARY'S SECURITY.** If Borrower fails to perform the covenants and agreements contained in this Trust Deed, or if any action or proceeding is commenced which affects the Property or title to the Property or the interest of Beneficiary in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, violation of any law concerning environmental protection and pollution control referred to in Section 7 above, or arrangements or proceedings involving a bankrupt or decedent, then Beneficiary at Beneficiary's option may make such appearances, disburse such sums and take such action as Beneficiary deems necessary or advisable, in its sole discretion, to protect Beneficiary's interest, including, but not limited to, (a) employment of attorneys or other advisors, (b) entry upon the Property to investigate and make repairs, (c) procurement of satisfactory insurance, and (d) payment of any tax or liens. Any amounts disbursed by Beneficiary pursuant to this

PAGE 6 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE ___6___ OF ___36___



Section 9, with interest thereon, shall become additional Indebtedness of Borrower secured by this Trust Deed. Unless Borrower and Beneficiary agree in writing to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the default rate stated in the Note or the Loan Documents, or if no default rate is stated in the Note or Loan Documents, then at the interest rate(s) stated in the Note. Borrower hereby covenants and agrees that Beneficiary shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness secured by this Trust Deed. Nothing contained in this Section 9 shall require Beneficiary to incur any expense or take any action.

SECTION 10.    UCC SECURITY AGREEMENT; LEASES OF THE PROPERTY; ASSIGNMENT OF RENTS; INSPECTIONS.

10.1    This Trust Deed is intended to be a security agreement pursuant to the Uniform Commercial Code of Oregon for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code of Oregon, and Borrower hereby grants Beneficiary a security interest in said items. Borrower agrees that Beneficiary may file this Trust Deed, or a reproduction of it, in the real estate records, office of the Oregon Secretary of State, or other appropriate filing index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Trust Deed or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Beneficiary, upon Beneficiary's request, any financing statements, as well as extensions, renewals and amendments of them, and reproductions of this Trust Deed in such form as Beneficiary may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases of them, and shall pay all costs and expenses of any record searches for financing statements Beneficiary may require. Borrower shall notify Beneficiary in writing prior to changing Borrower's name or moving Borrower's chief executive office or any of the Property secured by this Trust Deed. Without the prior written consent of Beneficiary, Borrower shall not create or suffer to be created any other security interest in those items, including, without limitation, replacements, substitutions and additions to them. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Trust Deed, including, but not limited to, the covenants to pay when due all sums secured by this Trust Deed, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code of Oregon and, at Beneficiary's option, may also invoke the remedies provided in this Trust Deed as to such items. In exercising any of said remedies, Beneficiary may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, whether by nonjudicial sale or otherwise, without in any way affecting the availability of Beneficiary's remedies under the Uniform Commercial Code of Oregon or of the other remedies provided in this Trust Deed. This Trust Deed shall constitute a security agreement and "fixture filing" under the Uniform Commercial Code-Secured Transactions statutes of the State of Oregon. The mailing address of the Borrower and the address of the Beneficiary from which information may be obtained are set forth in the introductory paragraph of this Trust Deed.

10.2    Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower shall furnish Beneficiary with executed copies of all leases now existing or in the future made of all or any part of the Property, and all leases now or in the future entered into will be in form and substance subject to the prior written approval of Beneficiary. All leases of the Property shall specifically provide that such leases are subordinate to this Trust Deed; that the tenant attorns to Beneficiary, such attornment to be effective upon Beneficiary's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Beneficiary may from time to time request; that the attornment of tenant shall not be terminated by foreclosure; that the tenant agrees to execute such estoppel certificates in form and substance satisfactory to Beneficiary; and that Beneficiary, at Beneficiary's option, may accept or reject such attornments. Without Beneficiary's written consent, Borrower shall not request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Trust Deed. If

PAGE 7 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE    7    OF    36



Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of setoff against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a setoff against rent, (ii) notify Beneficiary thereof and of the amount of said setoffs, and (iii) within ten (10) days after such accrual, reimburse the tenant who shall have acquired such right to setoff or take such other steps as shall effectively discharge such setoff and as shall assure that rents thereafter due shall continue to be payable without setoff or deduction.

10.3   As Additional security under this Trust Deed, Borrower hereby assigns to Beneficiary the leases, rents or agreements concerning the Property now existing or in the future arising, provided that unless there is an event of default under the Loan Documents, Borrower shall have the right to collect and retain such rents as they become due and payable. Upon Beneficiary's request, Borrower shall execute any additional documents requested by Beneficiary to assign to Beneficiary any leases and all security and other deposits concerning the Property. This assignment is not a delegation or assignment to Beneficiary of Borrower's duties or obligations under or in connection with the Property. Beneficiary's acceptance of this assignment does not constitute a promise by it nor does it in any way obligate it to perform any of Borrower's duties or obligations under or in connection with the leases, rents or agreements. Borrower hereby agrees to indemnify Beneficiary against and hold it harmless from any and all liability, loss or damage which it may or might incur under the leases, rents or agreements or under or by reason of this assignment and of and from any and all claims and demands whatsoever which may be asserted against it by any reason of any alleged obligation or undertaking on Beneficiary's or Borrower's part to perform or discharge any of the terms of the leases, rents or agreements.

10.4   Beneficiary may make or cause to be made reasonable entries upon the Property to inspect the Property.

### SECTION 11.   CONDEMNATION.

11.1   Borrower shall promptly notify Beneficiary of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Beneficiary in writing. Borrower authorizes Beneficiary, at Beneficiary's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Beneficiary's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with any such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Beneficiary.

11.2   Borrower authorizes Beneficiary to apply such awards, payments, proceeds or damages, after the deduction of Beneficiary's expenses incurred in the collection of such amounts, at Beneficiary's option, to restoration or repair of the Property or to payment of the Indebtedness, whether or not then due, with the balance, if any, to Borrower. Unless Borrower and Beneficiary otherwise agree in writing, any application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due date of any payments required under this Trust Deed or change the amount of any such payments. Borrower shall execute such further evidence or assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Beneficiary may require.

### SECTION 12.   BORROWER AND LIEN NOT RELEASED.

12.1   From time to time, at Beneficiary's option, upon notice to Borrower but without any need to give notice to or obtain the consent of Borrower's successors or assigns or of any junior lienholder or guarantor and without any liability on Beneficiary's part and notwithstanding Borrower's breach of any covenant or agreement in this Trust Deed or the other Loan Documents, Beneficiary may do any or all of the following:

PAGE 8 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___

PAGE __8__ OF __36__

Case 09-32439-rld7   Doc 100   Filed 04/27/10



(a) Extend the time for payment of the Indebtedness or any part of it;
(b) Reduce the payments on the Indebtedness;
(c) Release anyone liable on any part of the Indebtedness;
(d) Accept renewal note or notes for the Indebtedness;
(e) Release from the lien of this Trust Deed any part of the Property;
(f) Release other or additional security;
(g) Reconvey any part of the Property;
(h) Consent to any map or plat of the Property;
(i) Consent to any easement; and
(j) Execute any subordination agreement.

12.2   Any action taken by Beneficiary pursuant to the terms of this Section or any modification of the rate of interest upward or downward, or modification of the period of amortization of the Note or change in the amount of the monthly installments payable under the Note or other Loan Documents, or any combination thereof, which may extend or reduce the term of the Note or this Trust Deed or both, shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Trust Deed and to observe the covenants of Borrower contained in this Trust Deed, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the Indebtedness secured by this Trust Deed, and shall not affect the lien or priority of lien of this Trust Deed on the Property. Unless otherwise provided by law, the priority of this Trust Deed shall not be affected by any change in terms whether or not it adversely affects subordinate or prior interest holders.

**SECTION 13.    FORBEARANCE BY BENEFICIARY OR RECEIPT OF AWARDS NOT A WAIVER.** Any forbearance by Beneficiary in exercising any right or remedy under this Trust Deed, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy. The acceptance by Beneficiary of payment of any sum secured by this Trust Deed after the due date of such payment shall not be a waiver of Beneficiary's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment, nor shall Beneficiary's receipt of any awards, proceeds or damages under this Trust Deed operate to cure or waive any default in payment of sums secured by this Trust Deed.

**SECTION 14.    PROHIBITION OF TRANSFER OF PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.**

14.1   Without prior written consent of Beneficiary, Borrower shall not transfer or agree to transfer all or any part of the Property or any interest in the Property. For the purpose of this section, the occurrence of any of the following events, without limitation, or any agreement to do any of the following, without limitation, shall be deemed to be a transfer of the Property: any sale, contract to sell, conveyance, assignment or other transfer of, other liens, or other security interest in, all or any part of the legal or equitable title to the Property.

14.2   If any of the events described in Subsection 14.1 occurs, Beneficiary, at Beneficiary's option, may declare all of the sums secured by this Trust Deed to be immediately due and payable, and may invoke any of the remedies permitted by this Trust Deed. If Borrower or a prospective transferee applies to Beneficiary for consent to transfer, Beneficiary may require such information as may be reasonably necessary for Beneficiary to assess the prospective transferee's reputation and financial ability to perform Borrower's obligations under this Trust Deed. As a condition of its consent to any transfer, Beneficiary in its discretion may impose an assumption fee, and may increase the interest rate on the Note or under the other Loan Documents. However, notwithstanding any of the foregoing, Beneficiary, in its sole discretion, may withhold its consent to any transfer for any reason whether or not withholding consent is reasonable under the circumstances. Any consent, if granted, shall not release Borrower or any successor in interest from personal liability for payment and performance of the Indebtedness, or for performance of this Trust Deed, the Note or other Loan Documents.

PAGE 9 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT __3__
PAGE _9_ OF _36_

Case 09-32439-rld7    Doc 100    Filed 04/27/10



**SECTION 15.    LOAN AGREEMENT PROVISIONS.** Borrower shall comply with the covenants and conditions of the Loan Agreement, if any, and all other Loan Documents executed in connection with the Indebtedness secured by this Trust Deed. If the terms of this Trust Deed are inconsistent with the terms of the Loan Agreement, if any, the terms of the Loan Agreement will control.

**SECTION 16.    DEFAULT.**

16.1    Events of Default. The following shall constitute "Events of Default".

(a)    Failure of Borrower to pay any portion of the Indebtedness when it is due.

(b)    Failure of Borrower within the time required by this Trust Deed to make any payment for taxes, insurance or any other payment necessary to prevent filing of or discharge of any lien.

(c)    Transfer or agreement to transfer any part or interest in the Property in any manner whatsoever, including, but not limited to, allowing any lien inferior to this Trust Deed on the Property without properly notifying Beneficiary, or transfer of any other interest of Borrower as described in Section 14.

(d)    Insolvency or business failure of Borrower; the commencement by Borrower of a voluntary case under the federal bankruptcy laws or under any other federal or state law relating to insolvency or debtor's relief; the filing of an involuntary petition against Borrower under the federal bankruptcy laws or under any other applicable federal or state law relating to insolvency or debtor's relief which Borrower has not caused to be dismissed within thirty (30) days after such filing; the appointment or the consent by Borrower to the appointment of a receiver, trustee, or custodian of Borrower or of any of Borrower's property which Borrower has not caused to be withdrawn within thirty (30) days after such appointment; an assignment for the benefit of creditors by Borrower; the making or suffering by Borrower of a fraudulent transfer under applicable federal or state law; concealment by Borrower of any of its property in fraud of creditors; or the imposition of a lien through legal proceedings or distraint upon any of the property of Borrower or Borrower's failure generally to pay its debts as such debts become due.

(e)    Failure of Borrower to make any payment or perform any obligation under any superior liens or encumbrances, within the time required under those liens or encumbrances, and without regard to any grace periods as may be afforded by the terms of such liens or encumbrances, or commencement of any suit or other action to foreclose any superior or inferior liens or encumbrances.

(f)    Breach or default under the Loan Agreement or any other Loan Documents, which is not cured within any applicable cure period.

(g)    Failure of Borrower to timely perform any other obligations under this Trust Deed.

16.2    The Events of Default in this Section shall apply and refer to Borrower, any guarantor of the Indebtedness, and to each of the individuals or entities which are collectively referred to as "Borrower."

**SECTION 17.    RIGHTS AND REMEDIES ON DEFAULT.**

17.1    Remedies. Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Beneficiary may exercise any one or more of the following rights and remedies:

(a)    Beneficiary may declare all sums secured by this Trust Deed immediately due and payable, including, without limitation, any prepayment premium

PAGE 10 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE  10  OF 36

Case 09-32439-rld7    Doc 100    Filed 04/27/10



which Borrower would be required to pay under the terms of the Note or Loan Agreement.

(b)    The Trustee shall have the right to foreclose by notice and sale, or Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with applicable law.

(c)    If this Trust Deed is foreclosed by judicial procedure, and if permitted by applicable law, Beneficiary shall be entitled to a judgment which will provide that if the foreclosure sale proceeds are insufficient to satisfy the judgment, execution may issue for the amount of the unpaid balance of the judgment.

(d)    Beneficiary shall have the right to take possession of the Property and, with or without taking possession of the Property, collect all the rents and revenues of the Property in accordance with this Trust Deed.

(e)    Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect all the rents and revenues from the Property and apply the proceeds, over and above cost of the receivership, against the sums due under this Trust Deed. The receiver may serve without bond if permitted by applicable law. Beneficiary's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the sums due under this Trust Deed by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

(f)    In the event Borrower remains in possession of the Property after the Property is sold as provided above or Beneficiary otherwise becomes entitled to possession of the Property upon the occurrence of an Event of Default, Borrower shall become a tenant at will of Beneficiary or the purchaser of the Property and shall pay a reasonable rental for use of the Property while in Borrower's possession.

(g)    Trustee and Beneficiary shall have any other right or remedy provided in this Trust Deed, the Note, the Loan Agreement, or any other Loan Document, or available at law, in equity or otherwise, and specifically, but not limited to, any and all rights and remedies granted by ORS 86.705, et seq.

17.2    Rights of Receiver or Beneficiary-in-Possession.  Upon taking possession of all or any part of the Property, the receiver or Beneficiary may:

(a)    Use, operate, manage, control and conduct business on the Property and make expenditures for all maintenance and improvements as in its judgment are proper;

(b)    Collect the income from the Property, including any past due, and apply such sums to the expenses of use, operation and management, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorney fees and to the sums secured by this Trust Deed in any order as Beneficiary shall determine in Beneficiary's sole discretion;

(c)    At Beneficiary's option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors and make any changes in plans or specifications as Beneficiary deems appropriate; and

(d)    Beneficiary or the receiver shall be liable to account only for those rents actually received. If the revenues produced by the Property are insufficient to pay expenses, the receiver may borrow from Beneficiary (if Beneficiary, in its sole discretion, agrees to lend) or otherwise, or Beneficiary may borrow or advance, such sums as the receiver or Beneficiary may deem necessary for purposes stated in this Subsection. The amounts borrowed or advanced shall bear interest from the date of expenditure until repaid at the same interest rate as provided in Section 9 of this Trust

PAGE 11 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT____3____
PAGE __11_ OF _36_

Case 09-32439-rld7   Doc 100   Filed 04/27/10



Deed. Such sums shall become a part of the Indebtedness secured by this Trust Deed and shall be payable by Borrower on demand.

17.3   **Waiver of Marshaling; Sale of the Property.** Notwithstanding the existence of any other mortgage, deed of trust, other lien or other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property, real or personal or mixed, shall be subjected to the remedies provided in this Trust Deed. Beneficiary shall have the right to determine the order in which any or all portions of the Indebtedness secured by this Trust Deed are satisfied from the proceeds realized upon the exercise of the remedies provided in this Trust Deed. In exercising its rights and remedies, Beneficiary, at Beneficiary's sole discretion, may cause all or any part of the Property to be sold as a whole or in parcels, and certain portions of the Property may be sold without selling other portions. Beneficiary may bid at any public sale on all or any portion of the Property. Borrower, any party who consents to this Trust Deed and any party who now or in the future acquires a security interest in the Property and who has actual or constructive notice of this Trust Deed hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided in this Trust Deed.

17.4   **Notice of Sale.** Beneficiary shall give Borrower reasonable notice of the time and place of any public sale of any personal property or of the time after which any private sale or other intended disposition of the personal property is to be made. Reasonable notice shall mean notice given in accordance with applicable law, and may include, without limitation, any notice required for the nonjudicial sale of the real property.

17.5   **Waiver; Election of Remedies; Remedies Cumulative.** A waiver by either party of a breach of a provision of this Trust Deed or the occurrence of an Event of Default shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. Election by Beneficiary to pursue any remedy shall not exclude pursuit of any other remedy, and all remedies of Beneficiary under this Trust Deed are distinct and cumulative and not exclusive to all other rights or remedies under this Trust Deed or Loan Documents or afforded by law or equity, and may be exercised concurrently, independently, or successively in any order whatsoever. An election to make expenditures or take action to perform an obligation of Borrower shall not affect Beneficiary's right to declare a default and exercise its remedies under this Trust Deed.

**SECTION 18.   SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.**

The covenants and agreement contained in this Trust Deed shall bind, and the rights under this Trust Deed shall inure to, the respective successors and assigns of Beneficiary and Borrower. However, nothing in this Trust Deed or other Loan Documents shall be deemed to permit Borrower to enter into any assignments or transfers except as specifically permitted pursuant to the preceding provisions of this Trust Deed. This Trust Deed and the Indebtedness secured hereby may be assigned in whole or in part or participated in whole or in part to any person by Beneficiary and without notice to or affecting Borrower's liability hereunder, and Beneficiary, in connection with such assignment, participation, or similar arrangement, may make all credit and financial data furnished and to be furnished by Borrower available to such existing or prospective assignee, participant or person. If Beneficiary assigns to any assignee, participants or other persons all of Beneficiary's interest in this Trust Deed and the Indebtedness secured hereby, then Beneficiary shall be and is released from any obligations under this Trust Deed and other Loan Documents. All covenants and agreements of Borrower shall be joint and several. In exercising any rights under this Trust Deed or taking any actions provided for in this Trust Deed, Beneficiary may act through its employees, agents or independent contractors as authorized by Beneficiary. The captions and headings of the sections and subsections of this Trust Deed are for convenience only and are not to be used to interpret or define the provisions of this Trust Deed.

PAGE 12 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE _12_ OF _36_



### SECTION 19.        NOTICE.

All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

|  |  |  |
|---|---|---|
| To the Borrower | : | Huber-Wheeler Crossing, LLC |
|  |  | an Oregon limited liability company |
|  |  | 3980 SW 170th Avenue |
|  |  | Aloha, OR 97007 |

|  |  |  |
|---|---|---|
| To the Lender | : | Fairway Commercial Mortgage Corporation |
|  |  | an Oregon corporation |
|  |  | 6650 SW Redwood Lane, Suite 290 |
|  |  | Portland, OR 97224 |

Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

### SECTION 20.        WAIVER OF STATUTE OF LIMITATIONS. Borrower hereby waives the right to assert any statue of limitations as a bar to the enforcement of the lien of this Trust Deed or to any action brought to enforce the Note, the other Loan Documents or any other obligation secured by this Trust Deed.

### SECTION 21.        RECONVEYANCE. Upon payment of the Indebtedness secured by this Trust Deed, Beneficiary shall request Trustee to reconvey the Property and shall surrender this Trust Deed and all notes evidencing Indebtedness secured by this Trust Deed to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to the Property. Such person or persons shall pay the Trustee's fee and other costs incurred in so reconveying the Property.

### SECTION 22.        SUBSTITUTE TRUSTEE. In accordance with applicable law, Beneficiary may from time to time appoint a successor trustee to any Trustee appointed under this Trust Deed. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Trust Deed and by applicable law.

### SECTION 23.        ATTORNEY FEES. In the event suit or action is instituted to enforce or interpret any of the terms of this Trust Deed, including, but not limited to, any action or participation by Borrower as a debtor in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees, witness fees (expert and otherwise), deposition costs, copying charges and other

PAGE 13 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE   13  OF  36

Case 09-32439-rld7    Doc 100    Filed 04/27/10

expenses. Whether or not any court action is involved, all reasonable expenses, including, but not limited to, the costs of searching records, obtaining title reports or appraisals, surveyor reports, title insurance, trustee fees, and attorney fees, incurred by Beneficiary that are necessary or advisable at any time in Beneficiary's opinion for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until paid at the default interest rate provided in the Note or other Loan Documents or if the Note or other Loan Documents contain no default rate, then at the interest rate(s) provided for in the Note.

**SECTION 24.    GOVERNING LAW; SEVERABILITY.** This Trust Deed shall be governed by the laws of the State of Oregon. In the event that any provision or clause of this Trust Deed, or the Note, or Loan Agreement or other Loan Documents conflicts with applicable law, such conflict shall not affect other provisions of this Trust Deed, the Note, the Loan Agreement or other Loan Documents which can be given effect without the conflicting provision, and to this end, the provisions of this Trust Deed, the Note, the Loan Agreement and other Loan Documents are declared to be severable.

**SECTION 25.    CONSENTS OF BENEFICIARY.** In all events where the consent of Beneficiary is required under the terms of this Agreement, Beneficiary shall grant or refuse such consent within a reasonable period of time following the receipt of such request. Any such consent may be granted or refused by Beneficiary in Beneficiary's sole and absolute discretion, without regard to any standard of good faith, fairness, or reasonableness.

**SECTION 26.    TIME OF ESSENCE.** Time is of the essence in the payment and performance of the obligations under and secured by this Trust Deed and the other Loan Documents.

**SECTION 27.    CHANGES IN WRITING.** Any term of this Trust Deed and any addendum to the Trust Deed may only be changed, waived, discharged or terminated by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. Any agreement subsequently made by Borrower or Beneficiary relating to this Trust Deed shall be superior to the rights of the holder of any intervening lien or encumbrance.

**SECTION 28.    ESTOPPEL CERTIFICATES.** Borrower, within five days of the request, shall furnish Trustee and Beneficiary a written statement, duly acknowledged, of the amount of the Indebtedness secured by this Trust Deed and whether any offsets or defenses exist against such Indebtedness. If Borrower shall fail to furnish such a statement within the time allowed, Beneficiary shall be authorized, as Borrower's attorney-in-fact, to execute and deliver such statement.

**SECTION 29.    ACCESS LAWS.**

29.1    Borrower agrees that Borrower and the Property shall at all times strictly comply with the requirements of the Americans with Disabilities Act of 1990; the Fair Housing Amendments Action of 1988; and other federal, state, or local laws or ordinances related to disabled access; or any statute, rule, regulation, ordinance, order of governmental bodies and regulatory agencies, or order or decree of any court adopted or enacted with respect thereto , as now existing or hereafter amended or adopted (collectively, the "Access Laws"). At any time, Lender may require a certificate of compliance with the Access Laws and indemnification agreement in a form reasonably acceptable to Lender. Lender may also require a certificate of compliance with the Access Laws from an architect, engineer, or other third party acceptable to Lender.

29.2    Notwithstanding any provisions set forth herein or in any other document, Borrower shall not alter or permit any tenant or other person to alter the Property in any manner which would increase Borrower's responsibilities for compliance with the Access Laws without the prior written approval of Lender. In connection with such approval, Lender may require a certificate of compliance with the Access Laws from an architect, engineer, or other person acceptable to Lender.

PAGE 14 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE    14    OF    36

Case 09-32439-rld7    Doc 100    Filed 04/27/10

29.3    Borrower agrees to give prompt written notice to Lender of the receipt by Borrower of any claims of violation of any of the Access Laws and of the commencement of any proceedings or investigations which relate to compliance with any of the Access Laws.

29.4    Borrower shall indemnify, defend, and hold harmless Lender from and against any and all claims, demands, damages, costs, expenses, losses, liabilities, penalties, fines, and other proceedings including without limitation reasonable attorneys fees and expenses arising directly or indirectly from or out of on in any way connected with any failure of the Property to comply with any of the Access Laws. The obligations and liabilities of Borrower under this Section shall survive any termination, satisfaction, assignment, judicial or nonjudicial foreclosure proceeding, or delivery of a deed in lieu of foreclosure.

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930.

REQUEST FOR NOTICE OF DEFAULT AND NOTICE OF SALE PURSUANT TO ORS 86.785

Beneficiary hereby requests that Beneficiary be provided with copies of any Notice of Default or Notice of Sale concerning the Property.

WARNING

UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

PAGE 15 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT  3
PAGE  15  OF  36

Case 09-32439-rld7   Doc 100   Filed 04/27/10

IN WITNESS WHEREOF, Borrower has executed this Trust Deed the day and year first written above.

Huber-Wheeler Crossing, LLC

By: _Lauren Paulson_
    Lauren Paulson, Managing Member


STATE OF HAWAII        )
                       ) ss.
County of _Kavai_      )


This instrument was acknowledged before me on November 2̲8̲, 2005 by Lauren Paulson, as Managing Member of Huber-Wheeler Crossing, LLC, an Oregon limited liability company.

O. Maui S. Janiguchi
Notary Public - State of Hawaii
My Commission Expires: 02/18/2008


PAGE 16 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT _3_
PAGE _16_ OF _36_

Case 09-32439-rld7   Doc 100   Filed 04/27/10

‖‖‖‖‖‖‖‖‖‖‖‖‖‖
2008-150742

### REQUEST FOR RECONVEYANCE

To Trustee:

The undersigned is the holder of the Note or Notes secured by this Trust Deed. Said Note or Notes, together with all other Indebtedness secured by this Trust Deed, have been paid in full. You are hereby directed to cancel said Note or Notes and this Trust Deed, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Trust Deed to the person or persons legally entitled to that estate.

Date:_____

By_____
Title_____

--(Space Below This Line Reserved For Beneficiary and Recorder)--

PAGE 17 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE _17_ OF _36_

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 39 of 133

Case 09-32439-rld7   Doc 100   Filed 04/27/10



Order No. 23y0024421w

EXHIBIT "A"
Legal Description

PARCEL I:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 186.6 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 80 feet to a point
on the East right-of-way of 170th Avenue; thence South 0° 16' East,
along the East right-of-way, a distance of 133.3 feet to the Southeast
corner of said lot; thence South 81° 37' East along the South line of
said lot, a distance of 80 feet to a point; thence North 0° 16' East
to the South line of the Thomas tract and the point of beginning.

PARCEL II:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 70 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 116.6 feet to a
point; thence South 0° 16' East, a distance of 108 feet, more or less,
to a point on the South line of said lot that is North 81° 37' West,
186.6 feet from the Southeast corner of said lot; thence South 81° 37'
East along the South line of said lot, a distance of 116.6 feet;
thence North 0° 16' East, 108 feet, more or less, to the point of
beginning.

PARCEL IV:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded subdivision in the
County of Washington and State of Oregon; and running thence South 0°
08' East along the East line of said Lot 264, a distance of 119.5 feet
to the Southeast portion of that tract conveyed to Alan G. Thomas by
deed recorded in Book 315, Page 36, Deed Records of Washington County,
Oregon, and the true point of beginning of the tract herein described;
thence North 81° 37' West along the South line of said Thomas tract, a
distance of 70 feet to a point; thence South 0° 16' East, parallel
with the West line of Lot 264, a distance of 108 feet, more or less,
to a point on the South line of said lot; thence South 81° 37' East,
70 feet to the Southeast corner of said Lot 264; thence North 0° 08'
East, a distance of 108 feet to the point of beginning.

EXHIBIT   3
PAGE  18  OF  36

Washington County, Oregon    **2005-150743**
11/30/2005 03:33:59 PM
D-M    Cnt=2 Stn=7 K GRUNEWALD
$90.00 $5.00 $9.00 $11.00 - Total = $113.00

00876533200050150743018018?

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.

Jerry R. Hanson, Director Assessment and Taxation,
Ex-Officio County Clerk

WHEN RECORDED, RETURN TO:

Fairway Commercial Mortgage Corporation
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

**COMMERCIAL DEED OF TRUST**

**AND**

**ASSIGNMENT OF RENTS**

**(SECURITY AGREEMENT AND FIXTURE FILING)**

THIS COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS (the "Trust
Deed") is made this 25 day of November, 2005, among the Grantor, Lauren Paulson,
as Successor Trustee to The Lauren Paulson Trust Agreement, dated October 18, 2004,
whose address is 3980 SW 170th Avenue, Aloha, OR 97007 (the "Grantor"); Transnation
Title Agency of Oregon, whose address is 5635 NE Elam Young Pkwy #500, Hillsboro,
OR 97124 (the "Trustee"); and the Beneficiary, Fairway Commercial Mortgage
Corporation, an Oregon corporation, whose address is 6650 SW Redwood Lane, Suite
290, Portland, OR 97224 (the "Beneficiary" or "Lender").

I.    **GRANTING CLAUSE**

A.    Grantor, in consideration of the indebtedness recited in this Trust Deed
and the trust created by this Trust Deed, irrevocably grants, conveys and assigns to
Trustee, in trust, with power of sale, the following described property located in the
County of Washington, State of Oregon, more particularly described as:

See Exhibit "A"

together with all buildings, improvements and tenements now or in the future erected on
the property, and all previously or in the future vacated alleys and streets abutting the
property, and all easements, rights, appurtenances, leases, including, without limitation,
the leases, permits or agreements now or hereafter existing, however evidenced, covering
all or any portion of the property, together with all rents or monies due or to become due
thereunder; and together with all now existing or in the future arising or acquired; (a)
revenues, royalties, mineral, oil and gas rights and profits, water, water rights, and water
stock appurtenant to the property; (b) fixtures, machinery, equipment located or to be
located on the property, including, without limitation, personal property required for the
maintenance and operation of the property (including, but not limited to, engines, boilers,
incinerators, building materials, and all appliances, escalators and elevators, and related
machinery and equipment, fire prevention and extinguishing apparatus, security and
access control apparatus, communications apparatus, plumbing, plumbing fixtures, water
heaters, paneling, attached floor and wall coverings); (c) timber to be cut; and (d) estate,
interest, claims or demands, and other general intangibles now or in the future relating to
the property, including, but not limited to, all insurance which the Grantor now has or
may in the future acquire in and to the property, and all present or future refunds or
rebates of taxes or assessments on the property and all compensation, awards, damages or
rights of action arising out of or relating to any taking of the property described above.
All of the foregoing shall be deemed to be and remain a part of the property covered by
this Trust Deed. The specific enumerations herein shall not exclude the general. All of the
property described above is referred to in this Trust Deed as the "Property."

B.    This Trust Deed is given as security for the following (collectively the
"Indebtedness"): (a) the payment of the indebtedness evidenced by a promissory note in
favor of Beneficiary dated of even date herewith and executed by Huber-Wheeler

PAGE 1 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE    19    OF    36

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 41 of 133

Case 09-32439-rld7    Doc 100    Filed 04/27/10


2009-198743

Crossing, LLC, an Oregon limited liability company (the "Note"), in the principal sum of Four Hundred Thousand and 00/100ths Dollars ($400,000.00), with interest thereon, the balance of which, if not sooner paid, is due and payable on or before December 1, 2010, and all amendments, renewals, extensions and modifications of the Note; (b) the performance of the covenants and agreements of Borrower contained in the Loan Agreement, if any, between Beneficiary and Borrower dated of even date herewith, and any amendments (collectively the "Loan Agreement"); (c) the payment of all other sums, with interest thereon, advanced in accordance with this Trust Deed to protect the security of this Trust Deed; (d) the performance of the covenants and agreements of Borrower contained in this Trust Deed; and (e) payment and performance of Borrower's obligations now or in the future arising under any and all present or future indebtedness of Borrower to Beneficiary. The terms of the Note and Loan Agreement secured by this Trust Deed may provide that the interest rate or payment terms or balance due may be indexed, adjusted, renewed, or renegotiated from time to time. Capitalized terms which are not defined in this Trust Deed and are defined in the Loan Agreement shall have the meaning given them in the Loan Agreement. For the purposes of this Trust Deed, the term "Borrower" shall refer to both The Lauren Paulson Trust Agreement, dated October 18, 2004 and to Huber-Wheeler Crossing, LLC, an Oregon limited liability company

II.    TERMS AND CONDITIONS

Borrower and Beneficiary covenant and agree as follows:

SECTION 1. COVENANT OF TITLE. Borrower covenants that The Lauren Paulson Trust Agreement, dated October 18, 2004 is lawfully seized of the estate conveyed by this Trust Deed, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions acceptable to Beneficiary and listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiary's interest in the Property.

SECTION 2. PROMISE TO PAY. Borrower shall pay promptly when due the principal of and interest on the Indebtedness and any other charges provided in the Note, this Trust Deed, the Loan Agreement and other documents executed in connection with the Indebtedness (collectively the "Loan Documents").

SECTION 3. LATE PAYMENT CHARGES. Beneficiary may charge a late charge on any scheduled payment which Beneficiary fails to receive within five (5) days after the due date, or by the next business day, if the five (5) day period ends on a Saturday, Sunday, or legal holiday. The amount of the late charge shall be as specified in the Note or Loan Agreement or, if the Note or Loan Agreement specifies no late charge, then five percent (5%) of the amount of the payment of principal and interest not paid when due. Such late charge shall in no event exceed the maximum charge, if any, specified under applicable law. Collection of a late charge shall not constitute a waiver of or prejudice the Beneficiary's right to pursue any other right or remedy available on account of the delinquency, including, without limitation, charging the default rate of interest under the Note.

SECTION 4. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, or unless specified to the contrary in the other Loan Documents, each complete installment payment received by Beneficiary under the Note or this Trust Deed or other Loan Documents shall be applied by Beneficiary first to payment of reserves, if any, due under Sections 5 and 6 of this Trust Deed, next to interest due and payable on the Indebtedness, then to principal due and payable on the Indebtedness and then to any other charges due and payable pursuant to the terms of the Note, this Trust Deed, and any other Loan Documents. Upon a breach of any covenant or agreement of Borrower in the Note, this Trust Deed or other Loan Document, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any payments received by Beneficiary under the Note, this Trust Deed or under the other Loan Documents. Beneficiary, at Beneficiary's option, may reject any partial payment. Any partial payment which Beneficiary accepts may be held in a non-interest bearing account until Beneficiary receives funds sufficient to equal a complete installment

PAGE 2 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT __3__
PAGE __20__ OF __36__

payment, or, may be applied to the Indebtedness in any amount and in any order as Beneficiary may determine in Beneficiary's sole discretion.

## SECTION 5. TAXES AND LIENS; RESERVES.

5.1    **Payment.** Borrower shall pay when due all taxes and assessments levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Borrower shall maintain the Property free of any liens having priority over or equal to the interest of Beneficiary under this Trust Deed, except for the lien of taxes and assessments not due. Without Beneficiary's prior written consent, Borrower shall not allow any lien inferior to this Trust Deed to be perfected against the Property.

5.2    **Evidence of Payment.** On Beneficiary's demand, Borrower promptly shall furnish evidence acceptable to Beneficiary of payment of taxes and assessments and shall authorize the appropriate county official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property.

5.3    **Reserves.** Upon any Event of Default or any event which with the passage of time or notice would become an event of default under this Trust Deed or any other Loan Documents, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of taxes and assessments. The reserves shall be created by monthly payments of a sum estimated by Beneficiary to be sufficient to produce, at least thirty (30) days before the taxes and assessments are due, amounts at least equal to the taxes and assessments to be paid. If Beneficiary determines that the reserve funds are insufficient at any time, Borrower shall promptly pay any deficiency to Beneficiary on its demand. The reserve funds shall be held by Beneficiary in a deposit account, and the funds may be commingled with other funds held by Beneficiary. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the funds, Beneficiary shall not be required to pay Borrower any interest on the funds. Beneficiary shall apply the reserve funds to pay the taxes and assessments so long as Borrower is not in breach of any covenant or agreement of Borrower in this Trust Deed, but only to the extent that funds are available to do so. Beneficiary does not hold the funds in trust for Borrower and is not the agent of Borrower for payment of taxes and assessments required to be paid by Borrower. Upon any Event of Default under this Trust Deed or any other Loan Documents, Beneficiary may apply, in any amount and in any order as Beneficiary shall determine in Beneficiary's sole discretion, any reserve funds held by Beneficiary (i) to pay taxes and assessments which are due or (ii) as a credit against the Indebtedness.

## SECTION 6. HAZARD INSURANCE; RESERVES.

6.1    **Policies.** Borrower shall keep any improvements now existing or in the future erected on the Property insured by carriers who are at all times satisfactory to Beneficiary against loss by fire, all hazards included within the term "extended coverage," flood, casualties, liabilities and contingencies as Beneficiary shall require from time to time or at any time during the term of this Trust Deed and in such amounts, on a one hundred percent (100%) replacement cost basis without coinsurance clause, and for such periods as Beneficiary shall require. All insurance policies and renewals thereof shall be in a form and substance acceptable to Beneficiary and shall include a loss payable endorsement in favor of and in form and substance acceptable to Beneficiary and a provision that coverage will not be canceled, altered or diminished without a minimum of ten (10) days' prior written notice to Beneficiary. Beneficiary shall have the right to hold the policies, and Borrower promptly shall furnish to Beneficiary all renewal notices, waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower

PAGE 3 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE    21    OF    36

Case 09-32439-rld7   Doc 100   Filed 04/27/10



shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s) borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Such advances shall be secured by the Property.

6.1.1   Without waiving any default under, or limiting the generality of any other provisions of this Trust Deed or other Loan Documents, Beneficiary may (but shall not be required to) obtain such insurance coverage as it deems necessary or desirable, covering the Property, without prior notice to Borrower upon any failure by Borrower to maintain at all times insurance coverage acceptable to Beneficiary as required by the terms of the Loan Documents. All sums paid or agreed to be paid by Beneficiary for any such insurance coverage shall be for the account of Borrower and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. Borrower shall reimburse Beneficiary, upon demand, for any sums paid by Beneficiary, together with interest at the default rate provided in the Note or other Loan Documents, or if no default rate is specified in the Note or other Loan Documents, then at the interest rate(s) borne by the Indebtedness from the date of payment by Beneficiary until date of reimbursement. Beneficiary may also charge a fee not to exceed $100.00 per month to monitor the insurance placed on the property.  Such advances shall be secured by the Property.

6.2   **Payment; Reserves.** All premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the carrier, or in such other manner as Beneficiary may designate in writing. Prior to the expiration date of any policy, Borrower shall deliver to Beneficiary a renewal policy in form and substance satisfactory to Beneficiary and receipts for paid premiums. At Beneficiary's option, Beneficiary may require Borrower to maintain with Beneficiary reserves for payment of insurance premiums. The reserves shall be created and held in the same manner as provided in Subsection 5.3 for reserves for payment of taxes and assessments.

6.3   **Loss.** In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to the Beneficiary. Beneficiary may give written notice to the insurance carrier if Borrower fails to do so within twenty (20) days of the casualty. Borrower hereby authorizes and empowers Beneficiary as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Beneficiary's expenses incurred in the collection of such proceeds; provided, however, that nothing contained in this Section 6 shall require Beneficiary to incur any expense or take any action hereunder.

6.4   **Application of Proceeds.** Borrower authorizes Beneficiary, at Beneficiary's option, (a) to apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due, or (b) after deducting Beneficiary's costs and expenses described above, to hold the balance of such proceeds to be disbursed to Borrower for the cost of reconstruction or repair of the Property. If the insurance proceeds are held by Beneficiary to disburse to Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Beneficiary may approve in writing. Beneficiary may require that Borrower deposit with Beneficiary any amount in excess of the insurance proceeds necessary to complete restoration, which amounts shall be disbursed prior to disbursement of any insurance proceeds. Unless Beneficiary and Borrower agree in writing otherwise or applicable law requires that Beneficiary pay Borrower interest on the proceeds, Beneficiary shall not be required to pay Borrower any interest on the proceeds or any other sum which Beneficiary may require Borrower to deposit with Beneficiary pursuant to this Section. If the insurance proceeds are applied to the payment of the sums secured by this Trust Deed, any such application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due dates of any payments required under Section 2 or change the amounts of any such payments. If the Property is sold to Beneficiary pursuant to Section 17 of this Trust Deed or if Beneficiary otherwise acquires title to the Property, then in addition to the lien and security interests otherwise granted to Beneficiary under this Trust Deed,

PAGE 4 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT   3
PAGE 22 OF 36

Case 09-32439-rld7   Doc 100   Filed 04/27/10



Beneficiary shall have all of the right, title and interest in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

SECTION 7.  PRESERVATION AND MAINTENANCE OF PROPERTY: ENVIRONMENTAL LAWS: INDEMNIFICATION.

7.1    **Preservation and Maintenance.**

(a)    Shall not commit waste or permit impairment or deterioration of the Property;

(b)    Shall not abandon the Property;

(c)    Unless Beneficiary directs Borrower in writing to the contrary, shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing, in the event of any damage, injury or loss to the Property, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair;

(d)    Shall keep the Property in good condition and repair;

(e)    Shall operate and maintain the Property in compliance with all applicable laws and regulations; and

(f)    Shall give notice in writing to Beneficiary of and, unless otherwise directed in writing by Beneficiary, appear in and defend any action or proceeding purporting to affect the Property (including, without limitation, matters pertaining to land use, zoning and Environmental Laws, Hazardous Substances and Disabilities Laws, as defined below), the security of this Trust Deed or the rights or powers of Beneficiary. "Disabilities Laws" shall mean all applicable federal, state and local laws and regulations related to usability of and accessibility to the property by people with disabilities. The term "Disabilities Laws" includes, but is not limited to, the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990, all amendments thereto, and all regulations adopted thereunder. Neither Borrower nor any tenant nor other person, without the written approval of Beneficiary, shall remove, demolish or alter any improvement now existing or in the future erected on the Property or any fixtures, equipment, machinery or appliance in or on the Property and in which Beneficiary has any interest by virtue of this Trust Deed, any security agreement, or any other Loan Document, except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind, which shall thereupon become subject to the lien of this Trust Deed.

7.2    Environmental Laws. In this Trust Deed, "Environmental Laws" means any and all state, federal and local statutes, regulations, and ordinances relating to the protection of human health or the environment. "Hazardous Substances" is used in its very broadest sense and refers to materials that, because of their quantity, concentration of physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. "Hazardous Substances" shall include, without limitation, petroleum products or crude oil or any fraction thereof and any and all hazardous or toxic substances, materials or waste as defined by or listed under the Resource Conservation and Recovery Act, the Toxic Substances Control Act, the Comprehensive Environmental Response, Compensation and Liability Act, or any other of the Environmental Laws. Borrower shall cause the Property and all operations on the Property to comply with all Environmental Laws and orders of any governmental authorities having jurisdiction under any Environmental Laws. Borrower shall exercise extreme care in handling Hazardous Substances and shall undertake any and all preventive, investigatory or remedial action (including, without limitation, emergency response, removal, containment and other remedial action) (a) required by any applicable Environmental Laws or orders by any governmental authority

PAGE 5 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE  23  OF  36

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 45 of 133



having jurisdiction under Environmental Laws, or (b) necessary to prevent or minimize property damage (including, without limitation, damage to Borrower's own property), personal injury or damage to the environment, or the threat of any such damage or injury, by releases of or exposure to Hazardous Substances in connection with the Property or operations on the Property. In the event Borrower fails to perform any of its obligations under this Section, Beneficiary may perform (but shall not be required to perform) such obligations at Borrower's expense pursuant to Section 9 of this Trust Deed. In performing any such obligations of Borrower, Beneficiary shall at all times be deemed to the agent of Borrower and shall not by reason of such performance be deemed to be assuming any responsibility of Borrower under any Environmental Laws or to any third party.

7.3   **Further Assurances.** At any time Beneficiary requests, Borrower shall provide to Beneficiary further assurance of Borrower's compliance with this Section 7. The assurances shall be in form and substance satisfactory to Beneficiary in Beneficiary's sole discretion, and may include, but not be limited to, Borrower providing to Beneficiary an environmental audit from a source acceptable to Beneficiary at Borrower's expense.

7.4   **Indemnification.** Borrower agrees to indemnify and hold harmless Beneficiary and its officers, directors, employees and agents, and Beneficiary's successors and assigns and their officers, directors, employees and agents against any and all claims, demands, losses, liabilities, costs and expenses (including, without limitation, attorney fees at trial and on any appeal or petition for review) incurred by such person (a) arising out of or relating to any investigatory or remedial action involving the Property and the operations conducted on the Property and required by Environmental Laws or Disabilities Laws or by orders of any governmental authority having jurisdiction under any Environmental Laws or Disabilities Laws, or (b) on account of injury to any person whatsoever or damage to any property arising out of, in connection with or in any way relating to (i) the violation of any applicable laws or regulations, including without limitation Environmental Laws or Disabilities Laws, (ii) the use, treatment, storage, generation, manufacture, transport, release, spill, disposal or other handling of Hazardous Substances on the Property or in connection with operations, or (iii) the contamination of any of the Property by Hazardous Substances by any means whatsoever, and (c) without in any way limiting the foregoing, for any other reason, or on account of, or in connection with the Property or this Trust Deed.

7.5   **Survival.** The covenants contained in this Section 7 shall survive the repayment of the Indebtedness and the delivery of a deed in lieu of foreclosure to Beneficiary or any successor of Beneficiary and shall survive any foreclosure, whether judicial or nonjudicial, of the Property by Beneficiary or any successor of Beneficiary, and shall be for the benefit of Beneficiary, and any successor to Beneficiary, as holder of any security interest in the Property or the Indebtedness, or as owner of the Property or any other property of Borrower following foreclosure or the delivery of a deed in lieu of foreclosure.

SECTION 8. USE OF PROPERTY. Unless required by applicable law or unless Beneficiary has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Trust Deed was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification or comprehensive plan governing the Property without Beneficiary's prior written consent. Borrower warrants that this Trust Deed is and will at all times constitute a commercial deed of trust and not a residential deed of trust, as defined under applicable law. Borrower warrants the Indebtedness has been incurred solely for business purposes.

SECTION 9. PROTECTION OF BENEFICIARY'S SECURITY. If Borrower fails to perform the covenants and agreements contained in this Trust Deed, or if any action or proceeding is commenced which affects the Property or title to the Property or the interest of Beneficiary in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, violation of any law concerning environmental protection and pollution control referred to in Section 7 above, or arrangements or proceedings involving a bankrupt or decedent, then Beneficiary at Beneficiary's option may make such appearances, disburse such sums and take such action as Beneficiary deems necessary or advisable, in its sole discretion, to protect Beneficiary's interest, including,

PAGE 6 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE _24_ OF _36_

Case 09-32439-rld7    Doc 100    Filed 04/27/10

but not limited to, (a) employment of attorneys or other advisors, (b) entry upon the Property to investigate and make repairs, (c) procurement of satisfactory insurance, and (d) payment of any tax or liens. Any amounts disbursed by Beneficiary pursuant to this Section 9, with interest thereon, shall become additional Indebtedness of Borrower secured by this Trust Deed. Unless Borrower and Beneficiary agree in writing to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the default rate stated in the Note or the Loan Documents, or if no default rate is stated in the Note or Loan Documents, then at the interest rate(s) stated in the Note. Borrower hereby covenants and agrees that Beneficiary shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness secured by this Trust Deed. Nothing contained in this Section 9 shall require Beneficiary to incur any expense or take any action.

SECTION 10.    UCC SECURITY AGREEMENT; LEASES OF THE PROPERTY; ASSIGNMENT OF RENTS; INSPECTIONS.

10.1    This Trust Deed is intended to be a security agreement pursuant to the Uniform Commercial Code of Oregon for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code of Oregon, and Borrower hereby grants Beneficiary a security interest in said items. Borrower agrees that Beneficiary may file this Trust Deed, or a reproduction of it, in the real estate records, office of the Oregon Secretary of State, or other appropriate filing index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Trust Deed or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Beneficiary, upon Beneficiary's request, any financing statements, as well as extensions, renewals and amendments of them, and reproductions of this Trust Deed in such form as Beneficiary may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases of them, and shall pay all costs and expenses of any record searches for financing statements Beneficiary may require. Borrower shall notify Beneficiary in writing prior to changing Borrower's name or moving Borrower's chief executive office or any of the Property secured by this Trust Deed. Without the prior written consent of Beneficiary, Borrower shall not create or suffer to be created any other security interest in those items, including, without limitation, replacements, substitutions and additions to them. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Trust Deed, including, but not limited to, the covenants to pay when due all sums secured by this Trust Deed, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code of Oregon and, at Beneficiary's option, may also invoke the remedies provided in this Trust Deed as to such items. In exercising any of said remedies, Beneficiary may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, whether by nonjudicial sale or otherwise, without in any way affecting the availability of Beneficiary's remedies under the Uniform Commercial Code of Oregon or of the other remedies provided in this Trust Deed. This Trust Deed shall constitute a security agreement and "fixture filing" under the Uniform Commercial Code-Secured Transactions statutes of the State of Oregon. The mailing address of the Borrower and the address of the Beneficiary from which information may be obtained are set forth in the introductory paragraph of this Trust Deed.

10.2    Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower shall furnish Beneficiary with executed copies of all leases now existing or in the future made of all or any part of the Property, and all leases now or in the future entered into will be in form and substance subject to the prior written approval of Beneficiary. All leases of the Property shall specifically provide that such leases are subordinate to this Trust Deed; that the tenant attorns to Beneficiary, such attornment to be effective upon Beneficiary's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Beneficiary may from time to time request; that the attornment of tenant shall not be terminated by foreclosure; that the tenant agrees to execute such estoppel certificates in form and substance satisfactory to Beneficiary; and

PAGE 7 - COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT   3
PAGE 25 OF 36

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 47 of 133

that Beneficiary, at Beneficiary's option, may accept or reject such attornments. Without Beneficiary's written consent, Borrower shall not request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Trust Deed. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of setoff against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a setoff against rent, (ii) notify Beneficiary thereof and of the amount of said setoffs, and (iii) within ten (10) days after such accrual, reimburse the tenant who shall have acquired such right to setoff or take such other steps as shall effectively discharge such setoff and as shall assure that rents thereafter due shall continue to be payable without setoff or deduction.

10.3    As Additional security under this Trust Deed, Borrower hereby assigns to Beneficiary the leases, rents or agreements concerning the Property now existing or in the future arising, provided that unless there is an event of default under the Loan Documents, Borrower shall have the right to collect and retain such rents as they become due and payable. Upon Beneficiary's request, Borrower shall execute any additional documents requested by Beneficiary to assign to Beneficiary any leases and all security and other deposits concerning the Property. This assignment is not a delegation or assignment to Beneficiary of Borrower's duties or obligations under or in connection with the Property. Beneficiary's acceptance of this assignment does not constitute a promise by it nor does it in any way obligate it to perform any of Borrower's duties or obligations under or in connection with the leases, rents or agreements. Borrower hereby agrees to indemnify Beneficiary against and hold it harmless from any and all liability, loss or damage which it may or might incur under the leases, rents or agreements or under or by reason of this assignment and of and from any and all claims and demands whatsoever which may be asserted against it by any reason of any alleged obligation or undertaking on Beneficiary's or Borrower's part to perform or discharge any of the terms of the leases, rents or agreements.

10.4    Beneficiary may make or cause to be made reasonable entries upon the Property to inspect the Property.

SECTION 11.        CONDEMNATION.

11.1    Borrower shall promptly notify Beneficiary of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Beneficiary in writing. Borrower authorizes Beneficiary, at Beneficiary's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Beneficiary's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with any such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part of the Property, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Beneficiary.

11.2    Borrower authorizes Beneficiary to apply such awards, payments, proceeds or damages, after the deduction of Beneficiary's expenses incurred in the collection of such amounts, at Beneficiary's option, to restoration or repair of the Property or to payment of the Indebtedness, whether or not then due, with the balance, if any, to Borrower. Unless Borrower and Beneficiary otherwise agree in writing, any application of proceeds to principal shall be applied to the most remote unpaid installment of principal and shall not extend or postpone the due date of any payments required under this Trust Deed or change the amount of any such payments. Borrower shall execute such further evidence or assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Beneficiary may require.

SECTION 12.        BORROWER AND LIEN NOT RELEASED.

12.1    From time to time, at Beneficiary's option, upon notice to Borrower but without any need to give notice to or obtain the consent of Borrower's successors or

PAGE 8 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE 26 OF 36

Case 09-32439-rld7   Doc 100   Filed 04/27/10



assigns or of any junior lienholder or guarantor and without any liability on Beneficiary's part and notwithstanding Borrower's breach of any covenant or agreement in this Trust Deed or the other Loan Documents, Beneficiary may do any or all of the following:

(a) Extend the time for payment of the Indebtedness or any part of it;
(b) Reduce the payments on the Indebtedness;
(c) Release anyone liable on any part of the Indebtedness;
(d) Accept renewal note or notes for the Indebtedness;
(e) Release from the lien of this Trust Deed any part of the Property;
(f) Release other or additional security;
(g) Reconvey any part of the Property;
(h) Consent to any map or plat of the Property;
(i) Consent to any easement; and
(j) Execute any subordination agreement.

12.2   Any action taken by Beneficiary pursuant to the terms of this Section or any modification of the rate of interest upward or downward, or modification of the period of amortization of the Note or change in the amount of the monthly installments payable under the Note or other Loan Documents, or any combination thereof, which may extend or reduce the term of the Note or this Trust Deed or both, shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Trust Deed or observe the covenants of Borrower contained in this Trust Deed, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the Indebtedness secured by this Trust Deed, and shall not affect the lien or priority of lien of this Trust Deed on the Property. Unless otherwise provided by law, the priority of this Trust Deed shall not be affected by any change in terms whether or not it adversely affects subordinate or prior interest holders.

SECTION 13.     FORBEARANCE BY BENEFICIARY OR RECEIPT OF AWARDS NOT A WAIVER. Any forbearance by Beneficiary in exercising any right or remedy under this Trust Deed, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy. The acceptance by Beneficiary of payment of any sum secured by this Trust Deed after the due date of such payment shall not be a waiver of Beneficiary's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment, nor shall Beneficiary's receipt of any awards, proceeds or damages under this Trust Deed operate to cure or waive any default in payment of sums secured by this Trust Deed.

SECTION 14.     PROHIBITION OF TRANSFER OF PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.

14.1    Without prior written consent of Beneficiary, Borrower shall not transfer or agree to transfer all or any part of the Property or any interest in the Property. For the purpose of this section, the occurrence of any of the following events, without limitation, or any agreement to do any of the following, without limitation, shall be deemed to be a transfer of the Property: any sale, contract to sell, conveyance, assignment or other transfer of, other lien, or other security interest in, all or any part of the legal or equitable title to the Property.

14.2    If any of the events described in Subsection 14.1 occurs, Beneficiary, at Beneficiary's option, may declare all of the sums secured by this Trust Deed to be immediately due and payable, and may invoke any of the remedies permitted by this Trust Deed. If Borrower or a prospective transferee applies to Beneficiary for consent to transfer, Beneficiary may require such information as may be reasonably necessary for Beneficiary to assess the prospective transferee's reputation and financial ability to perform Borrower's obligations under this Trust Deed. As a condition of its consent to any transfer, Beneficiary in its discretion may impose an assumption fee, and may increase the interest rate on the Note or under the other Loan Documents. However, notwithstanding any of the foregoing, Beneficiary, in its sole discretion, may withhold its consent to any transfer for any reason whether or not withholding consent is reasonable under the circumstances. Any consent, if granted, shall not release Borrower or any

PAGE 9 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT   3
PAGE 27 OF 36

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 49 of 133



successor in interest from personal liability for payment and performance of the Indebtedness, or for performance of this Trust Deed, the Note or other Loan Documents.

**SECTION 15.    LOAN AGREEMENT PROVISIONS.** Borrower shall comply with the covenants and conditions of the Loan Agreement, if any, and all other Loan Documents executed in connection with the Indebtedness secured by this Trust Deed. If the terms of this Trust Deed are inconsistent with the terms of the Loan Agreement, if any, the terms of the Loan Agreement will control.

**SECTION 16.    DEFAULT.**

16.1    Events of Default. The following shall constitute "Events of Default":

(a)    Failure of Borrower to pay any portion of the Indebtedness when it is due.

(b)    Failure of Borrower within the time required by this Trust Deed to make any payment for taxes, insurance or any other payment necessary to prevent filing of or discharge of any lien.

(c)    Transfer or agreement to transfer any part or interest in the Property in any manner whatsoever, including, but not limited to, allowing any lien inferior to this Trust Deed on the Property without properly notifying Beneficiary, or transfer of any other interest of Borrower as described in Section 14.

(d)    Insolvency or business failure of Borrower; the commencement by Borrower of a voluntary case under the federal bankruptcy laws or under any other federal or state law relating to insolvency or debtor's relief; the filing of an involuntary petition against Borrower under the federal bankruptcy laws or under any other applicable federal or state law relating to insolvency or debtor's relief which Borrower has not caused to be dismissed within thirty (30) days after such filing; the appointment or the consent by Borrower to the appointment of a receiver, trustee, or custodian of Borrower or of any of Borrower's property which Borrower has not caused to be withdrawn within thirty (30) days after such appointment; an assignment for the benefit of creditors by Borrower; the making or suffering by Borrower of a fraudulent transfer under applicable federal or state law; concealment by Borrower of any of its property in fraud of creditors; or the imposition of a lien through legal proceedings or distraint upon any of the property of Borrower or Borrower's failure generally to pay its debts as such debts become due.

(e)    Failure of Borrower to make any payment or perform any obligation under any superior liens or encumbrances, within the time required under those liens or encumbrances, and without regard to any grace periods as may be afforded by the terms of such liens or encumbrances, or commencement of any suit or other action to foreclose any superior or inferior liens or encumbrances.

(f)    Breach or default under the Loan Agreement or any other Loan Documents, which is not cured within any applicable cure period.

(g)    Failure of Borrower to timely perform any other obligations under this Trust Deed.

16.2    The Events of Default in this Section shall apply and refer to Borrower, any guarantor of the Indebtedness, and to each of the individuals or entities which are collectively referred to as "Borrower."

**SECTION 17.    RIGHTS AND REMEDIES ON DEFAULT.**

17.1    Remedies. Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Beneficiary may exercise any one or more of the following rights and remedies:

PAGE 10 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE 28 OF 36

Case 09-32439-rld7   Doc 100   Filed 04/27/10



(a)   Beneficiary may declare all sums secured by this Trust Deed immediately due and payable, including, without limitation, any prepayment premium which Borrower would be required to pay under the terms of the Note or Loan Agreement.

(b)   The Trustee shall have the right to foreclose by notice and sale, or Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with applicable law.

(c)   If this Trust Deed is foreclosed by judicial procedure, and if permitted by applicable law, Beneficiary shall be entitled to a judgment which will provide that if the foreclosure sale proceeds are insufficient to satisfy the judgment, execution may issue for the amount of the unpaid balance of the judgment.

(d)   Beneficiary shall have the right to take possession of the Property and, with or without taking possession of the Property, collect all the rents and revenues of the Property in accordance with this Trust Deed.

(e)   Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect all the rents and revenues from the Property and apply the proceeds, over and above cost of the receivership, against the sums due under this Trust Deed. The receiver may serve without bond if permitted by applicable law. Beneficiary's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the sums due under this Trust Deed by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

(f)   In the event Borrower remains in possession of the Property after the Property is sold as provided above or Beneficiary otherwise becomes entitled to possession of the Property upon the occurrence of an Event of Default, Borrower shall become a tenant at will of Beneficiary or the purchaser of the Property and shall pay a reasonable rental for use of the Property while in Borrower's possession.

(g)   Trustee and Beneficiary shall have any other right or remedy provided in this Trust Deed, the Note, the Loan Agreement, or any other Loan Document, or available at law, in equity or otherwise, and specifically, but not limited to, any and all rights and remedies granted by ORS 86.705, et seq.

17.2   Rights of Receiver or Beneficiary-in-Possession.   Upon taking possession of all or any part of the Property, the receiver or Beneficiary may:

(a)   Use, operate, manage, control and conduct business on the Property and make expenditures for all maintenance and improvements as in its judgment are proper;

(b)   Collect the income from the Property, including any past due, and apply such sums to the expense of use, operation and management, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorney fees and to the sums secured by this Trust Deed in any order as Beneficiary shall determine in Beneficiary's sole discretion;

(c)   At Beneficiary's option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors and make any changes in plans or specifications as Beneficiary deems appropriate; and

(d)   Beneficiary or the receiver shall be liable to account only for those rents actually received. If the revenues produced by the Property are insufficient to pay expenses, the receiver may borrower from Beneficiary (if Beneficiary, in its sole discretion, agrees to lend) or otherwise, or Beneficiary may borrow or advance, such sums as the receiver or Beneficiary may deem necessary for purposes stated in this

PAGE 11 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT 3
PAGE 29 OF 36

Case 09-32439-rld7    Doc 100    Filed 04/27/10



Subsection. The amounts borrowed or advanced shall bear interest from the date of expenditure until repaid at the same interest rate as provided in Section 9 of this Trust Deed. Such sums shall become a part of the Indebtedness secured by this Trust Deed and shall be payable by Borrower on demand.

17.3    Waiver of Marshaling; Sale of the Property. Notwithstanding the existence of any other mortgage, deed of trust, other lien or other security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property, real or personal or mixed, shall be subjected to the remedies provided in this Trust Deed. Beneficiary shall have the right to determine the order in which any or all portions of the Indebtedness secured by this Trust Deed are satisfied from the proceeds realized upon the exercise of the remedies provided in this Trust Deed. In exercising its rights and remedies, Beneficiary, at Beneficiary's sole discretion, may cause all or any part of the Property to be sold as a whole or in parcels, and certain portions of the Property may be sold without selling other portions. Beneficiary may bid at any public sale on all or any portion of the Property. Borrower, any party who consents to this Trust Deed and any party who now or in the future acquires a security interest in the Property and who has actual or constructive notice of this Trust Deed hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided in this Trust Deed.

17.4    Notice of Sale. Beneficiary shall give Borrower reasonable notice of the time and place of any public sale of any personal property or of the time after which any private sale or other intended disposition of the personal property is to be made. Reasonable notice shall mean notice given in accordance with applicable law, and may include, without limitation, any notice required for the nonjudicial sale of the real property.

17.5    Waiver; Election of Remedies; Remedies Cumulative. A waiver by either party of a breach of a provision of this Trust Deed or the occurrence of an Event of Default shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. Election by Beneficiary to pursue any remedy shall not exclude pursuit of any other remedy, and all remedies of Beneficiary under this Trust Deed are distinct and cumulative and not exclusive to all other rights or remedies under this Trust Deed or Loan Documents or afforded by law or equity, and may be exercised concurrently, independently, or successively in any order whatsoever. An election to make expenditures or take action to perform an obligation of Borrower shall not affect Beneficiary's right to declare a default and exercise its remedies under this Trust Deed.

SECTION 18.    SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.

The covenants and agreement contained in this Trust Deed shall bind, and the rights under this Trust Deed shall inure to, the respective successors and assigns of Beneficiary and Borrower. However, nothing in this Trust Deed or other Loan Documents shall be deemed to permit Borrower to enter into any assignments or transfers except as specifically permitted pursuant to the preceding provisions of this Trust Deed. This Trust Deed and the Indebtedness secured hereby may be assigned in whole or in part or participated in whole or in part to any person by Beneficiary and without notice to or affecting Borrower's liability hereunder, and Beneficiary, in connection with such assignment, participation, or similar arrangement, may make all credit and financial data furnished and to be furnished by Borrower available to such existing or prospective assignee, participant or person. If Beneficiary assigns to any assignees, participants or other persons all of Beneficiary's interest in this Trust Deed and the Indebtedness secured hereby, then Beneficiary shall be and is released from any obligations under this Trust Deed and other Loan Documents. All covenants and agreements of Borrower shall be joint and several. In exercising any rights under this Trust Deed or taking any actions provided for in this Trust Deed, Beneficiary may act through its employees, agents or independent contractors as authorized by Beneficiary. The captions and headings of the

PAGE 12 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT    3
PAGE    30 OF 36

Case 09-32439-rld7   Doc 100   Filed 04/27/10



sections and subsections of this Trust Deed are for convenience only and are not to be
used to interpret or define the provisions of this Trust Deed.

SECTION 19.     NOTICE.

All notices, requests, demands and other communications given or required to be
given hereunder shall be in writing and personally delivered or sent by United States
registered or certified mail, return receipt requested, postage prepaid or sent by a
nationally recognized courier service such as Federal Express, duly addressed to the
Parties as follows:

| To the Borrower : | The Lauren Paulson Trust Agreement, dated October 18, 2004 Lauren Paulson, Successor Trustee 3980 SW 170th Avenue Aloha, OR 97007 |
|---|---|
| To the Lender : | Fairway Commercial Mortgage Corporation an Oregon corporation 6650 SW Redwood Lane, Suite 290 Portland, OR 97224 |

Any notice or other communication hereunder shall be deemed given on the date
of actual delivery thereof to the address of the addressee, if personally delivered, and on
the date indicated in the return receipt or courier's records as the date of delivery or as the
date of first attempted delivery to the address of the addressee, if sent by mail or courier
service (such as Federal Express). Notice may also be given by telecopier or facsimile to
any party having a telecopier or facsimile machine compatible with the telecopier or
facsimile machine of the party sending the notice. Any notice given by telecopier or
facsimile shall be deemed delivered when received by the telecopier or facsimile machine
of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day
received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than
a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be
deemed delivered on the next following business day. The transmittal confirmation
receipt produced by the telecopier or facsimile machine of the sending party shall be
prima facie evidence of such receipt. Any party may change its address or telecopier or
facsimile number for purposes of this Subsection by giving notice to the other party. If a
"copy party" is designated, service of notice shall not be deemed given to the designated
party unless and until the "copy party" is also given such notice in accordance with this
Subsection.

SECTION 20.     WAIVER OF STATUTE OF LIMITATIONS. Borrower hereby
waives the right to assert any statute of limitations as a bar to the enforcement of the lien
of this Trust Deed or to any action brought to enforce the Note, the other Loan
Documents or any other obligation secured by this Trust Deed.

SECTION 21.     RECONVEYANCE. Upon payment of the Indebtedness secured
by this Trust Deed, Beneficiary shall request Trustee to reconvey the Property and shall
surrender this Trust Deed and all notes evidencing Indebtedness secured by this Trust
Deed to Trustee. Trustee shall reconvey the Property without warranty to the person or
persons legally entitled to the Property. Such person or persons shall pay the Trustee's fee
and other costs incurred in so reconveying the Property.

SECTION 22.     SUBSTITUTE TRUSTEE. In accordance with applicable law,
Beneficiary may from time to time appoint a successor trustee to any Trustee appointed
under this Trust Deed. Without conveyance of the Property, the successor trustee shall
succeed to all the title, power and duties conferred upon the Trustee in this Trust Deed
and by applicable law.

SECTION 23.     ATTORNEY FEES. In the event suit or action is instituted to
enforce or interpret any of the terms of this Trust Deed, including, but not limited to, any
action or participation by Borrower as a debtor in, or in connection with, a case or

PAGE 13 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT ___3___
PAGE _31_ OF _36_



proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees, witness fees (expert and otherwise), deposition costs, copying charges and other expenses. Whether or not any court action is involved, all reasonable expenses, including, but not limited to, the costs of searching records, obtaining title reports or appraisals, surveyor reports, title insurance, trustee fees, and attorney fees, incurred by Beneficiary that are necessary or advisable at any time in Beneficiary's opinion for the protection of its interest or enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until paid at the default interest rate provided in the Note or other Loan Documents or if the Note or other Loan Documents contain no default rate, then at the interest rate(s) provided for in the Note.

SECTION 24.     GOVERNING LAW; SEVERABILITY. This Trust Deed shall be governed by the laws of the State of Oregon. In the event that any provision or clause of this Trust Deed, or the Note, or Loan Agreement or other Loan Documents conflicts with applicable law, such conflict shall not affect other provisions of this Trust Deed, the Note, the Loan Agreement or other Loan Documents which can be given effect without the conflicting provision, and to this end, the provisions of this Trust Deed, the Note, the Loan Agreement and other Loan Documents are declared to be severable.

SECTION 25.     CONSENTS OF BENEFICIARY. In all events where the consent of Beneficiary is required under the terms of this Agreement, Beneficiary may grant or refuse such consent within a reasonable period of time following the receipt of such request. Any such consent may be granted or refused by Beneficiary in Beneficiary's sole and absolute discretion, without regard to any standard of good faith, fairness, or reasonableness.

SECTION 26.     TIME OF ESSENCE. Time is of the essence in the payment and performance of the obligations under and secured by this Trust Deed and the other Loan Documents.

SECTION 27.     CHANGES IN WRITING. Any term of this Trust Deed and any addendum to the Trust Deed may only be changed, waived, discharged or terminated by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. Any agreement subsequently made by Borrower or Beneficiary relating to this Trust Deed shall be superior to the rights of the holder of any intervening lien or encumbrance.

SECTION 28.     ESTOPPEL CERTIFICATES. Borrower, within five days of the request, shall furnish Trustee and Beneficiary a written statement, duly acknowledged, of the amount of the Indebtedness secured by this Trust Deed and whether any offsets or defenses exist against such Indebtedness. If Borrower shall fail to furnish such a statement within the time allowed, Beneficiary shall be authorized, as Borrower's attorney-in-fact, to execute and deliver such statement.

SECTION 29.     ACCESS LAWS.

    29.1   Borrower agrees that Borrower and the Property shall at all times strictly comply with the requirements of the Americans with Disabilities Act of 1990; the Fair Housing Amendments Action of 1988; and other federal, state, or local laws or ordinances related to disabled access; or any statute, rule, regulation, ordinance, order of governmental bodies and regulatory agencies, or order or decree of any court adopted or enacted with respect thereto , as now existing or hereafter amended or adopted (collectively, the "Access Laws"). At any time, Lender may require a certificate of compliance with the Access Laws and indemnification agreement in a form reasonably acceptable to Lender. Lender may also require a certificate of compliance with the Access Laws from an architect, engineer, or other third party acceptable to Lender.

    29.2   Notwithstanding any provisions set forth herein or in any other document, Borrower shall not alter or permit any tenant or other person to alter the Property in any manner which would increase Borrower's responsibilities for compliance with the Access

PAGE 14 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT   3
PAGE 32 OF 36

Laws without the prior written approval of Lender. In connection with such approval, Lender may require a certificate of compliance with the Access Laws from an architect, engineer, or other person acceptable to Lender.

29.3    Borrower agrees to give prompt written notice to Lender of the receipt by Borrower of any claims of violation of any of the Access Laws and of the commencement of any proceedings or investigations which relate to compliance with any of the Access Laws.

29.4    Borrower shall indemnify, defend, and hold harmless Lender from and against any and all claims, demands, damages, costs, expenses, losses, liabilities, penalties, fines, and other proceedings including without limitation reasonable attorneys fees and expenses arising directly or indirectly from or out of on in any way connected with any failure of the Property to comply with any of the Access Laws. The obligations and liabilities of Borrower under this Section shall survive any termination, satisfaction, assignment, judicial or nonjudicial foreclosure proceeding, or delivery of a deed in lieu of foreclosure.

> THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930.

> REQUEST FOR NOTICE OF DEFAULT AND NOTICE OF SALE PURSUANT TO ORS 86.785

Beneficiary hereby requests that Beneficiary be provided with copies of any Notice of Default or Notice of Sale concerning the Property.

### WARNING

> UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

> YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

> THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR

PAGE 15 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT __3____
PAGE _33_ OF _36_

Case 09-32439-rld7    Doc 100    Filed 04/27/10

PROPERTY DAMAGE COVERAGE OR ANY MANDATORY
LIABILITY INSURANCE REQUIREMENTS IMPOSED BY
APPLICABLE LAW.

IN WITNESS WHEREOF, Borrower has executed this Trust Deed the day and year first
written above.

The Lauren Paulson Trust Agreement, dated October 18, 2004

By: _Lauren Paulson_____
Lauren Paulson, Successor Trustee

STATE OF HAWAII          )
                         ) ss.
County of _Kauai_        )

This instrument was acknowledged before me on November 28, 2005 by Lauren
Paulson, as Successor Trustee of The Lauren Paulson Trust Agreement, dated October
18, 2004.

_____
Notary Public - State of Hawaii
My Commission Expires: 02/18/2008

PAGE 16 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT___3____
PAGE_34_OF_36_

2005-150743

### REQUEST FOR RECONVEYANCE

To Trustee:

    The undersigned is the holder of the Note or Notes secured by this Trust Deed. Said Note or Notes, together with all other Indebtedness secured by this Trust Deed, have been paid in full. You are hereby directed to cancel said Note or Notes and this Trust Deed, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Trust Deed to the person or persons legally entitled to that estate.

Date:_____

By _____

Title_____

--(Space Below This Line Reserved For Beneficiary and Recorder)--

PAGE 17 – COMMERCIAL DEED OF TRUST AND ASSIGNMENT OF RENTS

EXHIBIT 3
PAGE 35 OF 36

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 57 of 133

Case 09-32439-rld7   Doc 100   Filed 04/27/10

Order No. 23y0024421w

EXHIBIT "A"
Legal Description

PARCEL III:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, in the County of Washington and State
of Oregon; and running thence South 0° 08' East along the East line of
said Lot 264, a distance of 119.5 feet; thence North 81° 37' West,
parallel with the Northerly line of said Lot 264, a distance of 293.9
feet to a point on the West line thereof; thence North 0° 16' West,
119.5 feet along the West line of said lot, to the Northwest corner of
said Lot 266; thence South 81° 37' East, 292.2 feet along the North
line of said lot to the place of beginning.

EXHIBIT 3
PAGE 36 OF 36

Case 09-32439-rld7    Doc 100    Filed 04/27/10

Washington County, Oregon    2006-022801
02/ ... 006 04:15:45 PM
D-A ...    Cnt=1 Stn=8 RECORDS1
$15.00 $6.00 $3.00 - Total = $23.00

Jerry R. Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.
Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

AFTER RECORDING RETURN TO:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNEE'S NAME AND ADDRESS:
FHLF, LLC
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNOR'S NAME AND ADDRESS:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Assignment of Deed of Trust
(Absolute Assignment)

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to FHLF, LLC, all beneficial interest under that certain Commercial Deed of Trust (the "Trust Deed") executed by Lauren Paulson, as Successor Trustee to The Lauren Paulson Trust Agreement, dated October 18, 2004, (the "Grantor"), to Transnation Title Agency of Oregon, Trustee, and recorded on November 30, 2005 as Document No. 2005-150743, in the Official Records in the County Recorder's office of Washington, County, Oregon, describing land therein as:

See Exhibit "A"

TOGETHER with all right, title and interest of the undersigned now owned or hereafter acquired in and to the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the note or notes and said Deed of Trust and that Loan Agreement of the same date as the Deed of Trust executed by the obligor under the note or notes secured by the Deed of Trust.

After Acquired Property: This Assignment covers all of Assignor's right, title and interest now or hereafter acquired with respect to the Property and the Trust Deed.

Covenants, Warranties and Agreements of Assignor: The Assignor represents, covenants, warrants and agrees with Assignee as follows:

1.    The Trust Deed and the note it secures (the "Note") are in full force and effect, enforceable according to their terms and there are no defenses to such enforceability held by the granter under the Trust Deed and the obligor under the Note;

2.    As of the date of execution of this Assignment the total principal amount due under the Note is not less than the principal sum of $400,000.00;

EXHIBIT   4
PAGE   1   OF   8

FHLF000003

Case 09-32439-rld7    Doc 100    Filed 04/27/10

3.    This assignment is intended to be absolute and is not being given for security
purposes.

FAIRWAY COMMERCIAL MORTGAGE CORPORATION

By _____
Robert S. Seidenwurm, Vice President

STATE OF OREGON        )
                       ) ss.
County of Washington   )

This instrument was acknowledged before me on this _____ day of February, 2006,
by Robert S. Seidenwurm, Vice President of FAIRWAY COMMERCIAL MORTGAGE
CORPORATION.

_____
Notary Public for Oregon
My Commission Expires: 2/23/09

EXHIBIT ___4___
PAGE _2_ OF _8_

FHLF000004

Case 09-32439-rld7    Doc 100    Filed 04/27/10

Order No. 23y0024421w

EXHIBIT "A"
Legal Description

PARCEL III:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, in the County of Washington and State
of Oregon; and running thence South 0° 08' East along the East line of
said Lot 264, a distance of 119.5 feet; thence North 81° 37' West,
parallel with the Northerly line of said Lot 264, a distance of 293.9
feet to a point on the West line thereof; thence North 0° 16' West,
119.5 feet along the West line of said lot, to the Northwest corner of
said Lot 264; thence South 81° 37' East, 292.2 feet along the North
line of said lot to the place of beginning.

EXHIBIT    4
PAGE    3    OF    8

FHLF000005

Case 09-32439-rld7    Doc 100    Filed 04/27/10



F A I R W A Y   A M E R I C A

Effective February 4th, 2006, Fairway Commercial Mortgage Corporation, an Oregon corporation ("Fairway"), assigned the rights and interest in the Assignment of Leases and Rents dated November 28, 2005, between Fairway and Lauren Paulson, as Successor Trustee of the Lauren Paulson Trust Agreement dated October 18, 2004, to FHLF, an Oregon limited liability company.


Fairway America, LLC, successor in interest to Fairway Commercial Mortgage Corporation

By: Skylands Investment Corporation, Member

By: _____
    Matthew W. Burk, President

(503) 906-9100 office   (503) 906-9101 fax
6650 SW REDWOOD LANE SUITE 290   PORTLAND, OR 97224
www.fairwayamerica.com

SPECIALTY FINANCE & INVESTMENTS

EXHIBIT __4__
PAGE __4__ OF __8__

Case 09-32439-rld7    Doc 100    Filed 04/27/10

Washington County, Oregon    2006-022802
6/?/2006 04:15:45 PM
DEED? RDV-E RECORDS?
$13.00 $8.00 $11.00 - Total # 275.00

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.
Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

AFTER RECORDING RETURN TO:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNEE'S NAME AND ADDRESS:
FHLF, LLC
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

ASSIGNOR'S NAME AND ADDRESS:
Fairway Commercial Mortgage Corporation
Attn: Mr. Matthew W. Burk
6650 SW Redwood Lane, Suite 290
Portland, OR 97224

Assignment of Deed of Trust
(Absolute Assignment)

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to FHLF, LLC,
all beneficial interest under that certain Commercial Deed of Trust (the "Trust Deed"), executed
by Huber-Wheeler Crossing, LLC, an Oregon limited liability company, (the "Grantor"), to
Transnation Title Agency of Oregon, Trustee, and recorded on November 30, 2005 as Document
No. 2005-150742, in the Official Records in the County Recorder's office of Washington,
County, Oregon, describing land therein as:

See Exhibit "A"

TOGETHER with all right, title and interest of the undersigned now owned or hereafter acquired
in and to the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under the note or notes and said Deed of
Trust and that Loan Agreement of the same date as the Deed of Trust executed by the obligor
under the note or notes secured by the Deed of Trust.

After Acquired Property: This Assignment covers all of Assignor's right, title and
interest now or hereafter acquired with respect to the Property and the Trust Deed.

Covenants, Warranties and Agreements of Assignor. The Assignor represents,
covenants, warrants and agrees with Assignee as follows:

1.    The Trust Deed and the note it secures (the "Note") are in full force and effect,
enforceable according to their terms and there are no defenses to such enforceability held by the
grantor under the Trust Deed and the obligor under the Note;

2.    As of the date of execution of this Assignment the total principal amount due
under the Note is not less than the principal sum of $400,000.00;

EXHIBIT 4
PAGE 5 OF 8

FHLF000026

Case 09-32439-rld7   Doc 100   Filed 04/27/10

3.   This assignment is intended to be absolute and is not being given for security
purposes

FAIRWAY COMMERCIAL MORTGAGE CORPORATION

By: _____
Robert S. Seidenwurm, Vice President

STATE OF OREGON          )
                         ) ss
County of Washington     )

This instrument was acknowledged before me on this ____ day of February, 2006,
by Robert S. Seidenwurm, Vice President of FAIRWAY COMMERCIAL MORTGAGE
CORPORATION

OFFICIAL SEAL
K. M. REINHART
NOTARY PUBLIC - OREGON
COMMISSION NO. 389914
MY COMMISSION EXPIRES FEB. 23, 2009

_____
Notary Public for Oregon
My Commission Expires  2/23/09

EXHIBIT ___4___
PAGE __6__ OF _8_

FHLF000027

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 64 of 133

Case 09-32439-rld7   Doc 100   Filed 04/27/10

Order No. 23y8024421w

EXHIBIT "A"
Legal Description

PARCEL I:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 186.6 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 80 feet to a point
on the East right-of-way of 170th Avenue; thence South 0° 16' East,
along the East right-of-way, a distance of 133.3 feet to the Southeast
corner of said lot; thence South 81° 37' East along the South line of
said lot, a distance of 80 feet to a point; thence North 0° 16' East
to the South line of the Thomas tract and the point of beginning.

PARCEL II:

Beginning at a point that is South 0° 08' East, 119.5 feet and North
81° 37' West, 70 feet from the Northeast corner of Lot 264, JOHNSON
ESTATE ADDITION TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded
subdivision in the County of Washington and State of Oregon; and
running thence North 81° 37' West along the South line of a tract
conveyed to Alan G. Thomas by deed recorded in Book 315, Page 36, Deed
Records of Washington County, Oregon, a distance of 116.6 feet to a
point; thence South 0° 16' East, a distance of 108 feet, more or less,
to a point on the South line of said lot that is North 81° 37' West,
186.6 feet from the Southeast corner of said lot; thence South 81° 37'
East along the South line of said lot, a distance of 116.6 feet;
thence North 0° 16' East, 108 feet, more or less, to the point of
beginning.

PARCEL IV:

Beginning at the Northeast corner of Lot 264, JOHNSON ESTATE ADDITION
TO BEAVERTON-REEDVILLE ACREAGE, a duly recorded subdivision in the
County of Washington and State of Oregon; and running thence South 0°
08' East along the East line of said Lot 264, a distance of 119.5 feet
to the Southeast portion of that tract conveyed to Alan G. Thomas by
deed recorded in Book 315, Page 36, Deed Records of Washington County,
Oregon, and the true point of beginning of the tract herein described;
thence North 81° 37' West along the South line of said Thomas tract, a
distance of 70 feet to a point; thence South 0° 16' East, parallel
with the West line of Lot 264, a distance of 108 feet, more or less,
to a point on the South line of said Lot 264; thence South 81° 37' East,
70 feet to the Southeast corner of said Lot 264; thence North 0° 08'
East, a distance of 108 feet to the point of beginning.

EXHIBIT 4
PAGE 7 OF 8

FHLF000028



# F A I R W A Y   A M E R I C A

Effective February 4th, 2006, Fairway Commercial Mortgage Corporation, an Oregon corporation ("Fairway"), assigned the rights and interest in the Assignment of Leases and Rents dated November 28, 2005, between Fairway and Huber-Wheeler Crossing LLC, an Oregon limited liability company to FHLF, an Oregon limited liability company.

Fairway America, LLC, successor in interest to Fairway Commercial Mortgage Corporation

By: Skylands Investment Corporation, Member

By: _____
     Matthew W. Burk, President

(503) 906-9100 office  (503) 906-9101 fax
6650 SW REDWOOD LANE  SUITE 290  PORTLAND, OR 97224
www.fairwayamerica.com

EXHIBIT ___4___
PAGE __8__ OF __8__

SPECIALTY FINANCE & INVESTMENTS

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 66 of 133

Case 09-32439-rld7   Doc 100   Filed 04/27/10

**S&W** | SCHWABE, WILLIAMSON & WYATT
ATTORNEYS AT LAW

Pacwest Center, 1211 SW 5th Ave., Suite 1900, Portland, OR 97204 | Phone 503.222.9981 | Fax 503.796.2900 | www.schwabe.com

JOEL A. PARKER
Admitted in Oregon
Direct Line: (503) 796-2975
E-Mail: jparker@schwabe.com

August 12, 2008

VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED
VIA FIRST CLASS MAIL

Huber-Wheeler Crossing, LLC
Lauren Paulson
3980 SW 170th Avenue
Aloha, OR 97007

    Re:    Our Client:    Fairway America
           Real Property: 3980 SW 170th Avenue, Aloha, Oregon 97707
                      16925 SW Blanton Street, Beaverton, Oregon 97007, and
                      16919 SW Blanton Street, Beaverton, Oregon 97007
           Our File No.: 116063/160139

Dear Mr. Paulson:

    I understand that the forbearance agreement negotiations with Fairway have stalled, as you remain unwilling to execute an agreement that contains a release of any claims against Fairway. Because the parties have been unable to consummate a final forbearance agreement, Fairway intends to proceed with a foreclosure action. Accordingly, unless you cure your default within ten (10) days from the date of this letter, Fairway intends to initiate foreclosure proceedings.

    To cure your default, the following amounts must be paid:

    1.    Monthly loan payments in the amount of $2,769.03 for February 2008 and $4,269.03 for March 2008 through August 2008, for a total of $28,383.21;

    2.    Late fees in the amount of $213.45 per month for March 2008 through August 2008, for a total of $1,280.70;

    3.    Prior late fees in the amount of $640.35;

    4.    Default interest in the amount of $18,074.15; and

Portland, OR 503-222-9981 | Salem, OR 503-399-7712 | Bend, OR 541-749-4044
Seattle, WA 206-622-1711 | Vancouver, WA 360-694-7551 | Washington, DC 202-488-4302

PDX/116063/160139/JAP/2846673.1

EXHIBIT 5
PAGE 1 OF 2

FHLF000189

Case 09-32439-rld7   Doc 100   Filed 04/27/10

August 12, 2008
Page 2

5.      Legal fees and costs in the amount of $3,432.60.

August 12, 2008 Total:      $51,811.01

In addition as a result of your default, your principal balance accrues interest at the default rate of 20.50% ($238.32 per day) from August 13, 2008, until fully paid.

Demand is hereby made that you immediately pay the amount of $51,811.01, plus an additional $238.32 for each additional day beginning August 13, 2008.  If you have not cured your default on or before August 22, 2008, Fairway will, without further notice to you, proceed with all legal remedies available to it.  Those remedies will include, but will not be limited to, foreclosure of its Deed of Trust.  In addition, Fairway will also seek to collect all of its attorney fees and costs incurred.

If you have any questions regarding this demand, we urge you to consult with legal counsel immediately and have him or her contact me as soon as possible.

THIS MATTER DEMANDS YOUR IMMEDIATE ATTENTION.

Sincerely,

Joel A. Parker

JAP:dkg
cc:   Deni Kaiser (via e-mail)
      Chris Cobb (via e-mail)
      Tina Granados

SWW

EXHIBIT 5
PAGE 2 OF 2

PDX/116063/160139/JAP/2846673.1

FHLF000190



1

2  Lauren Paulson, Pro Se
   3980 S. W. 170th Ave.
   Aloha, OR 97007
3  971 219 5859
   Plaintiff
4

'09 JAN 29 14:19 RECVD USBC-ORP

5

6

7

8              UNITED STATES DISTRICT COURT FOR THE

9                        DISTRICT OF OREGON

10  LAUREN PAULSON, Trustee          )
    and Operating Manager of Huber-  )
11  Wheeler Crossing, LLC (Inactive) )
                                      )     Civil Action No.  CV 08-982-ST
12            Plaintiff,              )
                                      )     SECOND AMENDED COMPLAINT
13   v.                              )
                                      )     (Federal Truth in Lending Act)
14                                    )         15 USC §1601 et seq.
                                      )
15  FAIRWAY AMERICA                   )     Demand for Jury Trial
    CORPORATION, fka                  )
16  FAIRWAY COMMERCIAL               )     Class Action -- FRCP 23
    MORTGAGE CORPORATION,            )
17   Oregon corporations, FHLF, LLC, )
    an Oregon corporation, MATT      )
18  BURK, STERLING SAVINGS BANK,     )
    a Washington corporation,        )
19  WELLS FARGO FOOTHILLS, a         )
    California corporation, JOAN DOE, )
20  a mortgage broker,               )
    FRANKI KEEFE, a real estate broker)
21  and JOEL PARKER                  )
                                      )
22            Defendants,             )

23            Plaintiff alleges:

24                        COUNT ONE

25            (Violation of Federal Truth in Lending Act)

26                      15 USC §1601 et seq,

Page

     1. COMPLAINT

EXHIBIT  6
PAGE  1  OF  16

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Case 09-32439-rld7   Doc 100   Filed 04/27/10

## I. Preliminary Statement

1.   This action seeks declaratory relief, injunctive relief, equitable relief, compensatory damages, statutory damages, punitive damages, and costs, attorney fees and other appropriate relief for the violation , inter alia, by the Defendants of the Federal Truth in Lending Act.

## II. Jurisdiction

2.  This action arises, inter alia, under the Federal Truth in Lending Act (TILA), 15 USC 1601 et seq. (The "Act") and thus this Court has subject matter jurisdiction.

## III. Venue

3.  This action properly lies in the United States District Court for the District of Oregon, pursuant to 29 USC § 1391(b), because the claim arose in this judicial district and because the violation of the Truth in Lending Act and other federal laws was committed in this judicial district.

## IV. Parties

4.  The Plaintiff is a local consumer and at all times material hereto is a citizen of the United States and a resident of the State of Oregon, County of Washington.

## CLASS ACTION ALLEGATIONS

The Plaintiff is representative of a class as defined by FRCP 23 and brings this action on behalf of the entire class.  The class is so numerous that joinder of all of its hundreds (or thousands) of members is impracticable.  There are questions of law and fact common to the class, the claims of the Plaintiff are typical of the claims of the

Page

2. COMPLAINT

EXHIBIT ___6___
PAGE _2_ OF _16_

**LAUREN PAULSON**

3860 S.W. 170TH AVE.
ALOHA, OREGON 97007

Case 09-32439-rld7   Doc 100   Filed 04/27/10

1  class, and the Plaintiff will fairly and adequately protect the interests of the class.  The

2  class consists of all the borrowers of these Defendants from 1997 to present.  Upon

3  information and belief the Defendants have a minimum of approximately one hundred

4  and fifty (150) such borrowers but this minimum number may actually be in the

5  thousands. The Plaintiff alleges a common course of similar misrepresentations against

6  these defendants  amounting to fraud by aiding and abetting predatory lending through

7  standardized centrally-orchestrated marketing techniques resulting in a large class of

8  borrowers entering into loan agreements they would not have entered had they known

9  the true terms.

10

11

12      5. At all times material hereto, Defendants "Fairway", "Sterling", and "Wells Fargo

13  Foothills" are transacting business in the State of Oregon. At all times material hereto

14  the foregoing defendant corporations and Matt Burk, Fairway's president, operate

15  together as part of a common enterprise.  At all times material hereto, Sterling and

16  Wells Fargo Foothills knowingly aided and abetted the contractual practices and

17  deceptions practiced by Fairway giving substantial assistance or encouragement to

18  Fairway in these predatory lending practices and as such are subject to third party

19  liability for Fairway's fraud under state and federal law.

20

21      6. At all times material hereto, Defendant Joan Doe is a licensed real estate

22  broker transacting business on behalf of Fairway.  At all times material hereto,

23  Defendant Keefe is a licensed real estate agent and doing business in the State of

24  Oregon for Fairway.  At all times material hereto, Defendant Joel Parker is a licensed

25  attorney practicing law in the State of Oregon.

26

Page

    3. COMPLAINT

EXHIBIT  6

PAGE  3  OF  16

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

**V. Facts**

7. At all times material hereto Fairway advertises, offers, extends and sells first mortgage loans on small businesses and consumer's homes. Fairway styles itself as a niche lender catering to the "subprime" loan market which are customers with poor or insufficient credit histories, records, or ratings who might experience difficulty securing conventional financing.   Fairway charges consumers substantial prepaid finance charges such as loan origination fees, document fees, underwriting fees, loan processing fees, brokers fees (commissions) and other fees. These charges typically total between ten and thirty percent of the amount financed.   As part of Fairway's marketing campaign Fairway targets financially vulnerable consumers including individuals who have significant equity in their properties and a "...pressing need for a loan".   Fairway partners with investors such as Sterling and Wells Fargo Foothills in charging 10% to 14% interest on loans with a balloon payment ranging from six (6) months to five (5) years. Most Fairway loans are interest only monthly payments with a balloon payment at the end of the term. According to Fairway, these loans can be "assess(ed) over the phone in 10-15 minutes by Fairway and if it looks promising (Fairway) can issue a loan approval within 24 hours." Fairway does not need to work with "...an approved broker" according to their promotional materials. "Protecting the broker's fee and assuring (the broker) gets paid is (Fairway's) number 1 priority." The sales presentations and loan documents by Fairway and agents contain false or misleading statements that cause consumers to be deceived about the material terms of the loan, or fails to make required disclosures and thereby misleads consumers about

Page

4. COMPLAINT

EXHIBIT 6
PAGE 4 OF 16

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1   the meaning of the actual and material information required to be disclosed by Section

2   128 of The Act, 15 USC § 1601 et seq.,1638, and Section 226.18 of Regulation Z, 12

3   CFR §226.18 ("TILA disclosure statement").   Fairway does not provide any of the

4   required information under this Act nor does it identify any of the five factors required

5   by TILA to determine if the loan is a business loan.   Therefore, Fairway misleads

6   consumers about the amount financed, the annual percentage rate, the interest rate on

7   the loan, along with other costs and fees.  Moreover, penalty interest rates and other

8   charges similarly are not disclosed to the borrower in the form and in a manner required

9   by law.

10

11        As aforesaid Fairway also fails to supply the information required by nor does

12   Fairway follow the procedures of the **Real Estate Settlement Procedures Act** (RESPA)

13   12 USC §2601(b) passed in 1974 which was enacted to curb undisclosed kickbacks

14   between lenders and brokers (or others) who "steered" borrowers whose circumstances

15   pressed them to the subprime mortgage market.  RESPA requires lenders to provide

16   a good faith estimate for all of the approximate costs of a particular loan along with a

17   HUD-1 or 1A prior to or at the closing of the transaction which was not done here.  The

18   purpose of the act is to allow the borrower to know specifically the costs of the loan and

19

20   to whom the fees are being allotted which was not done here.

21

22        Further, the Fairway loans violate the **Home Ownership and Equity Protection**

23   **Act of 1994** (HOEPA) [*See,* Riegle Community Development and Regulatory

24   Improvement Act, Pub. L. No. 103-325, § 151-58, 108 Stat. 2190-98 (1994) enacted as

25

26   a part of the federal Truth in Lending Act (TILA) to curb a pattern of abuses in the

Page

5. COMPLAINT

EXHIBIT 6
PAGE 5 OF 16

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1   subprime mortgage market].  This act requires certain additional disclosures and

2   protections for certain high-interest and high-fee equity loans including calculations

3   which were not done here by Fairway even though applicable.

4

5          Fairway's practices aforesaid constitute deceptive acts or practices in or affecting

6   commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 USC§

7   45(a) justifying federal agency intervention and therefore, a copy of this complaint is

8   being sent to the Federal Trade Commission.   [See Federal Trade Commission v. First

9   Alliance Mortgage Company, et al., Civil Case No. SACV 00-964 DOC (Eex) in USDC

10  Central District of California, Southern Division (2000), and In re:  First Alliance

11  Mortgage Company, Case No. 04-55396/04-55942/DC No CV-01-971-DOC/CV-01-

12  01111-DOV  in the United States Court of Appeals for the Ninth Circuit (2006)].

13

14         On or before November, 2005 Defendant Joan Doe mortgage broker directed

15  Paulson to Fairway, as part of the predatory loan practice known as "steering" (the

16  practice  of  directing  borrowers  "...with  pressing  loan  needs"  to  lenders  with

17  extraordinarily high interest rates or finance charges relative to the loan risk).

18

19         Plaintiff Paulson and Defendant Fairway executed certain loan documents which

20  did not comply with TILA, RESPA nor HOEPA.  Fairway did not make the required

21  disclosures, misrepresented the terms of the loan and failed to comply with federal law

22  and state law as aforesaid.  Thus, these Defendants engaged in "yield spread premium"

23  loans which rewards brokers for originating loans at above-market interest rates and

24  excessive other fees and charges with cash payments when the borrower's credit risk

25  does not justify these high interest rates or charges.  A joint task force conducted by the

26

Page

        6. COMPLAINT

EXHIBIT __6__
PAGE _6_ OF _16_

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1  Department of Housing and Urban Development (HUD) and the Department of the

2  Treasury of the United States determined that these subprime mortgage loans aforesaid

3  constitutes predatory lending when loan originators and lenders use fraud, deception,

4  or other manipulative techniques to extend credit in ways *intended to strip borrowers of*

5,6  *the equity in their property.* See Regulation Z (Final Rule (Dec.21, 2001)

7       8. Defendant Fairway is a creditor as defined in Federal Reserve Regulation Z,

8  12 CFR 226 ("Reg Z") which promulgates the "Act" and is a creditor who regularly

9  extends consumer credit that is subject to a finance charge or is payable by written

10  agreement in more than four installments on transactions secured by a dwelling.

11

12       9. As a direct and proximate result of Defendant Fairway's actions and failure to

13  comply with the "Act",  Plaintiff has suffered great economic and other loss in amount

14  of $1,000,000 or such amounts as are proved at trial.

15       10.  In addition to the compensatory damages aforesaid, Plaintiff is entitled to

16  recover statutory damages as provided in the "Act" in an amount equal to twice the

17  amount of the finance charge in the transaction, his reasonable attorney fees and costs.

18

19                          COUNT TWO

20                            (Fraud)

21       11. The Plaintiff incorporates the **"Facts"** alleged above and further alleges that

22  at all times material hereto, the Defendants made material  misrepresentations in said

23  loan documents and otherwise in subsequent contracts outlined below, upon which the

24  Plaintiff relied to his detriment as was intended by the Defendants.  Said representations

25  aforesaid were false and fraudulent and known to the Defendants to be false and

26

Page

     7. COMPLAINT

EXHIBIT ___6___
PAGE ___7___ OF ___16___

**LAUREN PAULSON**

3980 S.W. 170TH AVE
ALOHA, OREGON 97007

Case 09-32439-rld7    Doc 100    Filed 04/27/10

1    fraudulent intended to extract further funds from the Plaintiff illegally pursuant to those

2    representations.  The Defendant's acts constitute aiding and abetting a fraud through

3    the common scheme described above and otherwise described here.

4

5    In furtherance of said fraud, Defendants Fairway, FHLF, Burk and Parker

6    proffered to Plaintiff a "Forbearance Agreement" on or about August of 2008 in which

7    these Defendants proposed that Plaintiff give up all his legal rights present, past and

8    future as to these matters.  Said agreements aforesaid were unconscionable in the

9    extreme and constituted a fraud on the Plaintiff and a conspiracy to "dehorse" the

10   Plaintiff from his equity interest in the property owned by him.

11

12   12.  As a direct and proximate result of Defendant's fraud, Plaintiff has been

13   damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Plaintiff

14   also seeks punitive damages in an amount to be determined at trial.

15

16                              COUNT THREE

17                           (Oregon Lending Law)

18

19   13.  At all times material hereto, Defendant Fairway and their agents violated

20   Oregon's Lending Law, ORS 59.840 to 59.965, by failing to make the disclosures

21   required by those statutes.

22   14. As a direct and proximate result of Defendant Fairway's failure, through their

23   agents, to make the required disclosures aforesaid, Plaintiff has been damaged in an

24   amount of $1,000,000 or such amounts as are proved at trial.

25                              COUNT FOUR

26

Page

8. COMPLAINT

EXHIBIT __6__
PAGE __8__ OF __16__

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

(Breach of Contract)

15. Defendant Fairway promised, with adequate consideration to provide a bridge loan to Plaintiff on agreed upon terms on or about February, 2008 and Plaintiff relied on that promise to his detriment. Fairway subsequently failed to provide said loan as promised.

16. As a direct and proximate result of Defendant Fairway's breach of contract, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT FIVE

(Breach of Good Faith and Fair Dealing)

17. Commencing on or about February, 2008 Defendants Fairway, FHLF, Burk and Joel Parker engaged in a subsequent series of promises to the Plaintiff upon which Plaintiff relied, when in truth and in fact, Defendants had no intention of honoring said promises, rather made such promises to ensure foreclosure, enhance their penalty interest rate and fees all to Plaintiff's detriment. Said fees and charges were known to be or should have been known to be in violation of state and federal law.

18. As a direct and proximate result of the Defendants breach of good faith and fair dealing, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial. Plaintiff also seeks punitive damages in an amount to be determined at trial.

COUNT SIX

(Breach of Contract)

Page

9. COMPLAINT

EXHIBIT  6
PAGE  9  OF  16

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1
2        19. On or about July, 2008 Defendant Fairway and the Plaintiff orally agreed to

the terms of a "Forbearance Agreement". In reliance on that agreement, the Plaintiff
3
4   performed by paying to Fairway $1,500 on or about July 18, 2008 under the specific

5   terms of that oral contract. On or about August 12, 2008 Fairway notified the Plaintiff

6   that Fairway would not  honor the terms of the forbearance agreement previously

7   agreed to and honored by Plaintiff's payment on July 18, 2008 which was accepted and

8   retained by Defendant Fairway.
9
10        20. As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has

11  been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

12                          COUNT SEVEN

13                  (Breach of Good Faith and Fair Dealing)

14        21. Plaintiff incorporates paragraph 7,8 and 19 herein as though fully set forth.

15        22. As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has

16  been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

17  Plaintiff also seeks punitive damages in an amount to be determined at trial.
18
19                          COUNT EIGHT

20                  (Promissory Estoppel and Declaratory Relief)

21        23. Plaintiff incorporates paragraph 7, 8 and19 herein as though fully set forth.

22  At various times in 2008 Fairway promised to cancel and extinguish said loans in their

23  entirety. Plaintiff relied on those promises to his detriment.
24
25        24. As a direct and proximate result of Defendant Fairway's acts, the Plaintiff has

26  been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

Page

        10. COMPLAINT

EXHIBIT____6____
PAGE__10_OF_16
**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1   Plaintiff also seeks declaratory and equitable relief declaring the aforementioned oral

2   agreements valid, rescinding any and all loan agreements signed in 2005, waiving any

3   and all penalties from February, 2008 forward, declaring said loan agreements

4   unconscionable and other relief according to proof at trial.

5

6                          COUNT NINE

7                          (Conspiracy)

8       25.  The Plaintiff incorporates the **"Facts"** described above in paragraphs 7 and

9   8 and further alleges that the Defendants and each of them entered into a conspiracy

10   to defraud the Plaintiff out of interest, fees, costs and other monies by requiring the

11   Plaintiff to list his property for sale with Defendant's agent Keefe when in truth and in

12   fact they had no intentions of actually selling Plaintiff's property which would have

13   avoided foreclosure by Defendant Fairway. Thus, Fairway would claim to be entitled to

14   additional penalty interest the longer the property did not sell.

15

16       26.  As a direct result of Defendant's acts, Plaintiff has been damaged in an

17   amount of $1,000,000 or such amounts as are proved at trial.  Plaintiff also seeks

18   punitive damages according to proof at trial.

19

20                          COUNT TEN

21                          (Injunction)

22       27.  The Defendant Fairway should be enjoined from any foreclosure

23   proceedings presently being threatened by Defendant Fairway.  Said injunction is

24   required because the Plaintiff's historic property, listed on the National Register of

25   Historic Places will be irreparably harmed.  Any such foreclosure will prevent Plaintiff

26

Page

    11. COMPLAINT

EXHIBIT ___6___
PAGE __11__ OF _16_
LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA. OREGON 97007

1   from otherwise protecting said unique, historical property.    Defendant Fairway is

2   equitably estopped from proceeding with foreclosure due to the oral binding forbearance

3   agreement upon which Plaintiff has made the partial payment which was accepted by

4   Defendant Fairway.

5

6                              COUNT ELEVEN

7            (Home Ownership and Equity Protection Act of 1994)

8                          15 USC § 1601 et seq.

9        28.  The Plaintiff incorporates paragraphs 7 and 8 as though full set forth here.

10       29.  The Defendant Fairway violated the Home Ownership and Equity Protection

11   Act (HOEPA) of 1994 as aforesaid.  Under this federal law the borrower is entitled to a

12   private right of action not only against the broker and lender, but also against

13   subsequent purchasers or "assignees" which include Sterling and Wells Fargo Foothills.

14   Under HOEPA the financiers of predatory lending are accountable for the misconduct

15   of their counterparts in the primary mortgage origination market and thus, Sterling and

16   Wells Fargo Foothills are liable for the misconduct of Fairway under this federal law.

17   The Plaintiff did not learn of Sterling' and Wells Fargo Foothill's  involvement until

18   November of 2008.

19

20       30.  As a result of Defendant's of HOEPA Plaintiff has been damaged in an

21   amount of$1,000,000 or in such amounts as are proved at trial.

22

23

24                              COUNT TWELVE

25            (Real Estate Settlement Procedures Act)

26

Page

     12. COMPLAINT

EXHIBIT _6_
PAGE _12_ OF _16_

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

1        12 USC §2601 et seq.

2        31.  Plaintiff incorporates paragraphs 7 and 8 as though fully set forth here.

3        32.  The Defendant has violated the Real Estate Settlement Procedures Act

4    (RESPA) as aforesaid.

5        33.  As a result of Defendant's violation of RESPA Plaintiff has been damaged

6    in an amount of $1,000,000 or in such amounts as are proved at trial.

7

8                    COUNT THIRTEEN

9            (Interference with Prospective Economic Advantage)

10       34.  On or after September, 2008 Mr. Scott Swenson and his wife, Janet

11   Swenson (Swensons) committed to purchase the M.E.Blanton House for $500,000,

12   depending on approvals by governmental agencies, for use as a Tea House and

13   restaurant.  In reliance on Fairways agreement to this transaction, the Swenson's

14   completed virtually all due diligence requirements and were prepared to proceed with

15   the sale when Matt Burk  interfered with the sale because the closing of said sale would

16   disclose to Sterling Savings Bank and Wells Fargo Foothills that the Paulson loan was

17   in arrearage and that fact had not been disclosed to Sterling nor Wells Fargo.

18

19       35.  As a result of Defendant's actions aforesaid, Plaintiff has been damaged in

20   an amount of $1,000,000 or such amounts as are proved at trial.

21

22                    COUNT FOURTEEN

23                       (Usury)

24                      ORS 84.010

25

26       36.  The Plaintiff incorporates paragraphs 7 and 8 as though fully set forth herein.

Page

     13. COMPLAINT

EXHIBIT ___6___
PAGE _13_ OF _16_
**LAUREN PAULSON**
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Case 09-32439-rld7   Doc 100   Filed 04/27/10

1    37. Said loans described above by Fairway violates common law usury laws and

2    the exceptions are unconstitutional under the Due Process Clause of the U.S.

3    Constitution as applied to the states under the 14th Amendment.

4

5    38. As a result of said actions, Plaintiff has been damaged in an amount of

6    $1,000,000 or such amounts as are proved at trial.

7                         COUNT FIFTEEN

8                          (Rescission)

9    40. The Plaintiff incorporates paragraphs 7 and 8 as though fully set forth herein.

10

11

12   41. The loans described aforesaid should be canceled, rescinded, and deemed

13   of no force and effect under the federal and state laws aforesaid. The Plaintiff hereby

14   tenders back those funds less adjustments allowed by law. The Plaintiff as only recently

15   discovered the violations of these federal and state laws by the Defendants.

16   42. As a result of said actions, Plaintiff has been damaged in an amount of

17   $1,000,000 or such amounts as are proved at trial.

18

19                       COUNT SIXTEEN

20                   (Accord and Satisfaction)

21   43. Plaintiff incorporates by this reference paragraphs 7,8,15,17,19 and 23 as

22   though fully set forth herein.

23   44. At various times between February, 2008 and November 2008 Fairway orally

24   and in writing declared the aforementioned loans satisfied and entered into an accord

25   under new terms with the Plaintiff which the Plaintiff relied upon. At all times material

26

Page

14. COMPLAINT

EXHIBIT ___6___
PAGE _14_ OF _16_

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007

Case 09-32439-rld7   Doc 100   Filed 04/27/10

1   hereto, the Plaintiff relied on these agreements to his detriment.

2       45. As a result of Defendants actions aforesaid, Plaintiff has been damaged in

3   an amount of $1,000,000 or such amounts as are proved at trial.

4

5                       COUNT SEVENTEEN

6                            (Illegal)

7       46. Plaintiff incorporates by this reference paragraphs 7 and 8 as though fully set

8   forth herein.

9       47. Defendant's contracts are illegal under state and federal law.

10      48. As a result of Defendant's actions aforesaid, Plaintiff has been damaged in

11  an amount of $1,000,000 or such amounts as are proved at trial.

12

13                      COUNT EIGHTEEN

14              (Unfair and Deceptive Trade Practices)

15                     ORS 646.010 et seq.

16      49. Plaintiff realleges paragraphs 7,8,15,17,19 and 23 as though fully set forth

17  herein.

18      50.  Defendant's actions aforesaid constitute Unfair and Deceptive Trade

19  Practices under Oregon law.

20

21      51. As a result of Defendant's actions aforesaid Plaintiff has been damaged in

22  an amount of$1,000,000 or such amounts as are proved at trial along with attorney fees

23  and statutory damages.

24

25                  **VI.  Relief Requested**

26      52. WHEREFORE, Plaintiff respectfully requests this court or jury to:

Page                                              EXHIBIT  6

        15. COMPLAINT                              PAGE  15  OF  16

                                      **LAUREN PAULSON**

                                      3980 S.W. 170TH AVE.
                                      ALOHA, OREGON 97007

Case 09-32439-rld7    Doc 100    Filed 04/27/10

1

2         (a.)    Assume jurisdiction over this action.

3         (b.)    On Plaintiff's COUNTS ONE THROUGH NINE AND ELEVEN

4     THROUGH EIGHTEEN to award Plaintiff damages in the amount of

5     $1,000,000 or such amounts as are proved at trial;

6         (c.)    To enjoin the Defendant Fairway from any and all foreclosure

7     proceedings on said property unless and until there is a determination on

8     Plaintiffs COUNTS ONE through EIGHTEEN.

9         (d.)    To award Plaintiff's costs and attorney fees.

10        (e.)    To grant such other equitable relief or other relief as it may deem just

11    and proper.

12

13        DATED this 29th day of January, 2009.

14

15        Lauren Paulson, Plaintiff Pro Se

16

17

18

19

20

21

22

23

24

25

26

Page

    16. COMPLAINT

EXHIBIT  6
PAGE 16 OF 16

**LAUREN PAULSON**
3380 S.W. 170TH AVE.
ALOHA, OREGON 97007

Case 09-32439-rld7   Doc 100-1   Filed 04/27/10

**Craig G. Russillo, OSB #973875**
Email: crussillo@schwabe.com
**Anna M. Smith, OSB #054424**
Email: asmith@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suites 1500-2000
Portland, OR  97204
Telephone 503-222-9981
Fax 503-796-2900

> Of Attorneys for Defendants Fairway
> America Corporation, FHLF, LLC, Matt Burk and
> Wells Fargo Foothills

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAUREN PAULSON, Trustee and Operating Manager of Huber-Wheeler Crossing LLC (Inactive),**<br><br>        Plaintiff,<br><br>    vs.<br><br>**FAIRWAY AMERICA CORPORATION, fka FAIRWAY COMMERCIAL MORTGAGE CORPORATION, Oregon corporations, FHLF, LLC, an Oregon corporation, MATT BURK, STERLING SAVINGS BANK, a Washington corporation, WELLS FARGO FOOTHILLS, a California corporation, JOAN DOE, a mortgage broker, FRANKI KEEFE, a real estate broker, and JOEL PARKER, a lawyer,**<br><br>        Defendants. | No. CV-08-982-ST<br><br>**DEFENDANT FAIRWAY AMERICA CORPORATION'S, FHLF, LLC'S, MATT BURK'S, AND WELLS FARGO FOOTHILLS' MOTION TO DISMISS COUNTS 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 AND 18 OF THE SECOND AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>(Oral Argument Requested) |

/ / /

Page 1 -     DEFENDANT FAIRWAY'S, FHLF'S, BURK'S AND
            WELLS FARGO'S MOTION TO DISMISS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR  97204
503-222-9981

PDX/116063/160139/ASM/3227808.1

EXHIBIT   7
PAGE   1   OF 21

## LR 7.1 CERTIFICATION

Defendants Fairway America Corporation, fka Fairway Commercial Mortgage Corporation ("Fairway"), FHLF, LLC ("FHLF"), Matt Burk ("Burk"), and Wells Fargo Foothills ("Wells Fargo") hereby certify that they made a good faith effort to confer with plaintiff Lauren Paulson regarding the issues to be decided in this motion by telephone conferences, e-mails, and letters, but the parties were unable to reach an agreement on the topics that are the subject of this motion to dismiss.

## MOTION

Defendants Fairway, FHLF, Burk, and Wells Fargo move the court under Federal Rule of Civil Procedure 12(b)(6) for dismissal of Counts 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 of the Second Amended Complaint. Specifically, Fairway, FHLF, Burk, and Wells Fargo move the Court to dismiss the above-listed counts for the following reasons:

1. Count 1 (Violation of Federal Truth in Lending Act ("TILA")), Count 3 (Oregon Lending Law), Count 8 (Promissory Estoppel and Declaratory Relief), Count 11 (Home Ownership and Equity Protection Act of 1994 ("HOEPA")), Count 12 (Real Estate Settlement Procedures Act ("RESPA")), Count 14 (Usury), Count 15 (Rescission), Count 16 (Accord and Satisfaction), Count 17 (Illegal), and those portions of Count 2 (Fraud) and Count 18 (Unfair and Deceptive Trade Practices) that relate to the Loan Agreement or Promissory Note (defined below) on the basis that Paulson is not the real party in interest on those claims and has thus failed to state a claim for relief;

2. Count 1 (Violation of TILA), Count 11 (HOEPA), and Count 12 (RESPA), on the alternative basis that Paulson has failed to state a claim for relief because the loan referenced in his complaint was a commercial loan, and these federal statutes only provide causes of action to consumers;

3. Count 1 (Violation of TILA), Count 11 (HOEPA), and Count 12 (RESPA) on the alternative basis that these claims are time-barred as a matter of law;

4. Count 2 (Fraud) in its entirety on the basis that Paulson does not state his claim for fraud with the required specificity of Rule 9(b);

5. Count 5 (Breach of Good Faith and Fair Dealing) on the basis that Paulson does not allege the existence of any contract to which the good faith and fair dealing duty applied;

PDX/116063/160139/ASM/3227808.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT 7
PAGE 2 OF 21

6.   Count 9 (Conspiracy) because conspiracy does not provide a basis for a claim for relief;

7.   Counts 10 and 13 (Injunction and Intentional Interference with Prospective Economic Advantage) because Paulson fails to allege the necessary elements to state a claim for relief under either of those claims;

8.   Count 14 (Usury) on the alternative basis that Paulson fails to state a claim for usury under Oregon law;

9.   Counts 16 and 17 (Accord and Satisfaction and Illegal) because these are affirmative defenses and not separate causes of action.

For each of these reasons, the Court should dismiss Counts 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 of the Second Amended Complaint.

Dated this 20th day of March, 2009.

SCHWABE, WILLIAMSON & WYATT, P.C.

By:   s/ Anna M. Smith
      Craig G. Russillo, OSB #973875
      Anna M. Smith, OSB #054424
      Of Attorneys for Defendants
      Fairway America Corporation, FHLF, LLC,
      Matt Burk, and Wells Fargo Foothills

Page 3 -   DEFENDANT FAIRWAY'S, FHLF'S, BURK'S AND
           WELLS FARGO'S MOTION TO DISMISS

PDX/116063/160139/ASM/3227808.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT  7
PAGE  3  OF 21

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2009, I served the foregoing

DEFENDANT FAIRWAY AMERICA CORPORATION'S, FHLF, LLC'S, MATT BURK'S,

AND WELLS FARGO FOOTHILLS' MOTION TO DISMISS COUNTS 1, 2, 3, 5, 8, 9, 10, 11,

12, 13, 14, 15, 16, 17 AND 18 OF THE SECOND AMENDED COMPLAINT UNDER

FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) on the following parties:

    Lauren Paulson (**via First Class Mail**)
    3980 SW 170th Avenue
    Aloha, OR 97007
        *Pro Se Plaintiff*

    Geana M. Van Dessel (**via electronic service**)
    Leslie R. Weatherhead
    Witherspoon, Kelley, Davenport & Toole P.S.
    422 West Riverside Avenue, Suite 1100
    Spokane, WA 99201-0300
        *Attorneys for Defendant Sterling Savings Bank*

    Calliste Korach (**via First Class Mail**)
    Hoffman, Hart & Wagner, LLP
    1000 SW Broadway, 20th Floor
    Portland, OR 97205
        *Attorneys for Defendant Franki Keefe*

    Susan K. Eggum (**via electronic service**)
    Paul A. Berg
    Cosgrave Vergeer Kester LLP
    805 SW Broadway, 8th Floor
    Portland, OR 97205
        *Attorneys for Defendant Joel Parker*

by:

☐  U.S. Postal Service, ordinary first class mail
☐  U.S. Postal Service, certified or registered mail,
     return receipt requested
☐  hand delivery
☐  facsimile
☐  electronic service
☒  other (specify) as indicated above

        s/ Anna M. Smith
        Anna M. Smith

Page 1 -    CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
503-222-9981

PDX/116063/160139/ASM/3227808.1

EXHIBIT _7_
PAGE _4_ OF _21_

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 88 of 133

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

Craig G. Russillo, OSB #973875
Email: crussillo@schwabe.com
Anna M. Smith, OSB #054424
Email: asmith@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suites 1500-2000
Portland, OR  97204
Telephone 503-222-9981
Fax 503-796-2900

        Of Attorneys for Defendants Fairway
        America Corporation, FHLF, LLC, Matt Burk and
        Wells Fargo Foothills

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAUREN PAULSON, Trustee and Operating Manager of Huber-Wheeler Crossing, LLC (Inactive), | No. CV-08-982-ST |
| Plaintiff, | |
| vs. | MEMORANDUM IN SUPPORT OF DEFENDANT FAIRWAY AMERICA CORPORATION'S, FHLF, LLC'S, MATT BURK'S, AND WELLS FARGO FOOTHILLS' MOTION TO DISMISS COUNTS 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 AND 18 OF THE SECOND AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) |
| FAIRWAY AMERICA CORPORATION, fka FAIRWAY COMMERCIAL MORTGAGE CORPORATION, Oregon corporations, FHLF, LLC, an Oregon corporation, MATT BURK, STERLING SAVINGS BANK, a Washington corporation, WELLS FARGO FOOTHILLS, a California corporation, JOAN DOE, a mortgage broker, FRANKI KEEFE, a real estate broker, and JOEL PARKER, a lawyer, | |
| Defendants. | |

/ / /

Page 1 -    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
            MEMORANDUM IN SUPPORT OF MOTION TO
            DISMISS
            PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR  97204
503-222-9981

EXHIBIT 7
PAGE 5 OF 21

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

Defendants Fairway America Corporation ("Fairway"), FHLF, LLC, Matt Burk, and

Wells Fargo Foothills (collectively, the "Defendants") submit the following memorandum in

support of their motion to dismiss Claims 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 in

the Second Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## I.    INTRODUCTION

Plaintiff Lauren Paulson filed his Second Amended Complaint making broad claims

against the Defendants regarding Defendants' conduct in connection with a loan that Fairway

made to Huber-Wheeler Crossing LLC ("Huber-Wheeler").  The majority of Paulson's various

contract, tort, and federal statute violation claims fail under Rule 12(b)(6) because Paulson fails

to state a claim for relief on any of them.  Specifically, the Court should dismiss the following

under Rule 12(b)(6):

**A.**    Count 1 (Violation of Federal Truth in Lending Act ("TILA")), Count 3 (Oregon Lending Law), Count 8 (Promissory Estoppel and Declaratory Relief), Count 11 (Home Ownership and Equity Protection Act of 1994 ("HOEPA")), Count 12 (Real Estate Settlement Procedures Act ("RESPA")), Count 14 (Usury), Count 15 (Rescission), Count 16 (Accord and Satisfaction), Count 17 (Illegal), and those portions of Count 2 (Fraud) and Count 18 (Unfair and Deceptive Trade Practices) that relate to the Loan Agreement or Promissory Note (defined below) on the basis that Paulson is not the real party in interest on those claims and has thus failed to state a claim for relief;

**B.**    Count 1 (Violation of TILA), Count 11 (HOEPA), and Count 12 (RESPA), on the alternative basis that the loan referenced in the Second Amended Complaint was a commercial loan, and these federal statutes only provide causes of action to consumers;

**C.**    Count 1 (Violation of TILA), Count 11 (HOEPA), and Count 12 (RESPA) on the alternative basis that these claims are time-barred as a matter of law;

**D.**    Count 2 (Fraud) in its entirety on the basis that Paulson does not state his claim for fraud with the required specificity required under Rule 9(b);

**E.**    Count 5 (Breach of Good Faith and Fair Dealing) on the basis that Paulson does not allege the existence of any contract to which the implied good faith and fair dealing duty applied;

**F.**    Count 9 (Conspiracy) because conspiracy is not an independent claim for relief;

Page 2 -    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS

PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR  97204
503-222-9981

EXHIBIT ___7___
PAGE __6_ OF _21_

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

G.    Counts 10 and 13 (Injunction and Intentional Interference with
      Prospective Economic Advantage) because Paulson fails to allege the
      necessary elements to state these claims for relief;

H.    Count 14 (Usury) on the alternative basis that Paulson fails to state a claim
      for usury under Oregon law;

I.    Counts 16 and 17 (Accord and Satisfaction and Illegal) because these are
      affirmative defenses and not separate causes of action.

For each of these reasons, the Court should dismiss Counts 1, 2, 3, 5, 8, 9, 10, 11, 12, 13,

14, 15, 16, 17 and 18 of the Second Amended Complaint.

## II.    FACTS

On November 28, 2005, Fairway loaned Huber-Wheeler $400,000 under a business loan

agreement ("Loan Agreement").  Smith Decl., Ex. 1.  Huber-Wheeler also executed a Promissory

Note in favor of Fairway in which Huber-Wheeler promised to re-pay the $400,000 to Fairway

("Promissory Note").  Smith Decl., Ex. 2.  Along with the Loan Agreement and Promissory

Note, Paulson executed a notarized Affidavit of Business Purposes, Ownership, and

Acknowledgment of Preparation of Loan Documents.  Smith Decl., Ex. 3.  In the Affidavit,

Paulson states:  "I hereby warrant and state that the proceeds of the Note are being used solely

for business purposes and none of the loan proceeds evidenced by the Note will be expended for

a personal, private or consumer use."  *Id.*, Ex. 3, ¶ 1.

As security for Fairway's loan to Huber-Wheeler, plaintiff Paulson executed a

Continuing Guaranty in favor of Fairway.  Smith Decl., Ex. 4.  As additional security, Huber-

Wheeler executed a Commercial Deed of Trust and Assignment of Rents with Fairway as

beneficiary.  Smith Decl., Ex. 5.  Paulson, as Successor Trustee to The Lauren Paulson Trust

Agreement, also executed a Commercial Deed of Trust and Assignment of Rents with Fairway

as beneficiary (collectively the "Trust Deeds") as security for the Loan Agreement.  Smith Decl.,

Ex. 6.  The Trust Deeds cover certain real property located in Washington County, Oregon.  *Id.*

The Loan Agreement, Promissory Note, Continuing Guaranty, and the Trust Deeds will

collectively be referred to in this Motion to Dismiss as the "Loan Documents."

///

Page 3 -    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
            MEMORANDUM IN SUPPORT OF MOTION TO
            DISMISS

PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR  97204
503-222-9981

EXHIBIT  7
PAGE  7  OF  21

In August 2008, plaintiff Paulson initiated this litigation against Fairway, eventually adding other defendants, based on the Defendants' actions in the execution and negotiation of the Loan Documents. Most of Paulson's claims for relief rely on the Loan Documents. *See* Second Amended Complaint, Docket # [14].

### III.   POINTS AND AUTHORITIES

**A.   Motion to Dismiss Standard Under Rule 12 (b)(6).**

Under Rule 12(b)(6), a party may move to dismiss a plaintiff's complaint if that complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must limit its review to the contents of the complaint...." *Tran v. Tyco Elec., Corp.*, 2008 U.S. Dist. LEXIS 5290, *5 (D. Or. January 22, 2008). However, when the court considers a motion to dismiss, it "may consider a document" not attached to the complaint if the authenticity of the document is not in question, and the document is one "upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded on other grounds by Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006). Examining this type of document in a motion to dismiss does not convert the motion to dismiss into a motion for summary judgment. *See Dent v. Cox Communs. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).

The United States Supreme Court recently clarified the minimal pleading requirements for a complaint to withstand a motion to dismiss under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). Prior to the issuance of that opinion, federal courts had long believed that "a complaint should not be dismissed for failure to state a claim [under Rule 12(b)(6)] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Bell Atlantic*, however, the Supreme Court overruled that test, announcing that the phrase quoted from *Conley* "has earned its retirement." *Bell Atlantic*, 550 U.S. at 563. In place of the lenient *Conley* test, the Supreme Court now has made clear that a complaint withstands a Rule 12(b)(6) motion only

Page 4 -   FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
          MEMORANDUM IN SUPPORT OF MOTION TO
          DISMISS
          PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT  7
PAGE  8  OF  21

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

if the complaint identifies the factual basis for the plaintiff's claim to relief. *Bell Atlantic*, 550 U.S. at 555-56.

The new test for sufficiency of complaints under *Bell Atlantic* stems from the Supreme Court's recognition that Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. To satisfy Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Instead, a plaintiff now must provide a plain statement of the facts with "enough heft to show that the pleader is entitled to relief." *Id.* at 557 (internal quotation marks and citations omitted). Many of plaintiff Paulson's claims fail to satisfy that burden in this case and, consequently, most of his claims should be dismissed under Rule 12(b)(6).

**B.    The Court Should Dismiss Paulson's Claims For Relief In Which He Is Not The Real Party In Interest.**

Paulson is not the real party in interest on many of his claims for relief, including Count 1 (Violation of TILA), Count 3 (Oregon Lending Law), Count 8 (Promissory Estoppel and Declaratory Relief), Count 11 (HOEPA), Count 12 (RESPA), Count 14 (Usury), Count 15 (Rescission), Count 16 (Accord and Satisfaction), Count 17 (Illegal), and portions of Count 2 (Fraud) and Count 18 (Unfair and Deceptive Trade Practices). Under Federal Rule of Civil Procedure 17, an action "must be prosecuted in the name of the real party in interest." FRCP 17(a)(1). Failure to prosecute a claim in the name of the real party in interest is grounds for a motion to dismiss for failure to state a claim. 2-12 James Wm. Moore et al., Moore's Federal Practice ¶ 12.34[4][b]. The basic purpose of the rule requiring every action be prosecuted by the real party in interest is "to protect a defendant from subsequent similar actions by one not a party to the initial action." *Pacific Coast Agricultural Export Assoc. v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975).

In his Second Amended Complaint, Paulson bases the above-referenced claims, or a portion of those claims, on the negotiation and execution of the Loan Agreement between

Page 5 -    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

PDX/116063/160159/ASM/3225709.10

EXHIBIT ___7___
PAGE __9__ OF _21_

Fairway and Huber-Wheeler.  Specifically, Paulson's allegations and claims for relief regarding

the Loan Agreement state:

1.   Count 1 (Violation of TILA):  "Plaintiff Paulson and Defendant Fairway
     executed certain loan documents which did not comply with TILA,
     RESPA nor HOEPA."  Second Amended Complaint, p. 6, Docket #[14].

2.   Count 2 (Fraud):  Plaintiff "further alleges that at all material times hereto,
     the Defendants made material representations in said loan documents and
     otherwise in subsequent contracts outlined below, upon which the Plaintiff
     relied to his detriment as was intended by the Defendants." *Id.*, p. 7, ¶ 11.

3.   Count 3 (Oregon Lending Law):  "At all material times hereto, Defendant
     Fairway and their agents violated Oregon's Lending Law…by failing to
     make the disclosures required by those statutes." *Id.*, p. 8, ¶ 13.

4.   Count 8 (Promissory Estoppel and Declaratory Relief):  "At various times
     in 2008 Fairway promised to cancel and extinguish said loans in their
     entirety.  Plaintiff relied on those promises to his detriment." *Id.*, p. 10, ¶
     23.

5.   Count 11 (HOEPA):  "The Defendant violated the Home Ownership and
     Equity Protection Act (HOEPA) of 1994 as aforesaid." *Id.*, p. 12, ¶ 29.

6.   Count 12 (RESPA):  *See id.*, p. 6.

7.   Count 14 (Usury):  "Said loans described above by Fairway violates
     common law usury laws…." *Id.*, p. 14, ¶ 37.

8.   Count 15 (Rescission):  "The loans described aforesaid should be
     canceled, rescinded, and deemed of no force and effect under the federal
     and state laws aforesaid." *Id.*, p. 14, ¶ 41.

9.   Count 18 (Unfair and Deceptive Trade Practices):  "Defendant's actions
     [based on the Loan Agreement] aforesaid constitute Unfair and Deceptive
     Trade Practices under Oregon law." *Id.*, p. 15, ¶ 50.

Paulson is not a party to the Loan Agreement.  Huber-Wheeler, not Paulson, borrowed

funds from Fairway.  The only parties to the Loan Agreement are Fairway and Huber-Wheeler.

*See* Smith Decl., Ex. 1.  Thus the only parties that have claims for relief regarding the execution

of the Loan Agreement are Fairway and Huber-Wheeler, not Paulson.  The Court should

therefore dismiss Count 1 (Violation of TILA), Count 3 (Oregon Lending Law), Count 8

(Promissory Estoppel and Declaratory Relief), Count 11 (HOEPA), Count 12 (RESPA), Count

14 (Usury), Count 15 (Rescission), Count 16 (Accord and Satisfaction), Count 17 (Illegal), and

Page 6 -   FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
           MEMORANDUM IN SUPPORT OF MOTION TO
           DISMISS
           PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT ____7____
PAGE  10  OF 21

those portions of Count 2 (Fraud) and Count 18 (Unfair and Deceptive Trade Practices) that

relate to the Loan Agreement because Paulson is not the real party in interest on any of those

claims and thus fails to state a claim for relief under Rule 12(b)(6). [1]

C.    **The Court Should Dismiss Counts 1, 11, and 12 Because Those Claims**
**For Relief Only Provide Causes Of Action To Consumers Or For**
**Consumer Loans.**

Paulson alleges that the Defendants violated the TILA, RESPA, and HOEPA (Counts

One, 11, and 12) when Defendants executed the Loan Agreement with Huber-Wheeler. TILA is

contained in the Consumer Credit Protection Act (15 U.S.C. §§1601, *et seq.*) and is governed by

Regulation Z (12 C.F.R. 226). 12 C.F.R. 226.1(a). The purpose of Regulation Z is to

> promote the informed use of *consumer credit* by requiring disclosures about its
> terms and cost. The regulation also gives *consumers* the right to cancel certain
> credit transactions that involve a lien on a *consumer's* principal dwelling,
> regulates certain credit card practices, and provides a means for fair and timely
> resolution of credit billing disputes. The regulation does not govern charges for
> consumer credit. The regulation requires a maximum interest rate to be stated in
> variable-rate contracts secured by the consumer's dwelling. It also imposes
> limitations on home equity plans that are subject to the requirements of § 226.5b
> and mortgages that are subject to the requirements of § 226.32. The regulation
> prohibits certain acts or practices in connection with credit secured by a
> *consumer's* principal dwelling.

12 C.F.R. 226.1(b)(emphasis added). In general, Regulation Z only applies to a business when

four conditions are met: "(i) The credit is offered or extended to *consumers*; (ii) the offering or

extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by

a written agreement in more than 4 installments; and (iv) *the credit is primarily for personal,*

*family, or household purposes.*" 12 C.F.R. 226.1(c)(1) (emphasis added). Regulation Z defines

"consumer" as "a cardholder or a natural person to whom consumer credit is offered or

---

[1] In the event that Paulson amends to name the real party in interest as Huber-Wheeler, Paulson
cannot represent that entity in this litigation. *See Simon v. Hartford Life and Accident Ins. Co.*,
546 F.3d 661, 664 (9th Cir. 2008)("As the district court accurately pointed out, courts have
routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf
of others in a representative capacity.") Therefore, if Paulson refiles his complaint naming
Huber-Wheeler as the plaintiff on some of his claims and attempts to represent Huber-Wheeler,
then the Defendants will move against that complaint on the grounds that Huber-Wheeler must
be represented by an attorney.

Page 7 -    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

PDX/116063/160139/ASM/3225709.10

EXHIBIT    7
PAGE    11    OF    21

extended," and "consumer credit" as "credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 CFR 226.2(a)(11)-(12). Exempt transactions under Regulation Z include business, commercial, agricultural, or organizational credit, which includes an extension of credit primarily for a business, commercial or agricultural purpose, and extensions of credit to other than a natural person. 12 C.F.R. 226.3(a)(1) & (2).

HOEPA amends the TILA and establishes certain disclosures for mortgages that are consumer credit transactions secured by the consumer's principal dwelling and that have high rates and/or high fees. 15 U.S.C. § 1639. *See also* 12 C.F.R. 226.32. Regulation Z also governs HOEPA, and, as stated above, Regulation Z defines "consumer" as "a cardholder or a natural person to whom consumer credit is offered or extended," and "consumer credit" as "credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 CFR 226.2(a)(11)-(12).

RESPA provides for more disclosures to consumers and the elimination of kickbacks and referral fees in real estate transactions. 12 U.S.C. § 2601(a)-(b). The purpose of RESPA is to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). RESPA does not apply to credit transactions involving extensions of credit for business or commercial purposes. *See* 12 U.S.C. § 2606(1)(a).

Paulson's claims under TILA and HOEPA fail because these statutes provide causes of action only to <u>consumers</u> who have entered into a consumer loan or credit transaction. Huber-Wheeler, the borrower under the Loan Agreement, is not a consumer as defined by Regulation Z.

Paulson's claims under TILA, HOEPA, and RESPA also fail because these statutes do not apply to credit transactions for business or commercial purposes. *See* 12 C.F.R. 226.3(a)(1); 12 U.S.C. § 2606(1)(a). The loan to Huber-Wheeler was a commercial loan and is exempted from all three statutes. *See* Smith Decl., Ex. 1, ¶ 3.1.5 ("The proceeds of the Loan will be used

Page 8 -   FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
           MEMORANDUM IN SUPPORT OF MOTION TO
           DISMISS
           PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT ___7___
PAGE _12_ OF _21_

primarily for commercial or business purposes."). Paulson expressly recognized the commercial nature of the loan when he stated: "I hereby warrant and state that the proceeds of the Note are being used solely for business purposes and none of the loan proceeds evidenced by the Note will be expended for a personal, private or consumer use." *See* Smith Decl., Ex. 3, ¶ 1.

Fairway and Huber-Wheeler executed the Loan Agreement, and Huber-Wheeler is not a consumer entitled to seek protection under TILA or HOEPA. Moreover, the requirements in TILA, HOEPA, and RESPA do not apply to commercial or business loans like the Loan Agreement. For these reasons, Paulson fails to state a claim for relief in his Counts 1, 11, and 12, and the Court should dismiss those claims under Rule 12(b)(6).

**D.      The Court Should Dismiss Counts 1, 11, and 12 Because Those Claims Are Barred By The Applicable Statute Of Limitations.**

Paulson failed to bring his causes of action under TILA, RESPA, and HOEPA within the time required under the applicable statute of limitations. For this separate reason, the Court should dismiss Counts 1, 11, and 12.

The statute of limitations for TILA and HOEPA claims is one year "from the date of the occurrence of the violation." 15 U.S.C. §1640(e). This limitations period begins to run "from the date of consummation of the transaction...." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). The statute of limitations for a RESPA claim is also one year "from the date of the occurrence of the violation" if the plaintiff alleges damages as a result of a violation of 12 U.S.C. § 2607, which prohibits kickbacks and unearned fees, or § 2608, which prohibits a seller from requiring a home buyer to purchase title insurance from a particular title company as a condition to selling the property.[2] 12 U.S.C § 2614. In cases involving loan documents, the statute of limitations under RESPA begins to run "when the documents are signed, unless evidence is

---

[2]  The statute of limitations on a RESPA claim is three years if the plaintiff alleges violation of 12 U.S.C. § 2605, which requires any person who makes a federally related mortgage loan to disclose to each loan applicant, at the time of application, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding. Paulson makes no allegation in his Second Amended Complaint regarding a failure to make disclosures on the servicing of his loan, so the three-year statute of limitations does not apply.

Page 9 -  FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
          MEMORANDUM IN SUPPORT OF MOTION TO
          DISMISS
          PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT  7
PAGE  13  OF  21

presented to override this assumption." *Rosales v. Downey S&L Ass'n, F.A.*, 2009 U.S. Dist.
LEXIS 15923, *19 (S.D. Ca. Mar. 2, 2009).

Paulson's claims under TILA, HOEPA, and RESPA are time-barred. If any violation of
these statutes occurred, it occurred on November 28, 2005, which is the date that Huber-Wheeler
and Fairway executed the Loan Agreement and other loan documents and "consummated" the
transaction. Paulson did not file his complaint until August 21, 2008, and that complaint alleged
only a violation of TILA, not HOEPA or RESPA. Complaint, Docket #[1]. Paulson did not
bring claims for relief under HOEPA and RESPA until his First Amended Complaint filed on
November 25, 2008. First Amended Complaint, Docket #[5]. The dates of August 21, 2008, and
November 25, 2008, are well past the one-year statute of limitations on Paulson's claims under
TILA, HOEPA, and RESPA and so are time-barred.

Paulson also cannot rely on any equitable tolling theory to extend the running of the
statute of limitations. Although the Ninth Circuit has stated that the doctrine of equitable tolling
may suspend the statute of limitations period on a TILA claim until the "borrower discovers or
had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the
TILA action," Paulson has failed to allege any circumstances to suggest a delayed discovery of
his claims under either TILA, HOEPA, or RESPA. *King*, 784 F.2d at 915. Therefore, Paulson's
claims for violations of TILA, HOEPA, and RESPA are time-barred on their face, and the Court
should dismiss those claims under Rule 12(b)(6).

     **E.**    **The Court Should Dismiss Count 2 On The Basis That Paulson Failed
           To Allege Fraud With The Required Specificity of Rule 9(b).**

Paulson alleges that the Defendants committed fraud when they made "material
misrepresentations in said loan documents and otherwise subsequent contracts outlined below,
upon which the Plaintiff relied to his detriment as was intended by the Defendants." The Federal
Rules of Civil Procedure require a plaintiff to "state with particularity the circumstances
constituting fraud or mistake." Fed. R. Civ. P. 9(b).

/ / /

Page 10    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
             MEMORANDUM IN SUPPORT OF MOTION TO
             DISMISS
             PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT ___7___
PAGE __14__ OF __21__

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

Under Oregon law, a claim for fraud requires proof of nine elements:

(1)   A representation;
(2)   Its falsity;
(3)   Its materiality;
(4)   The speaker's knowledge of the representation's falsity or ignorance of its truth;
(5)   Intent that the representation be acted on in a manner reasonably contemplated;
(6)   The hearer's ignorance of the falsity of the representation;
(7)   The hearer's reliance on its truth;
(8)   The hearer's right to rely on the representation; and
(9)   A foreseeable injury.

*Musgrave v. Lucas*, 193 Or. 401, 410, 238 P.2d 780 (1951). To prevail at trial, Paulson must

prove the elements by clear and convincing evidence. *Riley Hill Gen. Contractor v. Tandy*

*Corp.*, 303 Or. 390, 407-08, 737 P.2d 595 (1987).

Paulson's general allegations of fraud– which fail to identify the who, when, or what of

the alleged misstatements – are facially insufficient. *See Swartz v. KPMG LLP*, 476 F.3d 756,

764 (9th Cir. 2007) (Rule 9(b) "requires more specificity including an account of the time, place,

and specific content of the false representations as well as the identities of the parties to the

misrepresentations") (internal quotations and citations omitted); *Bosse v. Crowell Collier &*

*MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977) ("While mere conclusory allegations of fraud will

not suffice, statements of the time, place and nature of the alleged fraudulent activities will");

*Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("Rule 9(b) requires 'specification of the

time, place and content of an alleged false representation[.]'" (quoting *McGinty v. Beranger*

*Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980))).

Paulson fails to allege any particular misrepresentation; he only makes a blanket assertion

that Defendants made "material misrepresentations." Second Amended Complaint, p. 7, ¶ 11,

Docket # [14]. He does not allege what the misrepresentations were or when Defendants made

them. He also does not allege that he was ignorant of the falsity of these representations or that

he had a right to rely on such representations. Paulson also fails to allege that the injury he

sustained as a result of these misrepresentations was foreseeable. Paulson's allegations are

Page 11    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS

PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT   7
PAGE  15  OF  21

Case 09-32439-rld7   Doc 100-1   Filed 04/27/10

facially insufficient to state a claim for fraud.

Paulson's claim for fraud also fails because he fails to allege which defendant made which representation. Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 765. When suing multiple defendants for fraud, a plaintiff "must, at a minimum, identif[y] the role of [each] defendant[s] in the alleged fraudulent scheme." *Id.* (internal quotations and citations omitted). Paulson's complaint fails to identify the role of each defendant in the alleged fraudulent scheme, and for this additional reason, the Court should dismiss his fraud claim.

Paulson's allegations are facially insufficient to state a claim for fraud, and the Court should dismiss Paulson's fraud claim, Count 2, under Rule 12(b)(6).

**F.     The Court Should Dismiss Count 5, Breach of Good Faith and Fair Dealing, Because Paulson Fails To Allege The Necessary Elements Of Such A Claim.**

Paulson alleges that Defendants breached the covenant of good faith and fair dealing when they "engaged in a subsequent series of promises to the Plaintiff upon which Plaintiff relied, when in truth and in fact, Defendants had no intention of honoring said promises...." Second Amended Complaint, ¶ 17, Docket # [14]. The "implied duty of good faith" is present in "every contract." *Uptown Heights Assocs. v. Seafirst Corp.*, 320 Or 638, 645 (1995). Thus one necessary element of a claim for breach of this implied duty is that there is some contract to which the duty can apply. Paulson's claim for relief for breach of good faith and fair dealing fails because Paulson does not allege the existence of any such contract. Paulson only asserts that Defendants made a series of "promises" to Paulson. This allegation of "promises" is not an allegation of a valid contract.

/ / /

/ / /

Page 12    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
-          MEMORANDUM IN SUPPORT OF MOTION TO
           DISMISS
           PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT  7
PAGE  16  OF  21

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 100 of 133

Because Paulson does not allege the existence of any contract to which the implied duty of good faith applies, Paulson fails to state a claim for relief for breach of the covenant of good faith and fair dealing, and the Court should dismiss Count 5 under Rule 12(b)(6).

**G.    The Court Should Dismiss Count 9, Conspiracy, Because Conspiracy Is Not A Cause of Action.**

Paulson alleges "conspiracy" as a claim for relief on the grounds that the Defendants conspired to defraud Paulson "out of interest, fees, costs and other monies by requiring the Plaintiff to list his property for sale with Defendant's agent Keefe...." Second Amended Complaint, ¶ 25, Docket # [14]. Under Oregon law, conspiracy "is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators." *Osborne v. Fadden*, 225 Or. App. 431, 437, 201 P.3d 278 (2009). *See also Bonds v. Landers*, 279 Or. 169, 174, 566 P.2d 513 (1977). The Oregon Supreme Court has ruled that alleging conspiracy as a separate tort is "counter to all accepted definitions [of conspiracy]." *Bliss v. Southern Pacific Co.*, 212 Or. 634, 642, 321 P.2d 324 (1958).

In Count 9 Paulson alleges conspiracy as a separate and independent cause of action. Because conspiracy is not a cause of action or basis for recovery, the Court should dismiss that claim under Rule 12(b)(6) for failure to state a claim upon which the Court can grant relief.

**H.    The Court Should Dismiss Count 10, Injunction, Because Paulson Fails To Allege The Necessary Elements Of Injunction.**

Paulson seeks to enjoin Fairway from foreclosing on his property on the basis that the property is listed with the National Register of Historic Places. In order to state a claim for relief for injunction, one must show "(1) the likelihood of substantial and immediate irreparable injury, and (2) the inadequacy of remedies at law." *G.C. & K.B. Invs. v. Wilson*, 326 F.3d 1096, 1107 (9th Cir. 2003). Paulson asserts that irreparable injury will occur to Paulson's property because after the foreclosure, Paulson will not be able to protect that property. Second Amended Complaint, ¶ 27, Docket # [14]. Paulson alleges nothing about how his inability to protect the

Page 13   FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
-              MEMORANDUM IN SUPPORT OF MOTION TO
               DISMISS
               PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT   7
PAGE   17   OF   21

property will result in its damage. In addition, after the foreclosure, the property will no longer

be Paulson's to protect, so he can assert no injury to himself for actions that occur after the

property is foreclosed upon. Paulson's claim for injunction also fails because he states nothing

about the inadequacy of any other remedy at law.

For the above reasons, the Court should dismiss Paulson's claim for injunction under

Rule 12(b)(6).

### I.   The Court Should Dismiss Count 13, Interference With Prospective Economic Advantage, Because Paulson Fails To Allege Facts Sufficient To Constitute That Claim For Relief.

Paulson alleges that the Defendants interfered with his prospective economic advantage

when they interfered with the sale of the M.E. Blanton House. Second Amended Complaint, ¶

34, Docket # [14]. To state a claim for relief for such a tort, a plaintiff must allege "(1) the

existence of a valid business relationship or expectancy, (2) intentional interference with that

relationship, (3) by a third party, (4) accomplished through improper means or for an improper

purpose, (5) a causal effect between the interference and damage to economic relations, and (6)

damages." *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 651, 891 P.2d

639 (1995).

Paulson's claim for relief for intentional interference fails because he does not allege

facts sufficient to fulfill elements 2, 4, or 5. Paulson does not allege that Defendants

intentionally interfered with the proposed sale of the Blanton House. Paulson does not allege

that the Defendants accomplished the interference through improper means or for an improper

purpose. Paulson also fails to allege the existence of a causal effect between the interference and

his alleged damages. Because Paulson fails to allege these necessary elements of an intentional

interference of prospective economic advantage claim, the Court should dismiss this claim under

Rule 12(b)(6).

/ / /

/ / /

Page 14 -   FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS
PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT   7
PAGE   18   OF   21

**J.** **The Court Should Dismiss Count 14, Usury, Because Paulson Fails To State A Claim For Relief For Usury.**

Paulson alleges that the Defendants committed usury in violation of ORS 84.010 [sic].

*See* Second Amended Complaint, ¶ 36, Docket # [14]. Under Oregon's usury law, no one shall:

(a)   Make a business or agricultural loan of *$ 50,000 or less* at an annual rate of interest exceeding the greater of 12 percent, or five percent in excess of the discount rate, including any surcharge on the discount rate, on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district where the person making the loan is located, on the date the loan or the initial advance of funds under the loan is made; or

(b)   Make a loan of *$ 50,000 or less*, except a loan made under paragraph (a) of this subsection, at an annual rate of interest exceeding the greater of 12 percent, or five percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district where the person making the loan is located, on the date the loan or the initial advance of funds under the loan is made.

ORS 82.010(3) (emphasis added). Thus, to state a claim for usury, one must allege a business or

agricultural loan for $50,000 or less. The loan to Huber-Wheeler was for $400,000. As a result,

Paulson fails to state a claim for usury, and the Court should dismiss that claim under Rule

12(b)(6).

**K.** **The Court Should Dismiss Counts 16 and 17, Accord and Satisfaction and Illegal, Because These Are Affirmative Defenses And Not Causes Of Action.**

Paulson alleges "accord and satisfaction" and "illegal" as causes of action based on the

Defendants' conduct regarding the Loan Documents. Accord and satisfaction and illegal are not

independent causes of action. They are affirmative defenses. FRCP 8(c) (listing affirmative

defenses including accord and satisfaction and illegal). Because accord and satisfaction are

affirmative defenses, the Court should dismiss Counts 16 and 17 under Rule 12(b)(6).

### IV.   CONCLUSION

The Second Amended Complaint contains a variety of claims for relief against the

Defendants, and for a large number of those claims, Paulson is not the real party in interest. In

addition, Paulson's claims that arise under federal statutes fail because Paulson cannot allege,

Page 15   FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
        MEMORANDUM IN SUPPORT OF MOTION TO
        DISMISS
        PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT   7
PAGE   19   OF   21

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

under any set of facts, that the Loan Agreement was a consumer loan or for anything other than

business purposes.  Many of Paulson's claims also fail because they are not claims at all, or

because Paulson does not allege enough elements to state the claims.  The Court should therefore

dismiss Counts 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 of the Second Amended

Complaint.

Dated this 20th day of March, 2009.

SCHWABE, WILLIAMSON & WYATT, P.C.


By:  s/Anna M. Smith
Craig G. Russillo, OSB #973875
Anna M. Smith, OSB #054424
Of Attorneys for Defendants
Fairway America Corporation, FHLF, LLC,
Matt Burk, and Wells Fargo Foothills


Page 16    FAIRWAY'S, FHLF'S, BURK'S, AND WELLS FARGO'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS
PDX/116063/160139/ASM/3225709.10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

EXHIBIT ___7___
PAGE _20_ OF _21_

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2009, I served the foregoing

MEMORANDUM IN SUPPORT OF DEFENDANT FAIRWAY AMERICA

CORPORATION'S, FHLF, LLC'S, MATT BURK'S, AND WELLS FARGO FOOTHILLS'

MOTION TO DISMISS COUNTS 1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 AND 18 OF

THE SECOND AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL

PROCEDURE 12(b)(6) on the following parties:

> Lauren Paulson **(via First Class Mail)**
> 3980 SW 170th Avenue
> Aloha, OR 97007
> *Pro Se Plaintiff*
>
> Geana M. Van Dessel **(via electronic service)**
> Leslie R. Weatherhead
> Witherspoon, Kelley, Davenport & Toole P.S.
> 422 West Riverside Avenue, Suite 1100
> Spokane, WA 99201-0300
> *Attorneys for Defendant Sterling Savings Bank*
>
> Calliste Korach **(via First Class Mail)**
> Hoffman, Hart & Wagner, LLP
> 1000 SW Broadway, 20th Floor
> Portland, OR 97205
> *Attorneys for Defendant Franki Keefe*
>
> Susan K. Eggum **(via electronic service)**
> Paul A. Berg
> Cosgrave Vergeer Kester LLP
> 805 SW Broadway, 8th Floor
> Portland, OR 97205
> *Attorneys for Defendant Joel Parker*

by:

| | |
|---|---|
| ☐ | U.S. Postal Service, ordinary first class mail |
| ☐ | U.S. Postal Service, certified or registered mail, return receipt requested |
| ☐ | hand delivery |
| ☐ | facsimile |
| ☐ | electronic service |
| ☒ | other (specify) <u>as indicated above</u> |

<u>s/ Anna M. Smith</u>
Anna M. Smith

Page 1 -   CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 2000
Portland, OR 97204
503-222-9981

PDX/116063/160139/ASM/3225709.10

EXHIBIT 7
PAGE 21 OF 21



Lauren Paulson, Pro Se
3980 S. W. 170th Ave.
Aloha, OR 97007
971 219 5859
Defendant

1
2
3
4
5
6        UNITED STATES DISTRICT COURT FOR THE
7                   DISTRICT OF OREGON
8    FHLF,LLC, an Oregon limited liability
     company,
9
10                Plaintiff              Case No. 3:10-CV-48-MO
11   vs.                                 DEFENDANT'S ANSWER,
12   LAUREN PAULSON, an individual; and  AFFIRMATIVE DEFENSES, AND
     all occupants                       COUNTERCLAIMS TO
13                                        PLAINTIFF'S COMPLAINTS
14   -----------------------------------------------------------------
15   LAUREN PAULSON,
                 Plaintiff,              THIRD PARTY COMPLAINT
16
17   v.                                  (Federal Truth in Lending Act)
                                         15 USC §1601 et seq.
18   FAIRWAY AMERICA
     CORPORATION, fka                    Demand for Jury Trial
19   FAIRWAY COMMERCIAL
     MORTGAGE CORPORATION,               Class Action -- FRCP 23
20   Oregon corporations, MATTHEW W.
     BURK, aka MATT BURK,
21   STERLING SAVINGS BANK,
     a Washington corporation,
22   WELLS FARGO FOOTHILLS, a
     California corporation, JOAN DOE,
23   a mortgage broker,
     FRANKI KEEFE, a real estate broker,
24   SKYLANDS INVESTMENT CORP-
     ORATION, an Oregon corporation,
25   Manager, FHLF, LLC,CRAIG RUSSILLO
     and JOEL PARKER
26                Defendants,

Page

EXHIBIT 8
PAGE 1 OF 24

LAUREN PAULSON
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

**ANSWER**

1      For their Answer, Affirmative Defenses, Counterclaims and Third Party

2  Complaint as to the claims of the Plaintiff, Defendant admits, denies, sets forth

3  affirmative defenses, counterclaims and third party complaints as follows:

4

5                      1.

6      Denies paragraph 1, denies paragraph 2, except admits Paulson filed for

7  Chapter 11 bankruptcy on April 9, 2009 in the United States Bankruptcy Court for

8  the District of Oregon, Case No. 09-32439 in paragraph 2. Denies paragraph 3,

9  denies paragraph 4, denies paragraph 5, denies paragraph 6, denies paragraph

10  7, denies paragraph 8, denies paragraph 9 and denies paragraph 10 of each

11  complaint and the denies the whole thereof in each complaint except as to where

12  specifically admitted herein. Defendant incorporates his answers here as if set

13  forth in each and every complaint.

14                      2.

15             **AFFIRMATIVE ALLEGATIONS**

16             FIRST AFFIRMATIVE DEFENSE

17               (Failure to State a Claim)

18      As to all of Plaintiff's claims, Plaintiff has failed to state a claim upon

19  which relief can be granted.

20             SECOND AFFIRMATIVE DEFENSE

21               (Statute of Limitations)

22      Some or all of Plaintiff's claims are barred by the applicable statute

23  of limitations.

Page

EXHIBIT __8__
PAGE __2__ OF __24__

**LAUREN PAULSON**
2
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

THIRD AFFIRMATIVE DEFENSE

(Illegality)

Some or all of Plaintiff's claims are illegal under contract law or Usury.

FOURTH AFFIRMATIVE DEFENSE

(Failure of Consideration)

Some or all of Plaintiff's claims failed due to lack of or failure of consideration.

FIFTH AFFIRMATIVE DEFENSE

(Accord and Satisfaction)

Some or all of Plaintiff's claims were settled based on an accord and satisfaction.

SIXTH AFFIRMATIVE DEFENSE

(Discharge in Bankruptcy)

Some or all of Plaintiff's claims were discharged in bankruptcy

SEVENTH AFFIRMATIVE DEFENSE

(Bankruptcy automatic stay)

Some or all of Plaintiff's claims are or were stayed in bankruptcy and Plaintiff's failed to obtain a proper stay in the bankruptcy proceedings.

EIGHTH AFFIRMATIVE DEFENSE

(Payment)

Some or all of Plaintiff's claims were paid by Defendant

EXHIBIT ___8___
PAGE _3_ OF _24_

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    NINTH AFFIRMATIVE DEFENSE

2    (Rescission)

3    Some or all of Plaintiff's claims were rescinded by the parties.

4    TENTH AFFIRMATIVE DEFENSE

5    (Redemption)

6
7    Some or all of Plaintiff's claims are eligible for redemption under the

8    law.

9    ELEVENTH AFFIRMATIVE DEFENSE

10    (Unconstitutionality)

11    Some or all of Plaintiff's claims are unconstitutional under state and

12    federal law.

13

14    TWELFTH AFFIRMATIVE DEFENSE

15    (Fraud)

16    Some or all of Plaintiff's claims are based on intentional fraud by

17    the Defendant.

18    THIRTEENTH AFFIRMATIVE DEFENSE

19    (Release)

20
21    Some or all of Plaintiff's claims are released.

22    FOURTEENTH AFFIRMATIVE DEFENSE

23    (Promissory Estoppel)

24    Some or all of Plaintiff's claims are barred by promissory estoppel

25

26                                        EXHIBIT  8

Page                                      PAGE  4  OF  24

LAUREN PAULSON

3960 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 109 of 133

1

2          FIFTEENTH AFFIRMATIVE DEFENSE

3                        (Waiver)

4          Some or all of Plaintiff's claims are barred by waiver.

5                          3.

6          COUNTERCLAIMS AND THIRD PARTY CLAIMS

7

8                       COUNT ONE

9          (Violation of Federal Truth in Lending Act)

10                  15 USC §1601 et seq,

11              I. Preliminary Statement

12

13          1.  These counterclaims and third party claims seek declaratory relief,

14   injunctive relief, equitable relief, compensatory damages, statutory damages,

15   punitive damages, and costs, attorney fees and other appropriate relief for the

16   violation, inter alia, by the Defendants of the Federal Truth in Lending Act.

17                    II. Jurisdiction

18          2.  These actions arise, inter alia, under the Federal Truth in Lending Act

19   (TILA), 15 USC 1601 et seq. (The "Act") and thus this Court has subject matter

20   jurisdiction.

21                      III. Venue

22          3.  These actions are properly in the United States District Court for the

23   District of Oregon, pursuant to 29 USC § 1391(b), because the claims arose in

24   this judicial district and because the violation of the Truth in Lending Act and

25   other federal laws was committed in this judicial district.

26

Page

EXHIBIT   8
PAGE   5   OF  24

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

### IV. Parties

4. The Third Party Plaintiff is a local consumer and at all times material hereto is a citizen of the United States and a resident of the State of Oregon, County of Washington. Paulson is the only interested party in the claims of the Plaintiff and does not represent anyone else's interest in either the inactive former LLC nor Paulson's testamentary trust. There are no other party's interests anywhere other than Paulson's in the claims asserted herein except as found in the class action allegations. In that regard, Paulson is admitted to practice in this judicial district as an attorney.

The Plaintiff is described in relevant documents as follows: FHLF, LLC an Oregon limited liability company Skylands Investment Corporation an Oregon Corporation, Manager, by Matthew W. Burk, President. All references to "Fairway" herein include all of these entities plus any Fairway affiliated company including Fairway Commercial Mortgage Corporation and Fairway America Corporations, and successors and assigns.

### CLASS ACTION ALLEGATIONS

The Third Party Plaintiff is representative of a class as defined by FRCP 23 and brings this action on behalf of the entire class. The class is so numerous that joinder of all of its hundreds (or thousands) of members is impracticable. There are questions of law and fact common to the class, the claims of the Third Party Plaintiff are typical of the claims of the class, and the Third Party Plaintiff will fairly and adequately protect the interests of the class. The class consists of all the borrowers of these Third Party Defendants from 1997 to present. The class, upon information and belief, the Third Party Defendants have a minimum of approximately one hundred and fifty (150) such borrowers but this minimum number may actually be in the thousands. The Third Party Plaintiff alleges a common course of similar misrepresentations against

EXHIBIT 8
PAGE 6 OF 24

LAUREN PAULSON

3990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1   these defendants amounting to fraud by aiding and abetting predatory lending

2   through standardized centrally-orchestrated marketing techniques resulting in a

3   large class of borrowers entering into loan agreements they would not have

4   entered had they known the true terms.  Were it not for Sterling and Wells

5   Fargo's "warehouse" credit line loans, Fairway would not have been able to

6   continue to fund its fraudulently obtained loans from the class.  These loans

7   predatory practices were further aided and abetted by Keefe, Burk, Russillo and

8   Parker as described below.

9       5.  At all times material hereto, Third Party Defendants "Fairway",

10   "Sterling", "Wells Fargo Foothills", Keefe, Russillo and Parker are transacting

11   business in the State of Oregon. At all times material hereto the foregoing Third

12   Party Defendants and Matt Burk, Fairway's president, operate together as part of

13   a common enterprise.  At all times material hereto, these defendants and each of

14   them knowingly aided and abetted the fraudulent contractual scheme engaged in

15   by Fairway giving substantial assistance or encouragement to Fairway in these

16   predatory lending practices and as such are subject to third party liability for

17   Fairway's fraud under state and federal law.  These Third Party Defendant's

18   business model was to originate mortgages to consumer borrows such as the

19   Third Party Plaintiff then pledge them to a secondary lender such as Sterling or

20   Wells Fargo or other financial institution in return for a loan under a revolving line

21   of credit.  Craig Russillo and Joel Parker's role was to design the model and draft

22   or approve the legal documents for Fairway designed to "dehorse" or use

23   fraudulent legal process for Fairway to obtain real property whose owner was rich

24   in the value of land, but poor in cash.  Keefe's role was to work with Fairway to

25   feign an effort to sell the distressed real estate in order to perfect the financial

26   default so Fairway would come into titled ownership of the consumer's property.

Page   Joel Parker's further role in conjunction with Fairway's employee, Chris Cobb,

EXHIBIT ___8___
PAGE __7__ OF _24_

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1   was to secure "Forbearance Agreement", drafted by Parker in 2008 which

2   required Paulson to give up any and all legal rights he may have in the Fairway

3   contracts.  Parker's further role in the scheme was to require the debtor to not

4   only give up any present defenses, but also to require the debtor to give up any

5   defenses or claims he may have against Fairway in the future all to ensure that

6   Fairway secures titled ownership of the debtor's property.  All of these

7   representations by these Third Party Defendants were intentional, false, material,

8   personally observed by the Third Party Plaintiff, unknown to the Third Party

9   Plaintiff at the time he secured this loan, relied upon by the Third Party Plaintiff to

10  his detriment having had a right to rely on them and caused the foreseeable

11  harm to the Third Party Plaintiff as described herein.

12        6.  At all times material hereto, Defendant Joan Doe is a licensed real

13  estate broker transacting business on behalf of Fairway.  At all times material

14  hereto, Defendant Keefe is a licensed real estate agent and doing business in

15  the State of Oregon for Fairway.  At all times material hereto, Defendant Joel

16  Parker and Craig Russillo are licensed attorneys practicing law in the State of

17  Oregon.

18                                    **V.  Facts**

19        7.  At all times material hereto Paulson was the owner of that certain

20  property known as "The M.E. Blanton House" and adjoining property.  As

21  putatively described in the loan documents Paulson entered into a loan with

22  Fairway on or about November, 2005.  Fairway advertises, offers, extends and

23  sells first mortgage loans on small businesses and consumer's homes. Fairway

24  styles itself as a niche lender catering to the "subprime" loan market which are

25  customers with poor or insufficient credit histories, records, or ratings who might

26  experience difficulty securing conventional financing.  Fairway charges

Page  consumers substantial prepaid finance charges such as loan origination fees,

EXHIBIT __8__
PAGE __8__ OF __24__

**LAUREN PAULSON**
8
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 113 of 133

1   document fees, underwriting fees, loan processing fees, broker's fees
2   (commissions) and other fees.  These charges typically total between ten and
3   thirty percent of the amount financed.  As part of Fairway's marketing campaign
4   Fairway targets financially vulnerable consumers including individuals who have
5   significant equity in their properties and a "...pressing need for a loan".  Fairway
6   partners with investors such as Sterling and Wells Fargo Foothills in charging
7   10% to 14% interest on loans with a balloon payment ranging from six (6) months
8   to five (5) years.  Most Fairway loans are interest only monthly payments with a
9   balloon payment at the end of the term.  According to Fairway, these loans can
10  be "assess(ed) over the phone in 10-15 minutes by Fairway and if it looks
11  promising (Fairway) can issue a loan approval within 24 hours."  Fairway does
12  not need to work with "...an approved broker" according to their promotional
13  materials.  "Protecting the broker's fee and assuring (the broker) gets paid is
14  (Fairway's) number 1 priority."  The sales presentations and loan documents by
15  Fairway and agents contain false or misleading statements that cause
16  consumers to be deceived about the material terms of the loan, or fails to make
17  required disclosures and thereby misleads consumers about the meaning of the
18  actual and material information required to be disclosed by Section 128 of The
19  Act, 15 USC § 1601 et seq.,1638, and Section 226.18 of Regulation Z, 12 CFR
20  §226.18 ("TILA disclosure statement").  Fairway does not provide any of the
21  required information under this Act nor does it identify any of the five factors
22  required by TILA to determine if the loan is a business loan.  Therefore, Fairway
23  misleads consumers about the amount financed, the annual percentage rate, the
24  interest rate on the loan, along with other costs and fees.  Moreover, penalty
25  interest rates and other charges similarly are not disclosed to the borrower in the
26  form and in a manner required by law.

Page

EXHIBIT 8
PAGE 9 OF 24

LAUREN PAULSON

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    As aforesaid Fairway also fails to supply the information required by nor

2    does Fairway follow the procedures of the **Real Estate Settlement Procedures**

3    **Act** (RESPA) 12 USC §2601(b) passed in 1974 which was enacted to curb

4    undisclosed kickbacks between lenders and brokers (or others) who "steered"

5    borrowers whose circumstances pressed them to the subprime mortgage market.

6    RESPA requires lenders to provide a good faith estimate for all of the

7    approximate costs of a particular loan along with a HUD-1 or 1A prior to or at the

8    closing of the transaction which was not done here.  The purpose of the act is to

9    allow the borrower to know specifically the costs of the loan and to whom the

10    fees are being allotted which was not done here.

11    Further, the Fairway loans violate the **Home Ownership and Equity**

12    **Protection Act of 1994** (HOEPA) [*See*, Riegle Community Development and

13    Regulatory Improvement Act, Pub. L. No. 103-325, § 151-58, 108 Stat. 2190-98

14    (1994) enacted as a part of the federal Truth in Lending Act (TILA) to curb a

15    pattern of abuses in the subprime mortgage market].  This act requires certain

16    additional disclosures and protections for certain high-interest and high-fee equity

17    loans including calculations which were not done here by Fairway even though

18    applicable.

19    Fairway's practices aforesaid constitute deceptive acts or practices in or

20    affecting commerce in violation of Section 5(a) of the Federal Trade Commission

21    Act, 15 USC§ 45(a) justifying federal agency intervention and therefore, a copy of

22    this complaint is being sent to the Federal Trade Commission.    [*See* Federal

23    Trade Commission v. First Alliance Mortgage Company, et al., Civil Case No.

24    SACV 00-964 DOC (Eex) in USDC  Central District of California, Southern

25    Division (2000), and In re:  First Alliance Mortgage Company, Case No. 04-

26    55396/04-55942/DC No CV-01-971-DOC/CV-01-01111-DOV  in the United

Page    States Court of Appeals for the Ninth Circuit (2006)].

EXHIBIT___8__
PAGE_10_ OF 24

LAUREN PAULSON

3980 SW 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1        On or before November, 2005 Defendant Joan Doe mortgage broker

2  directed Paulson to Fairway, as part of the predatory loan practice known as

3  "steering" (the practice of directing borrowers "...with pressing loan needs" to

4  lenders with extraordinarily high interest rates or finance charges relative to the

5  loan risk).

6       Third Party Plaintiff Paulson and Third Party Defendant Fairway executed

7  certain loan documents which did not comply with TILA, RESPA or HOEPA.

8  Fairway did not make the required disclosures, misrepresented the terms of the

9  loan and failed to comply with federal law and state law as aforesaid.  Thus,

10  these Defendants engaged in "yield spread premium" loans which rewards

11  brokers for originating loans at above-market interest rates and excessive other

12  fees and charges with cash payments when the borrower's credit risk does not

13  justify these high interest rates or charges.  A joint task force conducted by the

14  Department of Housing and Urban Development (HUD) and the Department of

15  the Treasury of the United States determined that these subprime mortgage

16  loans aforesaid constitutes predatory lending when loan originators and lenders

17  use fraud, deception, or other manipulative techniques to extend credit in ways

18  *intended to strip borrowers of the equity in their property.*  See Regulation Z

19  (Final Rule (Dec.21, 2001)

20       In 2001, the Schwabe Law Firm now representing Fairway, represented

21  Paulson with respect to the very same property when Paulson's property was

22  being condemned by Washington County for a road widening project.

23      8. Third Party Defendant Fairway is a creditor as defined in Federal

24  Reserve Regulation Z, 12 CFR 226 ("Reg Z") which promulgates the "Act" and is

25  a creditor who regularly extends consumer credit that is subject to a finance

26  charge or is payable by written agreement in more than four installments on

Page  transactions secured by a dwelling.

EXHIBIT __8__
PAGE _11_ OF _24_

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Case 09-32439-rld7   Doc 100-1   Filed 04/27/10

1    9. As a direct and proximate result of Third Party Defendant Fairway's

2  actions and failure to comply with the "Act", Third Party Plaintiff has suffered

3  great economic and other loss in amount of $1,000,000 or such amounts as are

4  proved at trial.

5    10. In addition to the compensatory damages aforesaid, Third Party

6  Plaintiff is entitled to recover statutory damages as provided in the "Act" in an

7  amount equal to twice the amount of the finance charge in the transaction, his

8  reasonable attorney fees and costs.

9                COUNT TWO

10               (Fraud)

11    11. The Third Party Plaintiff incorporates the **"Facts"** alleged above and

12  further alleges that at all times material hereto, the Third Party Defendants made

13  material misrepresentations in said loan documents and otherwise in subsequent

14  contracts outlined below, upon which the Third Party Plaintiff relied to his

15  detriment as was intended by the Third Party Defendants. Said representations

16  aforesaid were false and fraudulent and known to the Third Party Defendants to

17  be false and fraudulently intended to extract further funds from the Third Party

18  Plaintiff illegally pursuant to those representations. The Third Party Defendant's

19  acts constitute aiding and abetting a fraud through the common scheme

20  described above and otherwise described here.

21    In furtherance of said fraud, Third Party Defendants Fairway, FHLF, Burk,

22  Russillo and Parker proffered to Third Party Plaintiff a "Forbearance Agreement"

23  on or about August of 2008 in which these Defendants proposed that Plaintiff

24  give up all his legal rights present, past and future as to these matters. Said

25  agreements aforesaid were unconscionable in the extreme and constituted a

26  fraud on the Third Party Plaintiff and a conspiracy to "dehorse" the Third Party

Page  Plaintiff from his equity interest in the property owned by him.

EXHIBIT ___8___
PAGE _12_ OF _24_

LAUREN PAULSON

1990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1    Third Party Joel Parker was appointed successor trustee to the

2    aforementioned trust deeds on or about November 19, 2008.  Following that

3    appointment, Third Party Defendant Joel Parker became a defendant in Third

4    Party Plaintiff's original federal court complaint, Paulson v. Fairway, et al., Case

5    No. 3:08-CV-00982-ST.  Therefore, Third Party Defendant Joel Parker , as a

6    defendant in the original federal court proceeding was subject to the automatic

7    stay occasioned by Paulson's Chapter 11 bankruptcy filing.  As a further fraud on

8    the Third Party Plaintiff and the courts, Third Party Defendant's Parker and

9    Russillo sought to transfer Third Party Plaintiff's property outside of these federal

10   court proceedings by illegally attempting to hold a nonjudicial foreclosure sale

11   without providing the required notices to the Third Party Plaintiff in accordance

12   with federal and state court law.  Third Party Defendant Parker and Third Party

13   Defendant Russillo acting as Parker's agent then purported to hold a foreclosure

14   sale on Paulson's property without Third Party Defendant Parker's first obtaining

15   relief from the automatic stay obtained in Third Party Plaintiff's aforementioned

16   Chapter 11 bankruptcy filing.

17       12.  As a direct and proximate result of Third Party Defendant's fraud, the

18   Third Party Plaintiff has been damaged in an amount of $1,000,000 or such

19   amounts as are proved at trial.  Plaintiff also seeks punitive damages in an

20   amount to be determined at trial.

21

22                          COUNT THREE

23                       (Oregon Lending Law)

24       13.  At all times material hereto, Third Party Defendant Fairway and their

25   agents violated Oregon's Lending Law, ORS 59.840 to 59.965, by failing to have

26   a license to make said loans within the State of Oregon and by failing to make

Page  the disclosures required by state and federal law when making such loans.

EXHIBIT  8
PAGE 13 OF 24

**LAUREN PAULSON**

3990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1616

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 118 of 133

14.  As a direct and proximate result of Third Party Defendant Fairway's failure, through their agents, to make the required disclosures aforesaid, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial plus statutory damages, attorneys fees and costs.

### COUNT FOUR

(Breach of Contract)

15.  Third Party Defendant Fairway promised, with adequate consideration to provide a bridge loan to Third Party Plaintiff on agreed upon terms on or about February, 2008 and Third Party Plaintiff relied on that promise to his detriment. Fairway subsequently failed to provide said loan as promised.

16.  As a direct and proximate result of Third Party Defendant Fairway's breach of contract, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

### COUNT FIVE

(Breach of Good Faith and Fair Dealing)

17.  Commencing on or about February, 2008 Third Party Defendants Fairway, FHLF, Burk, Russillo and Joel Parker engaged in a subsequent series of promises to the Third Party Plaintiff upon which he relied, when in truth and in fact, Third Party Defendants had no intention of honoring said promises, rather made such promises to ensure foreclosure, enhance their penalty interest rate and fees all to Third Party Plaintiff's detriment.  Said fees and charges were known to be or should have been known to be in violation of state and federal law.

18.  As a direct and proximate result of the Third Party Defendants breach of good faith and fair dealing, Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Plaintiff also seeks punitive damages in an amount to be determined at trial.

EXHIBIT  8
PAGE  14  OF 24

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

COUNT SIX

(Breach of Contract)

19.  On or about July, 2008 Third Party Defendant Fairway and the Third Party Plaintiff orally agreed to the terms of a "Forbearance Agreement".  In reliance on that agreement, the Third Party Plaintiff performed by paying to Fairway $1,500 on or about July 18, 2008 under the specific terms of that oral contract.  On or about August 12, 2008 Fairway notified the Third Party Plaintiff that Fairway would not  honor the terms of the forbearance agreement previously agreed to and honored by Third Party Plaintiff's payment on July 18, 2008 which was accepted and retained by Fairway.

20.  As a direct and proximate result of Third Party Defendant Fairway's acts, the Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT SEVEN

(Breach of Good Faith and Fair Dealing)

21.  The Third Party Plaintiff incorporates paragraph 7,8 and 19 herein as though fully set forth.

22.  As a direct and proximate result of Third Party Defendant Fairway's acts, the Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.  Third Party Plaintiff also seeks punitive damages in an amount to be determined at trial.

COUNT EIGHT

(Promissory Estoppel and Declaratory Relief)

23.  Third Party Plaintiff incorporates paragraph 7, 8 and19 herein as though fully set forth.  At various times in 2008 Fairway promised to cancel and extinguish said loans in their entirety.  Third Party Plaintiff relied on those promises to his detriment.

EXHIBIT  8
PAGE  15 OF 24

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Case 09-32439-rld7   Doc 100-1   Filed 04/27/10

1   24.  As a direct and proximate result of Third Party Defendant Fairway's

2   acts, the Third Party Plaintiff has been damaged in an amount of $1,000,000 or

3   such amounts as are proved at trial.  Third Party Plaintiff also seeks declaratory

4   and equitable relief declaring the aforementioned oral agreements valid,

5   rescinding any and all loan agreements signed in 2005, waiving any and all

6   penalties from February, 2008 forward, declaring said loan agreements

7   unconscionable and other relief according to proof at trial.

8                              COUNT NINE

9                        (Aiding and Abetting a Fraud)

10   25.  The Third Party Plaintiff incorporates the **"Facts"** described above in

11   paragraphs 7 and 8 and further alleges that the Third Party Defendants and each

12   of them entered into a conspiracy to defraud the Third Party Plaintiff out of

13   interest, fees, costs and other monies by requiring the Third Party Plaintiff to list

14   his property for sale with Third Party Defendant's agent Keefe when in truth and

15   in fact they had no intentions of actually selling Third Party Plaintiff's property

16   which would have avoided foreclosure by Third Party Defendant Fairway.  Thus,

17   Fairway could claim to be entitled to additional penalty interest the longer the

18   property did not sell.

19   26.  As a direct result of Third Party Defendant's acts, Third Party Plaintiff

20   has been damaged in an amount of $1,000,000 or such amounts as are proved

21   at trial.  Third Party Plaintiff also seeks punitive damages according to proof at

22   trial.

23                              COUNT TEN

24                              (Injunction)

25   27.  The Third Party Defendant Fairway should be enjoined from any

26   foreclosure proceedings presently being threatened by Defendant Fairway or any

Page   putative foreclosure sale including any claims for possession under said putative

EXHIBIT  8
PAGE 16 OF 24

**LAUREN PAULSON**
16
3960 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1  foreclosure sale for the reasons aforesaid and because notices required by

2  federal and state law were not provided nor given by Fairway nor FHLF, LLC,

3  their agents and assigns.   Said injunction is required because the Third Party

4  Plaintiff's historic property, listed on the National Register of Historic Places will

5  be irreparably harmed.  Any such foreclosure will prevent Third Party Plaintiff

6  from otherwise protecting said unique, historical property.   Third Party Defendant

7  Fairway is equitably estopped from proceeding with foreclosure due to the oral

8  binding forbearance agreement upon which Third Party Plaintiff has made the

9  partial payment which was accepted by Third Party Defendant Fairway.

10                              COUNT ELEVEN

11              (Home Ownership and Equity Protection Act of 1994)

12                          15 USC § 1601 et seq.

13        28.  The Third Party Plaintiff incorporates paragraphs 7 and 8 as though

14  full set forth here.

15        29.  The Third Party Defendant Fairway violated the Home Ownership and

16  Equity Protection Act (HOEPA) of 1994 as aforesaid.  Under this federal law the

17  borrower is entitled to a private right of action not only against the broker and

18  lender, but also against subsequent purchasers or "assignees" which include

19  Sterling and Wells Fargo Foothills.  Under HOEPA the financiers of predatory

20  lending are accountable for the misconduct of their counterparts in the primary

21  mortgage origination market and thus, Sterling and Wells Fargo Foothills are

22  liable for the misconduct of Fairway under this federal law.  The Third Party

23  Plaintiff did not learn of Sterling' and Wells Fargo Foothill's involvement until

24  November of 2008.

25        30.  As a result of Third Party Defendant's failure to follow the

26  requirements of HOEPA Third Party Plaintiff has been damaged in an amount

Page  of$1,000,000 or in such amounts as are proved at trial.

EXHIBIT __8__
PAGE __17__ OF __24__

**LAUREN PAULSON**
17
3990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1

2                        COUNT TWELVE

3                (Real Estate Settlement Procedures Act)

4                   12 USC §2601 et seq.

5      31.  Third Party Plaintiff incorporates paragraphs 7 and 8 as though fully

6 set forth here.

7      32.  The Third Party Defendants have violated the Real Estate Settlement

8 Procedures Act (RESPA) as aforesaid.

9      33.  As a result of Third Party Defendant's violation of RESPA Third Party

10 Plaintiff has been damaged in an amount of $1,000,000 or in such amounts as

11 are proved at trial.

12                    COUNT THIRTEEN

13         (Interference with Prospective Economic Advantage)

14      34.  On or after September, 2008 Mr. Scott Swenson and his wife, Janet

15 Swenson (Swensons) committed to purchase the M.E.Blanton House for

16 $500,000, depending on approvals by governmental agencies, for use as a Tea

17 House and restaurant.  In reliance on Fairway's agreement to this transaction,

18 the Swenson's completed virtually all due diligence requirements and were

19 prepared to proceed with the sale when Matt Burk interfered with the sale

20 because the closing of said sale would disclose to Sterling Savings Bank and

21 Wells Fargo Foothills that the Paulson loan was in arrearage and that fact had

22 not been disclosed to Sterling nor Wells Fargo by Fairway when the latter was

23 obliged to do so under the agreements between them.

24      On or about June, 2009 a stipulated order was rendered in the above

25 referenced Chapter 11 bankruptcy proceedings which called for the Third Party

26 Plaintiff's property to be sold.  Said property was, in fact, sold pursuant to an

Page unconditional cash sale of three of the properties and a reverse mortgage

EXHIBIT __8__
PAGE _18_ OF _24_

LAUREN PAULSON
3960 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Page 18

1   eligibility on the fourth property which would have resolved the interests of the

2   Plaintiff.  Intentionally, and without notice, the Plaintiff held a putative foreclosure

3   sale without providing notices as required by federal and state law.  Said illegal

4   foreclosure sale was intentionally done by the Plaintiffs and Third Party

5   Defendants to vitiate said sales thereby intentionally interfering with the

6   economic advantage to the Third Party Plaintiff provided therein.

7       35.  Three other bona fide sale transactions have been voided by the

8   actions of the Third Party Defendants as aforesaid all to Third Party Plaintiff's

9   economic damage

10      36.  At all times material hereto, there existed a business relationship

11  between the Third Party Plaintiff and the Third Party Defendants herein.  Those

12  Third Party Defendants intentionally interfered with the transactions as described

13  above through improper means and for an improper purpose of "dehorsing" the

14  Plaintiff from his ownership in the property herein described.  As a result of

15  Defendant's actions aforesaid, Plaintiff has been damaged in an amount of

16  $2,000,000 or such amounts as are proved at trial.

17                  COUNT FOURTEEN

18                     (Usury)

19                   ORS 84.010

20      37.  The Third Party Plaintiff incorporates paragraphs 7 and 8 as though

21  fully set forth herein.

22      38.  Said loans described above by Fairway violates common law usury

23  laws and the exceptions are unconstitutional under the Due Process Clause of

24  the U.S. Constitution as applied to the states under the 14th Amendment.

25      39.  As a result of said actions, Third Party Plaintiff has been damaged in

26  an amount of $1,000,000 or such amounts as are proved at trial.

Page

EXHIBIT __8__
PAGE _19_ OF _24_

LAUREN PAULSON
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

**COUNT FIFTEEN**

(Rescission)

40.  The Third Party Plaintiff incorporates paragraphs 7 and 8 as though fully set forth herein.

41.  The loans described aforesaid should be canceled, rescinded, and deemed of no force and effect under the federal and state laws aforesaid.  The Third Party Plaintiff hereby tenders back those funds less adjustments allowed by law.  The Third Party Plaintiff as only recently discovered the violations of these federal and state laws by the Plaintiff and Third Party Defendants.

42.  As a result of said actions, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

**COUNT SIXTEEN**

(Breach of an Accord and Satisfaction)

43.  Third Party Plaintiff incorporates by this reference paragraphs 7, 8,15,17,19 and 23 as though fully set forth herein.

44.  At various times between February, 2008 and November 2008 Fairway orally and in writing declared the aforementioned loans satisfied and entered into an accord under new terms with the Third Party Plaintiff which the Third Party Plaintiff relied upon.  At all times material hereto, the Third Party Plaintiff relied on these agreements to his detriment.  The actions of the Plaintiff and Third Party Defendants and each of them were fraudulently intended to "dehorse" the Third Party Plaintiff from his real property ownership through this common scheme.   The Third Party Defendants then breached the terms of the accord and satisfaction.

45.  As a result of the Third Party Defendants actions aforesaid, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

EXHIBIT __8__
PAGE _20_ OF _24_

**LAUREN PAULSON**
20
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

COUNT SEVENTEEN

(Illegal)

46.  Third Party Plaintiff incorporates by this reference paragraphs 7 and 8 as though fully set forth herein.

47.  The Plaintiff and Third Party Defendant's contracts are illegal under state and federal law and known by them to be illegal and each of them, yet were fraudulently foisted upon the Third Party Plaintiff notwithstanding their knowledge of the illegality.

48.  As a result of Plaintiff and Third Party Defendant's actions aforesaid, Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial.

COUNT EIGHTEEN

(Unfair and Deceptive Trade Practices)

ORS 646.010 et seq.

49.  Third Party Plaintiff realleges paragraphs 7, 8,15,17,19 and 23 as though fully set forth herein.

50.  Plaintiff and Third Party Defendant's actions aforesaid constitute Unfair and Deceptive Trade Practices under Oregon law.

51.  As a result of Plaintiff and Third Party Defendant's actions aforesaid Third Party Plaintiff has been damaged in an amount of $1,000,000 or such amounts as are proved at trial along with attorney fees and statutory damages.

COUNT NINETEEN

(Outrageous Conduct)

52.  Third Party Plaintiff realleges paragraphs 11 through 51 as though fully set forth here.

53.  From February, 2008 until January 25, 2010 the Third Party Defendants and each of them have engaged in conduct intended to inflict mental

EXHIBIT___8
PAGE 21 OF 24

**LAUREN PAULSON**

3990 SW 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

1   distress on the Third Party Plaintiff by engaging in predatory loan practices as

2   above described. The Third Party Defendants practice a scheme of alternatively

3   engaging in litigation tactics intentionally calculated to 'dehorse' people from their

4   properties. This scheme is outrageous in the extreme with no socially redeeming

5   purpose all while these Third Party Defendants are preying on local citizens in

6   financial distress for the sole economic benefit of said Third Party Defendants.

7       54. As a result of Third Party Defendant's actions aforesaid Third Party

8   Plaintiff has been damaged in an amount of $5,000,000 or such amounts as are

9   proved at trial along with attorney fees and costs and disbursements.

10            **VI. Relief Requested**

11       55. WHEREFORE, Third Party Plaintiff respectfully requests this court or

12   jury to:

13       (a.) Assume jurisdiction over this action.

14       (b.) On Third Party Plaintiff's COUNTS ONE THROUGH NINE

15           AND ELEVEN, TWELVE, AND FOURTEEN THROUGH

16           EIGHTEEN to award Third Party Plaintiff damages in the amount

17           of $1,000,000 or such amounts as are proved at trial; On Third

18           Party Plaintiff's COUNT THIRTEEN to award Third Party Plaintiff

19           damages of $2,000,000 or such amounts as are proved at trial.

20           On Third Party Plaintiff's NINETEENTH COUNT to award Third

21           Party Plaintiff $5,000,000 or such amounts as are proved at trial.

22       (c.) To enjoin the Third Party Defendants from any and all

23       foreclosure proceedings on said property unless and until there

24       is a determination on Third Party Plaintiff's COUNTS ONE

25       through NINETEEN. To declare the putative foreclosure sale of

26       September 25, 2009 or any other alleged foreclosure sale of

Page       Third Party Plaintiff's properties null and void.

EXHIBIT   8
PAGE  22 OF 24

**LAUREN PAULSON**

3990 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1619

22

Case 09-32439-rld7    Doc 100-1    Filed 04/27/10

1           (d.) To award Third Party Plaintiff's costs and attorney fees.

2           (e.) To grant such other equitable relief or other relief as it may

3    deem just and proper.

4           (f.) To dismiss Plaintiff's claims in their entirety with prejudice and

5    with costs and attorney fees to Third Party Plaintiff

6           DATED this 25th day of January, 2010

7

8                                    LAUREN PAULSON Pro Se

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page

EXHIBIT __8__
PAGE __23__ OF __24__

**LAUREN PAULSON**
3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 10
Page 128 of 133

1

2                         CERTIFICATE OF SERVICE

3        I, Lauren Paulson certify that on this day, I served my DEFENDANT'S
4   ANSWER AND THIRD PARTY COMPLAINT to the following parties by:

5        1.    Anna Helton, Attorney at Law, 1211 SW 5th Ave., #1900
6               Portland, Oregon 97204 Hand Delivery

7        2.    Leslie R. Weatherhead, Attorney at Law, 422 West Riverside Ave,
                #1100 Spokane, WA 99201-0300 U.S. Postal Service
8
9        3.    Paul A. Berg, Attorney at Law, 805 SW Broadway, 8th Flr.,
                Portland, OR 97205 Hand Delivery
10
11       4.    Calliste Korach, Attorney at Law, 1000 SW Broadway, 20th Flr.,
                Portland, OR 97205 Hand Delivery
12
13       Dated this 25th day of January, 2010
14                                            _Lauren Paulson_
                                              Lauren Paulson
15

16

17

18

19

20

21

22

23

24

25

26                                            EXHIBIT___8___
Page                                          PAGE_24_OF_24_

**LAUREN PAULSON**

3980 S.W. 170TH AVE.
ALOHA, OREGON 97007
TELEPHONE (503) 591-1819

**S&W** | **SCHWABE, WILLIAMSON & WYATT**
ATTORNEYS AT LAW

Pacwest Center, 1211 SW 5th Ave., Suite 1900, Portland, OR 97204 | Phone 503.222.9981 | Fax 503.796.2900 | www.schwabe.com

CRAIG G. RUSSILLO
Admitted in Oregon and Washington
Direct Line: 503-796-2092
E-Mail: crussillo@schwabe.com

February 4, 2010

CONFIDENTIAL SETTLEMENT STATEMENT

Amy E. Mitchell
Attorney at Law
P.O. Box 2289
Lake Oswego, OR  97035

Re:    Resolution of Paulson Claims
Our File No.: 116063-160139

Dear Amy:

As we discussed, our office represents FHLF, LLC.  The purpose of our telephone conversation last week was to discuss the resolution of certain claims asserted on behalf of Lauren Paulson, individually or on behalf of entities that he controls, against FHLF and others. Before I set forth our offer, I want to give you a brief history of this dispute.

On November 28, 2005, Fairway Commercial Mortgage Corporation ("Fairway") made a business loan (the "Loan") to Huber-Wheeler Crossing LLC ("HWC").  A copy of the Loan Agreement is attached as Exhibit 1.  HWC is a single-member, Oregon limited liability company, with Mr. Paulson as the sole member.  To secure HWC's repayment of the Loan, Fairway was granted two trust deeds ("Trust Deeds") over certain real property located in Washington County ("Property")[1].  HWC was the grantor under one Trust Deed; the grantor under the other Trust Deed was Lauren Paulson, Trustee of The Lauren Paulson Trust Agreement.  Copies of the Trust Deeds are collectively attached as Exhibit 2.  Fairway's rights under the Trust Deeds were assigned to FHLF.

In 2008, HWC was unable to make the payments under the Loan, which resulted in FHLF initiating non-judicial foreclosure proceedings.  Prior to the sales, Mr. Paulson, acting as a representative of HWC, attempted to negotiate a forbearance agreement with FHLF.  The parties were unable to reach an agreement, primarily because Mr. Paulson would not agree to release

---

[1] The Property is actually made up of four separate tax lots. For ease of reference, the four properties are collectively referred to as the Property.

Portland, OR  503.222.9981 | Salem, OR  503.540.4262 | Bend, OR  541.749.4044
Seattle, WA  206.622.1711 | Vancouver, WA  360.694.7551 | Washington, DC  202.488.4302

PDX/116063/160139/CGR/5580325.1

EXHIBIT   9
PAGE   1   OF   4

language contained in the forbearance agreement. Mr. Paulson repeatedly told FHLF counsel
that he did not have any claims against FHLF and, thus, a release was not necessary. When
negotiations concluded without the execution of a forbearance agreement, mere days later, on
August 21, 2008, Mr. Paulson, purporting to act on behalf of HWC, sued FHLF and others,
including FHLF's then counsel, Joel Parker, in federal court in Oregon ("Lawsuit"). A copy of
the Second Amended Complaint filed by Mr. Paulson is attached as Exhibit 3.

    In the Lawsuit, Mr. Paulson claimed to represent HWC, even though Mr. Paulson is a
now-disbarred lawyer.[2] The caption reads that Mr. Paulson is acting as "Trustee and Operating
Manger of Huber-Wheeler Crossing, LLC (inactive). In the Lawsuit, Mr. Paulson made
numerous, bizarre claims against FHLF and others. Mr. Paulson has asserted three federal
claims: Violation of the Truth in Lending Act, Home Ownership and Equity Protection Act of
1994, and Real Estate Settlement Procedure Act. Mr. Paulson has also alleged a claim for
fraudulent inducement and various contractual claims. As will be explained below, all claims are
without merit and FHLF is confident that they will be dismissed.

    Despite the Lawsuit, FHLF continued with the non-judicial foreclosures of the Trust
Deeds. In a desperate attempt to stop the foreclosure sales, Mr. Paulson filed a motion for TRO.
The day before the hearing, Mr. Paulson transferred the Property into his own name and filed a
chapter 11 bankruptcy. The chapter 11 was filed on April 9, 2009. As a result of the
bankruptcy, Judge Stewart (the judge assigned to the Lawsuit) stayed all proceedings in the
Lawsuit.

    After Mr. Paulson filed his chapter 11, FHLF filed a motion for relief from stay on the
grounds, in part, that there was no equity in the Property and the Property was not necessary to
an effective reorganization. Rather than go to hearing, Mr. Paulson stipulated to relief from stay.
Attached as Exhibit 4 is a copy of the Stipulated Order for Relief ("Order"). Under the Order,
relief from stay was immediately granted but Mr. Paulson was given until August 31, 2009 to
sell the Property. If he did not, FHLF would be entitled to hold its foreclosure sales. Mr.
Paulson did not finalize a sale by the end of August. Despite its ability to hold a foreclosure sale
of the Property, FHLF gave Mr. Paulson additional time to close a sale of the Property, but Mr.
Paulson was unable to do so. FHLF waited until September 25, 2009, at which time FHLF held
a foreclosure sale and purchased the Property via a credit bid. Mr. Paulson did not attend the
sale. FHLF then gave Mr. Paulson until November 29, 2009 to vacate the Property.

    After FHLF purchased the Property, Mr. Paulson converted his chapter 11 to his current
chapter 7. In an abundance of caution, FHLF sought and obtained an order for relief from the
automatic stay to initiate FED proceedings to evict Mr. Paulson from the Property. On January
13, 2010, FHLF filed FED proceedings in Washington County. Before the first appearance in
those cases, Mr. Paulson filed a "Petition for Removal," whereby he purported to remove the
FED cases into the Lawsuit. Attached as Exhibit 5 is a copy of the "Petition for Removal." Mr.
Paulson's attempted removal is procedurally and substantively defective for a number of reasons.
Suffice it to say, Mr. Paulson has no right to remove the FED cases to federal court.

---

[2] At the time the Lawsuit was filed, Mr. Paulson's license was suspended.

**S·W**

EXHIBIT 9
PAGE 2 OF 4

Although the "Petition for Removal" listed the case number in the Lawsuit, he has managed to obtain a new case number and has filed a Third-Party Complaint against all of the defendants in the Lawsuit, asserting most of the same claims ("Second Lawsuit"). In the Second Lawsuit, Mr. Paulson has seen fit to sue me, personally. A copy of the Third-Party Complaint is attached as Exhibit 6.

All of Mr. Paulson's claims are without merit and will be ultimately dismissed. A brief discussion of the claims follows. As further support for FHLF's position regarding Mr. Paulson's claims, attached as Exhibit 7 is FHLF's Motion to Dismiss filed in the Lawsuit.

- Mr. Paulson was not a party to the business loan between Fairway and HWC, he lacks the right to demand relief under its terms. Therefore, his claims for Fraud, violation of Oregon Lending Law, Promissory Estoppel, Usury, Rescission, Accord and Satisfaction, Unfair Trade Practices, Breach of Contract, Violation of the Truth in Lending Act, Home Ownership and Equity Protection Act of 1994, and Real Estate Settlement Procedure Act all address the loan agreement under which he has no right to recover. Those claims will be dismissed.

- Mr. Paulson asserts three federal claims: Violation of the Truth in Lending Act, Home Ownership and Equity Protection Act of 1994, and Real Estate Settlement Procedure Act. These claims are unavailable to him because these federal statutes only provide protection to consumers and transactions principally for a personal, family, or household purpose. The whole case has arisen out of a business loan made to an entity that was supported by an affidavit executed by Mr. Paulson at the time of the loan that none of the funds were to be used for a personal, family, or household purpose. Even if these federal statutes somehow protected Mr. Paulson, however, these claims are time barred as a matter of law.

- In addition to failing to state the requirements for his claim of Fraud, Mr. Paulson asserts that FHLF did not receive relief from the automatic stay of bankruptcy before the foreclosure sale. The Order shows that FHLF did have relief from the stay before proceeding with the foreclosure sale.

- Mr. Paulson's Breach of Good Faith and Fair Dealing claims will not succeed because he failed to allege any contract to which the duty of good faith and fair dealing attaches. Instead, Mr. Paulson alleges that FHLF repeatedly promised to cancel the business loan in its entirety. (His claim for Promissory Estoppel also alleges this promise.) FHLF made no such promise. Similarly, Mr. Paulson's Breach of Contract claims are based on easily refuted factual allegations.

- Mr. Paulson claims that Ms. Keefe, the court approved real estate broker under the Order, was involved in a conspiracy with FHLF to prevent the sale of the Property. This claim is spurious and does not warrant a response.

FHLF is prepared to defend against the claims in the Lawsuit and the Second Lawsuit. It is confident that whatever case remains, the judge handling the matter will see the claims for what they are and dismiss them. That said, FHLF recognizes that it will incur attorney fees

PDX/116063/160139/CGR/5580325.1

S&W

EXHIBIT 9
PAGE 3 OF 4

Amy E. Mitchell        Case 09-32439-rld7    Doc 100-1    Filed 04/27/10
February 4, 2010
Page 4

having to resolve the claims.  Therefore, it wants to explore resolving those claims through a payment to the chapter 7 trustee.  FHLF seeks four things from the chapter 7 trustee: (1) settlement of all claims in the Lawsuit and Second Lawsuit against all defendants; (2) release of any and all claims Mr. Paulson (on behalf of himself and all entities or trusts he controls) had, has, or may have against any defendant named in the Lawsuit or Second Lawsuit, their officers, agents, independent contractors, affiliates, assigns, and attorney; (3) acquisition of all membership units in HWC owned or held by Mr. Paulson; and (4) any interest Mr. Paulson has or had in The Lauren Paulson Trust Agreement.  In exchange, FHLF is willing to pay the chapter 7 trustee the sum of $5,000.00.  This is the amount that FHLF believes it will have to incur to rid itself of the Lawsuit and Second Lawsuit.  Please contact me as soon as possible so we can discuss this matter in greater depth.

Respectfully,

Craig G. Russillo

cc:    Greg Blair

S&W

EXHIBIT  9
PAGE  4  OF  4

Case 09-32439-rld7    Doc 105    Filed 05/13/10

**DISTRICT OF OREGON**
**F I L E D**
**May 13, 2010**

Clerk, U.S. Bankruptcy Court

Below is an Order of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                          )    Case No. **09-32439-rld7**
    **Lauren Paulson**          )
                           )    ORDER APPROVING SETTLEMENT
Debtor.                       )

      This matter came before the Court on Trustee's Motion and Notice of Intent to Settle and

Compromise filed on February 25, 2010 as Doc. #93 (the "Motion"). The Debtor filed an

objection to the Motion on March 18, 2010 as Doc. #97 (the "Objection"). The Court held an

evidentiary hearing on May 7, 2010. The Trustee, Amy Mitchell, appeared Pro Se. The Debtor,

Lauren Paulson, appeared with his attorney, Matthew Arbaugh. Creditor FHLF, LLC appeared

via its attorneys Craig Russillo and Greg Blair.

      Based on the findings on the record, IT IS HEREBY ORDERED that the Debtor's

Objection is overruled and the settlement as described in the Motion is approved.

                      # # #

Presented by:

_/s/ Amy Mitchell_____
Amy Mitchell, Trustee

ORDER APPROVING SETTLEMENT – PAGE 1

Case 09-32439-rld7    Doc 105    Filed 05/13/10

**List of Parties to Receive Copy of Order**
*In re Lauren Paulson*
Case No. 09-32439-rld7

Via regular mail:

       Lauren Paulson
       3980 SW 170th Ave.
       Aloha, OR 97007

       IRS
       1220 SW 3rd M/S O240
       Portland, OR 97204

Via ecf:

- Matthew Arbaugh: matt@fieldjerger.com, koren@fieldjerger.com
- Anna Helton: ahelton@schwabe.com, dgibson@schwabe.com, docket@schwabe.com
- Amy Mitchell: mitchelltrustee@comcast.net, amitchell@ecf.epiqsystems.com
- Alex Poust: apoust@schwabe.com, dsalt@schwabe.com, docket@schwabe.com
- Craig Russillo: crussillo@schwabe.com, dkinonen@schwabe.com, docket@schwabe.com, bankruptcynotices@schwabe.com
- US Trustee, Portland: USTPRegion18.PL.ECF@usdoj.gov

ORDER APPROVING SETTLEMENT – PAGE 2

**Craig G. Russillo, OSB #973875**
crussillo@schwabe.com
**Anna Helton, OSB #054424**
ahelton@schwabe.com
**Andrea M. Barton, OSB #092760**
abarton@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981
Fax 503.796.2900

Of Attorneys for Fairway America Corporation, FHLF,
LLC, Matt Burk and Wells Fargo Foothills

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAUREN PAULSON,** | No. CV-08-982-PK |
| **Plaintiff,** | |
| **vs.** | Defendants Fairway America Corporation, fka Fairway Commercial Mortgage Corporation, FHLF, LLC, Matt Burk, and Wells Fargo Foothills' |
| **FAIRWAY AMERICA CORPORATION, fka FAIRWAY COMMERCIAL MORTGAGE CORPORATION, Oregon corporations, FHLF, LLC, an Oregon corporation, MATT BURK, STERLING SAVINGS BANK, a Washington corporation, WELLS FARGO FOOTHILLS, a California corporation, JOAN DOE, a mortgage broker, FRANKI KEEFE, a real estate broker, and JOEL PARKER, a lawyer,** | **(1) MOTION FOR SUMMARY JUDGMENT** Pursuant to Fed R. Civ. P. 56(b) and **(2) MOTION TO DISMISS** Pursuant to Fed. R. Civ. P. 12(b)(6)  Request for Oral Argument |
| **Defendants.** | |

**LR 7.1 Certificate**

Defendants Fairway America Corporation, fka Fairway Commercial Mortgage

Corporation, FHLF, LLC, Matt Burk, and Wells Fargo Foothills (collectively the "Fairway

Defendants") hereby certify that they made a good faith effort through their counsel to resolve

Page 1 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

this dispute with plaintiff Lauren Paulson but were unable to do so. Counsel for Fairway

Defendants sent Mr. Paulson emails to laurenjpaulson@yahoo.com asking to confer on this

motion but did not hear back from Mr. Paulson. On June 8, 2010, counsel called Mr. Paulson,

but when counsel identified himself Mr. Paulson hung up. Counsel then sent Mr. Paulson a

follow-up email asking him to call if he wanted to confer. Counsel received no call from Mr.

Paulson.

**Motion**

The Fairway Defendants move under Fed R. Civ. P. 56(b) for summary judgment as to all

of Mr. Paulson's claims in this action against all defendants. In support of this motion, the

Fairway Defendants rely on the records and files herein, the Memorandum in Support of (1)

Motion for Summary Judgment and (2) Motion to Dismiss, the Concise Statement of Material

Facts in Support of Motion for Summary Judgment, and the Declaration of Greg Blair.

In the alternative, the Fairway Defendants move under Fed. R. Civ. P. 12(b)(6) for

dismissal of all claims in Mr. Paulson's Second Amended Complaint because they are not

brought by the real party in interest. In support of this motion, the Fairway Defendants rely on

the records and files herein and the Memorandum in Support of (1) Motion for Summary

Judgment and (2) Motion to Dismiss.

In addition, the Fairway Defendants renew all motions contained in Defendant Fairway

America Corporation's, FHLF, LLC's, Matt Burk's, and Wells Fargo Foothills' Motion to

Dismiss Counts 1, 2, 3, 5, 8, 9 10, 11, 12, 13, 14, 15, 16, 17, and 18 of the Second Amended

Complaint Under Federal Rule of Civil Procedure 12(b)(6), [Docket 40] filed on March 20,

2009.

Page 2 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 12
Page 2 of 6

Dated this 10th day of June, 2010.

SCHWABE, WILLIAMSON & WYATT, P.C.

By:    /s/ Craig G. Russillo
       Craig G. Russillo, OSB #973875
       crussillo@schwabe.com
       Anna Helton, OSB #054424
       ahelton@schwabe.com
       Andrea M. Barton, OSB #092760
       abarton@schwabe.com
       Facsimile: 503.796.2900
       Of Attorneys for Fairway America
       Corporation, FHLF, LLC, Matt Burk and
       Wells Fargo Foothills

Page 3 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/116063/160139/CGR/6036005.2

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 12
Page 3 of 6

Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cvk-law.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail:pberg@cvk-law.com
COSGRAVE VERGEER KESTER LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205
Telephone:    (503) 323-9000
Facsimile:    (503) 323-9019
Of Attorneys for Defendant Joel Parker

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAUREN PAULSON, Trustee and Operating Manager of Huber-Wheeler Crossing, LLC (inactive),<br><br>    Plaintiffs,<br><br>  v.<br><br>FAIRWAY AMERICA CORPORATION, fka FAIRWAY COMMERCIAL MORTGAGE CORPORATION, Oregon corporations, FHLF, LLC, an Oregon corporation, MATT BURK, STERLING SAVINGS BANK, a Washington corporation, WELLS FARGO FOOTHILLS, a California corporation, JOAN DOE, a mortgage broker, FRANKI KEEFE, a real estate broker and JOEL PARKER,<br><br>    Defendants. | Case No.: CV 08-982-PK<br><br><br>**DEFENDANT JOEL PARKER'S JOINDER IN DEFENDANTS FAIRWAY AMERICA CORPORATION, FHLF, LLC, MATT BURK AND WELLS FARGO FOOTHILLS' (1) MOTION FOR SUMMARY JUDGMENT, AND (2) MOTION TO DISMISS** |

Page 1 - DEFENDANT JOEL PARKER'S JOINDER IN DEFENDANTS FAIRWAY AMERICA
        CORPORATION, FHLF, LLC, MATT BURK AND WELLS FARGO FOOTHILLS' (1) MOTION
        FOR SUMMARY JUDGMENT, AND (2) MOTION TO DISMISS
COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8ᵗʰ Floor
Portland, OR 97205
(503) 323-5060

985791

Defendant Joel Parker hereby joins in co-defendants Fairway America Corporation, FHLF, LLC, Matt Burk, and Wells Fargo Foothills' motion for summary judgment and motion to dismiss.

Pursuant to Fed. R. Civ. P. 56(b), and on the grounds stated in co-defendants' motion and supporting documents (docket nos. 78-81), defendant Joel Parker respectfully requests that this court grant summary judgment in his favor on all claims brought against him in this action.

Pursuant to Fed. R. Civ. P. 12(b)(6) and for the reasons stated in co-defendants' motion and supporting documents (docket nos. 78-81) defendant Joel Parker respectfully requests that this Court dismiss plaintiff's motion for partial summary judgment

DATED: June 17, 2010.

COSGRAVE VERGEER KESTER LLP

_____
Susan K. Eggum, OSB No. 824576
Paul A. C. Berg, OSB No. 062738
Telephone: (503) 323-9000
Fax: (503) 323-9019
E-mail: eggum@cvk-law.com
          pberg@cvk-law.com
Of Attorneys for Defendant Joel Parker
Trial Attorney: Susan K. Eggum, OSB No. 824576

Page 2 - DEFENDANT JOEL PARKER'S JOINDER IN DEFENDANTS FAIRWAY AMERICA
CORPORATION, FHLF, LLC, MATT BURK AND WELLS FARGO FOOTHILLS' (1) MOTION
FOR SUMMARY JUDGMENT, AND (2) MOTION TO DISMISS
COSGRAVE VERGEER KESTER LLP
Attorneys
888 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

985791

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing DEFENDANT
JOEL PARKER'S JOINDER IN DEFENDANTS FAIRWAY AMERICA CORPORATION, FHLF, LLC,
MATT BURK AND WELLS FARGO FOOTHILLS' (1) MOTION FOR SUMMARY JUDGMENT, AND (2)
MOTION TO DISMISS on the date indicated below on the following parties by the
method(s) indicated:

Lauren Paulson  *(via US Mail)*
3980 SW 170th Avenue
Aloha, OR 97007
Plaintiff *Pro Se*

Craig G. Russillo *(via electronic service)*
Anna M. Helton
Schwabe, Williamson & Wyatt, P.C
1211 SW 5th Ave., Suites 1500-2000
Portland, OR 97204
  Of Attorneys for Defendants Fairway America Corporation,
    FHLF, LLC, Matt Burk, and Wells Fargo Foothills

Geana M. Van Dessel *(via electronic service)*
Leslie R. Weatherhead
Witherspoon, Kelley, Davenport & Toole P.S.
422 West Riverside Avenue, Suite 1100
Spokane, WA  99201-0300
  Of Attorneys for Defendant Sterling Savings Bank

Calliste Korach *(via electronic service)*
Hoffman, Hart & Wagner, LLP
1000 SW Broadway, 20th Floor
Portland, OR  97205
  Of Attorneys for Defendant Franki Keefe

        DATED: June 17, 2010.

                                    _____
                                    Susan K. Eggum
                                    Of Attorneys for Defendant Joel Parker

Page 1 CERTIFICATE OF SERVICE

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

                                                                985791

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 12
Page 6 of 6

Paul Berg    5/6/10

Lauren Paulson, Pro Se
5980 S. W. 170th Ave.
Aloha, OR 97007
971 219 5859
Plaintiff

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON

LAUREN PAULSON,

    Plaintiff,

    v.

FAIRWAY AMERICA
CORPORATION, fka
FAIRWAY COMMERCIAL
MORTGAGE CORPORATION,
Oregon corporations, FHLF, LLC,
an Oregon corporation, MATT
BURK, STERLING SAVINGS BANK,
a Washington corporation,
WELLS FARGO FOOTHILLS, a
California corporation, JOAN DOE,
a mortgage broker,
FRANKI KEEFE, a real estate broker
and JOEL PARKER

    Defendants,

Civil Action No.   CV 08-982-PK

Plaintiff's Response
To Defendant's
Motion to Dismiss
and
Motion for Summary
Judgment

Comes now the Plaintiff, Lauren
Paulsen, and responds to the
Defendant's Motion for Summary
Judgment and Motion to Dismiss.

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Page 13
Page 1 of 20

## The Truth

Are These Defendants telling This court and Washington County Circuit Court The truth, The whole truth, and nothing but The truth?  No.

1. The truth — In Craig Russillo's UTCR 5.010 Certification dated June 10, 2010 he states that " Counsel received no call from MR Paulson." (Exhibit)

In Craig Russillo's Declaration dated June 11, 2010 filed in This case it is stated: He (Paulson) returned her call (anna Helton's) call on June 10, 2010, ... " (Exhibit)

In Craig Russillo's E mail dated June 10, 2010 to Paulson it is stated: " MR Paulson — Today you called our office... " (Exhibit 2, Page 1 of 1)

MR Russillo is either lying to Washington County Circuit Court in #1 above, or This Court.

③

2. The Whole Truth — Here, The Defendant's seek summary judgment based on a putative agreement dated May 18, 2010 by Amy Mitchell. Unfortunately, the Defendant's fail to advise this Court that Paulson Appealed Judge Dunn's May 13, 2010 Order to the U.S. Bankruptcy Appellate Panel of the Ninth Circuit on May 17, 2010. (Exhibit)

3. Nothing, but the Truth — The Defendants seek dismissal because they say that Mr. Paulson is not the real party in interest in these claims. Well, if not him, who? Here, Paulson brings a class action as a local consumer in his representative capacity under FRCP 23. A bankruptcy court has no jurisdiction over class member's claims since these claims cannot affect the amount of property available for distribution available for distribution in the Debtor's case or the allocation of property among creditors in the Debtors' case. In re Fisher, 151 B.R. 895 (1993)

(4)

For The same reason, The
bankruptcy trustee and The bank-
ruptcy court had no jurisdiction
to allow a settlement of The
original lawsuit filed in This
court.

Class Actions
and Predatory Lending Actions

The Ninth Circuit has been a bellwether
in identifying predatory lending
causes of action as subject to class
actions. See FTC v. First Alliance
SA CV 00-964 DOC (Eex) and In Re
FTC, 04-55396/04-55942/DC, CV-01-
971-DOC/CV-01-01111-DoU in The Ninth
Circuit Court of Appeals. Also see, Dan
Reynolds, Predatory Lending in Oregon,
83 Oregon Law Review 1081 (2005)

Conclusion
The bankruptcy court here has no
jurisdiction over This class action
lawsuit because these claims do not
affect The amount of property available

(5)

for distribution in The Debtor's case
nor does This lawsuit affect The
allocation of Property in The Debtor's
case. Finally, The trustee is subject
to removal for not pursuing Debtor's
challenge to The non-judicial foreclosure
sale of September 25, 2009 because
of The Defendant's failure to comply
with Oregon law.

Moreover, as pointed out in
Plaintiff's Motion for a Preliminary Injunction,
Because The District Court acquired
jurisdiction over The res first, all
These proceedings are subject to
District Court jurisdiction, not
Bankruptcy court jurisdiction nor
state court jurisdiction for the
reasons previously stated.

Dated This 29th day of June, 2010

Lauren Paulson

1

2

3

4        IN THE CIRCUIT COURT OF THE STATE OF OREGON

5            FOR THE COUNTY OF WASHINGTON

6    FHLF, LLC, an Oregon limited liability
     company,

7

8                Plaintiff,                          No. C100084EV, C100085EV, C100086EV

9        vs.                                         PLAINTIFF/THIRD-PARTY DEFENDANT
                                                     FHLF, LLC AND THIRD-PARTY
10   LAUREN PAULSON, and all occupants,              DEFENDANTS FAIRWAY AMERICA
                                                     CORPORATION, MATTEW W. BURK,
11               Defendants.                          WELLS FARGO FOOTHILLS, AND
                                                     SKYLANDS INVESTMENT
12                                                   CORPORATION'S (1) MOTION FOR
                                                     SUMMARY JUDGMENT AND (2)
13                                                   MOTIONS TO DISMISS

14   LAUREN PAULSON,                                 **ORAL ARGUMENT REQUESTED**

15               Third Party Plaintiff,

16       vs.

17   FAIRWAY AMERICA CORPORATION, fka
     FAIRWAY CONMMERCIAL MORTGAGE
18   CORPORATION, Oregon corporations,
     MATTEW W. BURK, STERLING
19   SAVINGS BANK, a Washington corporation,
     WELLS FARGO FOOTHILLS, a California
20   Corporation, JOAN DOE, a mortgage broker,
     FRANKI KEEFE, a real estate broker,
21   SKYLANDS INVESTMENT
     CORPORATION, an Oregon corporation,
22   FHLF, LLC, CRAIG RUSSILLO and JOEL
     PARKER,

23               Third Party Defendants.

24

25   ///

26   ///

Page 1 -   PLAINTIFF THIRD-PARTY DEFENDANTS' (1)
           MOTION FOR SUMMARY JUDGMENT AND (2)
           MOTIONS TO DISMISS

1    UTCR 5.050 STATEMENT

2        Plaintiff Third-Party Defendant FHLF, LLC and Third-Party Defendants Fairway

3    America Corporation, fka Fairway Commercial Mortgage Corporation, Mattew[1] W. Burk, Wells

4    Fargo Foothills, and Skylands Investment Corporation (collectively "FHLF Parties") estimate

5    15-20 minutes is necessary for oral argument.

6    **UTCR 5.010 CERTIFICATION**

7        The FHLF Parties hereby certify that they, through their counsel, have made a good faith

8    effort to confer with Lauren Paulson concerning the issues in dispute but were unable to do so.

9    Counsel for Fairway Defendants sent Mr. Paulson emails to laurenjpaulson@yahoo.com asking

10   to confer but did not hear back from Mr. Paulson. On June 8, 2010, counsel called Mr. Paulson,

11   but when counsel identified himself Mr. Paulson hung up. Counsel then sent Mr. Paulson a

12   follow-up email asking him to call if he wanted to confer.  Counsel received no call from Mr.

13   Paulson.

14   **MOTION**

15       Under ORCP 47, the FHLF Parties move for summary judgment against Mr. Paulson on

16   all counterclaims and third-party claims asserted in this action.  In support of this motion, the

17   FHLF Parties rely on the records and files herein, the attached Memorandum in Support of (1)

18   Motion for Summary Judgment and (2) Motions to Dismiss, and the Declaration of Greg Blair.

19       In the alternative, the FHLF Parties move to dismiss Mr. Paulson's counterclaims and

20   third-party claims on three grounds.

21       First, the FHLF Parties move to dismiss under 21(A)(3) because there is another action

22   pending between the same parties for the same cause in federal district court, *Lauren Paulson v.*

23   *Fairway America Corporation, fka Fairway Commercial Mortgage Corporation, FHLF, LLC,*

24   *Matt Burk, Sterling Savings Bank, Wells Fargo Foothills, Joan Doe, Franki Keefe, and Joel*

25

[1] Mr. Burk is incorrectly referred to in the caption as "Mattew Burk."

Page 2 -    PLAINTIFF THIRD-PARTY DEFENDANTS' (1)
            MOTION FOR SUMMARY JUDGMENT AND (2)
            MOTIONS TO DISMISS

1   *Paulson*, United States District Court, District of Oregon, Civil Case No. CV-08-982-ST. In

2   support of this motion, the FHLF Parties rely on the records and files herein and the attached

3   Memorandum in Support of (1) Motion for Summary Judgment and (2) Motions to Dismiss.

4       Second, the FHLF parties move for dismissal of all counterclaims and third-party claims

5   asserted by Mr. Paulson under 21(A)(4) and 21(A)(6) because he is not the proper party to bring

6   these claims. In support of these motions, the FHLF Parties rely on the records and files herein

7   and the attached Memorandum in Support of (1) Motion for Summary Judgment and (2) Motions

8   to Dismiss.

9       Third, the FHLF Parties move to dismiss all counterclaims and third-party claims

10  asserted in this action under 21(A)(8) for failure to state ultimate facts sufficient to constitute a

11  claim. In support of this motion, the FHLF Parties rely on the records and files herein and on the

12  attached Memorandum in Support of (1) Motion for Summary Judgment and (2) Motions to

13  Dismiss.

14

15  Dated this 10th day of June, 2010.

16

17              SCHWABE, WILLIAMSON & WYATT, P.C.

18

19      By:

            Craig G. Russillo, OSB #973875
            crussillo@schwabe.com

20              Facsimile: 503.796.2900
            Andrea M. Barton, OSB #092760

21              Facsimile: 503.796.2900
            Of Attorneys for Plaintiff, FHLF, LLC

22

23

24

25

26

Page 3 -  PLAINTIFF THIRD-PARTY DEFENDANTS' (1)
         MOTION FOR SUMMARY JUDGMENT AND (2)
         MOTIONS TO DISMISS

Craig G. Russillo, OSB #973875
crussillo@schwabe.com
Anna Helton, OSB #054424
ahelton@schwabe.com
Andrea M. Barton, OSB #092760
abarton@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981
Fax 503.796.2900

Of Attorneys for Fairway America Corporation, FHLF,
LLC, Matt Burk and Wells Fargo Foothills

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAUREN PAULSON, Trustee and Operating Manager of Huber-Wheeler Crossing LLC (Inactive), | No. CV-08-982-ST |
| Plaintiff, | DECLARATION OF CRAIG RUSSILLO IN SUPPORT OF DEFENDANTS FAIRWAY AMERICA CORPORATION, FKA FAIRWAY COMMERCIAL MORTGAGE CORPORATION, FHLF, LLC, MATT BURK, AND WELLS FARGO FOOTHILLS' RESPONSE TO PLAINTIFF'S MOTIONS TO REACTIVATE AND FOR SETTLMENT JUDGE AND TEMPORARY RESTRAINING ORDER |
| vs. | |
| FAIRWAY AMERICA CORPORATION, fka FAIRWAY COMMERCIAL MORTGAGE CORPORATION, Oregon corporations, FHLF, LLC, an Oregon corporation, MATT BURK, STERLING SAVINGS BANK, a Washington corporation, WELLS FARGO FOOTHILLS, a California corporation, JOAN DOE, a mortgage broker, FRANKI KEEFE, a real estate broker, and JOEL PARKER, a lawyer, | |
| Defendants. | |

I, Craig Russillo, under 28 U.S.C. §1746, declare under penalty of perjury that the

foregoing is true and correct:

Page 1 -    DECLARATION OF CRAIG RUSSILLO

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/116807/160157/ASM/8404486.1

1.      I am one of the attorneys for defendants Fairway America Corporation, FHLF, LLC, Matt Burk, and Wells Fargo Foothills in this case. I make this declaration on the basis of my own personal knowledge.

2.      On June 2, 2010, I sent a letter to the plaintiff asking him to contact me so that we could arrange a time for him to pick up his personal property located at 16919 SW Blanton Street, Aloha, OR 97007 and 3980 SW 170th Avenue, Aloha, OR 97007. A true and correct copy of that letter is attached as Exhibit 1. The plaintiff never contacted me to arrange pick up of his property.

3.      On June 9, 2010, Anna Helton of my office contacted the plaintiff to speak with him about arranging a time for him to pick up the personal property and left him a voicemail message. He returned her call on June 10, 2010, when she was out of the office. I immediately called the plaintiff, but he did not answer. I then sent a follow-up e-mail again informing the plaintiff that he could have his personal property. A true and correct copy that email is attached as Exhibit 2. As of the date of filing this motion, he still has not contacted me.

*I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand they are made for use as evidence in court and are subject to penalty for perjury.*

Dated this 11th day of June, 2010.

/s/ Craig Russillo
Craig Russillo

Page 2 -   DECLARATION OF CRAIG RUSSILLO

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981 Fax 503.796.2900

From:          Russillo, Craig G.
Sent:          Thursday, June 10, 2010 11:22 AM
To:            'Lauren Paulson'
Cc:            Kinonen, Davina M.; Helton, Anna; 'Greg Blair'
Subject:     FHLF v. Paulson

Mr. Paulson - Today you called our office asking for Anna Helton. I assume you were returning her
call from yesterday asking to confer on certain matters. Apparently, you are unwilling to talk with me.
I have made numerous attempts to contact you to confer on the motions we intend to file in State and
Federal Court and to arrange to transfer your personal property. I have called you several times, and on
the one occasion when you answered you hung up after I identified myself. Please call me at your first
convenience so we can discuss the anticipated motions to dismiss and summary judgment and how to
get your personal property back to you. As stated on numerous occasions, FHLF is ready, willing, and
prepared to transfer all of the personal property to you. Thus, you do not need to file successive,
defective motions for prejudgment relief. All you need to do is call me. Also, please provide an new
address to which I can serve pleadings. Until I receive a new address, I will serve you at the address
listed on your pleadings and will send a courtesy copy by email.

Thank you.

CRAIG G. RUSSILLO | Attorney
SCHWABE, WILLIAMSON & WYATT
1211 SW 5th Avenue, Suite 1900 Portland, OR 97204
Direct: 503-796-2092 | Fax: 503-796-2900 | Email: crussillo@schwabe.com
Assistant: Davina Kinonen | Direct: 503-796-2052 | dkinonen@schwabe.com
Legal advisors for the future of your business®
www.schwabe.com

EXHIBIT ____2____
PAGE __1_ OF _1_

FILED

MAY 21 2010

SUSAN M SPRAUL, CLERK
US BKCY APP PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                              )    BAP No.   OR-10-1173
                                    )
LAUREN JOHN PAULSON,                )    Bk. No.   09-32439-rld7
                                    )
                                    )
              Debtor.               )
                                    )
_____       )
                                    )
LAUREN JOHN PAULSON,                )
                                    )
              Appellant,            )
                                    )
v.                                  )    CLERK'S ORDER RE
                                    )    JURISDICTIONAL ISSUE
                                    )
AMY MITCHELL, Trustee; FHLF,        )
LLC,                                )
                                    )
              Appellees.            )
_____       )

     This appeal has been administratively reviewed.  On May 17,

2010, Appellant filed a notice of appeal from two orders:

     1.   A January 5, 2010, order granting a motion for relief

          from stay (Bankruptcy Court Docket No. 87); and

     2.   A May 13, 2010, order approving a settlement

          (Bankruptcy Court Docket No. 105).

     A jurisdictional issue must be resolved before proceeding

further with this appeal.

Federal Rule of Bankruptcy Procedure 8002(a) provides that a
notice of appeal is filed within 14 days following entry of an
order on appeal.

While the notice of appeal appears timely as to the May 13,
2010 settlement order, the notice of appeal does not appear
timely as to the January 5, 2010, relief from stay order.

Accordingly, it appears that the scope of this appeal should
be limited to review of the May 13, 2010 settlement order.  No
later than **Friday, June 4, 2010**, Appellant must file with the BAP
and serve on opposing counsel a written response showing legal
cause why the scope of this appeal should not be limited to
review of the May 13, 2010 settlement order.

Failure to comply with the requirements of this order may
result in dismissal of the appeal for lack of jurisdiction or
lack of prosecution without further notice to the parties.

FOR THE PANEL,

*Susan Spraul*

Susan M. Spraul, Clerk of Court

2

Matthew A. Arbaugh, OSB #02025
Field Jerger LLP
621 SW Morrison, Suite 1225
Portland, OR 97205
Phone: (503) 228-9115
Fax: (503) 225-0276
Email: matt@fieldjerger.com
     Of Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ) |
| | ) Case No. 09-32439-rld7 |
| LAUREN J. PAULSON, | ) |
| | ) DEBTOR'S REPLY IN SUPPORT OF |
| Debtor. | ) OBJECTION TO MOTION AND |
| | ) NOTICE OF INTENT TO SETTLE |
| _____ | ) AND COMPROMISE |
| | ) |

    The Chapter 7 trustee in this case has asserted in interest in the debtor's litigation with Fairway Corporation and its related entities (collectively hereinafter, "FHLF"). The debtor subsequently objected to the proposed sale of assets/settlement of claims in his estate. The debtor's objection is based on his position that the claims value far exceeds the nuisance value asserted by FHLF and that FHLF is profiting by their own mistreatment of the debtor.

## INTRODUCTION

    In order to disallow the settlement, the court must look to its broad equitable powers and find that this settlement is inherently unreasonable and not in the best interest of the estate while at the same time evaluating the benefits of the settlement under the guidelines set forth by the Ninth

Page 1 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

*In re Paulson*

Field Jerger LLP
621 SW Morrison St., Ste. 1225
Portland, OR 97205
Tel. (503) 228-9115
Fax. (503) 225-0276

Circuit in A&C Properties. Those factors are: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re A&C Properties*, 784 F.2d 1377, 1381 (9ᵗʰ Cir. 1986).

<u>**PROBABILITY OF SUCCESS**</u>

As more fully described below, the debtor has been in litigation with FHLF for nearly two years. However, due to initial motion practice, discovery delays, and subsequently this bankruptcy, the case has not moved very far through the process. This makes determining the likelihood of success very difficult absent an entire "mini-trial" in this court. Given that this court is not the proper venue and that the District Court is already entrenched in the litigation, it is more proper for this court to decline to approve the proposed settlement and allow litigation to occur in District Court or at the very least proceed until a sufficient value and likelihood of success can be better established.

As a benefit to this court in evaluating the current status of this settlement, the Debtor provides the following summary of litigation. From the outset, The Debtor has brought this case as a Class Action. Paulson alleges that the Defendants have engaged in predatory lending which is a recognized cause of action in the Ninth Circuit. "Predatory lending has recently emerged as a significant social issue throughout the United States." Dan Reynolds, *Predatory Lending in Oregon*, 83 Oregon Law Review 1081 (2005). The components of predatory lending are (1) charges more in interest and fees than is required to cover the added risk of lending to borrowers with credit imperfections; (2) abusive terms and conditions that trap borrowers and lead to

Page 2 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

*In re Paulson*

increased indebtedness; (3) failure to take into account the borrowers ability to repay the loan; or (4) requirements for debtor to waive meaningful legal redress. Engle and McCoy, *A Tale of Three Markets; The Law and Economics of Predatory Lending,* 80 Tex. L. Rev. 1255, 1281-82 (2002). It is the debtor's belief that these loans are intended to fail and that these fraudulent practices are violations of existing laws such as fraud statutes and the federal Truth in Lending Act (TILA), lenders still attempt to deceive borrowers by not supplying the required disclosures. The Home Ownership and Equity Protection Act (HOEPA was added to TILA in 1994 to promote disclosures in consumer credit transactions. Under TILA, lenders must make known the cost of credit as both the finance charge and the APR.

Creditors Fairway America, FHLF, Matt Burk and Wells Fargo supply the Court with a Motion to Dismiss they filed in the original proceeding Case No. CV-08-982-ST. This indicates that fellow creditors Sterling Bank, Fairway Commercial Mortgage Corporation, Joan Doe, the mortgage broker, Franki Keefe, a real estate broker and Joel Parker, the successor trustee have not yet weighed in on these matters. Further, the Creditor memorandum in support of Trustee's endeavor to settle for $5,000 is only written on behalf of Fairway America.

The largest factor weighing in favor of this court finding probability of success in this lawsuit is that there is no document submitted by any FHLF entity that has been signed by both parties. For example, on page 7 of Exhibit 1, Lauren Paulson has signed the putative 'loan agreement', but FHLF did not sign this agreement and has to date failed to produce an original or a copy of a fully executed agreement. Additionally, the Debtor notes that FHLF could not produce a signed loan agreement in the now appealed state court FED proceedings. Thus, none of the putative contracts extant are mutually agreed to in writing. Indeed, to the Debtor's

Page 3 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

In re: Paulson

Field Jerger LLP
621 SW Morrison St. Ste 1225
Portland OR 97205
Tel (503) 228-9115
Fax (503) 225-0276

Case 09-32439-rld7    Doc 103    Filed 05/06/10

knowledge, nowhere is there *any* written contract between these parties that have been signed by both parties.

As also noted in the Debtor's objection, the lack of discovery in this case makes proper evaluation of any settlement difficult if not impossible. Throughout the federal court litigation, the Debtor has formally requested discovery including a discovery plan along with depositions and requests for production. See Exhibit 2. However, the Debtor has not been able to obtain the cooperation of FHLF to provide discovery and specifically refused to consider a discovery plan. Had they done so, then the trustee would be armed with information in order to properly evaluate the merits of the case and properly decide how to proceed. The Debtor contends the reason the lawsuit is in such a preliminary state with no discovery is due to the inactions of FHLF by failing to cooperate in discovery. Consequently, FHLF now seeks to dismiss the lawsuit based on the lack of discovery it has created. The Debtor contends it is inequitable to allow FHLF to profit by its own misdeeds through a miniscule settlement of the debtor's claims.

### INEQUITY OF SETTLING CLASS ACTION

FHLF attempts to dismiss the significance of the class action lawsuit because the class has not yet been certified. This cursory analysis fails to adequately address the risks presented by this lawsuit. FHLF is correct that the Debtor's claims are the only claims to be settled and that all other claims remain. However, what FHLF fails to recognize is that by removing the debtor as class representative, the other potential class members will no longer have any party acting on their behalf and the lawsuit will be dismissed in its entirety. Thus, the other potential class members will possibly lose their right to litigate due to possible expiring statutes of limitations. Allowing the litigation to continue either with the trustee or the debtor thereby

Page 4 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

*Jetis  Probert*

Field Jerrett Pc
621 SW Morrison St. Ste. 1225
Portland, OR 97205
Tel (503) 228 9115
Fax (503) 225 0276

protects the other individuals who may have claims in the litigation and allows for the potential of a much larger recovery in this lawsuit, the bulk of which would go to creditors, including potentially FHLF should it be able to establish a deficiency claim against the debtor.

## SETTLEMENT MUST BE FAIR AND EQUITABLE

The primary reason for voiding this settlement is that when the above facts are viewed along with the tortured relationship between the parties as a whole, the debtor contends this court cannot approve the settlement because it is not fair and equitable. It is clear that there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement. The court must also find that the compromise is fair and equitable. *See, e.g., Citibank, N.A. v. Baer,* 651 F.2d 1341, 1345-46 (10th Cir.1980). When the Debtor initially entered into a loan transaction with FHLF, the total loan amount was $400,000 but the Debtor only received $375,000 from FHLF after all costs and fees were paid. See Exhibit 3. Currently based on the market conditions, the debtor's property in question is worth $655,000. This amount is determined by the unconditional $230,000 cash offer made on one, three lot parcel on August 2, 2009. See Exhibit 4. This amount is further documented by the formal appraisal of $425,000 the Debtor secured through Homestreet Bank which was prepared to grant him a reverse mortgage in the amount of $275,825 on the Blanton House property on September 3, 2009. See Exhibit 5. This means that on September 3, 2009 (or soon thereafter) there was $505,825.00 available to pay towards the liens and the debt. However, FHLF asserted a much larger obligation was owed and the debtor ultimately could not reach any agreement with FHLF. Instead FHLF foreclosed and now control the property potentially worth $655,000 which is in excess of any amounts asserted owed by FHLF to date.

Page 5 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

*Bate Budson*

Feld Law ...
621 SW Morrison St. Ste. 1225
Portland, OR 97205
Tel. (503) 228 0115
Fax. (503) 225 0276

Case 09-32439-rld7    Doc 103    Filed 05/06/10

Much depends on whether the properties are residential or not due to the specific notices that must be given by the lender in a foreclosure setting. Under ORS 86.705, a residential trust deed means a trust deed on property upon which are situated four or fewer residential units and one of the residential units is occupied as the principal residence of the grantor at the time a trust deed foreclosure is commenced. This trust deed foreclosure was commenced on November 28, 2008. At that time and at all times pertinent here, the trust deed foreclosure was upon property which are situated three residential units and the Debtor, the grantor, has occupied one of the residential units as his principal residence. It is undisputed that the beneficiary and his successors and assigns failed to provide these statutory notices to the grantors as required by law as FHLF, LLC openly admitted at trial that they did not provide the required notices. The property in question is zoned residential. In fact all of the units are being used as residential units for residential purposes. Further, residential use vel non is determined at the time of the foreclosure sale.

Oregon law ORS 86.737 requires that a specified notice be provided to an owner such as the Debtor in a foreclosure situation. That statute provides: (1) If a notice of default is recorded for property that is subject to a residential trust deed, the sender of a notice of sale under ORS 86.740 shall, on or before the date the notice of sale is served or mailed, give notice under this section to the grantor by both first class and certified mail with return receipt requested. The statute goes on to describe the form of notice in detail.

FHLF failed to provide this notice to the Debtor nor to the named grantors nor to an additional resident known to the Plaintiff's. FHLF failed to follow this statute at all. Thus, without proper notice, FHLF held a foreclosure sale on September 25, 2009. This proceeding is

Page 6 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

*In re Finken*

Field Jerrett 4
945 SW Morrison St., Ste 1225
Portland, OR 97205
Tel (503) 228-9115
Fax (503) 228-0276

Case 09-32439-rld7   Doc 103   Filed 05/06/10

now being challenged by the Debtor in a state court FED action. The trial court ruled against the

Debtor but that decision has subsequently been appealed.

## CONCLUSION

In conclusion, the debtor's objection is based on the fact that the settlement is not fair and

equitable. Due to FHLF's own actions, the litigation to be settled is in a premature state making

evaluation nearly impossible. Discovery has not been had, class members have not been

identified and there is no basis for the settlement. After this settlement goes through, FHLF

would obtain real estate worth $655,000 for $375,000, relief from a potential $17 million dollar

lawsuit and creditors would be left with pieces of a $5,000 payment to the trustee and the debtor

homeless. The debtor contends those facts justify this courts disapproval of the settlement and

that the litigation be pursued by the trustee or the debtor to the benefit of the majority of creditors

and the debtor.

Dated May 6, 2010

/s/ Matthew A. Arbaugh
Matthew A. Arbaugh, OSB # 020251
Field Jerger LLP
621 SW Morrison Street, Ste. 1225
Portland, OR 97205
Phone: 503.228.9115
Facsimile: 503.225.0276
E mail: matt@fieldjerger.com

Page 7 of 8
Reply in Support of
Objection to Notice of
Intent to Settle

In re Paulson

Field Jerger LLP
621 SW Morrison St. Ste. 1225
Portland, OR 97205
Tel (503) 228-9115
Fax (503) 225-0276

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Page 13

FILED

SEP 2 0 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAUREN PAULSON,

      Plaintiff,

                                CV 08-982-PK

   v.                           AMENDED FINDINGS
                                AND RECOMMENDATION

FAIRWAY AMERICA CORPORATION,
FRANK KEEFE, FHLF, LLC, STERLING
SAVINGS BANK, WELLS FARGO
FOOTHILLS, JOAN DOE, MATT BURK,
and JOEL PARKER,

      Defendants.
_____

PAPAK, Magistrate Judge:

      Plaintiff *pro se* Lauren Paulson filed this action against defendants Fairway America

Corporation ("FAFC") and Frank Keefe on August 21, 2008.  Paulson amended his complaint on

November 25, 2008, adding FHLF, LLC ("FHLF"), Sterling Savings Bank ("SSB"), Wells Fargo

Page 1 - AMENDED FINDINGS AND RECOMMENDATION

Foothills ("WFF"), and Joan Doe as defendants.  Paulson amended his complaint a second time

on January 29, 2009, adding Matt Burk and Joel Parker as defendants.  In his second amended

complaint, Paulson alleges that he is representative of a putative class of similarly situated

persons with claims against the defendants arising out of the defendants' allegedly improper

lending practices.  This court has federal question and supplemental jurisdiction over Paulson's

action.

      Now before the court is the motion (#78) for summary judgment filed by defendants

FAFC, FHLF, WFF, and Burk, in which all other defendants join.  I have considered the

defendants' motion, all of the pleadings on file, and oral argument on behalf of the parties.  For

the reason set forth below, defendants' motion should be granted.

## LEGAL STANDARD

      Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues

exist for trial.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied,* 116 S.Ct. 1261 (1996).  In evaluating a motion for summary judgment, the

district courts of the United States must draw all reasonable inferences in favor of the nonmoving

party, and may neither make credibility determinations nor perform any weighing of the

evidence.  *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.

Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Page 2 - AMENDED FINDINGS AND RECOMMENDATION

## BRIEF STATEMENT OF MATERIAL FACT

In November 2005, Paulson was the sole member of Huber-Wheeler Crossing, LLC ("HWC"). At that time, HWC received a loan from defendant Fairway, secured by two properties in Washington County. In February 2008, HWC defaulted on the loan, and Fairway threatened to foreclose on the properties. In August 2008, Paulson filed this action.

In April 2009, HWC conveyed the two Washington County properties to Paulson, following which Paulson filed a Chapter 11 bankruptcy action. In his status as a debtor in possession, Paulson thereafter continued to pursue this action. In November 2009, Paulson converted his Chapter 11 bankruptcy into a Chapter 7 bankruptcy, and Amy Mitchell was appointed trustee of the bankruptcy estate.

In February 2010, Mitchell settled all claims pending in this action on behalf of the bankruptcy estate, and the bankruptcy judge signed an order approving the settlement. Paulson has appealed that order, but has not moved to stay implementation of the order pending his appeal.

## ANALYSIS

In April 2009, when Paulson filed a Chapter 11 bankruptcy action, a bankruptcy estate was created. *See* 11 U.S.C. § 541(a). That estate included all of Paulson's pre-filing assets, including his interest in this action. *See Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004), *citing Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). The estate therefore became the real party in interest as to all claims alleged in this action. *See id.* However, because Paulson was a debtor in possession of the assets in the estate, he was entitled to continue prosecuting this action on behalf of the estate. *See* Bankruptcy R. 6009.

Page 3 - AMENDED FINDINGS AND RECOMMENDATION

By contrast, when, in November 2009, Paulson converted his Chapter 11 bankruptcy into a Chapter 7 bankruptcy, and Mitchell was appointed trustee of the bankruptcy estate, Paulson ceased to be a debtor in possession and thereby lost the power to prosecute this action. *See Turner*, 362 F.3d at 1226, n. 10. As trustee of the estate, Mitchell became the only party authorized to pursue the estate's claims in this action, by operation of law. *See, e.g.,* 11 U.S.C. §§ 701, 702, 704; *see also, e.g., Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 770 (9th Cir. 2000).

Mitchell therefore was authorized to settle the estate's claims, as she did in February 2010, with the approval of the bankruptcy court. All claims in this action having been settled, there remains no genuine issue of material fact as to whether Paulson could be entitled to relief on any claim pending herein, and defendants are entitled to summary judgment in their favor as to all pending claims.

## CONCLUSION

For the reasons set forth above, defendants' motion (#78) for summary judgment should be granted, all claims in this action should be dismissed with prejudice, and all pending motions should be denied as moot. A final judgment should be prepared.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

Page 4 - AMENDED FINDINGS AND RECOMMENDATION

and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 20th day of September, 2010.

Honorable Paul Papak
United States Magistrate Judge

Page 5 - AMENDED FINDINGS AND RECOMMENDATION

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAUREN PAULSON,

        Plaintiff,

        v.

FAIRWAY AMERICA CORPORATION,
fka FAIRWAY COMMERCIAL
MORTGAGE CORPORATION, Oregon
corporations, FHLF, LLC, an Oregon
corporation, MATT BURK, STERLING
SAVINGS BANK, a Washington
corporation, WELLS FARGO
FOOTHILLS, a California corporation,
JOAN DOE, a mortgage broker, FRANK
KEEFE, a real estate broker, and JOEL
PARKER, a lawyer,

        Defendants.

Civil No. 08-982-PK

O R D E R

HAGGERTY, District Judge:

        Magistrate Judge Papak issued an Amended Findings and Recommendation [123] in this

action.  The Magistrate Judge recommended granting defendants' summary judgment motion

[78] and dismissing the action in its entirety.

        Plaintiff has filed objections.  When a party objects to any portion of the Magistrate

Judge's Findings and Recommendation, the district court must make a *de novo* determination of

ORDER  --  1

that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

The court has given the file of this case a *de novo* review, carefully evaluating the Magistrate Judge's Findings and Recommendations, the objections, and the record of the case. The Findings and Recommendation is well-reasoned, without error, and is adopted in its entirety.

**ANALYSIS**

The Magistrate Judge reviewed the relevant facts in this matter, noting that plaintiff was the sole member of Huber-Wheeler Crossing, LLC (HWC) in 2005 when HWC received a loan from defendant Fairway Commercial Mortgage Corporation (FCMC). This loan was defaulted upon in February 2008. In August 2008, plaintiff initiated a lawsuit against FCMC and other defendants, and has since amended his Complaint to include more defendants. Plaintiff's action alleges that FCMC misleads consumers and violates federal statutes in its lending practices. Plaintiff alleges that he was the victim of "steering," a predatory loan practice that exploits vulnerable borrowers, and asserts claims of fraud, violations of the Oregon lending laws, breach of contract, breach of "good faith and fair dealing," promissory estoppel, conspiracy, violations of federal law, interference with prospective economic advantage, usury, rescission, and other assertions.

As Magistrate Judge Papak noted, in April 2009 plaintiff arranged for HWC to convey to him two properties that served as collateral to FCMC's 2005 loan to HWC. Plaintiff then filed a Chapter 11 bankruptcy action, and maintained a status of "debtor in possession" regarding the conveyed properties, empowering plaintiff to continue his lawsuit against defendants.

In November 2009, plaintiff converted his Chapter 11 bankruptcy to a Chapter 7 bankruptcy proceeding, and Amy Mitchell was appointed trustee of the bankruptcy estate. The Magistrate Judge recognized that the conversion to Chapter 7 deprived plaintiff of his status as

ORDER -- 2

debtor in possession, and elevated the estate to the role of the real party in interest as to all claims alleged in this action.

The Magistrate Judge's reasoning is sound. Under Chapter 11, the debtor has express authority to sue and be sued. Bankruptcy Rule 6009, which applies to Chapters 7, 11, and 13, directs that "the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding on behalf of the estate before any tribunal." Fed. R. Bankr. P. 6009; see also Chapman v. Currie Motors, Inc., 65 F.3d 78, 79-81 (7th Cir. 1995) (holding that federal courts have jurisdiction to hear state law claims brought by debtors in possession).

However, under Chapter 7, only the trustee has standing to prosecute or defend a claim belonging to the estate. See In re New Era, Inc., 135 F.3d 1206, 1209 (7th Cir. 1998) (holding that the Chapter 7 trustee has the exclusive right to represent the debtor in court).

Trustee Mitchell was authorized to settle the bankruptcy estate's claims, and she did so in February 2010. The presiding Bankruptcy Court approved the settlement. Therefore, defendants are entitled to summary judgment against the prior claims advanced by plaintiff.

This court has examined plaintiff's objections, and his supplemental submissions that assert, in part, his belief that he is openly scorned by a total of fourteen judges or judicial officials. He also requests rulings on his past requests for injunctive relief. This court harbors no animus toward plaintiff. Of primary importance is whether the Findings and Recommendation at issue should be adopted after de novo review and scrutiny of plaintiff's objections to it.

These objections challenge the Findings and Recommendation on grounds that defendants' factual statements asserted in support of the summary judgment motion were based upon inadmissible evidence, the Bankruptcy Court lacked jurisdiction to approve the settlement

ORDER -- 3

that extinguished the claims advanced in this suit, and there has been no independent evaluation

of the settlement's fairness. Plaintiff's objections are unpersuasive and fail to alter the conclusion

that summary judgment is warranted under the facts presented.

Plaintiff's challenge to the Declaration filed by Greg Blair, general counsel to the

successor in interest to FCMC, is without merit. To the extent that the Magistrate Judge relied

upon declarations from Blair, such reliance was wholly proper. Blair was and is qualified to

testify to the matters addressed in his Declaration.

Plaintiff's assertions regarding the possible significance of a declaration from Trustee

Mitchell are similarly unavailing. There is no showing that Mitchell's testimony was necessary,

or would have affected the Magistrate Judge's reasoning and conclusions.

The challenges regarding missing signatures on settlement documents also fail to reveal

any grounds for refusing to adopt the Findings and Recommendation. Likewise, complaints

about the provision or exclusion of various documents that do not affect the validity of the

settlement agreement are unavailing.

This court also rejects plaintiff's allegations regarding the depiction of this action as a

"class action." This case was never certified as a class action, and such a certification would not

negate the effect of the settlement agreement.

Finally, plaintiff's arguments regarding the fairness of the settlement were properly

presented to the bankruptcy court, and were properly resolved there. Plaintiff's continued

disagreement on this issue fails to preclude adoption of the well-reasoned Findings and

Recommendation.

**CONCLUSION**

The Amended Findings and Recommendation and the record has been scrutinized under

a *de novo* review by this court. The Amended Findings and Recommendation [123] in this

ORDER -- 4

action is adopted.  Defendants' summary judgment motion [78] is granted and the action is

dismissed in its entirety.  Accordingly, all pending motions, including plaintiff's Motion to

Compel [136], Motion for a Temporary Restraining Order [115, 77, and 75], Motion for a

Preliminary Injunction [92], and Motion for a Settlement Conference [76] are denied.

IT IS SO ORDERED.

Dated this __9__ day of December, 2010.


_____/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge


ORDER -- 5

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 15
Page 5 of 5

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAUREN PAULSON,

        Plaintiff,

        v.

FAIRWAY AMERICA CORPORATION,
fka FAIRWAY COMMERCIAL
MORTGAGE CORPORATION, Oregon
corporations, FHLF, LLC, an Oregon
corporation, MATT BURK, STERLING
SAVINGS BANK, a Washington
corporation, WELLS FARGO
FOOTHILLS, a California corporation,
JOAN DOE, a mortgage broker, FRANK
KEEFE, a real estate broker, and JOEL
PARKER, a lawyer,

        Defendants.

Civil No. 08-982-PK

JUDGMENT

HAGGERTY, District Judge:

      Based upon the record, IT IS HEREBY ORDERED AND ADJUDGED that the

Amended Findings and Recommendation [123] in this action is adopted.  Defendants' summary

judgment motion [78] is granted and the action is dismissed in its entirety.  Any other pending

motions are denied.

      IT IS SO ORDERED.

      Dated this __9__ day of December, 2010.

                           __/s/____Ancer L. Haggerty_____
                              Ancer L. Haggerty
                        United States District Judge

JUDGMENT -- 1

**Paul Berg**

| | |
|---|---|
| **From:** | ca9_ecfnoticing@ca9.uscourts.gov |
| **Sent:** | Wednesday, March 16, 2011 12:08 PM |
| **To:** | Esther J. Martin |
| **Subject:** | 10-36178 Lauren Paulson v. Fairway America Corporation, et al "Order Filed" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**United States Court of Appeals for the Ninth Circuit**

**Notice of Docket Activity**

The following transaction was entered on 03/16/2011 at 12:07:20 PM PDT and filed on 03/16/2011

| | |
|---|---|
| **Case Name:** | Lauren Paulson v. Fairway America Corporation, et al |
| **Case Number:** | 10-36178 |
| **Document(s):** | Document(s) |

**Docket Text:**
Filed order (EDWARD LEAVY and JAY S. BYBEE) Appellant's motion to proceed in forma pauperis is denied because we find that the appeal is frivolous. Within 21 days after the date of this order, appellant shall pay $455.00 to the district court as the docketing and filing fees for this appeal and file proof of payment with this court. Failure to pay the fees will result in the automatic dismissal of the appeal by the Clerk for failure to prosecute, regardless of further filings. See 9th Cir. R. 42-1. No motions for reconsideration, clarification, or modification of the denial of appellant's in forma pauperis status shall be filed or entertained. Appellant's motion for preliminary injunction and stay is denied. If appellant pays the fees as required and files proof of such payment in this court, appellant shall simultaneously show cause why the judgment challenged in this appeal should not be summarily affirmed. See 9th Cir. R. 3-6. If appellant elects to show cause, a response may be filed within 10 days after service of appellant's filing. If appellant pays the fees but fails to file a response to this order, the Clerk shall dismiss this appeal for failure to prosecute. See 9th Cir. R. 42-1. If the appeal is dismissed for failure to comply with this order, the Clerk shall not file or entertain any motion to reinstate the appeal that is not accompanied by proof of payment of the docketing and filing fees and a response to the order to show cause. Briefing is suspended pending further order of this court [7683256] (DEV)

The following document(s) are associated with this transaction:
**Document Description:** Main Document
**Original Filename:** 10-36178.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1106763461 [Date=03/16/2011] [FileNumber=7683256-0]
[3626f995fa782124eb5e23a793549a31320252caa866229709d025d2cd134a2c4db6f366c46d3bb705db8b1fb95f
f61a7402f6348603e1011529b071b0e934a6]]

1

**Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment**
**Exhibit 17**
**Page 1 of 2**

**Notice will be electronically mailed to:**

Ms. Eggum, Susan K., Attorney
Mr. Garone, Michael T., Attorney
Honorable Haggerty, Ancer L., Senior District Judge
Kobak, Sara, Attorney
Russillo, Craig G, Attorney
Schroer, Janet M., Attorney
Ms. Smith, Julie A., Attorney
USDC, Portland
Van Dessel, Geana, Attorney
Weatherhead, Leslie R., Attorney

**Case participants listed below will not receive this electronic notice:**

Berg, Paul A.C.
Cosgrave Vergeer Kester LLP
8th Floor
805 SW Broadway
Portland, OR 97205

Helton, Anna M.
Schwabe, Williamson & Wyatt
PacWest Center
1211 SW Fifth Avenue
Suite 1900
Portland, OR 97204

Paulson, Lauren John, Attorney
3980 S.W. 170th Avenue
Aloha, OR 97007

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 7683256
**RELIEF(S) DOCKETED:**
   to proceed IFP
   for order to show cause
   for docket fee due
   to vacate briefing schedule
**DOCKET PART(S) ADDED:** 7569007, 7500862, 7500861, 7569008, 7569009, 7569010, 7569011

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 17
Page 2 of 2

**FILED**

UNITED STATES COURT OF APPEALS

JUN 28 2011

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LAUREN JOHN PAULSON, | No. 10-36178 |
| Plaintiff - Appellant, | D.C. No. 3:08-cv-00982-PK |
| v. | District of Oregon, Portland |
| FAIRWAY AMERICA CORPORATION, an Oregon corporation, f/k/a Fairway Commerical Mortgage Corporation; et al., | ORDER |
| Defendants - Appellees. | |

Before: CANBY, GOULD, and TALLMAN, Circuit Judges.

A review of the record, the response to the court's March 16, 2011 order to

show cause, and the reply thereto indicates that the questions raised in this appeal

are so insubstantial as not to require further argument. *See United States v.*

*Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam) (stating standard).

Accordingly, we summarily affirm the district court's judgment.

Appellant's motion to consolidate this appeal with appeal No. 11-60038 is

denied as moot.

**AFFIRMED.**

AT/MOATT

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 18
Page 1 of 1

Case 09-32439-rld7    Doc 51    Filed 06/16/09

**DISTRICT OF OREGON**
**F I L E D**
**June 16, 2009**

Clerk, U.S. Bankruptcy Court

Below is an Order of the Court.

*Randall L. Dunn*
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. **09-32439-rld11** |
| | ) | |
| **Lauren John Paulson** | ) | ORDER, DRAFTED ON: **06/15/09** |
| | ) | RE: RELIEF FROM (Check ALL that apply): |
| | ) | ☒ DEBTOR STAY  ☐ CODEBTOR STAY |
| | ) | CREDITOR: **FHLF, LLC** |
| Debtor(s) | ) | CODEBTOR: |

The undersigned, _____Craig G. Russillo_____, whose address is _Schwabe Williamson & Wyatt, 1211 SW 5th Ave., Suite 2000, Portland, OR 97204_, Email address is ___crussillo@schwabe.com___, Phone No. is _____503-222-9981_____, and any OSB # is ___973875___, presents this Order based upon:

☒ The completed Stipulation of the parties located at the end of this document.

☐ The oral stipulation of the parties at the hearing held on _____.

☐ The ruling of the court at the hearing held on _____.

☐ Creditor certifies any default notice required by pt. 5 of the Order re: Relief from Stay entered on _____ was served, and that debtor has failed to comply with the conditions of that order.

☐ Creditor certifies that no response was filed within the response period plus 3 days to the Motion for Relief from Stay that was filed on _____ and served on _____.

**IT IS ORDERED** that, except as provided in pt. 4 below, the stay existing pursuant to 11 USC §362(a) shall remain in effect as to the property described below (hereinafter "the property"):

☐ Personal property described as (e.g., 2001 Ford Taurus):

☒ Real property located at (i.e., street address):

3980 SW 170th Avenue, Aloha, Oregon
16919 & 16925 SW Blanton Street, Aloha, Oregon

☐ [Optional UNLESS In Rem Relief Granted] Exhibit A attached hereto is the legal description of the property.

720.90 (10/17/05)    **Page 1 of 3**

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 19
Page 1 of 6

Case 09-32439-rld7   Doc 51   Filed 06/16/09

**IT IS FURTHER ORDERED** that the stay is subject to the conditions marked below:

☐ 1.  **Regular Payment Requirements**.

    ☐ a.  Debtor(s) shall deliver regular monthly payments in the amount of $_____ commencing _____ to Creditor at the following address:

    ☐ b.  The Chapter 13 trustee shall immediately pay and disburse to Creditor the amount of $_____ per month from funds paid to the trustee by Debtor(s), and continue each month until the plan is confirmed, at which time the plan payment terms shall control. Payments made by the trustee under this order shall be deemed to be payments under the plan for purposes of the trustee's collection of percentage fees.

    ☐ c.  Debtor(s) shall pay to the trustee any and all payments required to be paid under the terms of the Chapter 13 plan.

☐ 2.  **Cure Payment Requirements**.  Debtor(s) shall cure the post-petition default of $_____ consisting of

    (e.g., $_____ in payments and $_____ in late charges for April - June, 2002), as follows:

    ☐ a.  In equal monthly installments of $_____ each, commencing _____ and continuing thereafter through and including _____.

    ☐ b.  By paying the sum of $_____ on or before _____, and the sum of $_____ on or before _____.

    ☐ c.  Other (describe):

☐ 3.  **Insurance Requirement(s)**.  Debtor shall maintain insurance on the property at all times as required by the security agreement, naming _____ as the loss payee.

    On or before _____ Debtor(s) shall provide counsel for Creditor with proof of insurance.

☒ 4.  **Stay Relief and Codebtor Stay Relief without Cure Opportunity**.

    ☐ a.  Upon default in the conditions in pt(s). _____ Creditor may file and serve a certificate of non-compliance specifying the default, together with a proposed order terminating the stay to allow Creditor to foreclose on, and obtain possession of, the property, which the Court may grant without further notice or hearing.

    ☐ b.  The stay is terminated to allow Creditor to foreclose on, and obtain possession of, the property provided that a foreclosure sale shall not occur prior to _____.

    ☐ c.  Creditor is granted relief from stay effective _____ to foreclose on, and obtain possession of, the property.

    ☒ d.  Creditor is granted relief from stay to foreclose on, and obtain possession of, the property.

    ☐ e.  If a Creditor with a senior lien on the property is granted relief from stay, Creditor may file and serve a certificate identifying the senior lien holder and a proposed order terminating the stay, which the Court may grant without further notice or hearing.

    ☐ f.  Creditor is granted relief from stay to _____ _____

    ☐ g.  Creditor is granted "in rem" relief from stay with respect to the real property described above and in Exhibit A. This order shall be binding in any other case filed under 11 USC purporting to affect such real property filed not later than two (2) years after the date of the entry of this order unless the bankruptcy court in the subsequent case grants relief from this order. Any governmental unit that accepts notices of interests or liens in real property shall accept a certified copy of this order for indexing and recording.

720.90 (10/17/05)   **Page 2 of 3**

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 19
Page 2 of 6

☐ h.  Creditor is granted relief from the codebtor stay, as it applies to the codebtor(s) named in the caption above, to
enforce the terms of the contract and collect the deficiency balance.

☐ 5.  **Stay Relief with Cure Opportunity.**  Upon default in the checked condition(s) in pt(s). 1 - 3, Creditor shall serve written
notice of default on ☐ Debtor(s) and ☐ Attorney for Debtor(s) that gives Debtor(s) _____ calendar days after the mailing
of the notice to cure the default.  If Debtor(s) fails to cure the default in accordance with this paragraph, then Creditor
shall be entitled to submit a proposed order terminating the stay, which the Court may grant without further notice or
hearing.

☐ a.  The notice of default may require that Debtor(s) make any payment(s) that becomes due between the date the notice
of default is mailed and before the cure deadline.

☐ b.  The notice of default may require Debtor(s) to pay $_____ for the fees and costs of sending the notice.

☐ c.  Only _____ notices of default and opportunity to cure are required per ☐ year (calculated from date of entry of this
order), ☐ during the remainder of this case, or ☐ (describe):

☐ 6.  **Amended Proof of Claim.**  Creditor shall file an amended proof of claim to recover all accrued post-petition attorney
fees and costs and (describe):

☒ 7.  **Miscellaneous Provisions.**

☒ a.  If Creditor is granted relief from stay, the 10-day stay provided by Fed. Rule Bankr. Proc. 4001(a) shall be waived.

☐ b.  Any notice that Creditor's counsel shall give to Debtor(s)/Codebtor, or attorney for Debtor(s)/Codebtor, pursuant to
this order shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 USC §1692.

☐ 8.  A final hearing on Creditor's motion for relief from stay shall be held on _____ at _____ in
_____.

☒ 9.  Other:
**See Attached "Exhibit A"**

PRESENTED, AND CERTIFIED, BY:                    ###

Craig G. Russillo

IT IS SO STIPULATED:

Creditor's Attorney:                                              Debtor(s)'s Attorney:

/s/ Craig G. Russillo                                            /s/ Matthew A. Arbaugh
Name:  Craig G. Russillo                                         Name:  Matthew A. Arbaugh
OSB#:  973875                                                    OSB#:  020251

NO OBJECTION TO ORDER BY CASE TRUSTEE:                           Codebtor's Attorney:

By:_____
                                                                 Name: _____
                                                                 OSB#: _____

720.90 (10/17/05)    **Page 3 of 3**

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 19
Page 3 of 6

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

Lauren J. Paulson

          Debtor.

Case No. 09-32439-rld11

**EXHIBIT "A" TO ORDER FOR  RELIEF
FROM AUTOMATIC STAY**

On April 22, 2009, creditor FHLF, LLC filed a Motion for Relief from Automatic Stay ("Motion"), under 11 U.S.C. § 362(d)(1) and (2).  The Debtor objected to FHLF's Motion and the Court set the matter for evidentiary hearing on June 17, 2009.  The Debtor and FHLF have resolved the Debtor's objections to FHLF's Motion and hereby stipulate as follows:

       1.      The terms of the Order for Relief from Automatic Stay ("Order"), to which this Exhibit A is attached, are expressly incorporated into the terms of this stipulation.

       2.      FHLF is granted relief from the Automatic Stay to foreclose on, and obtain possession of, the real property located at 3980 SW 170th Avenue, Aloha, Oregon, Washington County Parcel No. R149627 ("Blanton Property"); and 16919 and 16925 Blanton Street, Aloha, Oregon, Washington County Parcel Nos. R149645, R149663, and R149654 ("Rental Property").  The Blanton Property and the Rental Property are collectively referred to herein as the "Properties."

Page 1 -    **EXHIBIT "A" TO ORDER FOR  RELIEF FROM
            AUTOMATIC STAY**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR  97204-3795
Telephone (503) 222-9981

PDX/116063/160139/CGR/4809480.2

3.      The Debtor shall immediately list the Properties for sale with the real estate broker approved by the Court. The Debtor shall list the Blanton Property for no more than $425,000; the Debtor shall list the Rental Property for no more than $275,000.

4.      If either the Blanton Property or the Rental Property has not sold within thirty (30) days from the later of the original listing or the date of the Order, the Debtor shall instruct the real estate broker (in writing with a copy to FHLF's counsel) to reduce the list price for each unsold property by 10% off the original list price. If either the Blanton Property or the Rental Property has not sold within sixty (60) days from the later of the original listing or the date of the Order, the Debtor shall similarly instruct the real estate broker to reduce the list price for each unsold property by 20% off the original list price. FHLF shall have the right to directly communicate with the real estate broker regarding the listings of the Properties.

5.      The Debtor shall have until August 31, 2009, to sell the Properties (i.e., close on the sale and transfer title). If the Debtor has not sold the Properties by August 31, 2009, FHLF shall be entitled to hold a foreclosure sale for one or both of the Properties beginning on September 1, 2009, and the Debtor shall take no action, on his own behalf or on behalf of any other trust or entity in which he is involved, to in any way delay, modify, or terminate any foreclosure sale. The Debtor shall have until September 14, 2009, to close on the sale of the Properties if, by August 31, 2009, the Debtor has in place a fully executed earnest money agreement for the Properties with a bona fide purchaser in an arm's-length transaction with the following criteria: (1) the buyer's lender must be a U.S. lender with capital and surplus of not less than US $10,000,000, who has issued a firm lending commitment to the buyer for the purchase price of the properties; (2) the buyer has cleared all contingencies and the contract is not subject to termination pending inspection, environmental assessments, voluntary termination options, or similar examinations or time periods; and (3) the buyer deposits not less than 5% of the sale price as earnest money. An earnest money agreement that meets the requirements of this paragraph is referred to hereinafter as a "Qualifying Sale Agreement." Under no circumstances

Page 2 -      **EXHIBIT "A" TO ORDER FOR RELIEF FROM AUTOMATIC STAY**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

PDX/116063/160139/CGR/4809480.2

shall the Debtor be entitled to close a sale of either of the Properties after September 14, 2009, even if the Debtor has executed a Qualifying Sale Agreement covering either or both of the Properties. After September 14, 2009, FHLF shall be entitled to proceed with a foreclosure of one or both of the Properties, as it sees fit in its sole and absolute discretion, and the Debtor shall take no action, on his own behalf or on behalf of any other trust or entity in which he is involved, to in any way delay, modify, or terminate any foreclosure sale.

      6.     FHLF shall have the right, but shall in no way be obligated, to cancel one or both of the currently scheduled foreclosure sales and initiate new nonjudicial sales for one or both of the Properties. If FHLF cancels one or both of the pending nonjudicial foreclosure sales for the Properties, it shall refrain from issuing notices related to the new nonjudicial foreclosure sale or sales prior to July 1, 2009. FHLF shall further refrain from issuing notices related to the rescheduling of the current nonjudicial foreclosure sales prior to July 1, 2009.

      7.     If the Debtor fails to fully or timely perform any condition in this stipulation, FHLF shall have the right to immediately hold foreclosure sales for the Properties as soon as provided under Oregon law.

**IT IS SO STIPULATED:**

SCHWABE, WILLIAMSON & WYATT, P.C.     FIELD JERGER LLP

       /s/ Craig G. Russillo               /s/ Matthew A. Arbaugh
By: _____   By:_____
     Craig G. Russillo, OSB #973875      Matthew A. Arbaugh, OSB # 020251
     Of Attorneys for FHLF, LLC          Of Attorneys for Debtor

Page 3 -   **EXHIBIT "A" TO ORDER FOR RELIEF FROM AUTOMATIC STAY**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

     PDX/116063/160139/CGR/4809480.2

**U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
F I L E D**

**March 8, 2010**

Clerk, U.S. Bankruptcy Court

**Below is an order of the Court.**

*Randall L. Dunn*

**U.S. Bankruptcy Judge**

DN7 (12/6/07)

**UNITED STATES BANKRUPTCY COURT
District of Oregon**

In re
**Lauren John Paulson,** xxx–xx–4301
Debtor(s)

)
)
)
)
)
)
)
)

Case No. **09–32439–rld7**

CHAPTER 7 ORDER RE:
DISCHARGE OF DEBTOR(S)

It appearing that on 4/8/09 a bankruptcy petition was filed by the debtor(s); timely complaints filed pursuant to 11 USC §523(a) could be pending and the court could still order that any affected debt is nondischargeable, however no complaint objecting to the debtor's discharge pursuant to 11 USC §727 was timely filed (or such complaint was filed, and after due notice and hearing, was not sustained); each timely filed written reaffirmation agreement was either rescinded or not approved by the court; and therefore,

**IT IS ORDERED** the debtor(s) shall be granted a discharge under §727 of Title 11, United States Code (the Bankruptcy Code).

### EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

This court order grants a discharge to the person(s) named as a debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

<u>Collection of Discharged Debts Prohibited.</u> The discharge prohibits any attempt to collect from a debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. (If applicable there are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.) A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

**Page 1 of 2**          **IMPORTANT: Debtors MUST READ BOTH SIDES of this document!**

95

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 20
Page 1 of 2

<u>Debts that are Discharged.</u> The Chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to Chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

<u>Debts that are Not Discharged.</u> Some of the common types of debts which are <u>not</u> discharged in a Chapter 7 bankruptcy case are:

    a.  Debts for most taxes;
    b.  Debts incurred to pay nondischargeable taxes;
    c.  Debts that are for domestic support obligations, or debts to a spouse or former spouse for property settlement;
    d.  Debts for most student loans;
    e.  Debts for most fines, penalties, forfeitures, or criminal restitution obligations;
    f.  Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;
    g.  Some debts which were not properly listed by the debtor;
    h.  Debts the bankruptcy court specifically has decided or will decide in this case are not discharged;
    i.  Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and
    j.  Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

Page 2 of 2          **IMPORTANT: Debtors MUST READ BOTH SIDES of this document!**

               ###

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 20
Page 2 of 2

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## District of Oregon

In re    **Lauren John Paulson**

Case No. _____ **09-32439** _____

Debtor

Chapter _____ **11** _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A,
B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.
Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must
also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 995,500.00 | | |
| B - Personal Property | Yes | 4 | 32,475.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 0.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 2,446,207.01 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 1,600.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 3,082.00 |
| Total Number of Sheets of ALL Schedules | | 16 | | | |
| Total Assets | | | 1,027,975.00 | | |
| Total Liabilities | | | | 2,446,207.01 | |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 1 of 30

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## District of Oregon

In re    **Lauren John Paulson**

_____,    Case No. _____**09-32439**_____

Debtor    Chapter _____**11**_____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐  Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 1,600.00 |
| Average Expenses (from Schedule J, Line 18) | 3,082.00 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 1,500.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 0.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 0.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 2,446,207.01 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 2,446,207.01 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

Case 09-32439-rld7    Doc 81    Filed 12/09/09

B6A (Official Form 6A) (12/07)

In re    **Lauren John Paulson**                                                    Case No.    **09-32439**
                                                      Debtor

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **3980 SW 170th Avenue, Aloha OR**<br>**16925 SW Blanton Street, Aloha OR**<br>**16919A SW Blanton Street, Aloha OR**<br>**16919B SW Blanton Street, Aloha OR** | **Fee simple** | - | **995,500.00** | 0.00 |

|  | Sub-Total > | **995,500.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **995,500.00** |  |

__0__    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 3 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

B6B (Official Form 6B) (12/07)

In re    **Lauren John Paulson**                                        Case No.    **09-32439**
                                                                        _____
                              Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Key Bank Checking Account** | - | 1,000.00 |
| | | **Bank of the West Savings Account** | - | 2,000.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **Furniture**<br>**Location: 3980 SW 170th Avenue, Aloha OR** | - | 3,500.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | **Clothes.**<br>**Location: 3980 SW 170th Avenue, Aloha OR** | | 250.00 |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | | **Firearms.**<br>**Location: 3980 SW 170th Avenue, Aloha OR** | | 100.00 |
| | | **Miscellaneous sports equipment.**<br>**Location: 3980 SW 170th Avenue, Aloha OR** | - | 25.00 |
| | | **Cameras**<br>**Location: 3980 SW 170th Avenue, Aloha OR** | - | 1,000.00 |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >    7,875.00
(Total of this page)

___3___  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Case 09-32439-rld7   Doc 81   Filed 12/09/09

B6B (Official Form 6B) (12/07) - Cont.

In re   **Lauren John Paulson**                                         Case No.   **09-32439**
                                                         Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Account receiveables from former clients.** | - | 20,000.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >    **20,000.00**
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 5 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

B6B (Official Form 6B) (12/07) - Cont.

In re   **Lauren John Paulson**                                      Case No.   **09-32439**
                                                                  Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Claim for small pension from Nationwide Insurance, where the Debtor worked in the 1970s.  Nationwide Insurance has denied the claim. | - | Unknown |
| | | Pending lawsuit for $30,000 against Barbara Parmenter for Breach of Contract | - | Unknown |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | | Client list for former law practice. | - | Unknown |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1992 Subaru Location: 3980 SW 170th Avenue, Aloha OR | - | 1,000.00 |
| | | 1973 FMC Motor Home Location: 3980 SW 170th Avenue, Aloha OR | - | 2,500.00 |
| | | 1973 Cadillac Sedan Deville-Not operable Location: 3980 SW 170th Avenue, Aloha OR | - | 100.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | Office equiptment from former law practice. Location: 3980 SW 170th Avenue, Aloha OR | - | 1,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| | | | Sub-Total > (Total of this page) | 4,600.00 |

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Case 09-32439-rld7     Doc 81     Filed 12/09/09

B6B (Official Form 6B) (12/07) - Cont.

In re  **Lauren John Paulson**                                    Case No.   __09-32439__
                            Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | |
|---|---|
| Sub-Total > | 0.00 |
| (Total of this page) | |
| Total > | 32,475.00 |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 7 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

B6C (Official Form 6C) (12/07)

In re    **Lauren John Paulson**                                    Case No. ____**09-32439**____
_____
                            Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:      ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                              $136,875.
  ☐ 11 U.S.C. §522(b)(2)
  ■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Key Bank Checking Account | ORS § 18.345(1)(o) | 400.00 | 1,000.00 |
| **Household Goods and Furnishings** | | | |
| Furniture | ORS § 18.345(1)(f) | 3,000.00 | 3,500.00 |
| Location: 3980 SW 170th Avenue, Aloha OR | | | |
| **Wearing Apparel** | | | |
| Clothes. | ORS § 18.345(1)(b) | 250.00 | 250.00 |
| Location: 3980 SW 170th Avenue, Aloha OR | | | |
| **Firearms and Sports, Photographic and Other Hobby Equipment** | | | |
| Firearms. | ORS § 18.362 | 100.00 | 100.00 |
| Location: 3980 SW 170th Avenue, Aloha OR | | | |
| **Other Contingent and Unliquidated Claims of Every Nature** | | | |
| Claim for small pension from Nationwide Insurance, where the Debtor worked in the 1970s. Nationwide Insurance has denied the claim. | ORS §§ 238.445; 18.348(2) | 0.00 | Unknown |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| 1992 Subaru | ORS § 18.345(1)(d) | 0.00 | 1,000.00 |
| Location: 3980 SW 170th Avenue, Aloha OR | | | |
| 1973 FMC Motor Home | ORS § 18.345(1)(d) | 2,500.00 | 2,500.00 |
| Location: 3980 SW 170th Avenue, Aloha OR | | | |

__0__  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Total:    6,250.00    8,350.00

Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 8 of 30

Case 09-32439-rld7   Doc 81   Filed 12/09/09

B6D (Official Form 6D) (12/07)

In re    **Lauren John Paulson**                                                        Case No.    **09-32439**
_____
                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

■   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| **0**   continuation sheets attached | | | | | Subtotal (Total of this page) | | | | | |
| | | | | | Total (Report on Summary of Schedules) | | | | **0.00** | **0.00** |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                        Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 9 of 30

B6E (Official Form 6E) (12/07)

In re    **Lauren John Paulson**                                    Case No. ____**09-32439**_____
                          Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                    0     continuation sheets attached

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re    **Lauren John Paulson**                                                    Case No.    **09-32439**
                    _____
                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. | | | | | November 28, 2005 | | | | |
| FHLF, LLC 6650 SW Redwood Lane Suite 290 Portland, OR 97224 | | - | | | 3980 SW 170th Avenue, Aloha OR 16925 SW Blanton Street, Aloha OR 16919A SW Blanton Street, Aloha OR 16919B SW Blanton Street, Aloha OR | | | | |
| | | | | | | | | | **400,000.00** |
| Account No. | | | | | Representing: | | | | |
| Craig Russilo and Anna Smith Schwabe Williamson & Wyatt PC 1211 SW Fifth Ave Suite 1900 Portland, OR 97204 | | | | | FHLF, LLC | | | | **Notice Only** |
| Account No. xxxxxxx1580 | | | | | Line of Credit | | | | |
| Keybank POB 93885 Cleveland, OH 44101 | | - | | | | | | | |
| | | | | | | | | | **5,000.00** |
| Account No. | | | | | September 2007 | | | | |
| Linda James c/o Frank Moscato, Atty at Law 1001 SW Fifth Ave Suite 1600 Portland, OR 97204 | | - | | | Malpractice Lawsuit - defended by PLF - Co-Plaintiff with William Sword | | X | X | |
| | | | | | | | | | **1,000,000.00** |
| | | | | | Subtotal (Total of this page) | | | | **1,405,000.00** |

  2   continuation sheets attached

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037    S/N:28228-091203    Best Case Bankruptcy

Case 09-32439-rld7   Doc 81   Filed 12/09/09

B6F (Official Form 6F) (12/07) - Cont.

In re    **Lauren John Paulson**                                     ,    Case No. _____**09-32439**_____
                                                     Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. | | 2008 Services | | | | | | | | |
| Northwest Surveying, Inc. Attn: Scott Field POB 7177 Beaverton, OR 97006 | | | | | | | | | | 1,000.00 |
| Account No. | | Need date of judgment Judgment in United States District Court - District of Oregon case number CV 04 01501. | | | | | | | | |
| Oregon State Bar P.O. Box 231935 Tigard, OR 97281 | | | | | | | | | | 6,039.46 |
| Account No. | | Need date of judgment Judgment in Oregon Supreme Court case number SC S53185 | | | | | | | | |
| Oregon State Bar P.O. Box 231935 Tigard, OR 97281 | | | | | | | | | | 1,228.05 |
| Account No. | | Disputed office services account. (General Judgment of Dismissal after small claims court filing in case #CO82658SC) | | | | | | | X | |
| Ribary & Associates, LLC 1210 NE150th Ave Vancouver, WA 98684 | | | | | | | | | | 4,000.00 |
| Account No. | - | March 12, 2007 Alleged performance of Services Washington County Court Case No. C082223 CV | | | | | X | X | X | |
| Scott Richardson PO Box 25544 Portland, OR 97298 | | | | | | | | | | 3,939.50 |

Sheet no. __1__ of __2__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)     **16,207.01**

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 12 of 30

Case 09-32439-rld7   Doc 81   Filed 12/09/09

B6F (Official Form 6F) (12/07) - Cont.

In re   **Lauren John Paulson**                                                     Case No.   **09-32439**
                                                      ,
                                        Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. **149627; 149663; 149654; 149645** | | | | July 1, 2008 3980 SW 170th Avenue, Aloha OR 16925 SW Blanton Street, Aloha OR 16919A SW Blanton Street, Aloha OR 16919B SW Blanton Street, Aloha OR | | | | |
| **Washington County 155 N. First Avenue, Room 130 Hillsboro, OR 97124** | | - | | | | | | |
| | | | | | | | | 25,000.00 |
| Account No. | | | | September 2007 Malpractice Lawsuit - defended by PLF - co plaintiff with Lynda James | | | | |
| **William Sword c/o Frank Moscato, Atty at Law 1001 SW Fifth Ave Suite 1600 Portland, OR 97204** | | - | | | | X | X | |
| | | | | | | | | 1,000,000.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. __2__ of __2__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | 1,025,000.00 |
|---|---|---|
| | Total (Report on Summary of Schedules) | 2,446,207.01 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 13 of 30

Case 09-32439-rld7   Doc 81   Filed 12/09/09

B6G (Official Form 6G) (12/07)

In re    **Lauren John Paulson**                                          Case No.    **09-32439**
_____                    _____
                                    Debtor

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| | |

**0**
_____  continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 14 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

B6H (Official Form 6H) (12/07)

In re    **Lauren John Paulson**                                            Case No.    __09-32439__
                                      Debtor

## SCHEDULE H - CODEBTORS

 Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).
■ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

**0**
____ continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 15 of 30

B6I (Official Form 6I) (12/07)

In re   **Lauren John Paulson** _____    Case No.   **09-32439** _____

Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| **Single** | RELATIONSHIP(S):  **None.** | AGE(S): | |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Retired Lawyer** | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions  (Prorate if not paid monthly) | $ | 0.00 | $ | N/A |
| 2. Estimate monthly overtime | $ | 0.00 | $ | N/A |
| 3. SUBTOTAL | $ | 0.00 | $ | N/A |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|     a.  Payroll taxes and social security | $ | 0.00 | $ | N/A |
|     b.  Insurance | $ | 0.00 | $ | N/A |
|     c.  Union dues | $ | 0.00 | $ | N/A |
|     d.  Other (Specify): _____ | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 0.00 | $ | N/A |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | N/A |
| 8. Income from real property | $ | 0.00 | $ | N/A |
| 9. Interest and dividends | $ | 0.00 | $ | N/A |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | 0.00 | $ | N/A |
| 11. Social security or government assistance | | | | |
| (Specify):   **Social Security** | $ | 1,600.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 12. Pension or retirement income | $ | 0.00 | $ | N/A |
| 13. Other monthly income | | | | |
| (Specify): _____ | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 1,600.00 | $ | N/A |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 1,600.00 | $ | N/A |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | $ | 1,600.00 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 16 of 30

Case 09-32439-rld7   Doc 81   Filed 12/09/09

B6J (Official Form 6J) (12/07)

In re  **Lauren John Paulson** _____   Case No.   **09-32439** _____
                          Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ 1,000.00 |
|    a. Are real estate taxes included? | Yes ___ No **X** | |
|    b. Is property insurance included? | Yes ___ No **X** | |
| 2. Utilities:   a. Electricity and heating fuel | | $ 200.00 |
|    b. Water and sewer | | $ 100.00 |
|    c. Telephone | | $ 75.00 |
|    d. Other  **See Detailed Expense Attachment** | | $ 150.00 |
| 3. Home maintenance (repairs and upkeep) | | $ 100.00 |
| 4. Food | | $ 200.00 |
| 5. Clothing | | $ 35.00 |
| 6. Laundry and dry cleaning | | $ 0.00 |
| 7. Medical and dental expenses | | $ 50.00 |
| 8. Transportation (not including car payments) | | $ 200.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ 100.00 |
| 10. Charitable contributions | | $ 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|    a. Homeowner's or renter's | | $ 86.00 |
|    b. Life | | $ 0.00 |
|    c. Health | | $ 0.00 |
|    d. Auto | | $ 66.00 |
|    e. Other | | $ 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
|    (Specify)  **Real Estate Taxes** | | $ 400.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
|    a. Auto | | $ 0.00 |
|    b. Other | | $ 0.00 |
|    c. Other | | $ 0.00 |
| 14. Alimony, maintenance, and support paid to others | | $ 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ 0.00 |
| 17. Other  **See Detailed Expense Attachment** | | $ 320.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | $ 3,082.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. | Average monthly income from Line 15 of Schedule I | $ 1,600.00 |
| b. | Average monthly expenses from Line 18 above | $ 3,082.00 |
| c. | Monthly net income (a. minus b.) | $ -1,482.00 |

B6J (Official Form 6J) (12/07)

In re   **Lauren John Paulson**                                                     Case No.   09-32439
                                        Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

**Other Utility Expenditures:**

| | | |
|---|---|---|
| Wireless internet | $ | 75.00 |
| Cable | $ | 75.00 |
| **Total Other Utility Expenditures** | $ | 150.00 |

**Other Expenditures:**

| | | |
|---|---|---|
| Postage | $ | 35.00 |
| Education | $ | 25.00 |
| Personal items and household supplies | $ | 125.00 |
| Pet supplies | $ | 35.00 |
| Litigation expenses | $ | 100.00 |
| **Total Other Expenditures** | $ | 320.00 |

Case 09-32439-rld7    Doc 81    Filed 12/09/09

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## District of Oregon

In re    **Lauren John Paulson**

Debtor(s)

Case No.    **09-32439**

Chapter    **11**

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of    **18**
sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date    **December 9, 2009**

Signature    **/s/ Lauren John Paulson**

**Lauren John Paulson**
Debtor

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 19 of 30

B7 (Official Form 7) (12/07)

# United States Bankruptcy Court
## District of Oregon

In re   **Lauren John Paulson**

_____
                        Debtor(s)

Case No.   **09-32439**
Chapter   **11**

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

_"In business."_ A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

_"Insider."_ The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

_____

**1. Income from employment or operation of business**

None
■

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                SOURCE

**2. Income other than from employment or operation of business**

None
☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
| --- | --- |
| **$18,000.00** | **2009 YTD: Debtor SSI Benefits** |
| **$18,000.00** | **2008: Debtor SSI Benefits** |
| **$18,000.00** | **2007: Debtor SSI Benefits** |

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Case 09-32439-rld7    Doc 81    Filed 12/09/09

2

| AMOUNT | SOURCE |
|---|---|
| **$14,400.00** | **2009 YTD: Debtor Rental income** |
| **$19,200.00** | **2008: Debtor Rental income** |

**3. Payments to creditors**

None
■
*Complete a. or b., as appropriate, and c.*

a.    *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
■
b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None
■
c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐
a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Lauren Paulson v. Barbara Parmenter, Case Number 06-2483** | **Breach of Contract** | **Lane County Circuit Court** | **Pending** |
| **Lauren Paulson v. Fairway America Corporation, et al., Case Number CV08-982-ST** | **Truth in Lending Act** | **United States District Court - District of Oregon** | **Pending** |
| **Mr. Handyman of NW Portland v. Lauren Paulson, Case Number C082223CV** | **Breach of Contract** | **Washington County Circuit Court** | **Pending** |
| **Lynda James v. Lauren Paulson, Case Number 06-2054** | **Malpractice** | **Columbia County Circuit Court** | **Pending** |

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 21 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

3

None
☐ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **ODR Bkcy** <br> **955 Center NE #353** <br> **Salem, OR 97310** | | **$114 garnished for unpaid parking tickets** |

### 5. Repossessions, foreclosures and returns

None
☐ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Fairway American, LLC** <br> **6650 S.W. Redwood Ln. #290** <br> **Portland, OR 97224** | **9/25/09** | **3980 SW 170th Avenue, Aloha OR** <br> **16925 SW Blanton Street, Aloha OR** <br> **16919A SW Blanton Street, Aloha OR** <br> **16919B SW Blanton Street, Aloha OR** <br> **Total Value of All Properties Approx:** <br> **$600,000.00** |

### 6. Assignments and receiverships

None
☐ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|
| **FHLF, LLC** <br> **6650 SW Redwood Lane** <br> **Suite 290** <br> **Portland, OR 97224** | | **Granted Assignment of Rents to FHLF, LLC however FHLF, LLC has not excercised.** |

None
■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

### 7. Gifts

None
■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 22 of 30

Case 09-32439-rld7   Doc 81   Filed 12/09/09

4

**8. Losses**

None
■    List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None
☐    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Field Jerger, LLP 610 SW Alder Street Suite #910 Portland, OR 97205** | **March 24, 2009.** | **$5,000 Chapter 11 preparation and filing** |

**10. Other transfers**

None
☐    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| **Various Individuals Unknonw Third Party** | **April 2008** | **Garage Sale items. Miscellaneous collectibles, clothing, tools (all of minimal value). Total received for all items sold $2000.** |

None
☐    b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|
| **Lauren Paulson Trust 3980 SW 170th Ave. Aloha, OR 97007 Self-settled Trust** | **10/18/04** | **Debtor's 100 % interest in real property located at 3980 SW 170th Ave., Aloha, OR 97007. Property was quitclaimed from Trust back to Debtor on April 9, 2009.** |

**11. Closed financial accounts**

None
☐    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| **washington mutual** | **Business checking account 935-005034-3 with a $275 final balance.** | **Closed in 2008.** |

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 23 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

5

| NAME AND ADDRESS OF INSTITUTION<br>**washington mutual** | TYPE OF ACCOUNT, LAST FOUR<br>DIGITS OF ACCOUNT NUMBER,<br>AND AMOUNT OF FINAL BALANCE<br>**IOLTA account 935-005033-5, final<br>balance $65.00.** | AMOUNT AND DATE OF SALE<br>OR CLOSING<br>**Closed in 2008.** |
|---|---|---|

**12. Safe deposit boxes**

None ■   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK<br>OR OTHER DEPOSITORY | NAMES AND ADDRESSES<br>OF THOSE WITH ACCESS<br>TO BOX OR DEPOSITORY | DESCRIPTION<br>OF CONTENTS | DATE OF TRANSFER OR<br>SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■   List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■   List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None ■   If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None ■   If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

6

None
■    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None
☐    a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **Lauren Paulson, Attorney at Law** | **4301** | **3980 SW 170th Avenue Beaverton, OR 97007** | **Sole proprietor law firm.** | **1988 to 2006** |
| **Huber Wheeler Crossing, LLC** | | **3980 SW 170th Avenue Beaverton, OR 97007** | **Sole member LLC that held debtor's rental properties.** | **12/10/99 -2/9/07** |

None
■    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Case 09-32439-rld7    Doc 81    Filed 12/09/09

7

**19. Books, records and financial statements**

None
☐    a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS
**Keith Bebb, CPA**
**17899 SW Tualatin Valley Highway**
**Beaverton, OR 97006**

DATES SERVICES RENDERED
**Prepared Debtor's 2006 and 2007 tax returns**

None
■    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME    ADDRESS    DATES SERVICES RENDERED

None
■    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME    ADDRESS

None
■    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS    DATE ISSUED

**20. Inventories**

None
■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY    INVENTORY SUPERVISOR    DOLLAR AMOUNT OF INVENTORY
(Specify cost, market or other basis)

None
■    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

DATE OF INVENTORY    NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
RECORDS

**21. Current Partners, Officers, Directors and Shareholders**

None
■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS    NATURE OF INTEREST    PERCENTAGE OF INTEREST

None
■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS    TITLE    NATURE AND PERCENTAGE
OF STOCK OWNERSHIP

**22. Former partners, officers, directors and shareholders**

None
■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME    ADDRESS    DATE OF WITHDRAWAL

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 26 of 30

Case 09-32439-rld7   Doc 81   Filed 12/09/09

8

| None ■ | b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case. |

NAME AND ADDRESS                              TITLE                        DATE OF TERMINATION

**23 . Withdrawals from a partnership or distributions by a corporation**

| None ■ | If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case. |

NAME & ADDRESS
OF RECIPIENT,                        DATE AND PURPOSE                 AMOUNT OF MONEY
RELATIONSHIP TO DEBTOR               OF WITHDRAWAL                    OR DESCRIPTION AND
                                                                     VALUE OF PROPERTY

**24. Tax Consolidation Group.**

| None ■ | If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case. |

NAME OF PARENT CORPORATION                              TAXPAYER IDENTIFICATION NUMBER (EIN)

**25. Pension Funds.**

| None ■ | If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case. |

NAME OF PENSION FUND                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 27 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

9

**DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR**

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  __December  9, 2009_____        Signature  __/s/ Lauren John Paulson_____
                                                      Lauren John Paulson
                                                      Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                        Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 28 of 30

Case 09-32439-rld7    Doc 81    Filed 12/09/09

## United States Bankruptcy Court
### District of Oregon

In re  **Lauren John Paulson**                                    Case No.  __09-32439__

                                    Debtor(s)          Chapter  __11__

## VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:  **December  9, 2009**                    **/s/ Lauren John Paulson**
                                    **Lauren John Paulson**
                                    Signature of Debtor

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 29 of 30

## United States Bankruptcy Court
### District of Oregon

In re    **Lauren John Paulson** _____    Case No.    09-32439 _____

                                    Debtor(s)    Chapter    11 _____

### CERTIFICATION PURSUANT TO LBR 1001-1.G

I certify that the foregoing documents have been prepared by a computer and conform to versions of the Official
Bankruptcy Forms available and applicable at this time.

The software utilized is Best Case Bankruptcy, developed by Best Case Solutions, Inc.

Dated:    December  9, 2009 _____    /s/ Matthew A. Arbaugh _____
                                            **Matthew A. Arbaugh 02025**
                                            **Field Jerger LLP**
                                            **621 SW Morrison, Suite 1225**
                                            **Portland, OR 97205**
                                            **503 228-9115**

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Declaration of Paul A. C. Berg in Support of Russillo's Motion for Summary Judgment
Exhibit 21
Page 30 of 30

Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cosgravelaw.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail: pberg@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
500 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Telephone:   (503) 323-9000
Facsimile:   (503) 323-9019
Of Attorneys for Defendants Matt Arbaugh
        and Craig Russillo

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. 09-32439-rld7 |
| LAUREN PAULSON, | Adv. Proc. No. 11-03309-rld |
| Debtor. | |
| _____ | **DECLARATION OF MATTHEW A. ARBAUGH IN SUPPORT OF DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT** |
| LAUREN PAULSON, | |
| Plaintiff, | Hearing Date: March 12, 2012 |
| v. | Time:              1:30 p.m. |
| MATT ARBAUGH, AMY MITCHELL, CRAIG RUSSILLO, | Courtroom:    3 |
| Defendants. | |

I, Matthew A. Arbaugh, under penalty of perjury, declare pursuant to 28 U.S.C. §
1746, as follows:

1.      I am an attorney who served as legal counsel for Lauren Paulson in his

bankruptcy.

// // //

// // //

Page 1 –  DECLARATION OF MATTHEW A. ARBAUGH IN SUPPORT OF
           DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

1399493

2.      During the January 4, 2010 meeting of creditors, the Trustee, Amy

Mitchell, disclosed that she was in discussions regarding a potential settlement of

Paulson's then pending federal lawsuit.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS**

**TRUE AND CORRECT.**

EXECUTED this 6th day of January, 2012, at Portland, Oregon.


*/s/ Matthew A. Arbaugh*
Matthew A. Arbaugh

Page 2 –  DECLARATION OF MATTHEW A. ARBAUGH IN SUPPORT OF
          DEFENDANT RUSSILLO'S MOTION FOR SUMMARY JUDGMENT

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

1399493

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing

**DECLARATION OF MATTHEW A. ARBAUGH IN SUPPORT OF DEFENDANT**

**RUSSILLO'S MOTION FOR SUMMARY JUDGMENT** on the date indicated below by:

☒ mail with postage prepaid, deposited in the US mail at Portland, Oregon;

☒ email

☒ electronic filing notification.

If served by facsimile transmission, attached to this certificate is the printed

confirmation of receipt of the document(s) generated by the transmitting machine. I

further certify that said copy was placed in a sealed envelope delivered as indicated

above and addressed to said attorney(s) at the address(es) listed below:

Lauren Paulson          ***(VIA EMAIL AND US MAIL)***
PO Box 19303
Portland, OR 97280
Plaintiff Pro Se

Justin D. Leonard          ***(VIA ELECTRONIC FILING NOTIFICATION)***
Ball Janik LLP
101 SW Main St, Ste 1100
Portland, OR 97204
Of Attorneys for Defendant Amy Mitchell

DATED: January 9, 2012.


/s/ Paul A. C. Berg
Paul A. C. Berg


**Page 1 - CERTIFICATE OF SERVICE**

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**